1  Catherine W. Short, Esq.; SBN 117442
   LIFE LEGAL DEFENSE FOUNDATION
2  Post Office Box 1313
3  Ojai, California  93024-1313
   Tel:  (707) 337-6880
4  LLDFOjai@earthlink.net

5
   D. John Sauer*
6  James Otis Law Group, LLC
   231 South Bemiston Ave., Suite 800
7  St. Louis, Missouri 63105
8  (314) 854-1372
   jsauer@jamesotis.com
9

10 Thomas Brejcha*
   Thomas More Society
11 19 La Salle St., Ste. 603
   Chicago, IL 60603
12 (312) 782-1680
13 tbrejcha@thomasmoresociety.org

14 *Pro Hac Vice

15
   Attorneys for Defendants
16 THE CENTER FOR MEDICAL PROGRESS,
   BIOMAX PROCUREMENT SERVICES, LLC,
17 AND DAVID DALEIDEN

18
                **UNITED STATES DISTRICT COURT,**
19              **NORTHERN DISTRICT OF CALIFORNIA**

20 NATIONAL ABORTION FEDERATION          )  Case No. 3:15-cv-3522 (WHO)
21 (NAF),                                )
                                         )  Judge William H. Orrick, III
22          Plaintiff,                   )
23      vs.                              )  DEFENDANTS' MOTION TO
                                         )  CLARIFY TEMPORARY
                                         )  RESTRAINING ORDER AS IT
24 THE CENTER FOR MEDICAL                )  RELATES TO ANY SUBPOENAS
25 PROGRESS; BIOMAX PROCUREMENT          )
   SERVICES, LLC; DAVID DALEIDEN (aka    )
26 "ROBERT SARKIS"); and TROY            )
   NEWMAN,                               )
27                                       )
28          Defendants.                  )

1

## __Table of Contents__

Introduction .................................................................................................................... 1

I. The TRO Should Be Clarified to Permit Defendants to Provide Information in Response

to Subpoenas and Other Official Requests from Government Officers or Agencies

Conducting Official Proceedings ........................................................................... 1

   A. The Defendants Have Received, and Will Likely Continue to Receive, Official

   Requests for Information Arguably Subject to the TRO ................................... 1

   B. Under California's Official-Proceedings Privilege, Disclosing Information to

   Government Investigators in Official Proceedings Does Not Support a Claim for

   Breach of Contract or Common-Law Privacy ................................................... 2

      1. A disclosure to a state Attorney General pursuant to an official investigation falls

      within the scope of California's official-proceedings privilege ............................... 3

      2. The official-proceedings privilege bars claims for breach of contract and

      common-law privacy torts ......................................................................... 5

   C. Disclosing Recordings in Connection with Official Proceedings Would Not Violate

   California Penal Code § 632 ............................................................................ 6

   D. Considerations of Federalism and Comity Support Amending the TRO to Permit

   Disclosures to State Investigators ....................................................................... 7

   E. The TRO Must Be Interpreted Narrowly as a Prior Restraint on Speech ................. 8

II. Defendants Request a Prompt Hearing on This Request for Clarification...................... 9

Conclusion ................................................................................................................. 9

1                                       **<u>Table of Authorities</u>**

2  **<u>Cases</u>**

3  *Alderson v. United States*, 718 F. Supp. 2d 1186 (C.D. Ca. 2010) ................................ 6

4  *Alexander v. United States*, 509 U.S. 544 (1993) ...................................................... 8

5  *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036 (1997) ...................................... 4

6  *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737 (9th Cir. 2012) .................... 8

7  *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923 (1994) ................................................ 7

8  *Fomby-Denson v. Dep't of Army*, 247 F.3d 1366 (Fed. Cir. 2001) .......................... 5, 6

9  *Forro Precision, Inc. v. IMB Corp.*, 673 F.2d 1045 (9th Cir. 1982) .............................3-4

10  *Gooding v. Wilson*, 405 U.S. 518 (1972) ................................................................ 8

11  *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572 (2005) ............................. 5

12  *Haberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004) ......................................... 3-4

13  *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290 (1982) ............................................. 5-6

14  *Kashian v. Harriman*, 98 Cal. App. 4th 892 (2002) ................................................ 4

15  *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (2011) .......................................... 7

16  *Kimmel v. Goland*, 51 Cal. 3d 202 (1990) .......................................................... 5, 6

17  *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850 (10th Cir. 1972) .............. 6

18  *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156 (2003) ....................... 5, 7

19  *Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415 (2003) ........... 7

20  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ................................................... 8

21  *Slaughter v. Friedman*, 32 Cal. 3d 149 (1982) ...................................................... 4

22  *Tiedemann v. Superior Court of Alameda Cnty.*, 83 Cal. App. 3d 918 (1978) ............. 4

23  *United States ex rel. Grandeau v. Cancer Treatment Ctr. of Am.*, 350 F. Supp. 2d 765 (N.D. Ill.

24     2004) ............................................................................................... 5

25  *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296 (2000) ..................................... 6

26  *Younger v. Harris*, 401 U.S. 37 (1971) ............................................................... 7-8

27

28

1

**Statutes**

Cal. Civ. Code § 47(b) ........................................................................................ 3

Cal. Penal Code § 632(a) ................................................................................... 6-7

DEFENDANTS' MOTION TO CLARIFY TEMPORARY
RESTRAINING ORDER AS IT RELATES TO ANY SUBPOENAS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendants Center for Medical Progress, Biomax Procurement Services, LLC, and David Daleiden (together, "Defendants") respectfully request that this Court clarify, or if necessary amend, the Temporary Restraining Order ("TRO") entered by this Court on July 31, 2015, and extended on August 3, 2015, to clarify that the TRO does not prohibit Defendants from producing information in response to investigative subpoenas and other requests for information issued to Defendants by government officials conducting official proceedings.

**I. The TRO Should Be Clarified to Permit Defendants to Provide Information in Response to Subpoenas and Other Official Requests from Government Officers or Agencies Conducting Official Proceedings.**

The TRO prohibits Defendants from "publishing or otherwise disclosing ***to any third party*** any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings." Doc. 27, at 1 (emphasis added). It also prohibits disclosure of dates, locations, names, and addresses related to NAF meetings "to any third party." *Id.* Defendants respectfully request an order clarifying that the phrase "any third party" in the TRO order does not prohibit them from complying with subpoenas or other demands for disclosure made by government officers or agencies conducting official proceedings.

**A. The Defendants Have Received, and Will Likely Continue to Receive, Official Requests for Information Arguably Subject to the TRO.**

The videos published by the Defendants have resulted in numerous federal and state investigations relating to the practices reflected in the videos. *See* Doc. 22, at 9-12. In connection with these, Defendants have been contacted by investigative agencies conducting official proceedings with requests for information that is arguably covered by the TRO. For example, on July 31, 2015, the date the TRO was entered, Defendants received an official request for information from the Judiciary Committee of the United States Senate, demanding the production of, among other things, "[a]ll video footage in CMP's possession relating to the provision,

acquisition, preparation, transportation, and sale of fetal tissue," and "all documents and records in CMP's possession involving . . . any individuals or entities that acquire, provide, or resell fetal tissue." *See* Letter of Senator Charles Grassley (Jul. 31, 2015) (attached as Exhibit 1).

More recently, on August 11, 2015, Defendants were served with a subpoena from the civil enforcement arm of the Arizona Attorney General's Office. *See* Office of the Arizona Attorney General, Subpoena Duces Tecum directed to the Center for Medical Progress (attached as Exhibit 2). This subpoena instructs Defendants to produce information covered by the TRO by August 25, 2015. *See id.* at 1. Like the prior request from the Senate Judiciary Committee, this subpoena requests "[a]ll video footage in CMP's possession relating to the provision, acquisition, preparation, transportation, and sale of fetal tissue," and "[a]ll documents and records in CMP's possession involving . . . any individuals or entities that acquire, provide, or resell fetal tissue." *Id.* Materials covered by the TRO are responsive to this subpoena. The subpoena indicates that failure to comply could result in legal penalties or contempt. *Id.*

Moreover, Defendants anticipate that they will likely receive other similar requests on an ongoing basis. *See* Doc. 22, at 9-12. They wish to cooperate in official investigations and also comply fully with the TRO. Accordingly, they request the Court to clarify the TRO to make clear that the TRO does not prevent disclosures to government agencies conducting official proceedings.

**B. Under California's Official-Proceedings Privilege, Disclosing Information to Government Investigators in Official Proceedings Does Not Support a Claim for Breach of Contract or Common-Law Privacy.**

In its request for the TRO, Plaintiff NAF asserted three legal bases for interim injunctive relief. In particular, NAF alleged that disclosure of recordings from NAF meetings would violate (1) putative contractual obligations between the Defendants and NAF, (2) California Penal Code § 632, and (3) the common law tort of invasion of privacy. *See* Doc. 3, at 15.

California law, however, clearly authorizes the disclosure of recordings and other information to a government agency or officer conducting an official proceeding in each of these circumstances. In particular, disclosure of the requested information (1) would not violate the putative non-disclosure agreements,[1] (2) would not violate California Penal Code § 632, and (3) would not constitute tortious invasion of privacy.

California law establishes a broad privilege against civil liability for disclosures made in the context of governmental proceedings or investigations. A "publication or broadcast" made "in any . . . official proceeding authorized by law" receives an absolute privilege under California law. Cal. Civ. Code § 47(b); *see also Haberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 360 (2004) (describing the privilege as "absolute"). Here, a disclosure in an official proceeding constitutes a "publication made in an official proceeding authorized by law," and § 47(b)'s privilege therefore abrogates any claim for breach of contract or common-law privacy torts.

### 1. A disclosure to a state Attorney General pursuant to an official investigation falls within the scope of California's official-proceedings privilege.

Disclosures made to government entities charged with enforcing the law fall within the scope of § 47, regardless of whether those entities have commenced a formal proceeding, or have issued a formal demand for information, such as a subpoena. The privilege "is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." *Haberg*, 32 Cal. 4th at 360 (internal quotation marks and emphasis omitted); *see also Forro Precision, Inc. v. IMB Corp.*, 673 F.2d 1045, 1055 (9th Cir.

---

[1] For reasons stated by Defendants elsewhere, these non-disclosure agreements are unenforceable, and they do not extend to the disclosure of recordings from NAF meetings in any event. Even assuming that Defendants have a contractual obligation not to disclose such information, however, that obligation has no force in the face of an official proceeding, for the reasons stated herein.

1982) ("Underlying the privilege is the policy of encouraging freedom of communication between citizens and public authorities charged with investigating wrongdoing.").

For this reason, courts have construed the phrase "publication . . . [in an] official proceeding" in § 47 very broadly. It applies to communications to the California Attorney General's Office. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 927 (2002); *compare Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1052 (1997) (holding that official-proceeding privilege applied to statements in connection with investigation by state auditor). The phrase also applies to communications to federal governmental entities, as the term "official proceedings" is not limited to proceedings before California governmental entities. *See, e.g.*, *Tiedemann v. Superior Court of Alameda Cnty.*, 83 Cal. App. 3d 918, 925-26 (1978) (holding that official-proceeding privilege applied to communication with federal Internal Revenue Service investigators). Moreover, the privilege applies regardless of whether the governmental entity has commenced a formal investigation or has issued a subpoena or other formal demand for information. *See Haberg*, 32 Cal. 4th at 362, 369 (holding that official-proceedings privilege applies to communications to police intended to instigate investigation); *Slaughter v. Friedman*, 32 Cal. 3d 149, 156 (1982) ("The 'official proceeding' privilege has been interpreted broadly to protect communications to or from governmental officials which may precede the initiation of formal proceedings." (emphasis omitted)).

For this reason, disclosure in response to any governmental entity's investigative demands received by Defendants would constitute a "publication . . . in an official proceeding" that would receive "absolute" privilege under California law. This privilege abrogates any claim for breach of contract or violation of common-law privacy by Plaintiff.

## 2. The official-proceedings privilege bars claims for breach of contract and common-law privacy torts.

Section 47(b) bars claims for breach of contract and for common-law privacy torts based on publications in official proceedings. Thus, disclosing information to government investigators would not violate any non-disclosure agreements, and it would not constitute any privacy tort, even if those claims had any independent substantive merit (which they do not in this case).[2]

First, California courts have recognized that disclosures within the scope of § 47(b) cannot support a breach of contract claim. *See Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005) ("[S]tatements [that a defendant] made to government officials, such as the district attorney or other regulators, are privileged and cannot form the basis for [a] breach of contract claim."). Likewise, courts in other jurisdictions have concluded that disclosures pursuant to a governmental investigative subpoena do not constitute breaches of non-disclosure agreements. *See United States ex rel. Grandeau v. Cancer Treatment Ctr. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004) (holding that disclosure pursuant to investigative subpoena could not support claim for breach of confidentiality agreement).

These cases are in accord with the law of California, and virtually every other jurisdiction, that there can be no putative contractual obligation to refrain from reporting a potential crime. "[C]ontracts barring the reporting of crimes are held to be unenforceable." *Fomby-Denson v. Dep't of Army*, 247 F.3d 1366, 1376 (Fed. Cir. 2001); see also *id.* at 1377 n.9 (collecting secondary sources for this point). California follows this rule. *See, e.g.*, *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 295 (1982) (holding that public policy permits an employee to report information that may

---

[2] The official-proceedings privilege does not bar claims brought under Penal Code § 632. *Kimmel v. Goland*, 51 Cal. 3d 202, 212 (1990). For the reasons stated below, however, § 632 bans only the creation of the recordings—it does not bar *disclosures* of any kind. *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 167 (2003) ("Penal Code section 632 does not prohibit the disclosure of information gathered in violation of its terms.").

lead to criminal prosecution, irrespective of confidentiality obligations); *see also Alderson v. United States*, 718 F. Supp. 2d 1186, 1200 (C.D. Ca. 2010) ("Courts have consistently refused to enforce post-employment confidentiality agreements that sought to prevent a former employee from revealing harmful information about the employer's illegality.").  As the U.S. Supreme Court has stated, "it is obvious that agreements to conceal information relevant to commission of crime have very little to recommend them from the standpoint of public policy." *Branzburg v. Hayes*, 408 U.S. 665, 696 (1972); *see also Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972) ("The criminal nature of the offense . . . gives the state a clear and separate interest in voiding a contract which conceals the crime, and hampers the punishment of the offender."); *Fomby-Denson v. Dept. of Army*, 247 F.3d 1366, 1376 (Fed. Cir. 2001) ("Given the magnitude of the public policy interest here, it is not surprising that contracts barring the reporting of crimes are held to be unenforceable.").

Similarly, § 47(b)'s privilege also bars common-law invasion-of-privacy claims.  *See Kimmel v. Goland*, 51 Cal. 3d 202, 209 (1990) ("[Section 47(b)'s privilege] has been interpreted to apply to virtually all torts except malicious prosecution.  This includes the tort of invasion of privacy." (internal citation omitted)); *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1302-03 (2000) (explaining that § 47(b)'s "privilege is absolute and precludes recovery on all tort theories, including claims for invasion of privacy" (emphasis omitted)).  Accordingly, NAF's invasion-of-privacy claim cannot bar disclosures pursuant to investigative demands.

### C. Disclosing Recordings in Connection with Official Proceedings Would Not Violate California Penal Code § 632.

Disclosing any recordings to government officers in official proceedings also would not violate California Penal Code § 632.  By its plain terms, § 632 prohibits only "eavesdrop[ping]" and non-consensual "record[ing]" of confidential communications; it says nothing about the *disclosure* of recordings made in violation of the statute.  *See* Cal. Penal Code § 632(a) (providing

DEFENDANTS' MOTION TO CLARIFY TEMPORARY
RESTRAINING ORDER AS IT RELATES TO ANY SUBPOENAS

criminal sanctions on any person who "eavesdrops upon or records" any "confidential communication"). For this reason, the California Court of Appeals has held that "Penal Code section 632 does not prohibit the *disclosure* of information gathered in violation of its terms." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 167 (2003) (emphasis added); *see also Marich v. MGM/UA Telecommunications, Inc.*, 113 Cal. App. 4th 415, 431 (2003) (holding that the subsequent enhancement of an illegal recording did not violate § 632 because the statute "prohibits only a real time interception of a communication" (internal quotation marks omitted)). "Section 632 prohibits *recording* a confidential communication without the knowledge of consent of all parties. It says nothing about publishing the communication to a third party." *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 930 (1994). "Although a recording preserves the conversation and thus could cause greater damage to an individual's privacy in the future, these losses are not protected by section 632. Instead, section 632 protects only the speaker's right to know and control the firsthand dissemination of the conversation as it is occurring." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1393 (2011) (internal citation omitted). For these reasons, Section 632 does not provide any basis to order the non-disclosure of recordings of NAF meetings to government investigators in official proceedings.

> ### D. Considerations of Federalism and Comity Support Amending the TRO to Permit Disclosures to State Investigators.

Furthermore, the TRO would violate significant considerations of federalism and intergovernmental comity if it prohibits disclosure pursuant to the ongoing investigations of state agencies. Federal courts long have recognized that fundamental principles of federalism counsel against federal court interference with the States' legitimate governmental action. *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 44 (1971) (explaining that constitutional federalism requires a "sensitivity to the legitimate interests of both State and National Governments" and that "the National Government, anxious though it may be to vindicate and protect federal rights and federal

interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States"). Federal courts have recognized consistently that state investigation of healthcare regulatory violations "implicate [an] important state interest." *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737, 747 (9th Cir. 2012). Thus, strong federalism and intergovernmental comity considerations counsel in favor of permitting disclosure of the information in official investigations. *See also* Doc. 22, at 18-19.

**E. The TRO Must Be Interpreted Narrowly as a Prior Restraint on Speech.**

For the reasons stated in Defendants' memorandum in opposition to the TRO, the TRO is an unconstitutional prior restraint on speech that violates Defendants' First Amendment rights. *See* Doc. 22, at 15-18; *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) ("Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559-60 (1976) ("Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. . . . The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events."). Accordingly, the TRO should not prohibit any disclosure of information whatsoever, and it should be vacated *in toto*.

At very least, the TRO should be interpreted narrowly to impose the least possible restriction on disclosure. *See, e.g.*, *Gooding v. Wilson*, 405 U.S. 518, 522 (1972) ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.") (*quoting NAACP v. Button*, 371 U.S. 415, 433 (1963)).

Because the California law on which the TRO is based clearly authorizes disclosure of recordings and other information to government investigators in official proceedings, the TRO should not be interpreted to foreclose such disclosures.

1    For all these reasons, the TRO should be clarified to authorize disclosures to government

2 officers and agencies conducting official proceedings.

3    **II. Defendants Request a Prompt Hearing on This Request for Clarification.**

4    Given the urgency of these issues, Defendants request a telephone hearing on this request

5 for clarification at the Court's earliest convenience.

6

7                                       <u>CONCLUSION</u>

8    For the reasons stated, Defendants Center for Medical Progress, Biomax Procurement

9 Services, LLC, and David Daleiden respectfully request that this Court clarify the Temporary

10 Restraining Order (extended on August 3, 2015) to specify that it does not prohibit disclosures to

11 government officers or agencies conducting official investigations.

12                                              Respectfully submitted,

13                                              <u>Catherine W. Short</u>

14

15 Catherine W. Short, Esq.; SBN 117442
   LIFE LEGAL DEFENSE FOUNDATION

16 Post Office Box 1313
   Ojai, California  93024-1313

17 Tel:  (707) 337-6880
   Fax: (805) 640-1940

18 LLDFOjai@earthlink.net

19
   D. John Sauer

20 James Otis Law Group, LLC
   231 South Bemiston Ave., Suite 800

21 St. Louis, Missouri 63105
   (314) 854-1372

22 jsauer@jamesotis.com

23 *Pro Hac Vice

24 Thomas Brejcha
   Thomas More Society

25 19 La Salle St., Ste. 603
   Chicago, IL 60603

26 (312) 782-1680

27 tbrejcha@thomasmoresociety.org
   *Pro Hac Vice

28