UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>    Defendants. | Case No. 15-cv-03522-WHO<br><br>**ORDER DENYING MOTION TO STAY DISCOVERY PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16(G)** |

This Order explains that the anti-SLAPP motion filed by the Center for Medical Progress, Biomax Procurement Services, LLC, and David Daleiden ("defendants") did not entitle them to a stay of discovery under California Code of Civil Procedure section 425.16(g) because a stay would conflict with Federal Rules of Civil Procedure 56 and 26. Among other reasons, there are factual issues that need to be resolved to decide that motion and (as I already ruled) plaintiff National Abortion Federation's ("NAF") motion for a preliminary injunction. Before the discussing the merits of that argument in greater detail, it is worth recapping the litigation to date.

**LITIGATION BACKGROUND**

NAF is a non-profit, professional association of abortion providers. Compl. ¶ 8 (Dkt. No. 1). It filed this lawsuit, along with a motion for a temporary restraining order ("TRO") and preliminary injunction and a motion for expedited discovery, on July 31, 2015, after defendants issued allegedly misleading videotapes of NAF members that they had obtained by false pretenses. *See id.* ¶¶ 2-3.

According to NAF, defendants engaged in a sophisticated scheme to infiltrate its meetings. *Id.* ¶¶ 1-3. They created a sham company, Biomax Procurement Services, that purported to be a fetal tissue procurement organization. *Id.* ¶ 1. The individual defendants assumed false identities and made fake drivers' licenses. *Id.* ¶¶ 16-19. Under these pretenses, defendants obtained access

to NAF meetings and gathered information about its members. *Id*. ¶ 1, 19.  Using their false identities, the individual defendants signed "Exhibitor Agreements" and "Non-Disclosure Agreements" (collectively, "confidentiality agreements") before attending all NAF meetings. *Id.* ¶¶ 141-42.  In signing these confidentiality agreements, defendants promised, among other things, that they "would not disclose any information learned at NAF's annual meetings to third parties absent NAF's consent, and that they would only use information learned at NAF's annual meetings in order to enhance the quality and safety of services provided by NAF members and other annual meeting participants." *Id.*  They also agreed that NAF would be entitled to injunctive relief in the event they breached the Exhibitor Agreement. *Id*. ¶ 52.

Defendants attended both the 2014 and 2015 NAF annual meetings. *Id.* ¶¶ 64, 79.  NAF alleges that they secretly taped conversations with other attendees, recorded panel discussions, and obtained identifying information about members. *Id.* ¶¶ 70-71, 82.  NAF does not know exactly what or how much defendants recorded.  In addition, it asserts that defendants surreptitiously videotaped NAF members after the first annual meeting, using information and contacts that they had obtained at the meeting. *Id.* ¶¶ 72-74.

On July 14, 2015, defendants began releasing videos that they had taped of NAF members, stating that the videos were proof of NAF members' illegal activities. *Id.* ¶¶ 84-85.  Defendants took the position that their work was "investigative journalism." *Id.* ¶ 85.  They indicated that more videos and information would be released in the future. *Id.* ¶ 85.

The Complaint asserts thirteen causes of action, including breach of contract, promissory fraud, and fraudulent misrepresentation.  NAF requested a TRO in order to enjoin defendants from releasing further information about its members, stating that defendants' action would result in death threats, harassment, and reputational harm to its members. *Id.* ¶ 5.  The Complaint cites the history of violence against providers of abortion care, as well as specific acts of intimidation against NAF members caused by defendants' recent videos. *Id.* ¶¶ 24-38.  For example, internet comments stated that "I'll pay ten large to whomever kills [the doctor who was the subject of defendants' first video]," and that she "should die, today." *Id.* ¶ 37.  Similar comments were made about the other individuals who were videotaped by defendants. *Id.*

1    I granted the request for a TRO on July 31, 2015. Dkt. No. 15. At the hearing on the
2 motion, I determined that defendants had clearly breached their agreements with NAF, and that
3 NAF had established both a likelihood of success on the merits of its claims and a threat of
4 irreparable injury. Dkt. No. 27.

5    I also found that there was good cause supporting NAF's request to expedite discovery,
6 and I granted that motion. Tr. 17:16-19 (Dkt. No. 25); Dkt. No. 27. I stated that discovery was
7 essential to determining the scope of the preliminary injunction, directed that discovery be
8 targeted, and acknowledged that discovery disputes were likely to arise. *Id.* at 17:10-18:15. I set a
9 hearing to resolve any disputes, stressing that a "critical piece of the next hearing" would focus on
10 the information that defendants obtained at NAF meetings and whether it fell within the scope of
11 the confidentiality agreements. Tr. 17:14.

12    The TRO and briefing schedule were subsequently extended by stipulation of the parties.
13 Dkt. No. 34. Two days before the discovery hearing, the parties submitted a discovery letter to the
14 Court in accordance with the Court's Order. Disc. Letter (Dkt. No. 74). But instead of describing
15 disputes that arose in the course of discovery, the letter indicated that no discovery had
16 commenced because defendants asserted that their anti-SLAPP motion (which they had filed two
17 days before they submitted the letter) automatically stayed all discovery. *Id.* at 10. At the
18 discovery hearing on August 21, 2015, defendants moved for a stay of discovery pursuant to
19 California Code of Civil Procedure section 425.16(g). Tr.(2) 18:13-18 (Dkt. No. 80).

20    I denied that motion, for the reasons I explain below. Because the parties had not agreed to
21 any specific dates for responses to discovery or depositions, I ordered that the parties immediately
22 meet and confer in the courthouse and return to my courtroom when they had finished, either to
23 announce agreement or to identify any issues that I needed to resolve. *Id.* at 5:8-13.

24    After the meet and confer, the parties returned. Defendants announced their intent to
25 invoke their Fifth Amendment rights against self-incrimination. *Id.* at 20:2-6. Both parties agreed
26 to a briefing schedule to address whether or to what extent the corporate entities may assert Fifth
27 Amendment rights. Dkt. No. 84. The parties also agreed to a protective order. They stipulated to
28 extend the TRO once more and to take the preliminary injunction motion, the motion to strike, and

3

the motion to dismiss off calendar pending resolution of the Fifth Amendment issue. *Id.* Still pending for hearing are two motions that defendants filed for clarification of the TRO that I issued on July 31, 2015; NAF's motion for an order to show cause why the defendants should not be held in contempt for alleged violations of the TRO; and the parties' disagreements arising from the assertion of defendants' Fifth Amendment rights. *See* Dkt. Nos. 58, 60, 61.

With that background, I proceed to the discovery issue.

## LEGAL STANDARD

California Code of Civil Procedure 425.16 "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). These lawsuits are also known as "Strategic Lawsuits Against Public Participation," or "SLAPPs." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Under section 425.16, a party may file an "anti-SLAPP motion" to strike "a cause of action based on an act in furtherance of [the] right to petition or free speech." *Metabolife*, 264 F.3d at 840 (internal quotations omitted). If the party prevails on the motion, it is entitled to attorneys' fees. CAL. CIV. PROC. CODE § 425.16(c)(1).

In ruling on an anti-SLAPP motion, a court must engage in a two-step process. *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the moving party must make a prima facie showing that the lawsuit arises from an act in furtherance of its First Amendment right to free speech. *Makaeff*, 715 F.3d at 261; *see also Equilon*, 29 Cal. 4th at 67. In evaluating this requirement, courts look to "what activities form the basis for each of Plaintiffs' causes of action," then "ask whether those activities are 'protected.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014). "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).

If the moving party satisfies the first inquiry, the burden shifts to the non-moving party to establish a reasonable probability that it will prevail on its claim. *Makaeff*, 715 F.3d at 261. "For a plaintiff to establish a probability of prevailing on a claim, he must satisfy a standard comparable to that used on a motion for judgment as a matter of law." *Price v. Stossel*, 620 F.3d 992, 1000

(9th Cir. 2010). This standard requires that a claim be dismissed if the plaintiff presents an insufficient legal basis, or if no reasonable jury would find in its favor. *Metabolife*, 264 F.3d at 840; *see also Price*, 620 F.3d at 1000 (an anti-SLAPP motion will be granted if the plaintiff "presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.") (internal quotations omitted).

Section 425.16(g) provides that all discovery proceedings should be stayed "upon the filing of a notice of motion made pursuant to this section." CAL. CIV. PROC. CODE § 425.16(g). "The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." *Id.*

Section 425.16 will only apply in federal court if it does not conflict with other federal rules. *Metabolife*, 264 F.3d at 845. In *Metabolife*, the court summarized the applicable law, stating that "[p]rocedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." *Id.* It found that a stay of discovery under section 425.16(g) would conflict with Federal Rule of Civil Procedure 56, which requires that the nonmoving obtain discovery of information that is "essential to its opposition. " *Id.* at 846.

At the same time, section 425.16(g) does not always conflict with the federal rules, and courts engage in a "threshold inquiry" to determine whether it should apply in each case. *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012). If an anti-SLAPP motion is "founded on purely legal arguments," then the analysis of Rules 8 and 12 applies, section 425.16(g) does not conflict with the federal rules, and discovery must be stayed pursuant to that statute. *Id.* If, by contrast, the anti-SLAPP motion involves a factual challenge, "the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Id.* A motion to strike brought under Rule 12(b)(6) may involve either purely legal arguments or a factual challenge. *See*, e.g., *Davis v. Elec. Arts Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626, at *3 (N.D. Cal. July 5, 2011). Therefore, courts must look to the anti-SLAPP motion at issue in deciding whether to apply Rule 12 or Rule 56, and whether the discovery stay of section

425.16(g) should be imposed.

## DISCUSSION

### I. A DISCOVERY STAY WOULD CONFLICT WITH MY PRIOR ORDER

When I granted NAF's motion for a TRO on August 3, I also granted NAF's motion to expedite discovery under Rule 26 so that the parties could address certain limited factual matters that are critical to this case, such as the scope of the defendants' potential First Amendment waiver.

Although there is no federal rule that gives parties a right to discovery pending a motion for preliminary injunction, a party may obtain expedited discovery if it establishes that it has "good cause" to proceed with its requested discovery. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet*, 673 F. Supp. 2d at 1067 (internal quotations omitted); *see also Facebook, Inc. v. Various, Inc.*, No. C-11-01805-SBA DMR, 2011 WL 2437433, at *2 (N.D. Cal. June 17, 2011).

Allowing the defendants to postpone discovery on this matter by filing an anti-SLAPP motion would conflict with my prior Order and with Rule 26. The anti-SLAPP motion and the motion for a preliminary injunction undoubtedly have some overlap in law and fact, and both require an inquiry into whether the NAF can establish a likelihood of success on the merits of its Complaint. I have already evaluated the merits of the NAF's Complaint in granting the TRO. I also determined that more facts are necessary to fully resolve the motion for a preliminary injunction. For the reasons discussed in this Order and at the prior hearing, discovery is merited because it is necessary to NAF's motion for a preliminary injunction. This outweighs any burden or prejudice on defendants, and satisfies the "good cause" standard for expedited discovery, as I have already ruled. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 3523405, at *2-3 (N.D. Cal. June 4, 2015) (granting limited discovery pending preliminary

6

injunction, stating that "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."); *cf. Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012) (denying discovery where "Plaintiff has ascertained the identities of the entities and the individual allegedly responsible for the conduct it seeks to enjoin and has not articulated any specific missing evidence essential for injunctive relief.").

## II. A DISCOVERY STAY WOULD CONFLICT WITH FEDERAL RULE OF CIVIL PROCEDURE 56

Besides the conflict with my prior order, the critical issue related to the defendants' motion for discovery is whether the anti-SLAPP motion may be resolved as a matter of law, or whether it raises factual issues that convert it to a Rule 56 motion. If the motion does not raise only legal issues, the automatic discovery stay of section 425.16(g) is improper because it conflicts with the Federal Rules of Civil Procedure. *See Flores v. Emerich & Fike*, No. 1:05CV0291 OWWDLB, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) ("Both *Metabolife* and *Verizon* [*Delaware, Inc. v. Covad Communications Co.*] suggest that a federal court should hesitate to hear and decide an anti-SLAPP motion to strike prior to affording a plaintiff an opportunity to amend or pursue discovery.").

### A. Federal Cases Discussing Stay of Discovery Pursuant to Section 425.16(g)

Since *Metabolife*, many district courts have addressed whether to apply the automatic stay provision of section 425.16(g) in federal cases involving an anti-SLAPP motion. In *Aeroplate Corp. v. Arch Insurance Co.,* the court described the general rule derived from *Metabolife* as follows:

> [T]he discovery-limiting provisions of section 425.16, subdivisions (f) and (g), collide with the discovery-permitting provisions of Rule 56, and therefore are not available in federal court unless either: (1) the factual basis of the case has been developed through discovery or similar prior proceedings to the extent a motion for summary judgment would be appropriate; (2) the parties agree that further discovery is not necessary; or (3) *the only issue presented by the motion is an issue of law* and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6)."

No. CVF061099AWISMS, 2006 WL 3257487, at *9 (E.D. Cal. Nov. 9, 2006) (internal citations

1  omitted) (emphasis added).  Other courts have focused on whether discovery is "essential to [the

2  plaintiff's] opposition" under Rule 56.  *See*, e.g., *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090,

3  1101 (C.D. Cal. 2004); *Price v. Stossel*, 590 F. Supp. 2d 1262, 1269 (C.D. Cal. 2008) (collecting

4  cases); *see also Flores*, 2006 WL 2536615, at *9 (applying *Metabolife* "narrowly only to

5  situations where a plaintiff asserts *prior to decision on an anti-SLAPP motion* that discovery might

6  influence the outcome of the motion to strike.")

7        In *Davis v. Elec. Arts Inc.*, the plaintiffs alleged that the defendant unlawfully used their

8  likenesses in its video game franchise.  2011 WL 2621626, at *1.  The defendant argued that its

9  anti-SLAPP motion raised only issues of law because it "identifies legal defects in the complaint

10  while accepting its factual allegations as true and does not rely on evidence outside the

11  complaint." *Id.* at *3.  The court disagreed, finding that the defendant's issues were not limited to

12  issues of law.  *Id.* at *4.  It reasoned that "in order for Plaintiffs to make their required showing at

13  the second step of the anti-SLAPP analysis, Plaintiffs must meet an *evidentiary burden, not a*

14  *pleading requirement*." *Id.* (internal quotations omitted).  It concluded that "[a]ssuming that [the

15  defendant] is able to meet its initial burden of establishing that the challenged causes of action

16  arise from protected free speech activity, the Court necessarily must engage in some factual

17  evaluation at the second step of the anti-SLAPP process in order to determine whether Plaintiffs

18  have demonstrated a probability of prevailing on their claims. " *Id.*

19        The cases cited by defendants all illustrate that district courts will only impose the

20  requirements of 425.16(g) where the issues raised in an anti-SLAPP motion are clean legal issues

21  that render discovery irrelevant to the resolution of the motion.  In *Moser v. Triarc Companies,*

22  *Inc.*, the court denied discovery where it was clear that the only issues were ones of law:  "To

23  resolve these [two] issues, the Court must read the complaint, take judicial notice of the Form S-1,

24  and interpret the relevant statutes: there is no need to consider other evidence beyond the

25  pleadings." No. 05CV1742JLSWMC, 2007 WL 3026425, at *3 (S.D. Cal. Oct. 16, 2007).  In

26  *Smith v. Payne*, the court denied discovery because it could resolve the motion on grounds of res

27  judicata.  No. C 12-01732 DMR, 2012 WL 6712041, at *5-6 (N.D. Cal. Dec. 26, 2012) *aff'd*, 594

28  F. App'x 397 (9th Cir. 2015).  In *Stutzman v. Armstrong*, the court denied a motion to compel in

deference to the district judge's decision on discovery. No. 2:13-CV-0116-MCE-KJN, 2013 WL 3992416, at *7 (E.D. Cal. Aug. 2, 2013). At the same time, it stated that "the above discussion [that discovery is not merited] necessarily assumes that defendants' motions do not present any evidentiary issues, issues of proof, or issues of disputed fact." *Id.*[1]

**B. The First Step of the Anti-SLAPP Analysis Should be Treated as a Rule 56 Motion**

In order to prevail on the anti-SLAPP motion, defendants must first establish that their actions were in furtherance of their First Amendment rights and thus protected under section 425.16.[2] I look to whether this question can be decided on purely legal grounds.

The Complaint alleges that defendants signed the Exhibitor Agreement and the Non-Disclosure Agreement, prohibiting them from making videos or other recordings at the NAF meetings and from disclosing any such information. Compl. ¶¶ 110, 135-37. This allegation raises a factual question of whether and to what extent defendants executed a valid waiver of their First Amendment rights. At the TRO hearing, I found that NAF had made a prima facie showing of such a waiver.

Unlike many cases where discovery is not necessary to determine whether a defendant's activity was protected, here it is not even clear what the defendants' protected activity is. Defendants' motion to strike does not contain even a cursory argument that their actions are "protected" under section 425.16. *See* Mot. Strike (Dkt. No. 68). If defendants waived their First Amendment rights, then at least some of their activity at issue is not protected. *See Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002) ("as the statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."). Defendants may contend that none of the activity covered by the Complaint falls within the First

---

[1] The other cases cited by the defendants in the discovery letter do not support their position. For example, in *Schwartz v. At The Cove Mgmt. Corp.*, the court granted the defendants' motion to stay discovery because "[p]laintiff agrees that further discovery is not necessary." No. 12CV3077-GPC WVG, 2013 WL 1103479, at *2 (S.D. Cal. Mar. 14, 2013).

[2] Although courts often analyze constitutional waiver in the second prong of an anti-SLAPP analysis in discussing the merits of the lawsuit, *see Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002), for the purposes of this motion I find that waiver is also relevant to determining whether defendants were engaged in protected speech to begin with. *See Davis*, 2011 WL 2621626, at *7.

Amendment waiver, or they may contend that the waiver is not valid at all. In either case, the parties must address the factual context of the conduct in dispute.

I cannot conceive of any way for these questions to be resolved as a matter of law, and defendants have not presented any in their briefing. For these reasons, a stay of discovery would conflict with Rule 56. *See Davis*, 2011 WL 2621626, at *7 ("discovery related to the issue of whether Defendant waived its First Amendment rights is essential to Plaintiffs' opposition to the anti-SLAPP motion").

**C. The Second Step of the anti-SLAPP Motion Should be Treated as a Rule 56 Motion**

Defendants argue that they will prevail on the merits of this case because the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6), and assert that their motion raises purely legal issues because it attacks the sufficiency of the pleadings and not the plaintiff's proof. Mot. Strike at 1. This argument lacks merit.

Although defendants brush aside the factual questions in this case by framing the anti-SLAPP motion as a Rule 12(b)(6) motion, the Complaint is not so readily dismissed. It describes a detailed factual scenario. Defendants are alleged to have conspired to obtain information about NAF and its members by creating a fake company, assuming false identities, and signing confidentiality agreements with the intent of breaching them. The Complaint is 60 pages long, includes 13 causes of action, and by the defendants' own admission "raises complex issues about the Court's jurisdiction, constitutional issues, and the availability of remedies." Dkt. No. 66.[3] The defendants have filed two requests to clarify the TRO and identify its scope, reflecting the difficulty in determining the scope of a potential injunction without any discovery.

I have reviewed defendants' motion to strike and motion to dismiss thoroughly. Defendants have not met their burden to establish that there is a purely legal issue that can dispose of either the anti-SLAPP motion or the motion for a preliminary injunction. The anti-SLAPP motion is riddled with factual determinations that must be resolved. For example:

- Defendants assert that NAF's promissory fraud claim must be dismissed because

---

[3] This document has since been withdrawn, but the admission remains.

10

"it has re-affirmed the purported agreements . . . rather than rescinding them." Mot. Strike at 2. In support, it cites to a case that ruled on summary judgment. *See Goldman v. Seawind Grp. Holdings Pty Ltd*, No. 13-CV-01759-SI, 2015 WL 433507, at *1 (N.D. Cal. Feb. 2, 2015). The determination of whether NAF re-affirmed or rescinded the agreements is a factual one. Defendants also assert that this claim fails because any misrepresentations could not have proximately caused the harm sustained.[4] Mot. Strike at 3. Again, this is a factual determination, and one that cannot be made at the pleading stage. Finally, in moving to dismiss the third and fourth causes of action, defendants assert that "where a plaintiff has not brought a defamation claim, it cannot seek damages from publication alone." Mot. Strike at 3, 5. But the damages in this case are *not* limited to those from publication (for example, they include those arising from the breach of the confidentiality agreements), and thus cannot be dismissed as a matter of law. *See* Compl. ¶¶ 87-93, 123.

- In moving to dismiss the fourth cause of action, defendants assert that NAF has not adequately pleaded fraud under Rule 9(b). Mot. Strike at 4. However, considering the detailed allegations of the Complaint, it is clear that any argument that NAF did not adequately allege fraud amounts to a factual attack, or is baseless. The Complaint includes pages of facts that describe defendants' alleged fraudulent scheme, and provides photos of defendants' false drivers' licenses and appearance at the NAF meeting. *See* Compl. ¶¶ 64, 67.

- In moving to dismiss NAF's ninth cause of action for violations of California's Unfair Competition Law, defendants state that the Complaint "does not plausibly allege any unlawful conduct by Defendants." Mot. Strike at 16. For the same reasons as above, this is flatly contradicted by the Complaint. Defendants' argument amounts to a factual attack to put NAF to its proof.

---

[4] Defendants do not actually argue that the Complaint does not *plead* proximate causation, *see* Compl. ¶¶ 123-24, but suggest that there are not enough facts to sustain the cause of action.

11

- In moving to dismiss NAF's tenth cause of action for unlawful recording of confidential conversations, the motion to strike challenges what is considered a "confidential conversation," the definition of "other persons," and discusses "reasonable" expectations of being overheard. *See* Mot. Strike at 18. It admits that the Complaint identifies specific conversations that were recorded, but argues that "it provides none of the details necessary to assess whether the conversation participants had an objectively reasonable expectation that the conversation [was] not being overheard or recorded." *Id.* (internal quotations omitted). Once again, defendants mischaracterize the nature of a motion to dismiss. These determinations relating to the reasonableness of expectations and what is considered "confidential" are questions of fact that should not be resolved by a 12(b)(6) motion.
- Defendants make similar "reasonableness" arguments in moving to dismiss NAF's eleventh and twelfth causes of action. *See id.* at 21-23.

As the above arguments indicate, the motion to strike frequently posits that the Complaint lacks certain factual details that are required to state a claim. However, few of the cases cited to support this position held that such facts are required at the pleading stage. Instead, most of the cases that defendants rely on were decided at summary judgment or trial, after facts had been developed through discovery. *See*, e.g., *Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1368 (9th Cir. 1981) (summary judgment); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 510 (4th Cir. 1999) (post-trial); *Goldman*, 2015 WL 433507, at *1 (summary judgment); *Vera v. O'Keefe*, No. 10-CV-1422-L MDD, 2012 WL 3263930, at *1 (S.D. Cal. Aug. 9, 2012) (summary judgment); *Turnbull v. Am. Broad. Companies*, No. CV 03-3554 SJO(FMOX), 2005 WL 6054964, at *1 (C.D. Cal. Mar. 7, 2005) (post-trial); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 278 (2009) (summary judgment); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 771, 41 P.3d 575 (2002) (trial); *Cnty. of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1273 (1999) (trial); *Malpas v. State*, 695 A.2d 588, 590 (1997) (post-trial). Defendants improperly seek to impose a factual standard at the pleading stage that is applicable at a later stage of the proceedings, *after* discovery has been conducted. Their argument that I should treat their motion as a Rule

12(b)(6) motion instead of a Rule 56 motion is legally unsound.

Second, a substantial portion of the anti-SLAPP motion is devoted to interpreting the scope of the confidentiality agreements. While contract interpretation is a matter of law, the court may look to extrinsic evidence in resolving ambiguities in the contract. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979). Even if there are ultimately no ambiguities in the contract, the court may look at extrinsic evidence in determining the threshold question of whether or not the contract contains an ambiguity. *Id.* That some causes of action revolve around contract interpretation does not mean that discovery of evidence that helps explain the terms of the agreement should be prohibited. *See Marzec v. California Pub. Employees Ret. Sys.*, 236 Cal. App. 4th 889, 909 (2015) ("So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement . . . to survive demurrer, plaintiffs need only set forth a reasonable interpretation of their . . . contracts") (internal quotations omitted); *see also Lee v. Gen. Nutrition Cos., Inc.*, No. CV 00-13550LGB(AJWX), 2001 WL 34032651, at *12 (C.D. Cal. Nov. 26, 2001) (denying motion to dismiss where defendants raised "issues of contract interpretation and other highly factual issues that are inappropriate for resolution in a motion to dismiss."); *Intel Corp. v. Via Technologies, Inc.*, No. C 99-03062 WHA, 2001 WL 777085, at *6 (N.D. Cal. Mar. 20, 2001).

Although defendants argue that the Complaint does not contain sufficient information to give rise to a plausible inference of breach, this argument is unpersuasive to the point of being frivolous. The Complaint includes detailed factual allegations (that defendants have not yet disputed) that they obtained access to NAF meetings under false pretenses and that they have begun a campaign to expose what they believe to be NAF's illegal activities. *See* Compl. ¶¶ 137-39. This is sufficient to permit an inference under Rule 12(b)(6) that defendants breached the confidentiality agreements, regardless of what the scope of the agreements is ultimately determined to be. No matter how I interpret the agreements, NAF alleges that the defendants breached them. Any further inquiry into these issues would transform the motion into a motion for summary judgment.

Although NAF lacks specific information about what the defendants recorded – that is one reason why discovery is necessary – one of its allegations is that certain defendants wore scarves around their necks to conceal recording equipment, including at formal events.  Compl. ¶¶ 67-71.  Even if I were to accept all of defendants' arguments regarding the interpretation of the confidentiality agreements, the factual question remains whether the defendants obtained information in violation of these agreements, such as by concealing recording equipment at the formal events, and whether disclosure of that information would constitute a breach.  In addition, several of defendants' alternative arguments involve factual determinations, such as whether the information that defendants disclosed or will disclose is "confidential" or whether it will disclose "criminal activity."  *See* Mot. Strike at 7.

Defendants failed to identify even one discrete legal issue that would resolve any of the causes of action in their favor, let alone meet their burden to show that the entire Complaint should be dismissed on purely legal grounds.  It is improper to address the anti-SLAPP motion as a Rule 12(b)(6) motion.

### D. Discovery is Essential to Allow NAF to Respond to Defendants' Motion

A stay of discovery would also conflict with Rule 56 because discovery is essential to NAF's opposition to defendants' anti-SLAPP motion.  The motion makes clear that the crux of the defense in this case involves the facts that NAF lacks or has not yet developed, including what information defendants obtained, where and how they obtained it, the circumstances in which the confidentiality agreements were signed, the reasonableness of various expectations, and the intent of both parties and of third parties.

I am also persuaded by the factual questions NAF points to in the discovery letter.  *See* Discovery Letter at 4-5.  What conduct of defendants, if any, was protected by the First Amendment?  Which the breaches of contract, if any, led to disclosures of other confidential information?  Without the discovery ordered on August 3, 2015, and given defendants' assertion of their Fifth Amendment right not to incriminate themselves, it is not obvious how defendants can meet their burden under the first step of the anti-SLAPP analysis.  If they can, it is clear that discovery is necessary for the second step, and for the analysis of NAF's motion for a preliminary

injunction.

In sum, this case presents an especially compelling case for allowing discovery. Defendants' motion is DENIED.

## CONCLUSION

For the above reasons, defendants' motion to stay discovery pursuant to California Code of Civil Procedure section 425.16(g) is DENIED.

**IT IS SO ORDERED**.

Dated: August 27, 2015



WILLIAM H. ORRICK
United States District Judge