1  LINDA E. SHOSTAK (CA SBN 64599)
   LShostak@mofo.com
2  DEREK F. FORAN (CA SBN 224569)
   DForan@mofo.com
3  NICHOLAS S. NAPOLITAN (CA SBN 251762)
   NNapolitan@mofo.com
4  CHRISTOPHER L. ROBINSON (CA SBN 260778)
   ChristopherRobinson@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California 94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  Attorneys for Plaintiff
   NATIONAL ABORTION FEDERATION (NAF)

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  NATIONAL ABORTION FEDERATION (NAF), | Case No. 3:15-cv-3522-WHO |
| 14  Plaintiff, | Judge: Hon. William H. Orrick III |
| 15  v. | **NATIONAL ABORTION FEDERATION (NAF)'S OPPOSITION TO THE CMP DEFENDANTS' OPENING MEMORANDUM REGARDING INVOCATION OF FIFTH AMENDMENT PRIVILEGES BY THE ENTITY DEFENDANTS [DKT. NO. 103]** |
| 16  THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES LLC, | |
| 17  DAVID DALEIDEN (aka "ROBERT SARKIS"), and TROY NEWMAN, | |
| 18  Defendants. | |
| 19 | |
| 20 | Hearing Date: September 18, 2015 |
| 21 | Hearing Time: 10 a.m. Location: Courtroom 2, Floor 17 |
| 22 | Date Action Filed: July 31, 2015 |
| 23 | Trial Date: |
| 24 | |

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................... 2

    A.      CMP and Biomax Have No Fifth Amendment Rights........................................... 2

    B.      NAF's Alter Ego Allegations Do Not Give CMP and Biomax the Right to
        Assert the Fifth Amendment ................................................................................... 5

    C.      CMP and Biomax Cannot Establish They Fall Within a Non-Existent
        Exception to the Collective Entity Rule................................................................. 8

    D.      The Facts of This Case Do No Support Overruling Braswell............................... 10

III.    CONCLUSION .............................................................................................................. 12

NAF's Opposition to CMP Defendants' Motion re Invocation of Fifth Amendment by Entities
Case No. 3:15-cv-3522
sf-3573130

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988)..................................................................................................... 8

*Amato v. United States*,
    450 F.3d 46 (1st Cir. 2006) ....................................................................................................... 9

*Bellis v. United States*,
    417 U.S. 85 (1974) ............................................................................................................. 2, 12

*Best Western Int'l Inc. v. I-70 Hotel Corp.*,
    No. CV 11-1281-PHX-FJM, 2012 U.S. Dist. LEXIS 100196 (D. Ariz. July 19, 2012) .......... 8

*Braswell v. United States*,
    487 U.S. 99 (1988) ........................................................................................................... passim

*C.E. Harris, Inc. v. IBEW Local 595*,
    No. 13-cv-05207-WHO, 2013 U.S. Dist. LEXIS 170472 (N.D. Cal. Dec. 3, 2013)........... 2, 5

*CFTC v. Noble Metals Int'l*,
    67 F.3d 766 (9th Cir. 1995).................................................................................................... 11

*Coleman v. Estes Express Lines, Inc.*,
    730 F. Supp. 2d 1141 (C.D. Cal. 2010) .................................................................................. 7

*Communist Party v. 522 Valencia, Inc.*,
    35 Cal. App. 4th 980 (1995) ............................................................................................... 7, 8

*Digital Equip. Corp. v. Currie Enter.*,
    142 F.R.D. 8 (D. Mass. 1991) ................................................................................................ 6

*Disenos Artisticos E. Industriales, S.A. v. Costco Wholesale Corp.*,
    97 F.3d 377 (9th Cir. 1996).................................................................................................... 7

*Doe v. Glanzer*,
    No. 92-30275, 1993 U.S. App. Lexis 27089 (9th Cir. Oct. 14, 1993) ..................................... 2

*Drier v. United States*,
    221 U.S. 394 (1911) .............................................................................................................. 12

*Expert Janitorial v. Williams*,
    No. 3:09-CV-283, 2010 U.S. Dist. LEXIS 73104 (E.D. Tenn. July 19, 2010)........................ 9

*Hale v. Henkel*,
    201 U.S. 43 (1906) ................................................................................................................ 12

NAF'S OPPOSITION TO CMP DEFENDANTS' MOTION RE INVOCATION OF FIFTH AMENDMENT BY ENTITIES
CASE NO. 3:15-CV-3522
sf-3573130

ii

*In re Agan,*
    498 F. Supp. 493 (N.D. Ga. 1980) ........................................................................ 6

*In re Grand Jury Empaneled on May 9, 2014,*
    786 F.3d 255 (3d Cir. 2015) ................................................................ 6, 9, 10, 12

*In re Grand Jury Impaneled January 21, 1975,*
    529 F.2d 543 (3d Cir. 1976) ................................................................................ 8

*In re Grand Jury Subpoena (John Doe, Inc.),*
    991 F. Supp. 2d 968 (E.D. Mich. 2014) .............................................................. 9

*In re Grand Jury Subpoena,*
    460 F. Supp. 150 (W.D. Mo. 1978) ..................................................................... 6

*In re Grand Jury Subpoena Issued on June 18, 2009,*
    593 F.3d 155 (2d Cir. 2010) ..................................................................... 9, 10, 11

*IRS Summonses Served v. United States,*
    589 F. Supp. 568 (S.D.N.Y. 1984) ...................................................................... 6

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
    676 F.3d 83 (2d Cir. 2012) ................................................................................ 11

*Navel Orange Admin. Comm. v. Exeter Orange Co.,*
    722 F.2d 449 (9th Cir. 1983) ............................................................................. 12

*Shields v. Tracy,*
    No. CIV-S-03-1614 DFL-PAN, 2005 U.S. Dist. LEXIS 49157 (E.D. Cal. June 21,
    2005) ................................................................................................................... 8

*United States SEC v. Narvett,*
    16 F. Supp. 3d 979 (E.D. Wis. 2014) ................................................................. 9

*United States v. Cuccia,*
    No. Misc. Civ. 85-33E, 1986 WL 7227 (W.D.N.Y. June 24, 1986) ...................... 6

*United States v. Doe,*
    465 U.S. 605 (1984) .......................................................................................... 11

*United States v. Kordel,*
    397 U.S. 1 (1970) .............................................................................................. 11

*United States v. Lu,*
    248 F. App'x 806 (9th Cir. 2007) ................................................................. 3, 5, 9

*United States v. Maxey & Co., P.C.,*
    956 F. Supp. 823 (N.D. Ind. 1997) ................................................................. 5, 9

*United States v. Mesa-Farias*,
   9 F.3d 1554 (9th Cir. 1993) ........................................................................ 2

*United States v. Silverman*,
   359 F. Supp. 1113 (N.D. Ill. 1973) ........................................................... 6

*United States v. Sourapas*,
   515 F.2d 295 (9th Cir. 1975) ...................................................................... 2

*United States v. Stone*,
   976 F.2d 909 (4th Cir. 1992) ...................................................................... 9

*United States v. White*,
   322 U.S. 694 (1944) ....................................................................... 2, 3, 12

*Webber v. Inland Empire Invs., Inc.*,
   74 Cal. App. 4th 884 (1999) ...................................................................... 7

*Wilson v. United States*,
   221 U.S. 361 (1911) .................................................................................. 12

STATUTES

Cal. Corp. Code § 5210 ................................................................................. 4

Cal. Corp. Code § 5250 ................................................................................. 4

Cal. Corp. Code § 6334 ................................................................................. 4

Cal. Corp. Code § 17701.04(a) ..................................................................... 5

Cal. Corp. Code § 17704.10(b)(1) ................................................................ 5

Cal. Corp. Code § 17701.13(d)(7) ................................................................ 5

## I.   INTRODUCTION

For months now, while simultaneously claiming to have followed "all applicable laws" in their smear campaign against abortion providers, Defendants in this case have attempted to obstruct discovery into their conduct by any and all means necessary.  They have inundated the Court with multiple motions designed to erode the Court's TRO, and they have claimed based on a 67-page anti-SLAPP motion that all discovery was stayed in this matter, a claim that the Court later found was meritless.  Having finally been ordered to produce documents, provide interrogatory responses, and to sit for deposition, all Defendants immediately stated their intent to assert the Fifth Amendment, including the two corporate defendants — The Center for Medical Progress ("CMP") and Biomax Procurement Services, LLC. ("Biomax") (collectively the "Corporate Defendants").  At the same time, the very same Corporate Defendants have stated that they are "eager" to disclose information stolen from NAF to "government officials" of their choosing, without being compelled to do so, and without Court oversight or NAF input, and in violation of the confidentiality agreements they knowingly and voluntarily signed.

The Corporate Defendants' latest procedural gambit to avoid providing discovery in this matter is frivolous, and the Court should reject it out of hand.  The law is clear that corporations have no Fifth Amendment rights.  Here, Daleiden and Newman chose to set up CMP and Biomax as a nonprofit corporation and a limited liability company under California law, and they have substantially benefited from that decision.  Not only were CMP and Biomax the means through which they perpetrated their fraud, CMP continues to falsely claim that it is a nonprofit, continues to enjoy favorable tax treatment with the IRS, and continues to solicit donations as a nonprofit corporation under California law.  Having (falsely) obtained the benefits of these business structures, the law does not allow Daleiden and Newman to disregard the creation of the Corporate Defendants because it is now convenient for them to do so.  The supposed exceptions to the general rule that corporations have no Fifth Amendment rights that the Corporate Defendants rely on — based on NAF's alter ego allegations and a 28-year old footnote in a Supreme Court decision — have been rejected by every court to have ever considered them.  The Corporate Defendants are quite literally asking this Court to become the first in the land to

NAF'S OPPOSITION TO CMP DEFENDANTS' MOTION RE INVOCATION OF FIFTH AMENDMENT BY ENTITIES
CASE NO. 3:15-CV-3522-WHO
sf-3573130

1

1    recognize the right of a corporation to assert the Fifth Amendment.

2            The Court should decline to do so, and order the discovery NAF is entitled to.[1]

3    **II.    ARGUMENT**

4            The Corporate Defendants make just three arguments for why the Court should allow

5    them to assert a Fifth Amendment privilege: (1) NAF's alter ego allegation constitutes a binding

6    judicial admission that allows Daleiden and Newman to disregard their own corporate form; (2)

7    the Corporate Defendants fall within a supposed "exception" to the general rule against

8    corporations asserting the Fifth Amendment noted in Footnote 11 of the Supreme Court's

9    *Braswell v. United States* decision; and (3) if given the opportunity, the Supreme Court would

10   overrule *Braswell*.  These arguments are meritless.

11           **A.    CMP and Biomax Have No Fifth Amendment Rights.**

12           First, no Fifth Amendment rights are implicated here.  CMP and Biomax are both artificial

13   entities, and "it is well established that such artificial entities are not protected by the Fifth

14   Amendment."  *C.E. Harris, Inc. v. IBEW Local 595*, No. 13-cv-05207-WHO, 2013 U.S. Dist.

15   LEXIS 170472, at *17 (N.D. Cal. Dec. 3, 2013) (Orrick, J.) (quoting *Braswell v. United States*,

16   487 U.S. 99, 102 (1988)).  "Since the privilege against self-incrimination is a purely personal one,

17   it cannot be utilized by or on behalf of any organization, such as a corporation."  *United States v.*

18   *White*, 322 U.S. 694, 698 (1944); *Bellis v. United States*, 417 U.S. 85, 100 (1974) ("It is well

19   settled that no privilege can be claimed by the custodian of corporate records, regardless of how

20   small the corporation may be."); *United States v. Sourapas*, 515 F.2d 295, 299 (9th Cir. 1975) ("It

21   is firmly established that a corporation has no fifth amendment protection against self-

22   incrimination and that neither the corporation, a corporate officer or any other person can prevent

23   _____

24   [1] While counsel for Daleiden and Newman have represented to the Court that they will assert
     their Fifth Amendment rights, NAF still needs depositions and responses to its document requests

25   and interrogatories from these defendants, as well as from the Corporate Defendants.  This is so
     because "the only way the privilege can be asserted is in a question-by-question" or document-

26   by-document basis. *Doe v. Glanzer*, No. 92-30275, 1993 U.S. App. Lexis 27089, at *4 (9th Cir.
     Oct. 14, 1993); *see also United States v. Mesa-Farias*, 9 F.3d 1554 (9th Cir. 1993) (holding lower

27   court's acceptance of blanket Fifth Amendment privilege invocation "erroneous as a matter of
     law").  As no defendant — corporate or individual — has yet to actually invoke their Fifth

28   Amendment rights, the court should reaffirm its past orders and order all Defendants to provide
     responses to NAF's discovery requests.

the production for examination of relevant corporate records.").

"This doctrine — known as the collective entity rule — has a lengthy and distinguished pedigree." *Braswell*, 487 U.S. at 104 (summarizing over a century of Supreme Court precedent embracing this rule). The rule "arises out of the inherent and necessary power of the federal and state governments to enforce their laws." *White*, 322 U.S. at 700-701. "Were the cloak of privilege to be thrown down around [impersonal corporate] records and documents, effective enforcement of many federal and state laws would be impossible." *Id*.

The Corporate Defendants are unquestionably "collective entities" within the meaning of the foregoing authorities. The Ninth Circuit has explained that "[t]he collective entity doctrine focuses on the formality of the organizational structure, members' ability to access records, and the agent's representative role." *United States v. Lu*, 248 F. App'x 806, 808 (9th Cir. 2007) (unpublished).[2] Here, CMP is incorporated as a nonprofit public benefit corporation under California's Nonprofit Corporation Law. (Robinson Decl. Ex. 1 at 4.[3]) CMP filed Articles of Incorporation with the California Secretary of State on March 7, 2013. (*Id*.) Similarly, Biomax is incorporated as a California limited liability company. (*See id*. Ex. 9.) Biomax filed Articles of Organization with the California Secretary of State on October 11, 2013. (*See id*.) Both Corporate Defendants are currently listed as "active" on the California Secretary of State's business entity website. (*Id*. Exs. 2, 9.) At all times, these entities held themselves out as legitimate companies, separate and apart from their officers and directors.

Moreover, CMP has benefited substantially by choosing to incorporate under California law as a nonprofit corporation. In Bylaws filed with the California Office of the Attorney General's Registry of Charitable Trusts, CMP represented (falsely) that it was a "nonprofit" and "nonpartisan" organization, and that no substantial part of its activities would consist of "carrying

---

[2] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of the Ninth Circuit. *See* Ninth Circuit Rule 36-3.

[3] Declaration of Christopher L. Robinson ISO NAF's Opposition to the CMP Defendants' Opening Memorandum Regarding Invocation of Fifth Amendment Privileges by the Entity Defendants ("Robinson Decl.").

NAF'S OPPOSITION TO CMP DEFENDANTS' MOTION RE INVOCATION OF FIFTH AMENDMENT BY ENTITIES
CASE NO. 3:15-CV-3522
sf-3573130

3

1   on propaganda, or otherwise attempting to influence legislation." (*Id*. Ex. 1 at 6.)  And in April

2   2013, utilizing its (false) status as a "nonprofit" and "nonpartisan" organization, CMP applied for

3   tax-exempt status under section 501(c)(3) of the Internal Revenue Code.  (Robinson Decl. Ex. 3.)

4   The IRS granted CMP tax-exempt status in December 2013.  (*Id*. Ex. 4.)

5           And on CMP's corporate website, CMP solicits tax-deductible contributions from the

6   public, where it described itself until recently as "a non-profit organization dedicated to informing

7   and educating the lay public and the scientific community about the latest advances in

8   regenerative medicine, cell-based therapies, and related disciplines." (*Id*. Exs. 5-6.)  After July

9   2015 (when CMP launched the first of its misleading videos in its smear campaign against

10  physicians), CMP revised its corporate description to assert it is "a group of citizen journalists

11  dedicated to monitoring and reporting on medical ethics and advances." (*Id*. Ex. 7.)  To this day,

12  ***CMP continues to abuse its status as a nonprofit corporation by soliciting tax-deductible***

13  ***contributions***.  (*Id*. Ex. 8.)

14          CMP's corporate existence, however, also came with certain corporate responsibilities.

15  To obtain its status as a nonprofit corporation, CMP granted certain absolute duties of inspection

16  to the State and to CMP's members.  Therefore, CMP is "subject at all times to examination by

17  the Attorney General, on behalf of the state, to ascertain the condition of its affairs and to what

18  extent, if at all, it fails to comply with trusts which it has assumed or has departed from the

19  purposes for which it is formed." Cal. Corp. Code § 5250.  CMP's directors also "have the

20  absolute right at any reasonable time to inspect and copy ***all books, records and documents of***

21  ***every kind*** and to inspect the physical properties of the corporation of which such person is a

22  director." Cal. Corp. Code § 6334 (emphasis added).)  CMP has at least three corporate directors:

23  President David Daleiden, Chief Financial Officer Albin Rhomberg, and Secretary Troy

24  Newman.  (Robinson Decl. Ex. 1 at 2.)  Under California law, CMP's directors manage and

25  exercise all corporate powers in a representative capacity on behalf of the corporation.  *See* Cal.

26  Corp. Code § 5210.  In addition, because CMP — not the individual owners — owns all

27  "copyrights for publications, videos, and other media produced by the Center" (Robinson Decl.

28  Ex. 5 at 32), both Daleiden and Newman hold all covert videotapes they obtained during the

1    course of their employment at CMP in a representative (not a personal) capacity.

2          Similarly, Daleiden and Newman chose to incorporate Biomax as a limited liability

3    company (LLC) under California law.  California law provides that "[a] limited liability

4    company" like Biomax "is an entity distinct from its members."  Cal. Corp. Code § 17701.04(a).

5    California law also provides for a right of inspection by LLC members to the "books and records"

6    of the LLC, along with other documents required to be maintained by the LLC.  *See, e.g.*,

7    §§ 17704.10(b)(1); 17701.13(d)(7).  As Biomax's Vice President of Operations, Daleiden (as

8    "Robert Sarkis") acted in a representative role for the company.  (Dkt. 3-17 at 2.)

9          On these facts, there is zero question that CMP and Biomax are covered by the collective

10   entity rule.  Where, as here, an individual has "chosen to organize her businesses as [a collective

11   entity] and obtain the benefits of that business structure, [she] cannot . . . disregard the creation of

12   these separate entities to obtain Fifth Amendment protection for her companies' records."  *Lu*,

13   248 F. App'x at 808.  An individual cannot "have his cake and eat it too":  after making a

14   "conscious decision to incorporate . . . rather than operate it as a sole proprietorship," an

15   individual must "accept the limitations of his personal Fifth Amendment privilege against self-

16   incrimination in light of his capacity as the corporate custodian."  *United States v. Maxey & Co.,*

17   *P.C.*, 956 F. Supp. 823, 829 (N.D. Ind. 1997).  "Having invoked the benefits of incorporation,

18   [CMP and Biomax] cannot now use [their corporate existence] to shield [themselves]" from the

19   consequences of their fraud.  *C.E. Harris, Inc.*, 2013 U.S. Dist. LEXIS 170472, at *18 (Orrick, J.)

20          **B.      NAF's Alter Ego Allegations Do Not Give CMP and Biomax the Right to**
21                  **Assert the Fifth Amendment.**

22          The Corporate Defendants concede, as they must, that "artificial entities such as

23   corporations cannot invoke the Fifth Amendment's testimonial privilege."  (Dkt. 103 at 2

24   (quoting *Braswell*, 487 U.S. at 104-05).)  Rather, their main argument is that, because NAF has

25   alleged that CMP and Biomax are alter egos of each other and of the individual defendants, and

26   because these allegations supposedly "constitute judicial admissions that conclusively bind

27   NAF," (Dkt. 103 at 3), the Corporate Defendants are entitled to assert the Fifth Amendment

28   privilege against self-incrimination in this case.

NAF's Opposition to CMP Defendants' Motion re Invocation of Fifth Amendment by Entities
Case No. 3:15-cv-3522
sf-3573130

5

1    **First**, this theory has been rejected by every court to have ever considered it.  "There is no

2    alter ego exception to the rule that no Fifth Amendment privilege exists for corporate records."

3    *IRS Summonses Served v. United States*, 589 F. Supp. 568, 575 (S.D.N.Y. 1984).  There are

4    many, many cases on this point, all of which reject the Corporate Defendants' argument.  *See id*;

5    *see also In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 259 (3d Cir. 2015) (denying

6    Fifth Amendment privilege to corporation, while rejecting argument "that, as a sole practitioner,

7    the Corporation is merely his alter ego" because "the [Supreme] Court [has] emphasized that the

8    size of the organization [is] immaterial"); *Digital Equip. Corp. v. Currie Enter.*, 142 F.R.D. 8, 16

9    (D. Mass. 1991) (alter ego corporation had no Fifth Amendment privilege); *United States v.*

10   *Cuccia*, No. Misc. Civ. 85-33E, 1986 WL 7227, at *2 (W.D.N.Y. June 24, 1986) ("Whether the

11   corporation is or is not his alter ego, the point is that he chose to utilize this particular business

12   form and device which carries with it legal ramifications quite different from those pertaining to a

13   sole proprietorship."); *In re Agan*, 498 F. Supp. 493, 494-95 (N.D. Ga. 1980) ("Production of

14   corporate records may be compelled from an officer even if he is the sole shareholder or alter ego

15   of the corporation."); *United States v. Silverman*, 359 F. Supp. 1113, 1114 (N.D. Ill. 1973) ("It is

16   well settled that the privilege against self-incrimination cannot be invoked in order to prevent the

17   disclosure of corporate records which might incriminate a shareholder, even when the corporation

18   constitutes a mere alter ego of the owner."); *In re Grand Jury Subpoena*, 460 F. Supp. 150, 151

19   (W.D. Mo. 1978) ("[A] corporate officer cannot use the privilege against self-incrimination to

20   withhold corporate records because their contents may tend to incriminate him personally, even

21   though the corporate official may be the sole owner or Alter ego of the corporation.") (internal

22   citations omitted).

23       The Corporate Defendants do not even mention this long line of cases, much less attempt

24   to distinguish them.

25       **Second**, in claiming a right to use NAF's alter ego allegations offensively in order to

26   shield their illegal conduct from scrutiny, the Corporate Defendants fundamentally misconstrue

27   the whole point of the alter ego doctrine.  Courts have held that the alter ego doctrine "has no

28   application where, as here, a ***defendant*** seeks to disregard its corporate structure ***for its own***

1   ***benefit***."  *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1152-53 (C.D. Cal. 2010)

2   (emphases added).  As the Ninth Circuit has explained, "[g]enerally, a corporate veil can be

3   pierced only by an adversary of the corporation, not by the corporation itself for its own benefit"

4   because "a corporation is not entitled to establish and use its . . . separate legal existence for some

5   purposes, yet have their separate corporate existence disregarded for its own benefit against third

6   parties."  *Disenos Artisticos E. Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380

7   (9th Cir. 1996).  "This is the familiar sword/shield analogy," *Coleman*, 730 F. Supp. 2d at 1153,

8   pursuant to which "alter ego is used to prevent a corporation from using its statutory separate

9   corporate form as a shield from liability only where to recognize its corporate status would defeat

10  the rights and equities of third parties."  *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th

11  980, 994 (1995).  It is emphatically "***not*** a doctrine that allows the persons who actually control

12  the corporation to disregard the corporate form."  *Id.* (emphasis added).

13        Thus, because "there must be some equitable purpose which will be served by ignoring

14  the corporate form," defendants are not permitted "to apply the alter ego doctrine as a sword to

15  preclude liability."  *Webber v. Inland Empire Invs., Inc.*, 74 Cal. App. 4th 884, 901 (1999).  To

16  the contrary, they are estopped from denying the separate existence of CMP and Biomax:

17  "[P]ersons who themselves control a corporation, who have used the corporate form of doing

18  business for their benefit, who have dealt with and treated the corporation as a separate entity, or

19  who have otherwise by their actions expressly or impliedly recognized its corporate existence,

20  may be estopped to deny the corporation's separate legal existence."  *Id.* (collecting cases);

21  *Coleman*, 730 F. Supp. 2d at 1153 ("Defendants cannot now cast aside their chosen corporate

22  structure in order to gain a significant . . . benefit . . . .  Having done business as separate entities,

23  Defendants must assume the burdens thereof as well as the privileges.") (quotation omitted).

24        Here, as explained above, Daleiden and Newman have benefited substantially in setting

25  up CMP and Biomax as a nonprofit corporation and limited liability company under California

26  law.  Not only were these entities the means pursuant to which a massive illegal smear campaign

27  was perpetrated, CMP continues to falsely claim that it is a nonprofit public benefit corporation,

28  continues to falsely claim tax exempt status with the IRS, and to this day continues to solicit tax-

1    deductible donations for its illegal activities.  (*See supra* Section II.A.)  Under the circumstances,

2    there is no question that the Corporate Defendants are "estopped to deny the[ir] separate legal

3    existence."  *Communist Party*, 35 Cal. App. 4th at 994.  The Corporate Defendants' argument to

4    the contrary would turn fundamental, well-settled legal principles on their head.

5        **<u>Third</u>**, while the issue is irrelevant in light of the foregoing, the Corporate Defendants

6    have seriously misstated the law regarding "binding" judicial admissions.   (Dkt. 103 at 2-4.)

7    Contrary to Defendants' argument, "judicial admissions are limited to matters of fact."  *Shields v.*

8    *Tracy*, No. CIV-S-03-1614 DFL-PAN, 2005 U.S. Dist. LEXIS 49157, at *29 n.2 (E.D. Cal. June

9    21, 2005); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)

10   ("***Factual assertions*** in pleadings and pretrial orders, unless amended, are considered judicial

11   admissions conclusively binding on the party who made them.") (emphasis added).  It is black-

12   letter law that alter ego allegations are legal in nature, not factual.  *See In re Grand Jury*

13   *Impaneled January 21, 1975*, 529 F.2d 543, 547 (3d Cir. 1976) (testimony establishing

14   partnership was "alter ego" does not prevent court from applying collective entity rule because

15   "testimony to that effect reflects ***only [a] legal conclusion***") (emphasis added); *see also Best*

16   *Western Int'l Inc. v. I-70 Hotel Corp.*, No. CV 11-1281-PHX-FJM, 2012 U.S. Dist. LEXIS

17   100196, at *13 (D. Ariz. July 19, 2012) ("Stating a corporation is an alter ego, however, ***is a legal***

18   ***conclusion*** rather than a factual allegation.") (emphasis added).

19       Accordingly, NAF's alter ego allegation does not constitute a binding "judicial

20   admission," as Defendants claim.  The argument is a red herring.

21       **C.    CMP and Biomax Cannot Establish They Fall Within a Non-Existent**
         **Exception to the Collective Entity Rule.**
22
         The Corporate Defendants' second argument is that they fall within a supposed exception
23
     — or, more accurately, an open "question" — to the collective entity rule that the Supreme Court
24
     did not decide in a *Braswell* footnote.  (Dkt. 103 at 4-6.)  Specifically, in Footnote 11 in *Braswell*
25
     the Supreme Court said the following:
26
27               We leave open the question whether the agency rationale supports
                 compelling a custodian to produce corporate records when the
28               custodian is able to establish, by showing for example that he is the
                 sole employee and officer of the corporation, that the jury would

inevitably conclude that he produced the records.

*Braswell*, 487 U.S. at 118 n.11 (emphasis added).  The  Corporate Defendants argue that the Court should apply this "exception" here.

**First**, every court in the 28 years since *Braswell* was decided has rejected the argument that the question posed in *Braswell* Footnote 11 created an exception to the collective entity rule.  *See Lu*, 248 F. App'x at  808 (unpublished) (rejecting *Braswell* Footnote 11 as applied to single-employee LLC); *see also Amato v. United States*, 450 F.3d 46, 52 (1st Cir. 2006) ("*Braswell* did not alter the application of the collective-entity doctrine in this circuit."); *In re Grand Jury Subpoena Issued on June 18, 2009*, 593 F.3d 155, 158-159 (2d Cir. 2010) ("The Supreme Court explicitly withheld decision on the question of whether an actual one-person corporation could resist a subpoena on Fifth Amendment grounds.  This non-decision does not call into question our categorical finding that '[t]here simply is no situation' in which a corporation can avail itself of the Fifth Amendment privilege."); *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 261 (3d Cir. 2015) ("[T]his footnote in no way detracts from [*Braswell's*] holding that a custodian may not resist a subpoena for corporate records on the ground that the act of production might incriminate him."); *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992) ("[T]he district court correctly answered the question left open in *Braswell*" that a "sole shareholder, director, officer, and employee" has no Fifth Amendment privilege.).  The cases rejecting Defendants' argument based on Footnote 11 are simply too numerous to discuss in any depth.[4]

---

[4] *See also In re Grand Jury Subpoena (John Doe, Inc.)*, 991 F. Supp. 2d 968, 974 (E.D. Mich. 2014) ("Although the Supreme Court left this question open, no lower court has recognized an exception that would permit a custodian of a one-person corporation to claim a Fifth Amendment privilege to resist a subpoena for corporate documents."); *United States SEC v. Narvett*, 16 F. Supp. 3d 979, 981 (E.D. Wis. 2014) ("Narvett does not, however, cite to any court that has extended the act-of-production doctrine as he suggests in the more than 25 years since *Braswell* was decided.  Indeed, the argument has been rejected by every court that has addressed it."); *Expert Janitorial v. Williams*, No. 3:09-CV-283, 2010 U.S. Dist. LEXIS 73104, at *12 (E.D. Tenn. July 19, 2010) ("[T]he Court finds the decision [in *United States v. Lu*, 248 F. App'x 806 (9th Cir. 2007)] to be well-reasoned and finds that the same reasoning is applicable in the instant case."); *United States v. Maxey & Co., P.C.*, 956 F. Supp. 823, 829 (N.D. Ill. 1997) ("[T]his court is persuaded that [company's] argument under the *Braswell* footnote is without merit.  Like the agent and shareholder in *Stone*, Mr. Maxey made the conscious decision to incorporate his tax preparation business rather than operate it as a sole proprietorship. . . . Mr. Maxey is not entitled 'to have his cake and eat it too.'").

NAF's Opposition to CMP Defendants' Motion re Invocation of Fifth Amendment by Entities
Case No. 3:15-cv-3522
sf-3573130

9

**Second**, to the extent the Supreme Court's "non-decision" in *Braswell* Footnote 11 has any validity at all, the Corporate Defendants would not fall within this "exception." The only "question" left open by the Supreme Court in *Braswell* was whether "the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, ***by showing for example that he is the sole employee and officer of the corporation***, that the jury would inevitably conclude that he produced the records." *Braswell*, 487 U.S. at 118 n.11 (emphasis added). Here, CMP and Biomax are not one-person corporations. CMP describes itself as "a group of citizen journalists." (Robinson Decl. Ex. 7.) It has at least three corporate officers: President David Daleiden, Chief Financial Officer Albin Rhomberg, and Secretary Troy Newman. (*Id*. Ex. 1 at 2.) And we now know that Biomax employed a whole troupe of actors, including at least CEO "Susan Tennenbaum," VP Operations "Robert Sarkis" (*i.e.*, Daleiden), and Procurement Assistant "Briana Allen." (Dkt. 3-17 at 2.)

Under these circumstances, "[i]t is hard to imagine a jury 'inevitably' concluding that [the individual defendants] produced the records when the records were created while the Corporation employed other staff besides [the individual defendants] . . . ." *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d at 261 (refusing to apply *Braswell* "exception"); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 159 (jury would not "inevitably conclude" employee produced records because it "might infer that the corporation engaged a third party to search its records and make the production on its behalf"). The "non-decision" reflected in *Braswell* Footnote 11 is simply not implicated here.

### D.     The Facts of This Case Do No Support Overruling *Braswell*.

Finally, the Corporate Defendants argue that the Supreme Court should overrule *Braswell* and hold that an individual holding corporate records can assert the Fifth Amendment if the act of production would incriminate that individual. (Dkt. 103 at 7-8.)

**First**, this argument misses a critical distinction between this case and *Braswell*. Here, NAF's discovery requests are directed to CMP and Biomax directly, and not to any individual officer or director. *Braswell*, by contrast, involved a subpoena directed to a specific corporate custodian who asserted that his "act of production" would incriminate him by tacitly admitting

NAF's Opposition to CMP Defendants' Motion re Invocation of Fifth Amendment by Entities Case No. 3:15-cv-3522
sf-3573130

10

1    that the subpoenaed documents existed, were in his possession, and were authentic.  The Court

2    had previously recognized such an "act of production" privilege for individuals.  *See, e.g.*, *United*

3    *States v. Doe*, 465 U.S. 605, 612-13 (1984).  In *Braswell*, the Court refused to extend that

4    privilege to corporate custodians acting in a representative capacity.  The Court held:  "This case

5    presents the question of whether the custodian of corporate records may resist a subpoena for

6    such records on the ground that the act of production would incriminate him in violation of the

7    Fifth Amendment.  We conclude that he may not."  *Braswell*, 487 U.S. at 108.

8         The fact that NAF seeks discovery directly from the Corporate Defendants, and not from

9    any specific custodian, is therefore critical, because NAF's discovery requests do not implicate

10   any particular individual's "act of production" privilege, as in *Braswell*.  *See, e.g.*, *In re Grand*

11   *Jury Subpoena Issued June 18, 2009*, 593 F.3d at 159 ("[T]he subpoena in question requires only

12   that the Companies, and not any particular individual, produce the requested documents; how best

13   to accomplish this is a question for the Companies and not this Court.").

14        Because the corporation has no Fifth Amendment privilege, the Corporate Defendants

15   must respond to discovery requests by appointing an agent whose Fifth Amendment rights are not

16   implicated to produce corporate records, respond to interrogatories, and provide Rule 30(b)(6)

17   deposition testimony.  *See United States v. Kordel*, 397 U.S. 1, 8 (1970) ("[S]ervice of the

18   interrogatories obliged the corporation to 'appoint an agent who could, without fear of self-

19   incrimination, furnish such requested information as was available to the corporation.'  The

20   corporation could not satisfy its obligation under Rule 33 simply by pointing to an agent about to

21   invoke his constitutional privilege."); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83,

22   92 n.5 (2d Cir. 2012) ("[A] corporation may not refuse to submit to a Rule 30(b)(6) deposition, or

23   to turn over corporate records, on the grounds that such acts may tend to incriminate it.  The

24   defendant corporations were, of course, free to designate individuals other than Chan and Lam as

25   30(b)(6) witnesses.") (internal citation omitted); *CFTC v. Noble Metals Int'l*, 67 F.3d 766, 771-72

26   (9th Cir. 1995) (evidentiary sanctions proper where corporation fails to designate Rule 30(b)(6)

27   witness without making good faith showing that no witness was available to testify on behalf of

28   the corporation without violating his personal Fifth Amendment privilege against self-

NAF'S OPPOSITION TO CMP DEFENDANTS' MOTION RE INVOCATION OF FIFTH AMENDMENT BY ENTITIES
CASE NO. 3:15-CV-3522
sf-3573130

11

1   incrimination); *Navel Orange Admin. Comm. v. Exeter Orange Co.*, 722 F.2d 449, 454 (9th Cir.

2   1983) ("The fact that the individual officers who have access to that information believe that the

3   information will incriminate them personally does not excuse the corporation from producing that

4   information.").

5          **<u>Second</u>**, the Corporate Defendants blasé assertion that the Supreme Court would reverse

6   itself and hold that corporations do have Fifth Amendment rights, is simply wishful thinking.  To

7   do so the Supreme Court would need to overturn over 110 years of its own precedent holding that

8   a corporation has no Fifth Amendment privilege against self-incrimination.  *See Hale v. Henkel*,

9   201 U.S. 43, 74-75 (1906) (holding that a corporation has no Fifth Amendment privilege);

10  *Braswell*, 487 U.S. at 105 ("[T]he collective entity rule . . . has a lengthy and distinguished

11  pedigree.") (*citing Hale*, 201 U.S. at 74).  Over the years, in fact, the Court has consistently

12  upheld and broadened the sweep of the collective entity rule to include corporate officers, *Wilson*

13  *v. United States*, 221 U.S. 361, 379-82 (1911), corporate custodians, *Drier v. United States*, 221

14  U.S. 394, 400 (1911), members of unincorporated business organizations, *United States v. White*,

15  322 U.S. 694, 701-04 (1944), partners in small partnerships, *Bellis v. United States*, 417 U.S. 85,

16  95-100 (1974), and presidents of alter ego corporations, *Braswell v. United States*, 487 U.S. 99,

17  102-19 (1988).

18         Given this lengthy history, federal courts have observed that there is simply "nothing in

19  Supreme Court jurisprudence that suggests the Court has, in any way, signaled its readiness to

20  depart from its longstanding precedent regarding corporate custodians' inability to invoke the

21  Fifth Amendment privilege against self-incrimination."  *In re Grand Jury Empaneled on May 9,*

22  *2014*, 786 F.3d at 261 n.1 (rejecting argument that recent Supreme Court cases like *Citizen's*

23  *United* and *Hobby Lobby*, which granted corporations certain limited First Amendment rights,

24  signaled a readiness to overrule longstanding doctrine regarding custodial privilege).

25         There is little or no support for the Corporate Defendants' arguments to the contrary.

26  **III.   CONCLUSION**

27         For the foregoing reasons, the Court should reject the Corporate Defendants' latest

28  attempt to obstruct discovery in this matter, by asserting a Fifth Amendment privilege that they

1   do not have.

2

3   Dated: September 8, 2015                LINDA E. SHOSTAK
                                            DEREK F. FORAN
                                            NICHOLAS S. NAPOLITAN
4                                           CHRISTOPER L. ROBINSON
                                            MORRISON & FOERSTER LLP
5

6

7                                           By:   /s/ Derek F. Foran
                                                    DEREK F. FORAN
8
                                            Attorneys for Plaintiff
9                                           NATIONAL ABORTION FEDERATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NAF's OPPOSITION TO CMP DEFENDANTS' MOTION RE INVOCATION OF FIFTH AMENDMENT BY ENTITIES
CASE NO. 3:15-cv-3522
sf-3573130

13