Exhibit 3

# Form 1023 Checklist

## (Revised June 2006)

**Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code**

**Note.** *Retain a copy of the completed Form 1023 in your permanent records. Refer to the* General Instructions *regarding Public Inspection of approved applications.*

<u>**Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.**</u>

☑ Assemble the application and materials in this order:
- Form 1023 Checklist
- Form 2848, *Power of Attorney and Declaration of Representative* (if filing)
- Form 8821, *Tax Information Authorization* (if filing)
- Expedite request (if requesting)
- Application (Form 1023 and Schedules A through H, as required)
- Articles of organization
- Amendments to articles of organization in chronological order
- Bylaws or other rules of operation and amendments
- Documentation of nondiscriminatory policy for schools, as required by Schedule B
- Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
- All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

☑ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

☑ Employer Identification Number (EIN)

☑ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.
- You must provide specific details about your past, present, and planned activities.
- Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
- Describe your purposes and proposed activities in specific easily understood terms.
- Financial information should correspond with proposed activities.

☑ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | | | |
|---|---|---|---|---|
| Schedule A | Yes ____ No ✓ | | Schedule E | Yes ____ No ✓ |
| Schedule B | Yes ____ No ✓ | | Schedule F | Yes ____ No ✓ |
| Schedule C | Yes ____ No ✓ | | Schedule G | Yes ____ No ✓ |
| Schedule D | Yes ____ No ✓ | | Schedule H | Yes ____ No ✓ |

☑ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.

- Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) *Page 1, Article 2, Prgrpf B*
- Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law *Pg. 1, Article 5, Paragraph D*

☑ Signature of an officer, director, trustee, or other official who is authorized to sign the application.

- Signature at Part XI of Form 1023.

☑ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
P.O. Box 192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

1 7 0 5 3 1 0 7 3 9 5 0 4 3

| Form **1023**<br>(Rev. June 2006)<br>Department of the Treasury<br>Internal Revenue Service | Application for Recognition of Exemption<br>Under Section 501(c)(3) of the Internal Revenue Code | OMB No. 1545-0056<br>**Note:** *If exempt status is approved, this application will be open for public inspection.* |
|---|---|---|

*Use the instructions to complete this application and for a definition of all **bold** items. For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at **www.irs.gov** for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.*

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I - XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

| **Part I** | Identification of Applicant |
|---|---|

| 1 Full name of organization (exactly as it appears in your **organizing document**)<br>The Center for Medical Progress | 2 c/o Name (if applicable) | |
|---|---|---|

| 3 Mailing address (Number and street) (see instructions)<br>5325 Elkhorn Blvd #305 | Room/Suite | 4 Employer Identification Number (EIN)<br>46-2252984 |
|---|---|---|
| City or town, state or country, and ZIP + 4<br>Sacramento, CA 95842-2526 | | 5 Month the annual accounting period ends (01 – 12)<br>12 |

| 6 Primary contact (officer, director, trustee, or **authorized representative**)<br>a Name: David Daleiden | |
|---|---|
| | b Phone: **(415) 944-7142** |
| | c Fax: (optional) |

| 7 | Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative. | ☐ Yes ☑ No |
|---|---|---|
| 8 | Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role. | ☐ Yes ☑ No |
| 9a | Organization's website: **centerformedicalprogress.org** | |
| b | Organization's email: (optional) **info@centerformedicalprogress.org** | |
| 10 | Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ. | ☐ Yes ☑ No |
| 11 | Date incorporated if a corporation, or formed, if other than a corporation.  (MM/DD/YYYY)   03 / 07 / 2013 | |
| 12 | Were you formed under the laws of a **foreign country**?<br>If "Yes," state the country. | ☐ Yes ☑ No |

For Paperwork Reduction Act Notice, see page 24 of the instructions.   Cat. No. 17133K   Form **1023** (Rev. 6-2006)

1 7 1 5 2 0 1 3 1 0 7 0 0 1

POS MARK          RECEIVED

APR 12 '13        APR 16 '13

CINCINNATI
SERVICE CENTER



Form 1023 (Rev. 6-2006)    Name: The Center for Medical Progress    EIN: 46 _ 2252984    Page **2**

## Part II   Organizational Structure

You must be a corporation (including a limited liability company), an unincorporated association, or a trust to be tax exempt. (See instructions.) DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.

1   Are you a **corporation**? If "Yes," attach a copy of your articles of incorporation showing **certification of filing** with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification.   ☑ Yes   ☐ No

2   Are you a **limited liability company (LLC)**? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application.   ☐ Yes   ☑ No

3   Are you an **unincorporated association**? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments.   ☐ Yes   ☑ No

4a   Are you a **trust**? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments.   ☐ Yes   ☑ No

b   Have you been funded? If "No," explain how you are formed without anything of value placed in trust.   ☐ Yes   ☑ No

5   Have you adopted bylaws? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected.   ☑ Yes   ☐ No

## Part III   Required Provisions in Your Organizing Document

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. DO NOT file this application until you have amended your organizing document. Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

1   Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. Location of Purpose Clause (Page, Article, and Paragraph): Page 1, Article 2, Paragraph B   ☑

2a   Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c.   ☑

2b   If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a. Page 1, Article 5, Paragraph D

2c   See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: _____   ☐

## Part IV   Narrative Description of Your Activities

Using an attachment, describe your past, present, and planned activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

## Part V   Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors

1a   List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual compensation, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| David Daleiden | Chief Executive Officer | 5325 Elkhorn Blvd #305 Sacramento, CA 95842 | $30,000.00 |
| Albin Rhomberg | Chief Financial Officer | 5325 Elkhorn Blvd #305 Sacramento, CA 95842 | none |
| Troy Newman | Secretary | 5325 Elkhorn Blvd #305 Sacramento, CA 95842 | none |
| | | | |
| | | | |

Form **1023** (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **3**

| **Part V** | Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)* |
|---|---|

b List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

c List the names, names of businesses, and mailing addresses of your five highest compensated **independent contractors** that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The following "Yes" or "No" questions relate to *past, present, or planned* relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c.

| | | | |
|---|---|---|---|
| 2a | Are any of your officers, directors, or trustees **related** to each other through **family** or **business relationships?** If "Yes," identify the individuals and explain the relationship. | ☐ Yes | ☒ No |
| b | Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees. | ☐ Yes | ☒ No |
| c | Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship. | ☐ Yes | ☒ No |
| 3a | For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties. | | |
| b | Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through **common control**? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement. | ☐ Yes | ☒ No |
| 4 | In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use. | | |
| a | Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy? | ☒ Yes | ☐ No |
| b | Do you or will you approve compensation arrangements in advance of paying compensation? | ☒ Yes | ☐ No |
| c | Do you or will you document in writing the date and terms of approved compensation arrangements? | ☒ Yes | ☐ No |

Form 1023 (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: **The Center for Medical Progress**   EIN: 46 _ 2252984   Page **4**

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** *(Continued)* |
|---|---|

**d** Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements? ☑ Yes ☐ No

**e** Do you or will you approve compensation arrangements based on information about compensation paid by **similarly situated** taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. ☑ Yes ☐ No

**f** Do you or will you record in writing both the information on which you relied to base your decision and its source? ☑ Yes ☐ No

**g** If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is **reasonable** for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c.

**5a** Have you adopted a **conflict of interest policy** consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c. ☑ Yes ☐ No

**b** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

**c** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?

Note: A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14.

**6a** Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through **non-fixed payments**, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. ☐ Yes ☑ No

**b** Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees who receive or will receive compensation of more than $50,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. ☐ Yes ☑ No

**7a** Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at **arm's length**, and explain how you determine that you pay no more than **fair market value**. Attach copies of any written contracts or other agreements relating to such purchases. ☐ Yes ☑ No

**b** Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales. ☐ Yes ☑ No

**8a** Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f. ☐ Yes ☑ No

**b** Describe any written or oral arrangements that you made or intend to make.
**c** Identify with whom you have or will have such arrangements.
**d** Explain how the terms are or will be negotiated at arm's length.
**e** Explain how you determine you pay no more than fair market value or you are paid at least fair market value.
**f** Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**9a** Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f. ☐ Yes ☑ No

Form 1023 (Rev. 6-2006)   Name: **The Center for Medical Progress**   EIN: 46 _ 2252984   Page **5**

| **Part V** | Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)* |
|---|---|

  b  Describe any written or oral arrangements you made or intend to make.
  c  Identify with whom you have or will have such arrangements.
  d  Explain how the terms are or will be negotiated at arm's length.
  e  Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.
  f  Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

| **Part VI** | **Your Members and Other Individuals and Organizations That Receive Benefits From You** |
|---|---|

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| 1a | In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals. | ☐ Yes | ☑ No |
| b | In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations. | ☐ Yes | ☑ No |
| 2 | Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. | ☐ Yes | ☑ No |
| 3 | Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. | ☐ Yes | ☑ No |

| **Part VII** | **Your History** |
|---|---|

The following "Yes" or "No" questions relate to your history. (See instructions.)

| | | | |
|---|---|---|---|
| 1 | Are you a **successor** to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G. | ☐ Yes | ☑ No |
| 2 | Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. | ☐ Yes | ☑ No |

| **Part VIII** | **Your Specific Activities** |
|---|---|

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| 1 | Do you support or oppose candidates in **political campaigns** in any way? If "Yes," explain. | ☐ Yes | ☑ No |
| 2a | Do you attempt to **influence legislation?** If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. | ☐ Yes | ☑ No |
| b | Have you made or are you making an **election** to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. | ☐ Yes | ☐ No |
| 3a | Do you or will you operate bingo or **gaming** activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. **Revenue and expenses** should be provided for the time periods specified in Part IX, Financial Data. | ☐ Yes | ☑ No |
| b | Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such arrangements. | ☐ Yes | ☑ No |
| c | List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo. | | |

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page 6

**Part VIII   Your Specific Activities** *(Continued)*

4e Do you or will you undertake **fundraising**? If "Yes," check all the fundraising programs you do or will conduct. (See instructions.)     ☑ Yes   ☐ No

- ☐ mail solicitations
- ☑ email solicitations
- ☑ personal solicitations
- ☐ vehicle, boat, plane, or similar donations
- ☐ foundation grant solicitations
- ☐ phone solicitations
- ☑ accept donations on your website
- ☐ receive donations from another organization's website
- ☐ government grant solicitations
- ☐ Other

Attach a description of each fundraising program.

b Do you or will you have written or oral contracts with any individuals or organizations to raise funds for you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. Also, attach a copy of any contracts or agreements.     ☐ Yes   ☑ No

c Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these arrangements. Include a description of the organizations for which you raise funds and attach copies of all contracts or agreements.     ☐ Yes   ☑ No

d List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.

e Do you or will you maintain separate accounts for any contributor under which the contributor has the right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the types of investments, distributions from the types of investments, or the distribution from the donor's contribution account. If "Yes," describe this program, including the type of advice that may be provided and submit copies of any written materials provided to donors.     ☐ Yes   ☑ No

5 Are you **affiliated** with a governmental unit? If "Yes," explain.     ☐ Yes   ☑ No

6a Do you or will you engage in **economic development**? If "Yes," describe your program.     ☐ Yes   ☑ No

b Describe in full who benefits from your economic development activities and how the activities promote exempt purposes.

7a Do or will persons other than your employees or volunteers **develop** your facilities? If "Yes," describe each facility, the role of the developer, and any business or family relationship(s) between the developer and your officers, directors, or trustees.     ☐ Yes   ☑ No

b Do or will persons other than your employees or volunteers **manage** your activities or facilities? If "Yes," describe each activity and facility, the role of the manager, and any business or family relationship(s) between the manager and your officers, directors, or trustees.     ☐ Yes   ☑ No

c If there is a business or family relationship between any manager or developer and your officers, directors, or trustees, identify the individuals, explain the relationship, describe how contracts are negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any contracts or other agreements.

8 Do you or will you enter into **joint ventures**, including partnerships or **limited liability companies** treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3) organizations? If "Yes," describe the activities of these joint ventures in which you participate.     ☐ Yes   ☑ No

9a Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines 9b through 9d. If "No," go to line 10.     ☐ Yes   ☑ No

b Do you provide child care so that parents or caretakers of children you care for can be **gainfully employed** (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).     ☐ Yes   ☐ No

c Of the children for whom you provide child care, are 85% or more of them cared for by you to enable their parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).     ☐ Yes   ☐ No

d Are your services available to the general public? If "No," describe the specific group of people for whom your activities are available. Also, see the instructions and explain how you qualify as a childcare organization described in section 501(k).     ☐ Yes   ☐ No

10 Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other **intellectual property**? If "Yes," explain. Describe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed.     ☑ Yes   ☐ No

Form 1023 (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **7**

**Part VIII**   **Your Specific Activities** (Continued)

| | | | |
|---|---|---|---|
| 11 | Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution. | ☑ Yes | ☐ No |
| 12a | Do you or will you operate in a **foreign country or countries**? If "Yes," answer lines 12b through 12d. If "No," go to line 13a. | ☐ Yes | ☑ No |
| b | Name the foreign countries and regions within the countries in which you operate. | | |
| c | Describe your operations in each country and region in which you operate. | | |
| d | Describe how your operations in each country and region further your exempt purposes. | | |
| 13a | Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b through 13g. If "No," go to line 14a. | ☐ Yes | ☑ No |
| b | Describe how your grants, loans, or other distributions to organizations further your exempt purposes. | | |
| c | Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract. | ☐ Yes | ☐ No |
| d | Identify each recipient organization and any **relationship** between you and the recipient organization. | | |
| e | Describe the records you keep with respect to the grants, loans, or other distributions you make. | | |
| f | Describe your selection process, including whether you do any of the following: | | |
| | (i) Do you require an application form? If "Yes," attach a copy of the form. | ☐ Yes | ☐ No |
| | (ii) Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the purposes for which the grant was made, provides for periodic written reports concerning the use of grant funds, requires a final written report and an accounting of how grant funds were used, and acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear to be, misused. | ☐ Yes | ☐ No |
| g | Describe your procedures for oversight of distributions that assure you the resources are used to further your exempt purposes, including whether you require periodic and final reports on the use of resources. | | |
| 14a | Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer lines 14b through 14f. If "No," go to line 15. | ☐ Yes | ☑ No |
| b | Provide the name of each foreign organization, the country and regions within a country in which each foreign organization operates, and describe any relationship you have with each foreign organization. | | |
| c | Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or specific organization? If "Yes," list all earmarked organizations or countries. | ☐ Yes | ☐ No |
| d | Do your contributors know that you have ultimate authority to use contributions made to you at your discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this information to contributors. | ☐ Yes | ☐ No |
| e | Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided, and other relevant information. | ☐ Yes | ☐ No |
| f | Do you or will you use any additional procedures to ensure that your distributions to foreign organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures, including site visits by your employees or compliance checks by impartial experts, to verify that grant funds are being used appropriately. | ☐ Yes | ☐ No |

Form **1023** (Rev. 6-2006)

Form 1023 (Rev. 6-2006)  Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **8**

| **Part VIII** | **Your Specific Activities** (Continued) | | |
|---|---|---|---|
| 15 | Do you have a **close connection** with any organizations? If "Yes," explain. | ☐ Yes | ☑ No |
| 16 | Are you applying for exemption as a **cooperative hospital service organization** under section 501(e)? If "Yes," explain. | ☐ Yes | ☑ No |
| 17 | Are you applying for exemption as a **cooperative service organization of operating educational organizations** under section 501(f)? If "Yes," explain. | ☐ Yes | ☑ No |
| 18 | Are you applying for exemption as a **charitable risk pool** under section 501(n)? If "Yes," explain. | ☐ Yes | ☑ No |
| 19 | Do you or will you operate a **school**? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☑ No |
| 20 | Is your main function to provide **hospital or medical care**? If "Yes," complete Schedule C. | ☐ Yes | ☑ No |
| 21 | Do you or will you provide **low-income housing** or housing for the elderly or handicapped? If "Yes," complete Schedule F. | ☐ Yes | ☑ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. | ☐ Yes | ☑ No |
| | **Note: Private foundations** may use Schedule H to request advance approval of individual grant procedures. | | |

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252964   Page 9

## Part IX    Financial Data

For purposes of this schedule, years in existence refer to completed tax years. If in existence 4 or more years, complete the schedule for the most recent 4 tax years. If in existence more than 1 year but less than 4 years, complete the statements for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. If in existence less than 1 year, provide projections of your likely revenues and expenses for the current year and the 2 following years, based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. (See instructions.)

### A. Statement of Revenues and Expenses

| | Type of revenue or expense | Current tax year (a) From 3/2013 To 12/2013 | (b) From 1/2014 To 12/2014 | (c) From 1/2015 To 12/2015 | (d) From ............ To ............ | (e) Provide Total for (a) through (d) |
|---|---|---|---|---|---|---|
| Revenues | 1 Gifts, grants, and contributions received (do not include unusual grants) | $120,000.00 | $80,000.00 | $80,000.00 | | $280,000.00 |
| | 2 Membership fees received | | | | | |
| | 3 Gross investment income | | | | | |
| | 4 Net unrelated business income | | | | | |
| | 5 Taxes levied for your benefit | | | | | |
| | 6 Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge) | | | | | |
| | 7 Any revenue not otherwise listed above or in lines 9–12 below (attach an itemized list) | | | | | |
| | 8 Total of lines 1 through 7 | $120,000.00 | $80,000.00 | $80,000.00 | | $280,000.00 |
| | 9 Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes (attach itemized list) | | | | | |
| | 10 Total of lines 8 and 9 | $120,000.00 | $80,000.00 | $80,000.00 | | $280,000.00 |
| | 11 Net gain or loss on sale of capital assets (attach schedule and see instructions) | | | | | |
| | 12 Unusual grants | | | | | |
| | 13 Total Revenue Add lines 10 through 12 | $120,000.00 | $80,000.00 | $80,000.00 | | $280,000.00 |
| Expenses | 14 Fundraising expenses | | | | | |
| | 15 Contributions, gifts, grants, and similar amounts paid out (attach an itemized list) | | | | | |
| | 16 Disbursements to or for the benefit of members (attach an itemized list) | | | | | |
| | 17 Compensation of officers, directors, and trustees | $30,000.00 | $30,000.00 | $30,000.00 | | |
| | 18 Other salaries and wages | | | | | |
| | 19 Interest expense | | | | | |
| | 20 Occupancy (rent, utilities, etc.) | | | | | |
| | 21 Depreciation and depletion | | | | | |
| | 22 Professional fees | $50,000.00 | $10,000.00 | $10,000.00 | | |
| | 23 Any expense not otherwise classified, such as program services (attach itemized list) | $40,000.00 | $40,000.00 | $40,000.00 | | |
| | 24 Total Expenses Add lines 14 through 23 | $120,000.00 | $80,000.00 | $80,000.00 | | |

Form 1023 (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **10**

**Part IX**   Financial Data *(Continued)*

B. Balance Sheet (for your most recently completed tax year)          Year End: 12/2013

**Assets**

| | | | (Whole dollars) |
|---|---|---|---|
| 1 | Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | $3,500.00 |
| 2 | Accounts receivable, net . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Inventories . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Bonds and notes receivable (attach an itemized list) . . . . . . . . . | 4 | |
| 5 | Corporate stocks (attach an itemized list) . . . . . . . . . . . . . | 5 | |
| 6 | Loans receivable (attach an itemized list) . . . . . . . . . . . . . | 6 | |
| 7 | Other investments (attach an itemized list) . . . . . . . . . . . . . | 7 | |
| 8 | Depreciable and depletable assets (attach an itemized list) . . . . . . . | 8 | |
| 9 | Land . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 | Other assets (attach an itemized list) . . . . . . . . . . . . . . . | 10 | |
| 11 | Total Assets (add lines 1 through 10) . . . . . . . . . . . . . . | 11 | $3,500.00 |

**Liabilities**

| | | | |
|---|---|---|---|
| 12 | Accounts payable . . . . . . . . . . . . . . . . . . . . . . | 12 | |
| 13 | Contributions, gifts, grants, etc. payable . . . . . . . . . . . . . | 13 | |
| 14 | Mortgages and notes payable (attach an itemized list) . . . . . . . . . | 14 | |
| 15 | Other liabilities (attach an itemized list) . . . . . . . . . . . . . | 15 | |
| 16 | Total Liabilities (add lines 12 through 15) . . . . . . . . . . . . | 16 | |

**Fund Balances or Net Assets**

| | | | |
|---|---|---|---|
| 17 | Total fund balances or net assets . . . . . . . . . . . . . . . . | 17 | $3,500.00 |
| 18 | Total Liabilities and Fund Balances or Net Assets (add lines 16 and 17) . . . | 18 | $3,500.00 |

19  Have there been any substantial changes in your assets or liabilities since the end of the period   ☐ Yes   ☑ No
shown above? If "Yes," explain.

**Part X**   Public Charity Status

Part X is designed to classify you as an organization that is either a **private foundation** or a **public charity**. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a **private operating foundation**. (See instructions.)

1a  Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed.   ☐ Yes   ☑ No
If you are unsure, see the instructions.

b  As a private foundation, section 508(e) requires special provisions in your organizing document in   ☐
addition to those that apply to all organizations described in section 501(c)(3). Check the box to
confirm that your organizing document meets this requirement, whether by express provision or by
reliance on operation of state law. Attach a statement that describes specifically where your
organizing document meets this requirement, such as a reference to a particular article or section in
your organizing document or by operation of state law. See the instructions, including Appendix B,
for information about the special provisions that need to be contained in your organizing document.
Go to line 2.

2  Are you a private operating foundation? To be a private operating foundation you must engage   ☐ Yes   ☐ No
directly in the active conduct of charitable, religious, educational, and similar activities, as opposed
to indirectly carrying out these activities by providing grants to individuals or other organizations. If
"Yes," go to line 3. If "No," go to the signature section of Part XI.

3  Have you existed for one or more years? If "Yes," attach financial information showing that you are a private   ☐ Yes   ☐ No
operating foundation; go to the signature section of Part XI. If "No," continue to line 4.

4  Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit or opinion   ☐ Yes   ☐ No
from a certified public accountant or accounting firm with expertise regarding this tax matter),
that sets forth facts concerning your operations and support to demonstrate that you are likely to
satisfy the requirements to be classified as a private operating foundation; or (2) a statement
describing your proposed operations as a private operating foundation?

5  If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below.
You may check only one box.

The organization is not a private foundation because it is:

a  509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A.   ☐

b  509(a)(1) and 170(b)(1)(A)(ii)—a **school**. Complete and attach Schedule B.   ☐

c  509(a)(1) and 170(b)(1)(A)(iii)—a hospital, a cooperative hospital service organization, or a medical research   ☐
organization operated in conjunction with a hospital. Complete and attach Schedule C.

d  509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, g, or h   ☐
or a publicly supported section 501(c)(4), (5), or (6) organization. Complete and attach Schedule D.

Form **1023** (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **11**

**Part X**   **Public Charity Status** *(Continued)*

e  509(a)(4)—an organization organized and operated exclusively for testing for public safety.   ☐

f  509(a)(1) and 170(b)(1)(A)(iv)—an organization operated for the benefit of a college or university that is owned or   ☐
   operated by a governmental unit.

g  509(a)(1) and 170(b)(1)(A)(vi)—an organization that receives a substantial part of its financial support in the form   ☐
   of contributions from publicly supported organizations, from a governmental unit, or from the general public.

h  509(a)(2)—an organization that normally receives not more than one-third of its financial support from gross   ☐
   **investment income** and receives more than one-third of its financial support from contributions, membership
   fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions).

i  A publicly supported organization, but unsure if it is described in 5g or 5h. The organization would like the IRS to   ☑
   decide the correct status.

6  If you checked box g, h, or i in question 5 above, you must request either an **advance** or a **definitive ruling** by
   selecting one of the boxes below. Refer to the instructions to determine which type of ruling you are eligible to receive.

a  **Request for Advance Ruling:** By checking this box and signing the consent, pursuant to section 6501(c)(4) of   ☐
   the Code you request an advance ruling and agree to extend the statute of limitations on the assessment of
   excise tax under section 4940 of the Code. The tax will apply only if you do not establish public support status
   at the end of the 5-year advance ruling period. The assessment period will be extended for the 5 advance ruling
   years to 8 years, 4 months, and 15 days beyond the end of the first year. You have the right to refuse or limit
   the extension to a mutually agreed-upon period of time or issue(s). Publication 1035, *Extending the Tax
   Assessment Period,* provides a more detailed explanation of your rights and the consequences of the choices
   you make. You may obtain Publication 1035 free of charge from the IRS web site at *www.irs.gov* or by calling
   toll-free 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would
   otherwise be entitled. If you decide not to extend the statute of limitations, you are not eligible for an advance
   ruling.

Consent Fixing Period of Limitations Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code

For Organization

_____   _____   _____
(Signature of Officer, Director, Trustee, or other   (Type or print name of signer)   (Date)
authorized official)

                                   _____
                                   (Type or print title or authority of signer)

For IRS Use Only

_____   _____
IRS Director, Exempt Organizations                                 (Date)

b  **Request for Definitive Ruling:** Check this box if you have completed one tax year of at least 8 full months and   ☐
   you are requesting a definitive ruling. To confirm your public support status, answer line 6b(i) if you checked box
   g in line 5 above. Answer line 6b(ii) if you checked box h in line 5 above. If you checked box i in line 5 above,
   answer both lines 6b(i) and (ii).

   (i)  (a) Enter 2% of line 8, column (e) on Part IX-A. Statement of Revenues and Expenses. _____
        (b) Attach a list showing the name and amount contributed by each person, company, or organization whose   ☐
            gifts totaled more than the 2% amount. If the answer is "None," check this box.

   (ii) (a) For each year amounts are included on lines 1, 2, and 9 of Part IX-A. Statement of Revenues and   ☐
            Expenses, attach a list showing the name of and amount received from each **disqualified person.** If the
            answer is "None," check this box.

        (b) For each year amounts are included on line 9 of Part IX-A. Statement of Revenues and Expenses, attach
            a list showing the name of and amount received from each payer, other than a disqualified person, whose
            payments were more than the larger of (1) 1% of line 10, Part IX-A. Statement of Revenues and
            Expenses, or (2) $5,000. If the answer is "None," check this box.   ☐

7  Did you receive any unusual grants during any of the years shown on Part IX-A. Statement of   ☐ Yes  ☑ No
   Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and
   amount of the grant, a brief description of the grant, and explain why it is unusual.

Form **1023** (Rev. 6-2006)

Form 1023 (Rev. 6-2006)   Name: The Center for Medical Progress   EIN: 46 _ 2252984   Page **12**

**Part XI**   **User Fee Information**

You *must* include a user fee payment with this application. It will not be processed without your paid user fee. If your average annual gross receipts have exceeded or will exceed $10,000 annually over a 4-year period, you must submit payment of $750. If your gross receipts have not exceeded or will not exceed $10,000 annually over a 4-year period, the required user fee payment is $300. See instructions for Part XI, for a definition of **gross receipts** over a 4-year period. Your check or money order must be made payable to the United States Treasury. *User fees are subject to change. Check our website at www.irs.gov and type "User Fee" in the keyword box, or call Customer Account Services at 1-877-829-5500 for current information.*

| 1 | Have your annual gross receipts averaged or are they expected to average not more than $10,000? If "Yes," check the box on line 2 and enclose a user fee payment of $300 (Subject to change—see above). If "No," check the box on line 3 and enclose a user fee payment of $750 (Subject to change—see above). | ☐ Yes | ☑ No |
|---|---|---|---|
| 2 | Check the box if you have enclosed the reduced user fee payment of $300 (Subject to change). | | ☐ |
| 3 | Check the box if you have enclosed the user fee payment of $750 (Subject to change). | | ☑ |

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

**Please Sign Here** ▶ _____ (Signature of Officer, Director, Trustee, or other authorized official)

David Daleiden
Chief Executive Officer
(Type or print name of signer)
(Type or print title or authority of signer)

4/12/2013
(Date)

**Reminder:** Send the completed Form 1023 Checklist with your filled-in application.   Form **1023** (Rev. 6-2006)

| ARTS-PB | Articles of Incorporation of a Nonprofit Public Benefit Corporation |
|---|---|

**3542043**

To form a nonprofit public benefit corporation in California, you can fill out this form or prepare your own document, and submit for filing along with:

– A $30 filing fee.
– A separate, non-refundable $15 service fee also must be included, if you drop off the completed form or document

*Important!* Nonprofit corporations in California are not automatically exempt from paying California franchise tax or income tax each year. For information about tax requirements and/or applying for tax-exempt status in California, go to https://www.ftb.ca.gov/businesses/exempt_organizations or call the California Franchise Tax Board at (916) 845-4171.

Note: *Before submitting this form,* you should consult with a private attorney for advice about your specific business needs.

**FILED** / C→
Secretary of State
State of California

MAR 0 7 2013

This Space For Office Use Only

For questions about this form, go to *www.sos.ca.gov/business/be/filing-tips.htm*

**Corporate Name** (List the proposed corporate name. Go to www.sos.ca.gov/business/be/name-availability.htm for general corporate name requirements and restrictions.)

① The name of the corporation is   The Center for Medical Progress

**Corporate Purpose** (Item 2a: Check one or both boxes. Item 2b: The specific purpose of the corporation must be listed if you are organizing for "public" purposes, or if you intend to apply for tax-exempt status in California.)

② a. This corporation is a nonprofit Public Benefit Corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for: ☑ public   ☑ charitable purposes.

b. The specific purpose of this corporation is to monitor and report on medical ethics and advances

**Service of Process** (List a California resident or an active 1505 corporation in California that agrees to be your initial agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may not list your own corporation as the agent. Do not list an address if the agent is a 1505 corporation.)

③ a. Nichole Surkala
Agent's Name

b. 2330 Temple Dr          Davis          CA   95618
Agent's Street Address (if agent is not a corporation)   City (no abbreviations)   State   Zip

**Corporate Addresses**

④ a. 5054 El Cemente Ave.       Davis          CA   95618
Initial Street Address of Corporation   City (no abbreviations)   State   Zip

b. _____
Initial Mailing Address of Corporation, if different from 4a   City (no abbreviations)   State   Zip

**Additional Statements** (The following statements are for tax-exempt status in California.)

⑤ a. This corporation is organized and operated exclusively for the purposes set forth in Article 2a hereof within the meaning of Internal Revenue Code section 501(c)(3).

b. No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and this corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

c. The property of this corporation is irrevocably dedicated to the purposes in Article 2a hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person.

d. Upon the dissolution or winding up of this corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for **charitable, educational and/or religious** purposes and which has established its tax-exempt status under Internal Revenue Code section 501(c)(3).

This form must be signed by each incorporator. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of incorporation.

_____
Incorporator - Sign here

David Robert Daleiden
Print your name here

| Make check/money order payable to: Secretary of State. Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | **By Mail** Secretary of State Business Entities, P.O. Box 944260 Sacramento, CA 94244-2600 | **Drop-Off** Secretary of State 1500 11th Street, 3rd Floor Sacramento, CA 95814 |
|---|---|---|

Corporations Code §§ 5130-5132 et seq.; Revenue and Taxation Code §§ 23151 et seq. and 23701 et seq.
ARTS-PB (EST 01/2013)

2013 California Secretary of State
www.sos.ca.gov/business/be



I hereby certify that the foregoing
transcript of _____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

MAR 0 8 2013   GS

Date: _____

DEBRA BOWEN, Secretary of State

Bylaws of
**The Center for Medical Progress**
A California Nonprofit Public Benefit Corporation

## ARTICLE 1: NAME

**Section 1.1 Corporate Name.** The name of this corporation is The Center for Medical Progress (the "Corporation").

## ARTICLE 2: PURPOSES

**Section 2.1 General Purpose.** The Corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Corporation Law of California ("California Nonprofit Corporation Law") for public and charitable purposes.

**Section 2.2 Specific Purpose.** The specific purpose of the corporation shall include without limitation, to monitor and report on medical ethics and advances.

## ARTICLE 3: LIMITATIONS

**Section 3.1 Political Activities.** The Corporation is nonprofit and nonpartisan and is organized and operated exclusively for the purposes set forth in Article 2 hereof within the meaning of Internal Revenue Code section 501(c)(3).

**Section 3.2 Prohibited Activities.** No substantial part of the activities of the Corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and this corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

## ARTICLE 4: DEDICATION OF ASSETS

**Section 4.1 Property Dedicated to Nonprofit Purposes.** The property of the Corporation is irrevocably dedicated to the purposes in Article 2 hereof and no part of the net income or assets of the Corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person, except that the Corporation is authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 2 hereof.

**Section 4.2 Distribution of Assets Upon Dissolution.** Upon the dissolution or winding up of the Corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of the Corporation, shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for charitable, educational and/or religious purposes and which has established its tax-exempt status under Internal Revenue Code section 501(c)(3).

## ARTICLE 5: MEMBERSHIPS

**Section 5.1 Members.** The Incorporators of the Corporation shall be the sole members within the meaning of section 5056 of the California Nonprofit Corporation Law.

**Section 5.2 Non-Voting Members.** The Board may adopt policies and procedures for the admission of associate members or other designated members who shall have no voting rights in the Corporation. Such associate or other members are not "members" of the Corporation as defined in section 5056 of the California Nonprofit Corporation Law.

## ARTICLE 6: DIRECTORS

### Section 6.1 Number and Qualifications.

**6.1.1 Number.** The initial number of directors of the Corporation ("Directors") shall be three (3). From time to time, the Board may, by resolution, increase or decrease the number of directors by increments of two (2), such that there shall always be an odd number of directors. Under no circumstances shall the number of directors ever fall below three (3).

**6.1.2 Qualifications.** The Directors shall be elected by the members.

**Section 6.2 Terms; Election of Successors.** Directors shall be elected at each annual meeting of the Board for one (1) year terms. Each Director, including a Director elected to fill a vacancy, shall hold office until the expiration of the term for which he or she was appointed and until the election and qualification of a successor, or until that Director's earlier resignation or removal in accordance with these Bylaws and California Nonprofit Corporation Law. By resolution, the Board may arrange for terms to be staggered.

### Section 6.3 Vacancies.

**6.3.1 Events Causing Vacancy.** A vacancy or vacancies on the Board shall be deemed to exist on the occurrence of the following: (i) the death, resignation, or removal of any Director; (ii) whenever the number of authorized Directors is increased; or (iii) the failure of the Board, at any meeting at which any Director or Directors are to be elected, to elect the full authorized number of Directors.

**6.3.2 Removal.** The Board may by resolution declare vacant the office of a Director who has been declared of unsound mind by an order of court, or convicted of a felony, or found by final order or judgment of any court to have breached a duty under California Nonprofit Corporation Law. No Director may be removed without cause.

**6.3.3 No Removal on Reduction of Number of Directors.** No reduction of the authorized number of Directors shall have the effect of removing any Director before that

Director's term of office expires unless the reduction also provides for the removal of that specified Director in accordance with these Bylaws and California Nonprofit Corporation Law.

**6.3.4 Resignations.** Except as provided in this Section 6.3.4, any Director may resign by giving written notice to the Chairperson, the President, the Secretary, or the Board. Such a written resignation will be effective on the later of (i) the date it is delivered or (ii) the time specified in the written notice that the resignation is to become effective. No Director may resign if the Corporation would then be left without a duly elected Director or Directors in charge of its affairs, except upon notice to the California Attorney General (the "Attorney General").

**6.3.5 Pro-Tem Election to Fill Vacancies.** If there is a vacancy on the Board, including a vacancy created by the removal of a Director, the Board may fill such vacancy by electing an additional director *pro tempore* as soon as practicable after the vacancy occurs, Section 6.1.2 notwithstanding. If the number of Directors then in office is less than a quorum, additional directors may be elected to fill such vacancies by (i) the unanimous written consent of the Directors then in office, (ii) the affirmative vote of a majority of the Directors in office at a meeting held according to notice or waivers complying with section 5211 of the California Nonprofit Corporation Law, or (iii) a sole remaining Director.

**Section 6.4 Regular Meeting.** Each year, the Board shall hold at least one meeting, at a time and place fixed by the Board, for the purposes of election of Directors according to Section 6.1.2, election of Officers according to Section 7.2, review and approval of the corporate budget and transaction of other business. This meeting is sometimes referred to in these Bylaws as the "annual meeting." Other regular meetings of the Board may be held at such time and place as the Board may fix from time to time by resolution.

**Section 6.5 Special Meetings.** Special meetings of the Board for any purpose may be called at any time by the Chairperson, or the President, or the Vice President (if any), or the Secretary, or any two Directors.

**Section 6.6 Quorum and Action of the Board.**

**6.6.1 Quorum.** A majority of Directors then in office (but no fewer than two Directors or one-fifth of the authorized number in Section 7.1.1, whichever is greater) shall constitute a quorum for the transaction of business, except to adjourn as provided in Section 6.7.

**6.6.2 Minimum Vote Requirements for Valid Board Action.** Every act taken or decision made by a vote of the majority of the Directors present at a meeting duly held at which a quorum is present is the act of the Board, unless a greater number is expressly required by California Nonprofit Corporation Law, the Articles of Incorporation or these Bylaws. A meeting at which a quorum is initially present may continue to transact business, notwithstanding the withdrawal of Directors from the meeting, if any action taken is approved by at least a majority of the required quorum for that meeting.

**Section 6.7 Adjournment.** A majority of the Directors present, whether or not constituting a quorum, may adjourn any meeting to another time and place.

**Section 6.8 Fees and Compensation of Directors.** The Corporation shall not pay any compensation to Directors for services rendered to the Corporation as Directors, except that Directors may be reimbursed for expenses incurred in the performance of their duties to the Corporation, in reasonable amounts as approved by the Board.

Also, Directors may not be compensated for rendering services to the Corporation in a capacity other than as Directors, unless such compensation is reasonable and further provided that not more than 49% of the persons serving as Directors may be "interested persons" which, for purposes of this Section 6.8 only, means:

(a) any person currently being compensated by the Corporation for services rendered to it within the previous 12 months, whether as a full or part-time Officer or other employee, independent contractor, or otherwise, excluding any reasonable compensation paid to a Director as Director; or

(b) any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, or father-in-law of any such person.

**Section 6.9 Non-Liability of Directors.** The Directors shall not be personally liable for the debts, liabilities, or other obligations of the Corporation.

## ARTICLE 7: OFFICERS

**Section 7.1 Officers.** The officers of the Corporation ("Officers"), in accord with and for the purposes in California Nonprofit Corporation Law Section 5213, shall be a President ("Chief Executive Officer"), a Secretary, and a Chief Financial Officer.

**Section 7.2 Election of Officers.** The Officers shall be elected by the members at the annual meeting of the Corporation for a term of one (1) year, and each shall serve at the discretion of the Board until his or her successor shall be elected, or his or her earlier resignation or removal. Officers do not have term limits.

**Section 7.3 Removal of Officers.** Subject to the rights, if any, of an Officer under any contract of employment, any Officer may be removed, with or without cause, (i) by the Board, at any regular or special meeting of the Board, or at the annual meeting of the Corporation, or (ii) by an Officer on whom such power of removal may be conferred by the Board.

**Section 7.4 Resignation of Officers.** Any Officer may resign at any time by giving written notice to the Corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it

effective. Any resignation is without prejudice to the rights, if any of the Corporation under any contract to which the Officer is a party.

**Section 7.5 Vacancies in Offices.** A vacancy in any office because of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed in these Bylaws for regular appointments to that office, provided that such vacancies shall be filled as they occur and not on an annual basis.

**Section 7.6 Compensation of Officers.**

**7.6.1 Salaries Fixed by Board.** The salaries of Officers, if any, shall be fixed from time to time by resolution of the Board or by the person or Committee to whom the Board has delegated this function, and no Officer shall be prevented from receiving such salary by reason of the fact that he or she is also a Director, provided, however, that such compensation paid to a Director for serving as an Officer shall only be allowed if permitted under the provisions of Section 6.8. In all cases, any salaries received by Officers shall be reasonable and given in return for services actually rendered for the Corporation which relate to the performance of the public benefit purposes of the Corporation. No salaried Officer serving as a Director shall be permitted to vote on his or her own compensation as an Officer.

**7.6.2 Fairness of Compensation.** The Board shall periodically review the fairness of compensation, including benefits, paid to every person, regardless of title, with powers, duties, or responsibilities comparable to the president, chief executive officer, treasurer, or chief financial officer (i) once such person is hired, (ii) upon any extension or renewal of such person's term of employment, and (iii) when such person's compensation is modified (unless all employees are subject to the same general modification of compensation).

## ARTICLE 8: INTERPRETATION

**Section 8.1 Construction and Definitions.** Unless the context requires otherwise, the general provisions, rules of construction, and definitions of California Nonprofit Corporation Law shall govern the construction of these Bylaws. Without limiting the generality of the above, the masculine gender includes the feminine and neuter, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both the Corporation and a natural person. All references to statutes, regulations and laws shall include any future statutes, regulations and laws that replace those referenced.

## ARTICLE 9: AMENDMENTS

**Section 9.1 Amendment by Directors.** The Board may adopt, amend, or repeal bylaws by unanimous vote.

## CERTIFICATE OF INCORPORATOR

I certify that I am the Incorporator of The Center for Medical Progress, a California nonprofit public benefit corporation; that these Bylaws, consisting of seven (7) pages, are the Bylaws of this Corporation as duly adopted by my action as Incorporator on March 7, 2013; and that these Bylaws have not been amended or modified since that date.

Executed on March 7, 2013; at Davis, California.

DAVID DALEIDEN
Incorporator

CONFLICT OF INTEREST POLICY OF
**THE CENTER FOR MEDICAL PROGRESS**
A California Nonprofit Public Benefit Corporation

## INTRODUCTION AND PURPOSE

The Center for Medical Progress (the "Corporation") requires its directors, officers, employees and volunteers to observe high standards of business and personal ethics in the conduct of their duties and responsibilities. The Board of Directors (the "Board") of the Corporation, recognizing that it is entrusted with resources devoted to charitable purposes, has adopted this Conflict of Interest Policy (the "Policy"). The purpose of this Policy is to protect the Corporation's interest when it is contemplating entering into a transaction or arrangement that might benefit the private interest of a director, officer or other person in a position of authority within the Corporation. The Corporation strives to avoid conflicts of interest to ensure that it continues to operate in accordance with its tax-exempt purpose. This Policy is intended to supplement but not replace the Corporation's bylaws and any state and federal laws governing conflicts of interest applicable to nonprofit and charitable organizations.

## ARTICLE II. DEFINITIONS

**Section 1. Duty of Loyalty of Interested Persons.** Conflicts of interest can place personal interests at odds with the fiduciary "duty of loyalty" owed to the Corporation. The duty of loyalty requires that a director, manager, principal, officer, or member of a committee with governing board-delegated powers (each, an "Interested Person"), refrain from using his or her position for personal gain, and avoid acting on issues in which his or her personal or financial interests could conflict with the interests of the Corporation.

**Section 2. Direct and Indirect Conflicts of Interest.** Conflicts of interest arise from personal relationships or from a financial interest. Conflicts can arise either directly or indirectly. A direct conflict can arise where an Interested Person has a personal or financial interest in any matter involving the Corporation or has a financial or agency relationship (i.e., is a director, officer, manager, partner, associate, trustee or has a similar agency relationship) with an entity involved in a transaction or other business with the Corporation. An indirect conflict can arise where someone related to an Interested Person by business affiliation, or a "Family Member" (spouse, parents-in-law, ancestors, brothers and sisters (whether whole or half blood), children (whether natural or adopted), grandchildren, great-grandchildren, and spouses of brothers, sisters, children, grandchildren, and great-grandchildren) of the Interested Person has dealings with the Corporation. By way of example, an Interested Person has a financial interest if such person has, directly or indirectly, through business, investment or a Family Member:

    (a) an ownership or investment interest in any entity with which the Corporation has a transaction or arrangement;

    (b) a compensation arrangement with the Corporation or with any entity or individual with which the Corporation has a transaction or arrangement; or

(c) a potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Corporation is negotiating a transaction or arrangement.

Compensation includes direct and indirect remuneration as well as gifts or favors that are not insubstantial.

**Section 3. Potential and Actual Conflicts of Interest.** Acts that mix the personal or financial interests of an Interested Person with the interests of the Corporation are indicative of a conflict of interest. Not every potential conflict is an actual conflict, however. An Interested Person who has a financial interest in a matter involving the Corporation may have a conflict of interest requiring application of the mitigating procedures described in this Policy only if the appropriate party designated in Article III, Section 3 decides that such a potential conflict of interest is actual or material. However, acts that even have the appearance of a conflict of interest can be damaging to the reputation of the Corporation. Consequently, the Corporation seeks to avoid potential and actual conflicts of interest, as well as the appearance of conflicts.

**Section 4. Activities that May Present a Conflict of Interest.** The following is a non-exclusive list of the types of activities that may present a conflict of interest and should be disclosed in accordance with Article III.

(a) Adverse Interest. Participation by an Interested Person in decisions or negotiations related to a contract, transaction or other matter between the Corporation and: (i) the Interested Person; (ii) an entity in which the Interested Person or a Family Member of such person has financial interest; or (iii) an entity with which the Interested Person has an agency relationship.

(b) Competing Interests. Competition by an Interested Person, either directly or indirectly, with the Corporation in the purchase or sale of property or property rights, interests, or services, or, in some instances, competition directly for the same donor or external resources.

(c) Use of Resources. Use of the Corporation's resources (for example, staff, contracts, donor lists, or name) for personal purposes of the Interested Person or a Family Member of such person.

(d) Inside Information. Disclosure or exploitation by an Interested Person of information pertaining to the Corporation's business for the personal profit or advantage of such person or a Family Member of such person or a person/entity with whom the Interested Person has an agency relationship.

**Section 5. Disclosure.** The primary obligation of any person subject to this Policy who may be involved in a conflict of interest situation is to bring it to the attention of those designated under the disclosure procedures in Article III so that the potential conflict can be evaluated and addressed. An Interested Person should not make the decision about whether a conflict of interest exists unilaterally.

ARTICLE III. PROCEDURES TO DISCLOSE AND RESOLVE CONFLICTS

**Section 1. Duty to Self-Disclose.**

(a) An Interested Person shall make an appropriate disclosure of all material facts, including the existence of any financial interest, at any time that any actual or potential conflict of interest arises. This disclosure obligation includes instances in which an Interested Person who is a director knows of the potential for a self dealing transaction as described in Section 4, or a transaction involving common directorship as described in Section 7, related to his or her interests. It also includes instances in which the Interested Person plans not to attend a meeting of the Board at which he or she has reason to believe that the Board or Committee will act regarding a matter about which he or she may have a conflict. Depending on the circumstances, this disclosure may be made to any Director or Officer of the Corporation, or, if the potential conflict of interest first arises in the context of a Board meeting, the entire Board considering the proposed transaction or arrangement that relates to the actual or possible conflict of interest.

(b) In addition, Interested Persons shall, in accordance with Article VI, make an annual disclosure of on-going relationships and interests that may present a conflict of interest.

**Section 2. Disclosure of Conflicts of Others.** If an Interested Person becomes aware of any potential self dealing or common directorship transaction or other conflict of interest involving another Interested Person, he or she should report it in accordance with the requirements of this Article III.

**Section 3. Evaluation of Potential Conflict.**

(a) After disclosure of all material facts and any follow-up discussion with the Interested Person with a potential conflict of interest, a determination must be made about whether a material financial interest, self dealing transaction or other kind of actual conflict exists. If the potential conflict is first disclosed during a Board or Committee meeting at which the Interested Person with the potential conflict is in attendance, the Interested Person shall leave the meeting while the determination of whether a conflict of interest exists is either discussed and voted upon or referred to Committee for further consideration. In either event, the decision-making body will evaluate the disclosures by the Interested Person, and will determine on a case-by-case basis whether the disclosed activities constitute an actual conflict of interest. If the disclosure is made outside of the context of a meeting, then the determination of whether a conflict exists will be referred to [designate the decision-making body such as the Audit Committee, the Executive Committee, the Governance Committee or other] for decision and action. Factors the decision-making body may consider when determining whether an actual conflict exists include (i) the proximity of the Interested Person to the decision-making authority of the other entity involved in the transaction, (ii) whether the amount of the financial interest or investment is *de minimis* relative to the overall financial situation of the Corporation, and (iii) the degree to which the Interested Person might benefit personally if a particular transaction were approved.

(b) If it is determined that an actual conflict of interest exists which also constitutes a "self dealing" transaction as described in Section 4, then the transaction or matter in question can only be authorized if approved by the vote described in Section 6(a) after the Corporation has followed the procedures set forth in Section 5.

(c) If it is determined that an actual conflict of interest exists which is not a "self dealing" transaction, but involves participation by the Interested Person in decisions or negotiations related to a material contract, transaction or other matter between the Corporation on the one hand and (i) the Interested Person, (ii) an entity in which the Interested Person or a Family Member of such person has financial interest, or (iii) an entity with which the Interested Person has an agency relationship on the other hand, then the matter in question can only be authorized if approved by the vote described in Section 6(b) after the Corporation has followed the procedures set forth in Section 5.

(d) In all other circumstances where it is determined that an actual conflict of interest exists, the decision-making body will recommend an appropriate course of action to protect the interests of the Corporation. All disclosures and the outcome of the deliberation about whether a conflict of interest exists will be recorded in the minutes of the appropriate deliberative meeting.

**Section 4. "Self Dealing" Transactions of Directors.**

(a) Section 5233 of the California Corporations Code requires that certain procedures be followed in order for the Board to approve any specific transaction that involves "self dealing" on the part of a director. Section 5233 defines self dealing as a transaction in which a director has a material financial interest (an "interested director"). Section 5233 requires that self dealing transactions be approved by a greater vote than other Board actions, as described in Section 6(a).

(b) The following are exempt from the approval requirements of section 5233 (and therefore the Corporation need not obtain the vote described in Section 6(a)): (i) approval of an action fixing the compensation of a director as a director or officer; (ii) good faith approval, without unjustified favoritism, of a charitable program of which a director or a director's Family Member(s) are among the intended beneficiaries; and (iii) a transaction about which an interested director had no actual knowledge involving an amount that does not exceed the lesser of one percent of the gross receipts of the Corporation for the preceding fiscal year or $100,000.

**Section 5. Procedures for Addressing a Conflict of Interest.** Prior to voting on a contract, transaction or matter in which an actual conflict of interest is found to exist, the Board or Committee will follow the procedures described in this Section 5.

(a) The Interested Person may make a presentation at the Board or Committee meeting at which such transaction is being considered, but after the presentation, he or she shall leave the meeting during the discussion of, and the vote on, the transaction or arrangement involving the possible conflict of interest.

(b) The Chairperson of the Board or Committee shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

(c) After exercising due diligence, the Board or Committee shall determine whether the Corporation could obtain with reasonable efforts a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.

(d) If a more advantageous transaction or arrangement is not reasonably possible under circumstances not producing a conflict of interest, the Board or Committee shall determine whether the transaction or arrangement is in the Corporation's best interest, for its own benefit, and whether it is fair and reasonable. In conformity with the above determination, the Board shall make its decision as to whether to enter into the transaction or arrangement by the vote described in Section 6.

**Section 6. Vote Required for Approval of Conflict Transaction.**

(a) A self dealing transaction must receive prior approval by a vote of a majority of the directors in office, without counting the vote of any interested director, and with knowledge of the material facts of the transaction and the involved director's interest.

(b) A transaction in which an actual conflict of interest exists but is not a self dealing transaction must receive prior approval by a majority vote of the disinterested directors or Committee members present at a meeting at which a quorum is present.

**Section 7. Interlocking Directorships.** Section 5234 of the California Corporations Code permits transactions between corporations having common directors so long as all material facts regarding the transaction and the relevant directorships are known to the respective boards of directors, and the matters are approved in good faith by a vote sufficient without counting the vote of the common director(s). Such transactions are not self dealing transactions subject to Section 4.

**Section 8. Violations of the Conflict of Interest Policy.**

(a) If the Board has reasonable cause to believe that an Interested Person has failed to disclose actual or possible conflicts of interest, it shall inform the Interested Person of the basis for such belief and afford the Interested Person an opportunity to explain the alleged failure to disclose.

(b) If, after hearing the Interested Person's response and after making further investigation as warranted by the circumstances, the Board determines the Interested Person has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

ARTICLE IV. RECORDS OF PROCEEDINGS

The minutes of the Board or Committee meeting convened to consider a transaction subject to the mitigating procedures described in Article III shall contain:

(a) The names of the Interested Persons who disclosed or whom otherwise were found to have a financial or other interest in connection with an actual or possible conflict of interest, the nature of the financial or other interest, any action taken to determine whether a conflict of interest was present, and the Board's or Committee's decision as to whether a conflict of interest in fact existed.

(b) The names of the persons who were present for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## ARTICLE V. COMPENSATION

**Section 1.** A voting member of the Board who receives compensation, directly or indirectly, from the Corporation for services is precluded from voting on matters pertaining to that member's compensation.

**Section 2.** A voting member of any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Corporation for services is precluded from voting on matters pertaining to that member's compensation.

**Section 3.** No voting member of the Board or any Committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly from the Corporation, either individually or collectively, is prohibited from providing information to any Committee regarding compensation.

## ARTICLE VI. ANNUAL STATEMENTS

Each person subject to this Policy shall annually sign a statement which affirms that such person:

(a) has received a copy of the Policy;
(b) has read and understands the Policy;
(c) has agreed to comply with the Policy; and
(d) understands the Corporation is charitable and in order to maintain its federal tax exemption it must engage primarily in activities which accomplish one or more of its tax-exempt purposes.

In addition, Interested Persons shall make an annual disclosure of on-going relationships and interests that may present a conflict of interest. Disclosures should address current affiliations, as well as past affiliations for the prior two years. Conflict of interest disclosure forms will be submitted to the Secretary annually, and when appropriate, at or prior to action on relevant business transactions.

DULY ADOPTED *by unanimous voice vote of the Board on 11 April, 2013.*

Name: The Center for Medical Progress   EIN: 16 2232101

## IV. Narrative Description of Your Activities

The Center for Medical Progress develops special educational projects to raise awareness about the medical ethics implicated in medical advances, such as stem cell research, and other bioethical issues. These projects are frequently journalistic and multi-media in format. They include, but are not limited to, printed publications, documentary videos, speaking tours, multi-media presentations, articles, reports, and various new media.

Educational projects are established and overseen by the Directors and Officers of The Center for Medical Progress. Projects are often conducted with the assistance of individuals with special production skills in the project format, such as researchers, writers, and video editors. Most educational projects have a nationwide focus but some may from time to time focus on local or even international bioethical and bioscience concerns. Depending on the size and scope of an individual project, The Center for Medical Progress may procure additional volunteer or contracted research and production help. Also depending on the size and scope of proposed projects, The Center may conduct multiple projects at once or focus on one exclusively for a time. In any case virtually all The Center's time is spent on the educational projects.

Educational Projects are developed primarily through the cloud-based collaboration of the Directors and Officers and any volunteers, employees, or contractors, many of whom reside and work in California, and also through in-person collaborative meetings from time to time as is advantageous. Because of the national focus of the educational projects, representatives and agents for The Center for Medical Progress may frequently travel throughout the country to do on-location research, obtain expert interviews, and promote and publicize The Center's educational projects.

The activities of The Center for Medical Progress are funded through gifts and contributions from the public.

## V. Compensation and Other Financial Arrangements with Your Officers, Directors, Trustees, Employees, and Independent Contractors

3a. For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

David Daleiden
*Qualifications:* David Daleiden has five years of experience in investigative research related to health care and bioethics topics. He has designed and executed multiple multi-state investigative journalism projects, from initial story concept to public presentation.
*Hours:* 50 hours/week
*Duties:* As Chief Executive Officer, David is responsible for directing the research, planning, and production of The Center for Medical Progress' educational projects, as well as general administrative operations for the organization. David is also responsible

Name: The Center for Medical Progress                 EIN: 46-2252984

for overseeing employees or contractors working on educational projects for The Center
for Medical Progress.

Albin Rhomberg:
*Qualifications:* Albin Rhomberg has 3 decades of experience researching bioethical
issues and documenting violations of medical ethics. Albin is a retired Physics professor
and holds a PhD in Applied Physics from UC San Diego.
*Hours:* 5 hours/week
*Duties:* As CFO, Albin is responsible for reviewing the finances of the organization,
advising the development of educational projects, and participating in fundraising.

Troy Newman:
*Qualifications:* Troy Newman has over two decades of experience in monitoring medical
professional compliance with local and state regulations and advocacy for healthcare
consumers.
*Hours:* 5 hours/week
*Duties:* As Secretary, Troy is responsible for keeping the organization's Board Meeting
minutes, advising the development of educational projects, and assisting in research for
educational projects.


VIII. Your Specific Activities

4a. Attach a description of each fundraising program.

*Email solicitations.*
From time to time, The Center for Medical Progress may solicit donations via e-mail
from individuals on our e-mail list.

*Personal solicitations.*
The Center for Medical Progress primarily solicits donations through personal meetings
with members of the public who support the purpose of the organization.

*Accept donations on your website.*
The Center for Medical Progress maintains a PayPal "Donate" button on our website
which allows members of the public to donate to our PayPal account.

4d. List all states and jurisdictions in which you conduct fundraising. Specify
whether you fundraise for your own organization.

Los Angeles County, CA – fundraising for own organization
New York County, NY – fundraising for own organization
Orange County, CA – fundraising for own organization
Sacramento County, CA – fundraising for own organization
San Diego County, CA – fundraising for own organization
Santa Clara County, CA – fundraising for own organization

Name: The Center for Medical Progress     EIN: 46-2252984

### 10. Intellectual property

The Center for Medical Progress will own intellectual property in the form of copyrights for publications, videos, and other media produced by The Center as indicated in the Narrative Description (Part IV). Most intellectual property will be available free online. For materials distributed in physical form, such as printed works or DVDs, a small fee may be charged in order to cover the cost of producing the physical media.

### 11. Intellectual property donation agreements

The Center for Medical Progress may receive donations of intellectual property from other individuals or entities, such as musical soundtrack compositions or video clips. These donations will be received according to such agreements as shall be mutually acceptable to the donor and The Center and in compliance with all applicable copyright law.

### IX. Financial Data

### 22. Itemized list of expenses for Professional fees

| Item | Cost |
|---|---|
| Independent Contractor fees *(up to 5 temporary contractors)* | $50,000.00 |

### 23. Itemized list of expenses not otherwise classified

| Item | Cost |
|---|---|
| Video Recording Equipment | $10,000.00 |
| Video Production Equipment | $5,000.00 |
| Research, Production, and Promotional Travel | $25,000.00 |
| TOTAL | $40,000.00 |

To: Jason Sammons        Page 1 of 4        2013-12-17 08:21:18 (GMT)        19168483301 From: David Daleiden

# FAX COVER SHEET

| TO | Jason Sammons |
|---|---|
| COMPANY | Internal Revenue Service |
| FAX NUMBER | 15132634590 |
| FROM | David Daleiden |
| DATE | 2013-12-17 08:20:50 GMT |
| RE | The Center for Medical Progress - Information Request. |

## COVER MESSAGE

Dear Jason:

Please find attached the returned completed and signed Information Request and a copy of the original letter as directed.

Under penalties of perjury, I declare that I have examined this information, including accompanying documents, and, to the best of my knowledge and belief, the information contains all the relevant facts relating to the request for the information, and such facts are true, correct, and complete.

Thanks,

David Daleiden

Chief Executive Officer

The Center for Medical Progress

DEC-17-2013  03:29        19168483301        96%        P.01

Internal Revenue Service                          Department of the Treasury
P.O. BOX 2508
Cincinnati, OH 45201

Date: November 04, 2013

                                                 Employer Identification Number:
                                                   46-2252984
                                                 Person to Contact – Group #:
THE CENTER FOR MEDICAL PROGRESS                    Jason Sammons - 7829
5325 ELKHORN BLVD 305                              ID#:0677004
SACRAMENTO, CA 95842-2526                         Contact Telephone Numbers:
                                                   513-263-3219  Phone
                                                   513-263-4590  Fax
                                                 Response Due Date:
                                                   November 25, 2013

Dear Sir or Madam:

We need more information before we can complete our consideration of your application for
exemption. Please provide the information requested on the enclosed Information Request
by the response due date shown above. Your response must be signed by an authorized
person or an officer whose name is listed on your application. Also, the information you
submit should be accompanied by the following declaration:

    *Under penalties of perjury, I declare that I have examined this information,
    including accompanying documents, and, to the best of my knowledge and belief,
    the information contains all the relevant facts relating to the request for the
    information, and such facts are true, correct, and complete.*

If we approve your application for exemption, we will be required by law to make the
application and the information that you submit in response to this letter available for public
inspection. Please ensure that your response doesn't include unnecessary personal
identifying information, such as bank account numbers or Social Security numbers, that
could result in identity theft or other adverse consequences if publicly disclosed. If you have
any questions about the public inspection of your application or other documents, please
call the person whose name and telephone number are shown above.

To facilitate processing of your application, please attach a copy of this letter to your
response and all correspondence related to your application. This will enable us to quickly
and accurately associate the additional documents with your case file. Also, please note the
following important response submission information:

*   Please don't fax and mail your response. Faxing and mailing your response will result
    in unnecessary delays in processing your application. Each piece of correspondence
    submitted (whether fax or mail) must be processed, assigned, and reviewed by an EO
    Determinations specialist.

*   Please don't fax your response multiple times. Faxing your response multiple times will
    delay the processing of your application for the reasons noted above.

                                                 Letter 1312 (Rev. 5-2011)
                                                 Catalog Number 35163W

THE CENTER FOR MEDICAL PROGRESS
46-2252984

* Please don't call to verify receipt of your response without allowing for adequate processing time. It takes a minimum of three workdays to process your faxed or mailed response from the day it is received.

If we don't hear from you by the response due date shown above, we will assume you no longer want us to consider your application for exemption and will close your case. As a result, the Internal Revenue Service will treat you as a taxable entity. If we receive the information after the response due date, we may ask you to send us a new application.

In addition, if you don't respond to the information request by the due date, we will conclude that you have not taken all reasonable steps to complete your application for exemption. Under Internal Revenue Code section 7428(b)(2), you must show that you have taken all the reasonable steps to obtain your exemption letter under IRS procedures in a timely manner and exhausted your administrative remedies before you can pursue a declaratory judgment. Accordingly, if you fail to timely provide the information we need to enable us to act on your application, you may lose your rights to a declaratory judgment under Code section 7428.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

*Jason Sammons*

Jason Sammons
Exempt Organizations Specialist

Enclosure:
Information Request

Letter 1312 (Rev. 5-2011)
Catalog Number 35163W

Additional Information Requested:                          Page 1 of 1

Name:  THE CENTER FOR MEDICAL PROGRESS
EIN:     46-2252984

> *Please read the Penalties of Perjury statement noted above. Then, please sign and date below indicating you agree to the Declaration.*

⟶ _____        12/16/13_____
      Name                                    Date

1.) It is not evident from the information you submitted whether or not you meet the operational requirements to be exempt under section 501(c)(3). Therefore, please sign below to attest that you are operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activites involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office;

_____        12/16/13_____
Signature                                  Date

IF MAILING, PLEASE DIRECT ALL CORRESPONDENCE TO:

US Mail:                              Street Address:

Internal Revenue Service          Internal Revenue Service
Exempt Organizations             Exempt Organizations
P.O. Box 2508                       550 Main St, Federal Bldg.
Cincinnati, OH 45201             Cincinnati, OH 45202
ATT:Jason Sammons              ATT:Jason Sammons
    Room 4511                          Room 4511
    Group 7829                         Group 7829

Additional Information Requested:                    Page 1 of 1
Name:  THE CENTER FOR MEDICAL PROGRESS
EIN:    46-2252984

*Please read the Penalties of Perjury statement noted above. Then, please sign
and date below, indicating you agree to the Declaration.*

_____          _____
*Name*                           *Date*

1.) It is not evident from the information you submitted whether or not you meet the
operational requirements to be exempt under section 501(c)(3).  Therefore, please sign
below to attest that you are operated exclusively for religious, charitable, scientific, testing
for public safety, literary, or educational purposes, or to foster national or international
amateur sports competition (but only if no part of its activities involve the provision of
athletic facilities or equipment), or for the prevention of cruelty to children or animals, no
part of the net earnings of which inures to the benefit of any private shareholder or
individual, no substantial part of the activities of which is carrying on propaganda, or
otherwise attempting, to influence legislation (except as otherwise provided in subsection
(h)), and which does not participate in, or intervene in (including the publishing or
distributing of statements), any political campaign on behalf of (or in opposition to) any
candidate for public office.

_____          _____
Signature                        Date

IF MAILING, PLEASE DIRECT ALL CORRESPONDENCE TO:

US Mail:                         Street Address:

Internal Revenue Service         Internal Revenue Service
Exempt Organizations             Exempt Organizations
P.O. Box 2508                    550 Main St, Federal Bldg.
Cincinnati, OH 45201             Cincinnati, OH 45202
ATT:Jason Sammons                    ATT:Jason Sammons
   Room 4511                          Room 4511
   Group 7829                         Group 7829

Internal Revenue Service                    Department of the Treasury
P.O. Box 2508
Cincinnati, OH 45201

Date:  December 5, 2013

                                          Employer Identification Number:
                                             46-2252984
THE CENTER FOR MEDICAL PROGRESS    Person to Contact – Group #:
5325 ELKHORN BLVD #305                 Jason Sammons - 7829
SACRAMENTO, CA 95842-2526             ID# 0677004
                                          Contact Telephone Numbers:
                                           513-263-3219   Phone
                                           855-202-6947   Fax
                                          Response Due Date:
                                           December 19, 2013

Dear Applicant:

We sent you a letter requesting additional information we need in order to consider your
application for exemption on November 4, 2013.  We also attempted to contact your designated
representative by telephone to try to obtain the requested information.  We have not received a
response to our information request.

Please provide the information requested in the enclosure by the due date shown in the heading
of this letter.  If we receive the information requested by the due date, we will continue to
process your application for exemption under section 501(c)(3) of the Code.  If we do not
receive the information requested by the due date, we will be unable to consider your
application for exemption further and will close your case.

If you have any questions or need assistance regarding our request for information, please
contact me directly at the telephone number listed above.

                                      Sincerely yours,

                                      *Jason Sammons*

                                      Jason Sammons
                                        Exempt Organizations Specialist

Enclosures:
Information Request (copy of Letter 1312)

                                      Letter 4423 (5-2011)

Internal Revenue Service                    Department of the Treasury
P.O. BOX 2508
Cincinnati, OH 45201

Date: November 04, 2013
                                            Employer Identification Number:
                                              46-2252984
                                            Person to Contact – Group #:
THE CENTER FOR MEDICAL PROGRESS               Jason Sammons - 7829
5325 ELKHORN BLVD 305                          ID# 0677004
SACRAMENTO, CA 95842-2526                   Contact Telephone Numbers:
                                              513-263-3219  Phone
                                              513-263-4590  Fax
                                            Response Due Date:
                                              November 25, 2013

Dear Sir or Madam:

We need more information before we can complete our consideration of your application for
exemption. Please provide the information requested on the enclosed Information Request
by the response due date shown above. Your response must be signed by an authorized
person or an officer whose name is listed on your application. Also, the information you
submit should be accompanied by the following declaration:

> Under penalties of perjury, I declare that I have examined this information,
> including accompanying documents, and, to the best of my knowledge and belief,
> the information contains all the relevant facts relating to the request for the
> information, and such facts are true, correct, and complete.

If we approve your application for exemption, we will be required by law to make the
application and the information that you submit in response to this letter available for public
inspection. Please ensure that your response doesn't include unnecessary personal
identifying information, such as bank account numbers or Social Security numbers, that
could result in identity theft or other adverse consequences if publicly disclosed. If you have
any questions about the public inspection of your application or other documents, please
call the person whose name and telephone number are shown above.

To facilitate processing of your application, please attach a copy of this letter to your
response and all correspondence related to your application. This will enable us to quickly
and accurately associate the additional documents with your case file. Also, please note the
following important response submission information:

- Please don't fax and mail your response. Faxing and mailing your response will result
  in unnecessary delays in processing your application. Each piece of correspondence
  submitted (whether fax or mail) must be processed, assigned, and reviewed by an EO
  Determinations specialist.

- Please don't fax your response multiple times. Faxing your response multiple times will
  delay the processing of your application for the reasons noted above.

Letter 1312 (Rev. 5-2011)
Catalog Number 35153W

THE CENTER FOR MEDICAL PROGRESS
46-2252984

- Please don't call to verify receipt of your response without allowing for adequate processing time. It takes a minimum of three workdays to process your faxed or mailed response from the day it is received.

If we don't hear from you by the response due date shown above, we will assume you no longer want us to consider your application for exemption and will close your case. As a result, the Internal Revenue Service will treat you as a taxable entity. If we receive the information after the response due date, we may ask you to send us a new application.

In addition, if you don't respond to the information request by the due date, we will conclude that you have not taken all reasonable steps to complete your application for exemption. Under Internal Revenue Code section 7428(b)(2), you must show that you have taken all the reasonable steps to obtain your exemption letter under IRS procedures in a timely manner and exhausted your administrative remedies before you can pursue a declaratory judgment. Accordingly, if you fail to timely provide the information we need to enable us to act on your application, you may lose your rights to a declaratory judgment under Code section 7428.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

*Jason Sammons*

Jason Sammons
Exempt Organizations Specialist

Enclosure:
Information Request

Letter 1312 (Rev. 5-2011)
Catalog Number 35163W

IRS **DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  03-12-2013

Employer Identification Number:
46-2252984

Form:  SS-4

Number of this notice:  CP 575 E

CENTER FOR MEDICAL PROGRESS
5034 EL CEMONTE AVE
DAVIS, CA  95618

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you EIN
46-2252984.  This EIN will identify you, your business accounts, tax returns, and documents,
even if you have no employees.  Please keep this notice in your permanent records.

When filing tax documents, payments, and related correspondence, it's very important that
you use your EIN along with your complete name and address exactly as shown above.  Any
variation may cause a delay in processing, result in incorrect information in your account,
or even cause you to be assigned more than one EIN.  If the information shown above isn't
correct, please send us the correction using the attached tear-off stub.

Annual filing requirements

Most organizations with an EIN have an annual filing requirement, even if they engage
in minimal or no activity.

A. If you are tax exempt, you may be required to file one of the following returns or
notices.

     Form 990, Return of Organization Exempt From Income Tax
     Form 990-EZ, Short Form Return of Organization Exempt From Income Tax
     Form 990-PF, Return of Private Foundation
     Form 990-N, e-Postcard (available online only)

Additionally, you may be required to file your annual return electronically.

If an organization required to file a Form 990, Form 990-PF, Form 990-EZ, or Form 990-N
does not do so for three consecutive years, its tax-exempt status is automatically revoked
as of the due date of the third return or notice.

Please refer to www.irs.gov/990filing for the most current information on your filing
requirements.

B. If you are not tax-exempt, you may be required to file one of the following returns:

     Form 1120, U.S. Corporation Income Tax Return
     Form 1041, U.S. Income Tax Return for Estates and Trusts
     Form 1065, U.S. Return of Partnership Income

Please refer to Publication 1635, Understanding Your EIN, for more information about
which forms you may be required to file.

{IRS USE ONLY}     575E              03-12-2013   CENT   O   9999999999   SS-4

Applying for Tax-Exempt Status

Receiving an EIN from the IRS is not the same thing as receiving IRS recognition of
tax-exempt status. To apply for formal recognition of tax-exempt status, most organizations
will need to complete either Form 1023, *Application for Recognition Under Section 501(c)(3)
of the Internal Revenue Code*, or Form 1024, *Application for Recognition of Exemption
Under Section 501(a)*. Submit the completed form, all applicable attachments, and the
required user fee to:

Internal Revenue Service
PO Box 12192
Covington, KY  41012-0192

Publication 557, Tax Exempt Status for Your Organization, has details on the application,
process as well as information on returns you may need to file.

Additional information

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you don't have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

  * Keep a copy of this notice in your permanent records.  **This notice is issued only
    one time and the IRS will not be able to generate a duplicate copy for you.**  You
    may give a copy of this document to anyone asking for proof of your EIN.

  * Use this EIN and your name exactly as they appear at the top of this notice on all
    your federal tax forms.

  * Refer to this EIN on your tax-related correspondence and documents.

  * Provide future officers of your organization with a copy of this notice.

If you have questions about your EIN, you can contact us using the phone number or address
shown at the top of this notice.  If you write, please tear off the stub at the bottom of
this notice and send it along with your letter.  If you don't need to write us, please
don't complete and return this stub.

Your name control associated with this EIN is CENT.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

(IRS USE ONLY)    575E              03-12-2013  CENT  O  9999999999  SS-4

Keep this part for your records.        CP 575 E (Rev. 7-2007)

-----------------------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                    CP 575 E
correct any errors in your name or address.
                                                           9999999999

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  03-12-2013
(     )    -                               EMPLOYER IDENTIFICATION NUMBER:  46-2252984
_____    _____        FORM:  SS-4                NOBOD


INTERNAL REVENUE SERVICE                  CENTER FOR MEDICAL PROGRESS
CINCINNATI  OH   45999-0023               5034 EL CEMONTE AVE
|ılıılılıldılılılılılıllıllıılılılılılı|  DAVIS, CA  95618

INTERNAL REVENUE SERVICE                        DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH  45201

Date: DEC 30 2013                   Employer Identification Number:
                                      46-2252984
                                    DLN:
                                      17053107395043
THE CENTER FOR MEDICAL PROGRESS     Contact Person:
5325 ELKHORN BLVD 305                  JASON T SAMMONS          ID# 31616
SACRAMENTO, CA  95842-2526          Contact Telephone Number:
                                      (877) 829-5500
                                    Accounting Period Ending:
                                      December 31
                                    Public Charity Status:
                                      170(b)(1)(A)(vi)
                                    Form 990 Required:
                                      Yes
                                    Effective Date of Exemption:
                                      May 07, 2013
                                    Contribution Deductibility:
                                      Yes
                                    Addendum Applies:
                                      No

Dear Applicant:

We are pleased to inform you that upon review of your application for tax
exempt status we have determined that you are exempt from Federal income tax
under section 501(c)(3) of the Internal Revenue Code.  Contributions to you are
deductible under section 170 of the Code.  You are also qualified to receive
tax deductible bequests, devises, transfers or gifts under section 2055, 2106
or 2522 of the Code.  Because this letter could help resolve any questions
regarding your exempt status, you should keep it in your permanent records.

Organizations exempt under section 501(c)(3) of the Code are further classified
as either public charities or private foundations.  We determined that you are
a public charity under the Code section(s) listed in the heading of this
letter.

Please see enclosed Publication 4221-PC, Compliance Guide for 501(c)(3) Public
Charities, for some helpful information about your responsibilities as an
exempt organization.

                                    Sincerely,

                                    Director, Exempt Organizations

Enclosure:  Publication 4221-PC

                                                     Letter  947