# Exhibit 1

**OPPOSITION TO EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

**Case No. 15-72844**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**IN RE THE CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; AND DAVID DALEIDEN**

---

**THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES LLC, DAVID DALEIDEN (AKA "ROBERT SARKIS"), AND TROY NEWMAN,**

*Petitioners,*

v.

**NATIONAL ABORTION FEDERATION (NAF),**

*Respondent.*

---

On Appeal From the United States District Court
for the Northern District of California
The Honorable William H. Orrick, III Presiding
(Case No. 3:15-cv-3522-WHO)

---

## RESPONDENT'S OPPOSITION TO PETITIONERS' EMERGENCY MOTION FOR STAY OF DISCOVERY PENDING APPEAL

Linda E. Shostak (CA SBN 64599)
LShostak@mofo.com
Derek F. Foran (CA SBN 224569)
DForan@mofo.com
Nicholas s. Napolitan (CA SBN 251762)
NNapolitan@mofo.com
Christopher L. Robinson (CA SBN 260778)
ChristopherRobinson@mofo.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Respondent*
*National Abortion Federation (NAF)*

## CORPORATE DISCLOSURE STATEMENT

Respondent National Abortion Federation ("NAF") is a not-for-profit corporation organized under the General Not for Profit Corporation Law of the State of Missouri.  It does not have any parent corporation, and no publicly held corporation owns ten percent or more of its stock.

## STATEMENT OF RELATED CASES

NAF is not aware of any related cases pending in this Circuit.

sf-3576080

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

STATEMENT OF RELATED CASES .................................................................. i

TABLE OF AUTHORITIES .............................................................................. iii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 3

ARGUMENT .................................................................................................... 8

    A.    CMP Cannot Show a Strong Likelihood of Success on
the Merits on Its Petition for Writ of Mandamus. .............................. 8

    B.    The Three Remaining Factors Necessary to Establish a
Stay of Discovery All Favor NAF and Cut Against CMP. ............... 16

CONCLUSION ............................................................................................... 20

sf-3576080

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cal. Dep't of Water Res. v. Powerex Corp.*,
  533 F.3d 1087 (9th Cir. 2008) ................................................................9

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991)..............................................................................14, 16

*Davis v. Elec. Arts, Inc.*,
  No. C-10-03328 RS DMR, 2011 WL 2621626 (N.D. Cal. July 5, 2011) ..........11

*DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*,
  219 F.3d 930 (9th Cir. 2000) ................................................................9

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ..........................................................16

*In re Van Dusen*,
  654 F.3d 838 (9th Cir. 2011) ..........................................................8, 9

*McLaughlin v. Serv. Emps. Union, Local 280*,
  880 F.2d 170 (9th Cir. 1989) ..............................................................17

*Metabolife Int'l Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ....................................................*passim*

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ..............................................................11, 12

*Nken v. Holder*,
  556 U.S. 418 (2009).................................................................*passim*

*Ohno v. Yasuma*,
  723 F.3d 984 (9th Cir. 2013) ..........................................................16

*Perricone v. Perricone*,
  292 Conn. 187 (2009) ......................................................................14, 15

*United States v. Sourapas*,
515 F.2d 295 (9th Cir. 1975) .............................................................17

*United States v. White*,
322 U.S. 694 (1944) ...........................................................................17

**STATUTES**

Cal. Civ. Code § 3427 *et seq.* ............................................................20

Cal. Gov. Code
§ 6215(a) .............................................................................................20
§ 6218 *et seq.* ....................................................................................20
§ 6254.28 ............................................................................................20

Cal. Penal Code
§ 423 *et seq.* ......................................................................................20
§ 632 ...................................................................................................5

**RULES**

Fed. R. Civ. P.
Rule 12(b)(6) .......................................................................................12
Rule 26 ..................................................................................................7
Rule 26(c) ...........................................................................................13
Rule 26(d) ...........................................................................................13
Rule 56 ...........................................................................................7, 10
Rule 65(d)(2) .......................................................................................18

**OTHER AUTHORITIES**

First Amendment...............................................................................*passim*

Fifth Amendment ...............................................................................17

# INTRODUCTION

Petitioner CMP's cursory 5-page motion to stay all discovery in the lower court pending its extraordinary writ of mandamus is meritless and should be denied.[1] The district court in this case properly held that discovery was "critical" to resolving NAF's preliminary injunction motion, and that CMP's 64-page anti-SLAPP motion directed to NAF's twelve state-law causes of action was "riddled with factual determinations that must be resolved" before ruling on that motion. Therefore, the district court correctly ruled that, under Ninth Circuit precedent, CMP's arguments for a discovery stay were "unpersuasive to the point of being frivolous" and that this case "presents an especially compelling case for allowing discovery."

The district court also correctly ruled that the parties "do not disagree" about NAF's central allegations in this case. Petitioners are anti-abortion extremists who have waged an illegal three-year campaign to smear providers of abortion care in the United States, and to place them in harm's way, merely for ensuring the constitutional right of women in this country to make their own reproductive choices. They invented a fake company, manufactured fake marketing materials, mocked up a fake website, and created fake driver's licenses and business cards.

---

[1] "Petitioners" or "CMP" refers to The Center for Medical Progress ("The Center"), Biomax Procurement Services, LLC ("Biomax"), and David Daleiden.

Posing as a legitimate tissue procurement company, they approached NAF to gain access to its highly confidential annual meetings. They signed confidentiality agreements (agreements that the district court found CMP "unquestionably breached") in which they promised not to make any video recordings at NAF's annual meetings, and to keep information they learned at those meetings confidential. Contrary to these promises, Petitioners collected identifying information about NAF members and secretly recorded them for the purpose of trashing their professional reputations and placing them in harm's way.

Petitioners went public with their conspiracy on July 14. NAF filed suit on July 31 and sought, and was granted, a TRO. Ever since, CMP has stonewalled the district court and NAF with respect to discovery. Its first gambit was to file a 64-page anti-SLAPP motion that was "riddled" with factual disputes. Applying clear Ninth Circuit precedent, *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), the district court properly concluded that a stay was not warranted. CMP's writ of mandamus and "emergency" motion to stay discovery is just another attempt on its part to shield its criminal conduct, and to deny NAF discovery that is "critical" to NAF's preliminary injunction motion. But CMP's latest attempt to shield its illegal conduct also fails. For the reasons explained below, CMP cannot meet *any* of the four factors necessary to obtain the extraordinary remedy of a stay of all discovery pending resolution of its mandamus petition. The district court's

order denying CMP's motion to stay contains no "clear error" because it correctly applied Ninth Circuit precedent. The Court should deny CMP's motion to stay.

## BACKGROUND

NAF is a not-for-profit professional association of abortion providers. Ex.1 at 8.[2] One of NAF's most important roles is the responsibility to protect the safety and security of its members. *Id.* This is so because, despite the legality of abortion care, abortion providers are relentlessly targeted by anti-abortion extremists. *Id.* Many of the physicians and clinic staff at NAF meetings have been stalked, threatened, and intimidated. *Id.* The harassment NAF members have endured includes being picketed at their homes, churches, and children's schools. *Id.* Some NAF members have had death threats made against them. *Id.* NAF members who attend NAF meetings have had their names put on threatening "wanted" posters that are intended to incite violence against them. *Id.* Given the hostile climate and the history of violence, some NAF members go to great lengths to preserve their privacy and identity. *Id.* Many NAF members have security protocols in place to try to protect their identities. *Id.* NAF's annual meetings

---

[2] Exhibit references (Ex.) are to the exhibits attached to CMP's Emergency Motion for Stay of Discovery Pending Appeal. Appendix references (Axx) are to CMP's Appendix to its Petition for Writ of Mandamus. Citations to docket numbers are to the district court's docket.

represent one of the only places where NAF members can come together to learn about the latest research in the field and network without fear or harassment.  *Id.*

As the district court in this matter correctly observed, the parties in this case "do not disagree about NAF's central allegations."  A112.  Posing as representatives of a legitimate tissue procurement organization, agents of CMP assumed false identities, created a fake company called Biomax Procurement Services, and "lied to NAF in order to obtain access to NAF's annual meetings and gain private information about its members."  *Id.*  Specifically, CMP and its "agents" signed confidentiality agreements in which it promised not to disclose to third parties "any information which [was] disclosed orally or visually" without NAF's consent.  *Id.*  Those confidentiality agreements (which became necessary after extremists attempted to infiltrate NAF meetings in the 1990s, *see* A136), also state that NAF is entitled to injunctive relief in the event of a breach.  Having fraudulently gained access to NAF's annual meetings, CMP's agents mingled freely with abortion providers, gathering identifying information about them and secretly recording them.  A143-44.

On July 14, CMP went public with its conspiracy.  A150.  Since then David Daleiden has openly boasted about manufacturing a fake company in order to illegally tape providers of abortion care, tapes that were then heavily edited to purposely make it look as if these physicians are profiting from lawful fetal tissue

4

donation programs—when in fact the exact opposite is true.  A130.  The victims of this campaign thus far have had their professional reputations trashed.  *Id.*  They have been called "evil," "vile," "inhuman," "baby butchers," and "vicious demonic force[s]" who deserve "no mercy" and "the hangman's noose."  *Id.*  Death threats have been leveled against them.  *Id.*  One post stated: "I'll pay ten large to whomever kills Dr. Deborah Nucatola.  Anyone go for it."  And the CEO of StemExpress, a lawful tissue procurement company, has been labeled "a death-profiteer" who "should be hung by the neck using piano wire and propped up on the lawn in front of the building with a note attached . . . ."  A131.

CMP's brutally dishonest smear campaign continues to this day.  A150.  It has openly boasted about having thousands of hours of videotape, and has released videos on a weekly basis since the campaign began.  *See id.*  Accordingly, to prevent precisely the kind of irreparable reputational and other injuries suffered by CMP's initial victims, on July 31 NAF filed suit.  *See* A117-176.  NAF's complaint is 60-pages long, contains detailed allegations concerning CMP's illegal campaign, and avers thirteen causes of action, including RICO, breach of contract, fraud, and California Penal Code § 632 violations.  *Id.*

NAF also sought a TRO preventing CMP from disclosing any information stolen from NAF in violation of its confidentiality agreements.  *See* Ex. 1.  CMP's main argument in response to the TRO was that any restraining order would

constitute a "prior restraint" in violation of the First Amendment. The Court

entered the TRO on July 31 (AR114-116), and extended it on August 3. A111-

113. In rejecting CMP's "prior restraint" argument, the district court noted that

CMP's counsel had:

> [C]andidly agreed that he was not aware of any case that
> has held that a party who (1) by false pretenses gains
> access to confidential information, (2) promises to keep
> that information confidential, and (3) agrees that his
> breach of his agreement would subject him to injunctive
> relief, may nonetheless violate that agreement because of
> his First Amendment rights. Neither am I.

A112.

In addition to granting the TRO, the district court also granted NAF's

motion for expedited discovery in aid of the preliminary injunction motion. A113.

The Court's schedule for discovery and briefing on NAF's preliminary injunction

motion was subsequently extended by agreement of the parties. Dkt. 34. The

stipulated schedule required discovery to be completed by September 4. *Id.* The

district court also set an August 19 deadline for briefing on any discovery disputes,

and set a hearing on August 21 to resolve any such disputes. *Id.*

On August 17, two days before discovery briefs were due and four days

before the hearing set to resolve any discovery disputes, CMP filed a 64-page anti-

SLAPP motion. *See* A29. CMP provided no notice to the parties or to the district

sf-3576080

court before the day it filed this motion, and thereafter took the position that the filing of this motion stayed all discovery in federal court.  Dkt. 74 at 11-15.

At the discovery hearing on August 21, the district court denied CMP's oral motion to stay discovery, and thereafter issued a 15-page order explaining its reasons.  A1-15.  Applying clear Ninth Circuit precedent, the district court held that an anti-SLAPP motion only stays discovery in a federal court if doing so "does not conflict with other federal rules."  A5 (quoting and applying *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)).

Here, the district court had already held that NAF had established "good cause" for discovery under FRCP 26 in aid of its preliminary injunction motion. A6.  Beyond that, the district court held that CMP's 64-page anti-SLAPP motion was "riddled with factual determinations that must be resolved" and therefore a stay would also conflict with FRCP 56.  A10.  The court held that CMP's arguments to the contrary were "unpersuasive to the point of being frivolous," A13, that discovery was "essential" to the preliminary injunction motion, A14, and that this case "presents an especially compelling case for allowing discovery." A15.

Eighteen days after the district court's written order, and four days before a hearing in which the district court is expected to set a new discovery schedule,

CMP filed a writ of mandamus and an "emergency" motion to stay discovery in this Court.

## ARGUMENT

To prevail on its motion, CMP has the burden of establishing each of the following factors: (1) "a strong showing that [CMP] is likely to succeed on the merits" of its writ of mandamus; (2) that CMP "will be irreparably injured absent a stay"; (3) that a discovery stay would not "substantially injure the other parties interested in the proceeding"; and (4) "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* CMP's cursory five-page "emergency" motion to stay does not even come close to making the required showing. To the contrary, every single factor weighs against granting CMP a stay of discovery.

### A. CMP Cannot Show a Strong Likelihood of Success on the Merits on Its Petition for Writ of Mandamus.

CMP seeks to stay all discovery pending resolution of its petition for a writ of mandamus. A "writ of mandamus is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes." *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011) (citation omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion will justify the invocation of this . . . remedy." *Id.* (citation omitted). CMP "bears the burden of

showing that '[its] right to issuance of the writ is 'clear and indisputable.'" *Id*. at 840-41 (citation omitted).

The most important factor when considering a writ of mandamus is "whether the district court's order is clearly erroneous as a matter of law." *Id*. at 841. "Clear error" is a highly deferential standard of review. Mandamus will not issue merely because the petitioner has identified legal error. *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1092 (9th Cir. 2008). Rather, the court must have "a definite and firm conviction that the district court's interpretation . . . was incorrect." *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000).

Thus, it is CMP's burden to make a "strong showing," *Nken*, 556 U.S. at 434, that it is entitled to the "drastic and extraordinary" remedy of a writ of mandamus. *In re Van Dusen*, 654 F.3d at 840. This, CMP has not and cannot do.

**First**, CMP claims that its anti-SLAPP motion "address[es] only the legal sufficiency of the allegations in the Complaint," and therefore the district court erred and "misapplied" Ninth Circuit precedent when it "refused" to stay discovery. Mtn. at 6. The premise of this argument is woefully incorrect. Because CMP's 64-page anti-SLAPP motion is "riddled with factual determinations that must be resolved" in ruling on its motion (A10), the district court correctly determined a stay of discovery was not warranted under this Court's precedent.

The Ninth Circuit has squarely held that "[p]rocedural state laws," including the discovery-limiting aspects of California's anti-SLAPP statute, "are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." *Metabolife*, 264 F.3d at 845 (citation omitted). In *Metabolife*, this Court found that a stay of discovery under California's anti-SLAPP statute would conflict with FRCP 56, because the anti-SLAPP motion raised factual issues and therefore the nonmoving party was entitled to discovery that is "essential to its opposition." *Id.* at 846. This Court held that, in such a case, "the discovery-limiting aspects of" the automatic stay under California's anti-SLAPP statute "collide with the discovery-allowing aspects of Rule 56," and the state rule must give way to the federal rule. *See id*. Since *Metabolife*, numerous federal courts have held that a discovery stay under the anti-SLAPP statute is warranted only "where the issues raised in an anti-SLAPP motion are clean legal issues that render discovery irrelevant to the resolution of the motion." A8 (discussing and collecting cases).

Applying this precedent, the district court correctly determined that CMP's anti-SLAPP motion raised a host of factual issues and disputes that needed to be resolved before it could rule on the motion. A9-15.

As an initial matter, under the first prong of an anti-SLAPP motion, CMP is required to make "a threshold showing that the challenged cause of action is one

arising from protected activity" (*e.g.*, free speech). *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). Here, a critical issue is whether and to what extent CMP waived its First Amendment rights by knowingly and voluntarily signing confidentiality agreements in order to fraudulently gain access to NAF's meetings. "[A] defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." *Id.* at 94.

As the district court correctly noted, it cannot rule on this issue without discovery. A10 ("I cannot conceive of any way for [questions concerning waiver] to be resolved as a matter of law."); *Davis v. Elec. Arts, Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626, at *7 (N.D. Cal. July 5, 2011) (denying motion to stay because "discovery related to the issue of whether Defendant waived its First Amendment rights is essential to Plaintiff's opposition to the anti-SLAPP motion."). Waiver, as the district court explained, turns on "facts that NAF lacks or has not yet developed," including "what information defendants obtained, where and how they obtained it," the circumstances in which the confidentiality agreements were signed, the reasonableness of the various expectations, and the intent of both parties and of third parties." A14. The first prong of CMP's anti-SLAPP motion clearly and obviously raises critical factual issues.

11

Similarly, the district court correctly found there were a host of disputed factual issues raised under the second prong of CMP's motion. Assuming CMP could show that its conduct constitutes "protected activity," under the second step of the anti-SLAPP analysis the burden then shifts to NAF to demonstrate "a probability of prevailing" on its twelve state law causes of action. *Navellier*, 29 Cal. 4th at 88. While CMP blithely asserts the district court can resolve these issues under a Rule 12(b)(6) standard, the opposite is true. The complaint in this matter is 60 pages long and contains detailed allegations concerning CMP's three-year crime spree. The district court correctly held that determining whether NAF was likely to succeed on the merits of its claims would entail a fact intensive inquiry, and that CMP's anti-SLAPP arguments were "riddled" with disputed issues of fact that required discovery. These include, but are not limited to:

- Whether CMP conspired to obtain NAF confidential information and access to NAF's annual meetings by setting up a fake company, assuming false identities, and signing confidentiality agreements with the intent of breaching them.

- Whether CMP's agents knowingly and voluntarily waived its First Amendment rights in executing the confidentiality agreements and non-disclosure agreements.

- Whether NAF's confidentiality agreements only cover "formal events" as CMP contends. And more generally the permissible scope of NAF's confidentiality agreements, which turns on extrinsic evidence.

- Whether CMP's fraudulent misrepresentations to NAF proximately caused NAF's alleged harms.

- Whether NAF members had a reasonable expectation that they would not be secretly recorded, which must be analyzed in light of all relevant circumstances.

- Whether NAF's promissory fraud claim was barred because NAF had reaffirmed the confidentiality agreements: "this is a factual determination, and one that cannot be made at the pleading stage."

A11-12. These are just examples; the district court cited others. *See id.*

Accordingly, because CMP's motion raised numerous fact disputes that were "essential to [NAF's] opposition," *Metabolife*, 264 F.3d at 846, the district court simply applied Ninth Circuit precedent and held a stay was not warranted.

There is still another reason the district court denied CMP's motion to stay discovery: doing so would directly conflict with the district court's prior order that NAF had established good cause for preliminary injunction discovery pursuant to FRCP 26(d). A6-7. A party seeking a preliminary injunction may obtain discovery in aid of its motion if it can establish "good cause" for doing so. Fed. R. Civ. P. 26(d). In this case, on August 3 the district court granted NAF's motion for expedited discovery. The district court granted that motion "so that the parties could address certain limited factual matters that are critical to the case." A6. Thus, a stay of discovery would deny to NAF information that is essential to its preliminary injunction motion. Therefore, the district court held, there was a

"direct collision" between its prior order and the discovery limiting aspects of the anti-SLAPP statute, in which case, under *Metabolife*, a stay was not appropriate. A7-8.

In sum, having "thoroughly reviewed" CMP's anti-SLAPP motion, the district court held that CMP "ha[d] not met [its] burden to establish that there is a purely legal issue that can dispose of either the anti-SLAPP motion or the motion for a preliminary injunction." A10. To the contrary, the district court therefore correctly concluded that "this case presents an especially compelling case for allowing discovery." A15. Not only is this holding not "clearly erroneous," it is clearly correct, and consistent with Ninth Circuit precedent.

**<u>Second</u>**, CMP argues that NAF "is not entitled to any discovery" to support its preliminary injunction motion, because any such injunction would constitute a "prior restraint" in violation of the First Amendment. But CMP has no First Amendment rights to assert here because it has waived them. The law is clear that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Thus, "private parties who voluntarily enter into an agreement to restrict their own speech thereby waive their first amendment rights." *Perricone v. Perricone*, 292 Conn. 187, 202 (2009).

That is precisely what CMP did here. The confidentiality agreements that CMP knowingly and voluntarily signed expressly state that "any information which is disclosed orally or visually to [CMP]" is "confidential" and "should not be disclosed to any other individual or third parties." Dkt. 1-1 at 2. CMP "agree[d] to comply" with this provision, and further agreed to "hold in trust and confidence any confidential information received in the course of . . . the NAF Annual Meeting and agree[d] not to reproduce or disclose confidential information" without NAF's consent. *Id*. CMP and its agents also expressly agreed that if they breached these promises, NAF would be entitled to injunctive relief. *Id*. Beyond that, CMP's agents also signed non-disclosure agreements before gaining access to the meetings in which they promised not to make any "video, audio, photographic, or other recordings of the meetings or discussions at this conference." A184.

Thus, the district court's TRO is emphatically not a prior restraint because CMP agreed to restrain its own speech. *Perricone*, 292 Conn. at 202 ("[P]rivate parties who voluntarily enter into an agreement to restrict their own speech thereby waive their First Amendment rights"). What the court in *Perricone* observed is precisely true of this case:

> "The Defendant has not cited, however, and our research
> has not revealed, a single case in which a Court has held
> that a judicial restraining order that enforces an
> agreement restricting speech between private parties

> constitutes a per se violation of the first amendment's
> prohibition on prior restraints on speech."

*Id.* at 204; *Ohno v. Yasuma*, 723 F.3d 984, 999 & n.16 (9th Cir. 2013) (collecting

cases that "enforce restrictions on speech arising from domestic contracts that

could not have been enacted into law due to the First Amendment"); *Cohen*,

501 U.S. at 668-71 (state law enforcing promises does not run afoul of the First

Amendment because "[t]he parties themselves . . . determine the scope of their

legal obligations, and any restrictions that may be placed on the publication of

truthful information are self-imposed").

Thus, far from making a "strong showing" that the district court committed

"clear error" here, the district court's holding that its TRO was not a prior restraint

was correct, and comports with Supreme Court and Ninth Circuit precedent.

### B. The Three Remaining Factors Necessary to Establish a Stay of Discovery All Favor NAF and Cut Against CMP.

Because a clear error as a matter of law is a necessary condition for granting

a writ of mandamus, *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010),

and because CMP has made no such showing, this Court need go no further. If it is

inclined to do so, however, this Court should conclude that CMP has not met its

burden of establishing any of the other factors necessary to justify its extraordinary

request to stay all discovery pending disposition of its mandamus petition.

16

**First**, CMP has failed to show that it will suffer irreparable harm if a stay of discovery does not issue. *Nken*, 556 U.S. at 434. CMP claims that if it is "compelled to participate in discovery" it will be deprived "of [its] substantive rights under California's anti-SLAPP statute." Mot. at 7. But as explained above, CMP has no such "right," because its 64-page anti-SLAPP motion is "riddled" with factual disputes, and therefore under clear Ninth Circuit precedent, the discovery-limiting aspects must give way to the federal rules allowing discovery. *Metabolife*, 264 F.3d at 846.

CMP also suggests (but does not explain how) that it is likely to suffer irreparable harm because discovery in this case will implicate its First Amendment right of association and Fifth Amendment right not to incriminate itself. Mot. at 7. CMP has not submitted a shred of argument or evidence to support its throwaway assertion that discovery in this case will somehow implicate its First Amendment rights of association. *See McLaughlin v. Serv. Emps. Union, Local 280*, 880 F.2d 170, 175 (9th Cir. 1989) (rejecting associational privilege claims where defendants made no showing whatsoever in support).

Similarly, if CMP is suggesting it has a right to block discovery by asserting a Fifth Amendment right not to incriminate itself, it has no such right: "Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation." *United States v. White*,

322 U.S. 694, 699 (1944); *United States v. Sourapas*, 515 F.2d 295, 299 (9th Cir. 1975) ("It is firmly established that a corporation has no fifth amendment protection against self-incrimination and that neither the corporation, a corporate officer or any other person can prevent the production for examination of relevant corporate records.").  CMP's "irreparable harm" showing here is nonexistent.

**Second**, by contrast, if a stay is ordered NAF and its members would suffer "substantial injury."  *Nken*, 556 U.S. at 434.  Most urgently, NAF requires discovery from CMP to learn who it conspired with, what confidential information it stole, and what it has done with that information.  It is especially critical that NAF learn the identities of CMP's co-conspirators, because the TRO "binds only [those persons] who receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2).  NAF therefore urgently seeks to discover the identity of all persons to whom CMP disclosed NAF confidential information so that NAF may serve them with the TRO.

NAF also urgently needs discovery in order to obtain a preliminary injunction commensurate with the full scope of CMP's breach.  Currently, the TRO prohibits CMP from publishing video recordings and other NAF confidential information "taken" or "learned" at NAF's annual meetings.  A111.  But the parties' confidentiality agreements sweep more broadly to prohibit the *misuse* of NAF's confidential information.  *See* A180 ¶ 2 ("NAF Conference Information is

provided to Attendees to help enhance the quality and safety of services provided by NAF members and other participants.  Attendees may not use NAF Conference Information in any manner inconsistent with these purposes."). Discovery in this case will show that CMP misused NAF confidential information in order to make contacts with NAF members they would not have been able to make but for their fraud, engender the trust of those members, and secretly videotape them.  As the district court found, the discovery NAF seeks is narrowly tailored and "***essential to determining the scope of the preliminary injunction***."  A3 (emphasis added).  CMP's obstruction of this discovery is currently preventing NAF from expanding preliminary injunctive relief to cover the full scope of CMP's breaches.

Finally, even apart from the discovery needed in connection with NAF's preliminary injunction motion, NAF requires discovery to respond to CMP's anti-SLAPP motion.  As the district court correctly held, "discovery is ***essential*** to NAF's opposition to defendants' anti-SLAPP motion" because CMP's defense turns on "facts that NAF lacks or has not yet developed."  A14 (emphasis added).  Staying all discovery pending resolution of CMP's mandamus petition will therefore interfere with NAF's ability to respond to CMP's anti-SLAPP motion.

**Third**, and finally, the public interest very clearly favors allowing discovery to proceed.  *Nken*, 556 U.S. at 434.  In fact, CMP's argument that the public interest favors a stay of discovery because its activities have contributed

19

significantly to ongoing public and political debates, has it exactly backwards. Mot. ¶ 16. CMP's ongoing campaign of harassment and intimidation of abortion providers, including NAF members, in violation of NAF's confidentiality agreements tips the balance decidedly in NAF's favor.

As the California legislature acknowledged in 2002, persons who provide abortion services "are often subject to harassment, threats, and acts of violence." Cal. Gov. Code § 6215(a). The public policy protecting these individuals from harassment and violence is manifest in multiple state statutes enacted for their benefit. *See* Cal. Civ. Code § 3427 *et seq.*; Cal. Gov. Code § 6218 *et seq.*; Cal. Gov. Code § 6254.28; Cal. Penal Code § 423 *et seq.*

Every day that CMP is allowed to avoid discovery in this action puts NAF members in harm's way. A stay of discovery would allow unidentified CMP operatives to avoid being served with the TRO or otherwise brought within the jurisdiction of the district court. A stay of discovery would also allow CMP to avoid entry of a preliminary injunction that covers the full scope of its breaches.

## CONCLUSION

This Court should deny CMP's Emergency Motion to Stay Discovery.

Dated:     September 16, 2015

By:   */s/ Derek Foran*
DEREK F. FORAN

Linda E. Shostak (CA SBN 64599)
LShostak@mofo.com
Derek F. Foran (CA SBN 224569)
DForan@mofo.com
Nicholas s. Napolitan (CA SBN 251762)
NNapolitan@mofo.com
Christopher L. Robinson (CA SBN 260778)
ChristopherRobinson@mofo.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Respondent*
*National Abortion Federation (NAF)*

# CERTIFICATE OF SERVICE

9th Circuit Case Number:  15-72844

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **September 16, 2015**.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Derek Foran*

sf-3576080