# EXHIBIT 1

**Case No. 15-72844**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**IN RE THE CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; AND DAVID DALEIDEN**

**THE CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES LLC; DAVID DALEIDEN**

*Defendants-Petitioners,*

v.

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,**

*Respondent,*

**NATIONAL ABORTION FEDERATION,**

*Plaintiff-Real Party in Interest*

On Appeal From the United States District Court
for the Northern District of California
The Honorable William H. Orrick, III Presiding
(Case No. 3:15-cv-3522-WHO)

## PLAINTIFF-REAL PARTY IN INTEREST'S ANSWER
## TO PETITION FOR WRIT OF MANDAMUS

Linda E. Shostak (CA SBN 64599)
LShostak@mofo.com
Derek F. Foran (CA SBN 224569)
DForan@mofo.com
Nicholas s. Napolitan (CA SBN 251762)
NNapolitan@mofo.com
Christopher L. Robinson (CA SBN 260778)
ChristopherRobinson@mofo.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Respondent*
*National Abortion Federation (NAF)*

## CORPORATE DISCLOSURE STATEMENT

National Abortion Federation ("NAF") is a not-for-profit corporation organized under the General Not for Profit Corporation Law of the State of Missouri. It does not have any parent corporation, and no publicly held corporation owns ten percent or more of its stock.

## STATEMENT OF RELATED CASES

NAF is not aware of any related cases pending in this Circuit.

sf-3576667

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................... 2

    A.    The History of Violence, Intimidation, and Harassment
            Perpetrated Against NAF Members. ................................... 2

    B.    NAF Takes Extensive Measures to Protect the Security
            and Privacy of the Attendees at Its Annual Meetings. ........................ 4

    C.    Defendants Defraud NAF and Infiltrate Its Annual
            Meetings. .................................................................... 6

    D.    CMP's Illegal Campaign to Harass and Intimidate Goes
            Public. ....................................................................... 8

ARGUMENT ..................................................................................... 12

I.      CMP HAS NOT ESTABLISHED THAT THE DISTRICT
        COURT'S ORDER IS CLEARLY ERRONEOUS AS A
        MATTER OF LAW ................................................................ 12

    A.    The District Court Did Not Clearly Err in Concluding
            that CMP's 64-Page Anti-SLAPP Motion Is "Riddled"
            With Fact Disputes, and That Discovery Is "Essential" to
            NAF's Opposition. .......................................................... 13

    B.    The District Court Did Not Clearly Err in Refusing to
            Stay Discovery Necessary for NAF's Preliminary
            Injunction Motion. .......................................................... 21

CONCLUSION ................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

A.M.P. v. Hubbard Broad., Inc.,
  216 F. Supp. 2d 933 (D. Minn. 2001)................................................................26

Aeroplate Corp. v. Arch Ins. Co.,
  No. 06-1099 AWI SMS,
  2006 U.S. Dist. LEXIS 82180 (E.D. Cal. Nov. 8, 2006)....................................14

Alexander v. United States,
  509 U.S. 544 (1993)............................................................................................26

Bankers Life & Cas. Co. v. Holland,
  346 U.S. 379 (1953)............................................................................................12

Bartnicki v. Vopper,
  532 U.S. 514 (2001)............................................................................................26

Bauman v. U.S. Dist. Court,
  557 F.2d 650 (9th Cir. 1977) .............................................................................12

Bernardo v. Planned Parenthood Fed'n of Am.,
  115 Cal. App.4th 322, 358 (2004) .....................................................................18

Brooks v. Vallejo City Unified Sch. Dist.,
  No. 09-cv-1815,
  2009 U.S. Dist. LEXIS 101262 (E.D. Cal. Oct. 29, 2009)................................25

Cafasso v. Gen. Dynamics C4 Sys.,
  637 F.3d 1047 (9th Cir. 2011) ...........................................................................30

Califano v. Moynahan,
  596 F.2d 1320 (6th Cir. 1979) ...........................................................................22

CBS, Inc. v. Davis,
  510 U.S. 1315 (1994)..........................................................................................26

Cheney v. U.S. Dist. Court for D.C.,
  542 U.S. 367 (2004)......................................................................................12, 20

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) .................................................................................24, 27

*Davies v. Grossmont Union High School District*,
  930 F.2d 1390 (9th Cir. 1991) ...................................................................28, 29

*Davis v. Elec. Arts, Inc.*,
  N. C-10-03328 RS (DMR),
  2011 WL 2621626 (N.D. Cal. Jul. 5, 2011) ....................................15, 16, 17, 23

*DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*,
  219 F.3d 930 (9th Cir. 2000) .............................................................................13

*Dietemann v. Time, Inc.*,
  449 F.2d 245 (9th Cir. 1971) .............................................................................25

*Doe v. Gangland Prods., Inc.*,
  730 F.3d 946, 953 (9th Cir. 2013) ....................................................................18

*DVD Copy Control Ass'n, Inc. v. Bunner*,
  31 Cal. 4th 864 (2003) ......................................................................................24

*Erie Telecommunications, Inc. v. City of Erie*,
  853 F.2d 1084 (3d Cir. 1998) ...........................................................................23

*Exxon Corp. v. Heinze*,
  32 F.3d 1399 (9th Cir. 1994) ............................................................................22

*Garcia v. Google, Inc.*,
  786 F.3d 727 (9th Cir. 2015) ......................................................................26, 28

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ............................................................................28

*Greater L.A. Agency on Deafness v. CNN, Inc.*,
  742 F.3d 414, 423 (9th Cir. 2014) ....................................................................18

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ..........................................................................12

*In re Van Dusen*,
  654 F.3d 838 (9th Cir. 2011) ............................................................................12

*Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of L.A.*,
  530 F.3d 768 (9th Cir. 2008) .............................................................18

*ITT Telecom Prods. Corp. v. Dooley*,
  214 Cal. App. 3d 307 (1989) .............................................................25

*Johnson v. Zerbst*,
  304 U.S. 458 (1938).................................................................22, 23

*Leonard v. Clark*,
  12 F.3d 885 (9th Cir. 1993) ........................................................27, 28

*Lieberman v. KCOP Television, Inc.*,
  110 Cal. App. 4th 156, 166 (2003) ....................................................18

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) .............................................................13

*Metabolife Int'l Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ......................................................*passim*

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971) (*per curiam*) .....................................................26

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958).........................................................................26

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ................................................................16, 18

*Neb. Press Ass'n v. Stuart*,
  427 U.S. 539 (1976).........................................................................26

*Ohno v. Yasuma*,
  723 F.3d 984 (9th Cir. 2013) .............................................................24

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971).........................................................................26

*Perricone v. Perricone*,
  292 Conn. 187 (2009) .........................................................23, 24, 27

*Proctor & Gamble Co. v. Bankers Trust Co.*,
  78 F.3d 219 (6th Cir. 1996) ..................................................................26

*Roe v. Wade*,
  410 U.S. 113 (1973)............................................................................26

*Rogers v. Home Shopping Network, Inc.*,
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ..................................................15

*Saad v. Am. Diabetes Ass'n*,
  Case No. 15-10267, 2015 WL 751295 (D. Mass. Feb. 23, 2015).......26

*Se. Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975)............................................................................26

*Thompson v. Hayes*,
  748 F. Supp. 2d 824 (E.D. Tenn. 2010)..............................................26

*United States v. U.S. Dist. Court for S. Dist. of Cal.*,
  384 F.3d 1202 (9th Cir. 2004) ............................................................21

*Wentland v. Wass*,
  126 Cal. App. 4th 1484 (2005) ...........................................................17

*Will v. United States*,
  389 U.S. 90 (1967)..............................................................................12

*Z.F. v. Ripon Unified Sch. Dist.*,
  482 F. App'x 239 (9th Cir. 2012) ........................................11, 15, 16

**STATUTES**

Cal. Civ. Code
  § 425.16(g)..........................................................................................14
  § 3427 *et seq.* ...................................................................................29

Cal. Gov. Code
  § 6215(a)..............................................................................................29
  § 6218 *et seq.* ...................................................................................29
  § 6254.28..............................................................................................29

sf-3576667

Cal. Penal Code

§ 423 *et seq.* ...................................................................................................29

§ 632 ....................................................................................................................29

## RULES

Fed. R. Civ. P.

Rule 12(b)(6) .....................................................................................................16

Rule 26(d) .............................................................................................10, 11, 15

Rule 56 ................................................................................................11, 14, 15

Rule 56(d) ..........................................................................................................16

# INTRODUCTION

Far from being "extraordinary" or "unprecedented," as CMP claims, the district court's ruling in this case denying a stay of discovery under California's anti-SLAPP statute correctly applied Ninth Circuit precedent.[1]  The district court "thoroughly reviewed" CMP's 64-page anti-SLAPP motion, correctly determined that it is "riddled with factual determinations that must be resolved" before ruling on that motion, and that this case "presents an especially compelling case for allowing discovery" in light of the fact disputes at issue.  CMP's self-serving arguments to the contrary, the district court found, have "no merit" and are "unpersuasive to the point of being frivolous."  Accordingly, CMP cannot show— as it must to obtain the "drastic and extraordinary" remedy of a writ of mandamus—that the district court's denial of a stay of discovery was clearly erroneous as a matter of law under the Ninth Circuit's "highly deferential" standard.  To the contrary, the district court's ruling is consistent with Ninth Circuit precedent, and is demonstrably correct.

CMP cites only two reasons why it believes the district court's order was clear error.  First, CMP claims the district court had "no authority" to deny its stay motion under California's anti-SLAPP statute.  But numerous courts, including this

---

[1] "Petitioners" or "CMP" refers to The Center for Medical Progress ("The Center"), Biomax Procurement Services, LLC ("Biomax"), and David Daleiden.

Court, have held that the discovery-limiting provisions of California's procedural anti-SLAPP rules must give way to the discovery-allowing provisions of the Federal Rules where, as here, the anti-SLAPP motion raises fact issues requiring discovery before the motion can be ruled upon. That is exactly the case here.

Second, CMP claims that any preliminary injunction the district court *might* issue at some point in the future would constitute an invalid prior restraint under the First Amendment. But a key issue that can only be resolved by allowing discovery to proceed is whether CMP has any protectable First Amendment rights here *at all*. If CMP knowingly and voluntarily entered into confidentiality agreements restricting its right to speak, then it has no such rights, and any preliminary injunction the district court would issue would not be a prior restraint. Such waivers are routinely enforced. CMP has not cited a single case in which a court found a "prior restraint" under the circumstances presented here.

Petitioner's entire argument is an exercise in misdirection. The district court committed no error, much less clear error. This Court should deny CMP's writ and allow NAF discovery that the district court found was "critical" and "essential."

## BACKGROUND

### A. The History of Violence, Intimidation, and Harassment Perpetrated Against NAF Members.

NAF is a not-for-profit professional association of abortion providers. A121. A critical but unfortunately necessary part of NAF's work is to assist its

members in preventing and coping with harassment, intimidation, and violence perpetrated by anti-abortion extremists. A120. For more than the last 35 years, anti-abortion extremists have perpetrated tens of thousands of acts of violence and other criminal activities against NAF members and other abortion providers, including murder, shootings, arson, bombings, and chemical and acid attacks. A127-128. Since 1977, there have been over **60,000** recorded instances of harassment, intimidation, and violence perpetrated against abortion providers in this country. A128-129.

The culture of intimidation and violence leveled against NAF members is pervasive. Defendant Troy Newman, a CMP officer and the president of the anti-abortion group Operation Rescue, who has touted his role in the conspiracy to invade NAF's meetings, A123-124, has publicly proclaimed it should be lawful to murder providers of abortion care in this country. A123.

In light of this terrible reality, the safety and security of NAF's members is of the utmost importance to the organization. Many of NAF's members have themselves been targeted by anti-abortion extremists. A127, A133. They have been stalked, threatened, and intimidated, including being picketed at their homes, churches, and their children's schools. A133. Some NAF members have had death threats made against them, and bomb threats made against their clinics. *Id.* Others are forced to wear bullet-proof vests to work. *Id.* NAF members who

3

attend NAF meetings have had their names, photos, and personal information put on threatening "wanted" posters and websites that are intended to incite violence against them. *Id.* A number of NAF's members try to remain under the radar in their communities out of fear for their safety and that of their families. A120.

### B. NAF Takes Extensive Measures to Protect the Security and Privacy of the Attendees at Its Annual Meetings.

NAF's annual meetings, which it has held every year since 1977, are one of the only places where abortion providers can come together to learn about the latest medical research and network without fear of harassment or intimidation. A132. The annual meeting draws approximately 700-850 professional attendees each year. A120, A133. Because of the extreme violence perpetrated against NAF and its members, NAF has been forced to adopt extensive security and privacy measures at its annual meetings. A133, A136.

This was not always the case. A136. In the early years, before the violence against providers had escalated, NAF had no security at its meetings. *Id.* However, by the early 1990s, with the escalation in violence and intimidation perpetrated against its members, NAF was forced to put extensive security measures in place. *Id.* NAF security staff are involved in site selection, and once a site is selected, they meet with hotel staff, as well as local police officials, FBI and/or ATF agents, and fire and rescue personnel, to review security issues. A134.

4

During the meetings themselves, bomb sniffing dogs patrol the site, and a security team is onsite 24/7. *Id.*

NAF has had to continually increase precautions to secure a safe and intimidation-free environment at its annual meeting. A136. After anti-abortion extremists attempted to infiltrate NAF's meetings to identify providers in the late 1990s, NAF started requiring all attendees to sign confidentiality agreements. *Id.*

First, exhibitors who wish to attend NAF's annual meeting must submit a signed Exhibitor Agreement. A136-137, A178. As a condition of attending NAF's annual meeting, exhibitors must: (1) represent they have a legitimate business interest in reaching reproductive health care professionals; (2) provide "truthful, accurate, complete, and not misleading" information about themselves in their applications to NAF, and "truthfully and accurately" represent their business at NAF's meetings; and (3) "hold in trust and confidence any confidential information received" at NAF annual meetings. *Id.*

Second, all attendees must sign a non-disclosure agreement (NDA) to gain admittance to the meeting. A136, A180. Under the terms of the NDA, attendees must: (1) not make any video or other recordings at the meeting, (2) treat all information obtained and discussions had at the meeting as confidential, and (3) use that information only "to help enhance the quality and safety of services provided by NAF members and other participants." A138, A180.

5

While NAF would prefer not to take these measures, they are necessary to protect its members from harassment simply for supporting the constitutional right of women in this country to make their own reproductive choices.  A133.

### C.    Defendants Defraud NAF and Infiltrate Its Annual Meetings.

As the district court correctly observed, the parties in this case "do not disagree about NAF's central allegations" concerning CMP's misconduct.  A112.

In 2013, an organization holding itself out as "Biomax Procurement Services," approached NAF and sought access to NAF's annual meeting in San Francisco in 2014.  A214.  While we now know Biomax was just a front for CMP, at the time it held itself out as a legitimate fetal tissue procurement organization.  A138.  According to its website (now locked), the company "provides tissue and specimen procurement for academic and private bioscience researchers."  A139.  David Daleiden—who has admitted publicly to orchestrating this fraud—has stated that he worked with actors to carry out his and Biomax's ends.  A119, A150.

Individuals purporting to represent "Biomax" assumed false identities.  A124.  Biomax's CEO adopted the fake name "Susan Tennenbaum."  A139, A124.  "Tennenbaum's" supposed assistant assumed the fake name "Brianna Allen," "Rebecca Wagner" signed contracts on Biomax's behalf, and "Adrian Lopez" claimed to be Biomax's "Procurement Technician."  A159, A180, A191.

6

On November 27, 2013, "Brianna Allen" sent an email to NAF, using a biomaxprocurementservices@gmail.com address, and introduced herself as "assistant for Susan Tennenbaum at Biomax" (susan@biomaxps.com is cc'd). A140. "Allen" stated that Biomax wanted to "reserv[e] exhibitor space at the conference your organization will have in San Francisco" in 2014. *Id.* Several communications, all of which were designed to and did defraud and mislead NAF followed thereafter. *See id.* "Biomax" subsequently entered into Exhibitor Agreements and NDAs with NAF in 2014 and 2015, in which it expressly promised to (1) truthfully represent themselves and their businesses at NAF's meetings, (2) refrain from making video recordings at NAF's meetings, (3) hold all information obtained at NAF's meetings confidential, and (4) be subject to injunctive relief as a remedy in the event of a breach. A178 ¶¶ 17-18, A180.

Representatives of Biomax, including "Robert Sarkis" (aka David Daleiden), "Susan Tennenbaum," and "Brianna Allen," presented fake California drivers' licenses to NAF's registration staff in order to gain admittance to NAF's annual meetings in 2014 and 2015. A158, A162, A164. Once inside NAF's annual meetings, Biomax's agents set up a "Biomax" booth replete with fake signage and brochures, touting itself to attendees and NAF staff as a legitimate tissue procurement service organization. A126. Biomax agents freely roamed the exhibit hall, mingling with abortion providers and handing out fake business cards. A143-

7

A144, A147-A150. CMP's agents gathered identifying information about NAF's members, and secretly recorded their conversations with them. A144, A149-150. CMP followed this same pattern of activity at the 2014 and 2015 annual meetings.

### D. CMP's Illegal Campaign to Harass and Intimidate Goes Public.

On July 14, 2015, CMP went public with its conspiracy. A150. Daleiden has given multiple press interviews in which he openly admitted to the conspiracy, a conspiracy he labeled the "Human Capital Project." *Id.* In an interview with Bill O'Reilly on Fox News, he stated that he and his co-conspirators had "spent three years with actors" who "pos[ed] as representatives of a middleman biotech company" (*i.e.*, Biomax) in order to fraudulently infiltrate NAF members. *Id.* When confronted by the *New York Times* about the fraud and illegal conduct that he and CMP orchestrated, Daleiden dismissed those concerns, saying "only Planned Parenthood or its supporters would object." A150.

Also on July 14, CMP began releasing secretly taped and highly misleading videotapes of Planned Parenthood physicians. *Id.* Those videos are purposely edited to make it appear as if the doctors in question are profiting from lawful fetal tissue donation programs and practices—practices that have led to life-saving medical breakthroughs—when in fact the exact opposite is true. A154. The victims of this campaign thus far have had their professional reputations trashed. A130-A131. They have been called "evil," "vile," "inhuman," "baby butchers,"

and "vicious demonic force[s]" who deserve "no mercy" and "the hangman's noose." *Id.* Death threats have been leveled against them. A132. One post stated: "I'll pay ten large to whomever kills Dr. Deborah Nucatola. Anyone go for it." And the CEO of StemExpress, a lawful tissue procurement company, has been labeled "a death-profiteer" who "should be hung by the neck using piano wire and propped up on the lawn in front of the building with a note attached . . . ." A132. CMP's brutally dishonest smear campaign continues to this day. A150. It has openly boasted of having thousands of hours of videotape, and has released (and continues to release) videos on a weekly basis since the campaign began. *See id.*

Accordingly, to prevent precisely the kind of irreparable reputational and other injuries suffered by CMP's initial victims, NAF filed suit on July 31. *See* A117-176. NAF also sought a TRO. The TRO is narrowly and exclusively focused on restraining CMP and its co-conspirators from disclosing confidential information stolen at NAF's annual meetings in violation of the Exhibitor Agreements and NDAs that CMP and its agents signed. *See* A114-A116. The district court entered the TRO on July 31, and extended it on August 3. A111-116.

CMP's main argument in response to NAF's TRO was that any restraining order would constitute a "prior restraint" in violation of the First Amendment. In rejecting CMP's "prior restraint" argument, the district court noted that CMP's counsel had "[c]andidly agreed that he was not aware of any case that has held that

a party who (1) by false pretenses gains access to confidential information, (2) promises to keep that information confidential, and (3) agrees that his breach of his agreement would subject him to injunctive relief, may nonetheless violate that agreement because of his First Amendment rights. Neither am I." A112. The TRO has twice been extended by agreement of all parties to remain in effect through final disposition of NAF's preliminary injunction motion. A108, SA111.

In addition to granting the TRO, the district court also granted NAF's motion for expedited discovery in aid of the preliminary injunction motion, finding good cause for doing so under FRCP 26(d). A113. NAF subsequently served targeted discovery narrowly tailored to the issues related to its preliminary injunction motion, SA50-106, discovery the district court later found was "narrow and appropriate." SA85.

On August 17, CMP filed a 64-page anti-SLAPP motion, A29, and thereafter took the position that the filing of this motion stayed all discovery. SA26-29. The district court denied CMP's motion to stay discovery from the bench, and provided a 15-page written order shortly thereafter. A1-15, A21-22. Applying clear Ninth Circuit precedent, the district court held that an anti-SLAPP motion only stays discovery in a federal court if doing so "does not conflict with other federal rules." A5 (quoting and applying *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)). As the district court explained, under Ninth Circuit

precedent, courts must engage in a "threshold inquiry" to determine whether to consider the instant anti-SLAPP motion under a summary judgment standard or a motion to dismiss standard. A5 (quoting and applying *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)). If the motion raises fact disputes, "then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Z.F.*, 482 F. App'x. at 240; A5-6.

Applying these principles, the district court held that CMP's 64-page anti-SLAPP motion was "riddled with factual determinations that must be resolved" before it could decide the motion, and therefore a stay would conflict with FRCP 56. A10; *Metabolife*, 264 F.3d at 846. Moreover, the district court explained that, because it had already found "good cause" for discovery in aid of NAF's preliminary injunction motion, a discovery stay would conflict with its prior order and with FRCP 26(d). A6. The district court held that CMP's arguments to the contrary were "unpersuasive to the point of being frivolous," A13, that discovery was "essential" to the preliminary injunction motion, A14, and that this case "present[ed] an especially compelling case for allowing discovery." A15.

Eighteen days after the district court's order, and four days before a hearing at which the district court was expected to set a new discovery schedule, CMP filed a mandamus petition and "emergency" motion to stay discovery in this Court.

11

# **ARGUMENT**

## I.  **CMP HAS NOT ESTABLISHED THAT THE DISTRICT COURT'S ORDER IS CLEARLY ERRONEOUS AS A MATTER OF LAW.**

CMP barely mentions the exacting standard that it must meet to prevail on its mandamus petition, much less explain how it meets that standard.

The writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *In re Van Dusen*, 654 F.3d 838, 840-41 (9th Cir. 2011) (quotation omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion will justify the invocation of this . . . remedy." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations and citations omitted). CMP must therefore show that its "right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (quotation omitted).

In evaluating a mandamus petition, this Court considers five factors, but only one is relevant here: whether the district court's order is clearly erroneous as a matter of law. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). Clear error is a necessary condition for issuing a writ of mandamus; its absence necessarily precludes mandamus relief. *Hernandez v. Tanninen,* 604 F.3d 1095, 1099 (9th Cir. 2010). "Clear error" is a highly deferential standard of review. Mandamus will not issue merely because the petitioner has identified legal error. *Will v. United States*, 389 U.S. 90, 104 (1967) ("Mandamus, it must be

sf-3576667

remembered, does not 'run the gauntlet of reversible errors.'") (quotation omitted). Instead, this Court must have "a definite and firm conviction" that the challenged decision was incorrect. *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000).

Here, CMP cites two reasons why the district court's order denying a stay of discovery was wrong: (1) the district court had "no authority" to deny CMP's motion for a stay, because CMP's anti-SLAPP motion "stayed all discovery," and (2) there should be no discovery in aid of NAF's preliminary injunction motion because "any injunctive relief" would constitute a "prior restraint." Not only is the district court's resolution of these issues not "clearly erroneous," the district court's decision was demonstrably correct, and fully consistent with Supreme Court and Ninth Circuit precedent. The writ of mandamus should be denied.

### A. The District Court Did Not Clearly Err in Concluding that CMP's 64-Page Anti-SLAPP Motion Is "Riddled" With Fact Disputes, and That Discovery Is "Essential" to NAF's Opposition.

Under California's anti-SLAPP statute, courts must engage in a two-step inquiry. First, the moving party must make a prima facie showing that the lawsuit arises from an act in furtherance of its First Amendment free speech rights. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Second, if the moving party satisfies the first inquiry, the burden then shifts to the non-moving party to establish a reasonable probability of prevailing on its claims. *Id.*

California Code of Civil Procedure § 425.16(g) provides that all discovery proceedings should be stayed "upon the filing of a notice of motion made pursuant to this section."  The Ninth Circuit has held that this procedural state law provision is not to be "used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure."  *Metabolife*, 264 F.3d at 845 (citation omitted).  In *Metabolife*, this Court found that a stay of discovery under California's anti-SLAPP statute would conflict with FRCP 56, because the anti-SLAPP motion in that case raised fact issues and therefore the nonmoving party was entitled to discovery that is "essential to its opposition."  *Id.* at 846.  This Court held that, in such a case, "the discovery-limiting aspects of" the automatic stay under California's anti-SLAPP statute "collide with the discovery-allowing aspects of Rule 56," and the state rule must give way to the federal rule.  *See id*.

Since *Metabolife*, numerous federal courts have held that a discovery stay under the anti-SLAPP statute is warranted only "where the issues raised in an anti-SLAPP motion are clean legal issues that render discovery irrelevant to the resolution of the motion."  A8.[2]  In this case, the district court did precisely what it

---

[2] *Aeroplate Corp. v. Arch Ins. Co.*, No. 06-1099 AWI SMS, 2006 U.S. Dist. LEXIS 82180, *21 (E.D. Cal. Nov. 8, 2006) (anti-SLAPP stay under California procedural law conflicts with the federal rules "where a plaintiff asserts prior to decision on an anti-SLAPP motion that discovery might influence the outcome of the motion to strike"); *see also id.* at *25 ("[W]here, as here, the nonmoving party has not had (so far as the court is aware) any opportunity for discovery, and where

(Footnote continues on next page.)

14

was directed to do by this Court's precedent. That is, it engaged in a "threshold inquiry" to determine whether CMP's 64-page anti-SLAPP motion raised purely legal argument (in which case a stay would be warranted), or whether the motion "involves a factual challenge," in which case, under this Court's precedent, "the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." A5 (quoting *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)). The district court correctly determined that CMP's motion was "riddled with factual determinations that must be resolved" in ruling on its motion, A10, and therefore under this Circuit's precedent "discovery must be permitted." *Z.F.*, 482 F. App'x at 240.[3]

_____

(Footnote continued from previous page.)

there has been a motion for leave to conduct discovery, the court is without discretion to deny the requested opportunity."); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 985 (C.D. Cal. 1999) ("Rogers has identified specific discovery which she must obtain before being able to oppose the special [anti-SLAPP] motion. . . . Rogers's request to continue the hearing to pursue this discovery must be granted."); *Davis v. Electronic Arts, Inc.*, N. C-10-03328 RS (DMR), 2011 WL 2621626, at *3-4 (N.D. Cal. Jul. 5, 2011) (denying motion to stay discovery despite defendant's claim that anti-SLAPP motion only challenged "legal defects in the complaint" because "the Court necessarily must engage in some factual evaluation" at both steps of anti-SLAPP analysis).

[3] The second reason the district court denied CMP's motion was because denying discovery would conflict with FRCP 26(d) and its prior order finding good cause for discovery. A6-7. There is no need for this Court to consider that issue, as the district court's holding that under *Metabolife* the discovery limiting provisions of California state law collided with FRCP 56 is demonstrably correct.

15

Thus, CMP's lengthy essay on *Erie* principles (Petition at 16-19) is irrelevant. The Ninth Circuit has already provided guidance on when the discovery-limiting provisions of the anti-SLAPP provision apply and when they must give way to the discovery-allowing provisions of the federal rules. *Metabolife*, 264 F.3d at 845; *Z.F.*, 482 F. App'x at 240. The district court correctly applied those principles here.

CMP's entire argument, therefore, comes down to a conclusory and self-serving claim that its **64-page** motion directed to **12 separate state law claims** in a **60 page complaint** tests "only the legal sufficiency" of NAF's complaint. Petition at 20. But CMP's characterization of its motion obviously does not control here. *See Davis v. Elec. Arts, Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626, at *9-12 (rejecting defendant's characterization of anti-SLAPP motion as Rule 12(b)(6) motion to dismiss and holding that plaintiffs were entitled to evidence under Rule 56(d)). CMP has cited no case in which a court stayed discovery under the circumstances presented here.

**<u>First</u>**, the district court correctly found that the first step of the anti-SLAPP analysis raised fact issues and therefore discovery was necessary.

Under the first step, CMP is required to make "a threshold showing that the challenged cause of action is one arising from protected activity" (*e.g.*, free speech). *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). Here, a critical issue is

16

whether and to what extent CMP waived its First Amendment rights by knowingly and voluntarily signing confidentiality agreements. This is so because if CMP did waive its First Amendment rights by entering into fraudulent contracts, it cannot meet its burden under the first step of the anti-SLAPP analysis. *Id.* at 94 ("[A]s the statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."); *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1494 (2005) (a defendant "who validly contracts not to speak waives the protection of the anti-SLAPP statute").

As the district court correctly noted, it cannot determine the scope of CMP's waiver here without discovery. A10 ("I cannot conceive of any way for [questions concerning waiver] to be resolved as a matter of law."); *Davis*, 2011 WL 2621626, at *7 (denying motion to stay because "discovery related to the issue of whether Defendant waived its First Amendment rights is essential to Plaintiff's opposition to the anti-SLAPP motion"). Waiver, as the district court explained, turns on "facts that NAF lacks or has not yet developed," including "what information defendants obtained, where and how they obtained it, the circumstances in which the confidentiality agreements were signed, the reasonableness of the various expectations, and the intent of both parties and of third parties." A14. The first step of the anti-SLAPP analysis clearly and obviously raises critical fact issues.

CMP claims that the district court's ruling in this regard was "clearly erroneous" because "investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech." Petition at 24 (quoting *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013)). CMP's argument utterly ignores California Supreme Court authority that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection." *Navellier*, 29 Cal. 4th at 94. None of CMP's cases has anything to do with confidentiality agreements and express waiver of First Amendment rights, and are therefore irrelevant.[4] CMP glosses over the key issue and would have this Court ignore controlling California Supreme Court precedent. *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of L.A.*, 530 F.3d 768, 770 (9th Cir. 2008) ("[T]he Ninth Circuit is bound to follow the holdings of the California Supreme Court when applying California law.").

**Second**, assuming CMP could show that its conduct constitutes "protected activity" (it cannot), under the second step of the anti-SLAPP analysis the burden then shifts to NAF to demonstrate "a probability of prevailing" on its twelve state law causes of action. *Navellier*, 29 Cal. 4th at 88.

---

[4] Petition at 24 (citing *Doe*, 730 F.3d at 953 (no confidentiality agreement, no waiver analysis); *Greater L.A. Agency on Deafness v. CNN, Inc.*, 742 F.3d 414, 423 (9th Cir. 2014) (same); *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003) (same); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App.4th 322, 358 (2004) (same)).

Here again the district court correctly found that there were a host of disputed fact issues under the second step of the anti-SLAPP analysis. CMP's blithe claim that its motion raises only legal issues is belied by even the most cursory review of its 64-page motion, NAF's 60-page Complaint,[5] and the district court's 15-page order. The proposition is implausible on its face, and is directly contradicted by the fact that, as the district court noted, CMP relied overwhelmingly in its motion on cases that "***were decided at summary judgment or trial, after facts had been developed***." A12 (emphasis added).

The district court therefore correctly held that determining whether NAF was likely to succeed on the merits of its claims would entail a fact intensive inquiry, and that discovery was "essential" to allow NAF to respond to the numerous disputed fact issues raised by CMP's anti-SLAPP motion. A10-14. Those disputed fact issues include, but are not limited to:

- Whether CMP conspired to obtain NAF confidential information and access to NAF's annual meetings by setting up a fake company, assuming false identities, and signing confidentiality agreements with the intent of breaching them.

- Whether CMP's agents knowingly and voluntarily waived their First Amendment rights in executing the

---

[5] Pursuant to a stipulation with CMP, NAF will be filing an amended complaint on September 18. District Ct. Dkt. No 100.

confidentiality agreements and non-disclosure
agreements.

- Whether NAF's confidentiality agreements only cover
  "formal events" as CMP contends. And more generally
  the permissible scope of NAF's confidentiality
  agreements, which may be informed by extrinsic
  evidence.

- Whether CMP's fraudulent misrepresentations to NAF
  proximately caused NAF's alleged harms.

- Whether NAF members had a reasonable expectation that
  they would not be secretly recorded, which must be
  analyzed in light of all relevant circumstances.

- Whether NAF's promissory fraud claim was barred
  because NAF had reaffirmed the confidentiality
  agreements: "this is a factual determination, and one that
  cannot be made at the pleading stage."

A11-12. These are just examples; the district court "thoroughly reviewed" CMP"s

motion, walked through each of CMP's twelve state law claims, and cited many

other factual disputes raised by CMP's motion. *See id.*

CMP tries to brush away the district court's ruling on this issue by arguing

that it is not "persuasive." Petition at 20. That is not the standard. To the

contrary, CMP must show that the district court's order amounts to "a judicial

usurpation of power, or a clear abuse of discretion" to justify its writ. *Cheney,* 542

U.S. at 380 (quotation omitted). There is no credible, serious argument that the

district court's straightforward application of Ninth Circuit precedent here meets

this standard.  CMP does not even argue this point—it merely quibbles with *some* of the *numerous* fact disputes identified by the district court.  Petition at 20-22.

The district court therefore did not clearly err in ruling that CMP's anti-SLAPP motion is riddled with fact disputes, and that discovery is "essential to [NAF's] opposition."  *Metabolife*, 264 F.3d at 846.

### B.    The District Court Did Not Clearly Err in Refusing to Stay Discovery Necessary for NAF's Preliminary Injunction Motion.

CMP argues that the district court's denial of a discovery stay clearly erred because "any injunctive relief would violate the First Amendment's prohibition on prior restraints."  Petition at 7.  This is an astonishing argument:  CMP essentially asks this Court to determine on a writ of mandamus—*before any preliminary injunction motion has even been filed*—that there is absolutely no set of factual circumstances under which a district court could issue a preliminary injunction in this case.  CMP cannot possibly meet its burden to show clear error on this issue.

**First**, CMP never made this argument to the district court when it sought a discovery stay.  The only argument it made to the district court for a discovery stay was that "the filing of [its] anti-SLAPP motion . . . effected an automatic stay of discovery."  A24-28.  For this reason, the district court's responsive 15-page order does not even mention, let alone analyze, CMP's prior restraint argument.  The district court's order therefore cannot possibly have "clearly erred" when the argument was never presented to it.  *United States v. U.S. Dist. Court for S. Dist. of*

*Cal.*, 384 F.3d 1202, 1205 (9th Cir. 2004) ("[W]e will not find the district court's decision so egregiously wrong as to constitute clear error where the purported error was never brought to its attention.") (citations omitted); *Califano v. Moynahan*, 596 F.2d 1320, 1322 (6th Cir. 1979) ("We decline to employ the extraordinary remedy of mandamus to require a district judge to do that which he was never asked to do in a proper way in the first place.").

**Second**, CMP's argument that any preliminary injunction that *might* issue in this case would violate the First Amendment is not ripe. *See Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994) ("Because the parties have not yet developed a factual record on" disputed issues "we cannot evaluate [the] claims on their merits. . . . Thus, the case is not ripe for review."). NAF has not even filed a preliminary injunction motion. Certainly no preliminary injunction has yet issued.

Moreover, CMP's argument is self-servingly circular. NAF seeks discovery to show that CMP knowingly and voluntarily waived its First Amendment rights by entering into confidentiality agreements with NAF. As the district court correctly observed, whether and to what extent CMP waived its First Amendment rights is a disputed fact issue that cannot be resolved as a matter of law.[6] A10.

---

[6] *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona,* 451 U.S. 477 (1981) ("The determination of whether there has been an intelligent waiver . . . depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background,

(Footnote continues on next page.)

sf-3576667

Further, this question requires discovery because it turns on "facts that NAF lacks or has not yet developed," including "what information defendants obtained, where and how they obtained it, the circumstances in which the confidentiality agreements were signed, the reasonableness of the various expectations, and the intent of both parties and of third parties."  A10, A14.[7]

Yet CMP asks this Court to cut off NAF's right to that discovery by issuing a writ of mandamus "directing the district court . . . to rule on NAF's preliminary injunction motion without conducting discovery" on the ground that the First Amendment precludes all injunctive relief in this case.  Petition at 2, 7.  The argument begs a key question in this case, and granting such a writ would deprive NAF of the very discovery it needs to establish that CMP has no protectable First Amendment interests here *at all*, because it knowingly and voluntarily agreed to restrict its own speech.

**Third**, CMP's argument completely ignores a long line of precedent from the United States Supreme Court, the Ninth Circuit, the State Supreme Courts, and

---

(Footnote continued from previous page.)

experience, and conduct of the [waiving party]."); *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1998) (applying *Johnson* standard in case involving contractual waiver of First Amendment rights); *Perricone v. Perricone*, 292 Conn. 187, 208 (2009) (same).

[7] *See Davis v. Elec. Arts, Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626, at *7 (N.D. Cal. July 5, 2011) (denying motion to stay because "discovery related to the issue of whether Defendant waived its First Amendment rights is essential to Plaintiff's opposition to the anti-SLAPP motion").

every court to have ever considered this issue, that parties who knowingly and voluntarily enter into written confidentiality agreements waive their First Amendment right to steal confidential information and publish it. Indeed, when the district court initially entered the TRO, CMP's counsel "[c]andidly agreed" that it was "not aware of any case" that found a prior restraint under the circumstances presented here. A112 . There is no such case.

To the contrary, the Supreme Court has held that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Thus, "private parties who voluntarily enter into an agreement to restrict their own speech thereby waive their first amendment rights." *See Perricone v. Perricone*, 292 Conn. 187, 202 (2009). There are numerous cases on point. *See id.* at 204 ("The Defendant has not cited, however, and our research has not revealed, a single case in which a Court has held that a judicial restraining order that enforces an agreement restricting speech between private parties constitutes a per se violation of the First Amendment's prohibition on prior restraints on speech."); *Ohno v. Yasuma*, 723 F.3d 984, 999 & n.16 (9th Cir. 2013) (collecting cases that "enforce restrictions on speech arising from domestic contracts that could not have been enacted into law due to the First Amendment"); *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 873, 887 (2003)

(rejecting First Amendment challenge to injunction because defendants obtained

information in violation of license agreement); *ITT Telecom Prods. Corp. v.

Dooley*, 214 Cal. App. 3d 307, 317, 319 (1989) (parties may "waive even First

Amendment speech rights by contract" by entering into "an express contract of

confidentiality or nondisclosure"); *Brooks v. Vallejo City Unified Sch. Dist.*, No.

09-cv-1815, 2009 U.S. Dist. LEXIS 101262, at *13 (E.D. Cal. Oct. 29, 2009)

(individual claimants "were entitled to bargain away their free speech rights by

agreeing to confidentiality provisions" in a settlement agreement with defendant).

     Indeed, the argument that CMP has waived its First Amendment rights is

even more powerful here than in any of the foregoing cases because CMP and its

agents entered into confidentiality obligations ***with no intention whatsoever of

keeping them***, and for the ***express purpose of stealing information*** in order to

smear NAF members and launch a hate campaign against them.  No constitutional

protection applies to such conduct.  *Dietemann v. Time, Inc.*, 449 F.2d 245, 249

(9th Cir. 1971) ("There is no First Amendment interest in protecting news media

from calculated misdeeds."); *see also id.* ("The First Amendment is not a license to

trespass, to steal, or to intrude by electronic means into the precincts of another's

home or office.").

     Indeed, CMP's invasion strikes at the very essence of NAF's confidentiality

agreements, which NAF requires that every single annual meeting attendee sign,

and which are necessary to protect its members from exactly the kind of
misconduct perpetrated by CMP. Far from being protected by the constitution,
therefore, CMP's conduct constitutes an outrageous ***attack*** on the constitutional
rights of others—on the right of women in this country to make their own
reproductive choices, *Roe v. Wade*, 410 U.S. 113 (1973), and on the right of NAF
members to freely assemble. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S.
449, 460 (1958).

**Fourth**, none of CMP's cases involves a knowing and voluntary waiver of
First Amendment rights. (Petition at 8-12.)[8] They are therefore irrelevant.

The lone prior restraint case that CMP ***claims*** involves "contract law"—
*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) (Blackmun, J., in chambers), *see* Petition
at 11—did not even involve a written contract claim, much less a waiver of First
Amendment rights. The only causes of action noted in the opinion were state tort
claims. *Id*. at 1316 (trespass, duty of loyalty and aiding and abetting, and trade

---

[8] *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) (no confidentiality
agreement, no waiver); *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)
(same); *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) (*per curiam*) (same);
*Garcia v. Google, Inc.*, 786 F.3d 727 (9th Cir. 2015) (Reinhardt, J., dissenting
from initial denial of emergency rehearing *en banc*) (same); *Proctor & Gamble Co.
v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) (same); *Thompson v. Hayes*, 748
F. Supp. 2d 824 (E.D. Tenn. 2010) (same); *Saad v. Am. Diabetes Ass'n*, Case No.
15-10267, 2015 WL 751295 (D. Mass. Feb. 23, 2015) (same); *A.M.P. v. Hubbard
Broad., Inc.*, 216 F. Supp. 2d 933 (D. Minn. 2001) (same); *see also Bartnicki v.
Vopper*, 532 U.S. 514 (2001) (same); *Alexander v. United States*, 509 U.S. 544
(1993) (same); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) (same).

secret claims).  Neither CBS nor the employee was a party to a written agreement containing promises to keep the information sought to be published confidential, and for which the agreed-upon remedy was an injunction.  Thus, Justice Blackmun did not even discuss, much less disturb, the Supreme Court's holding in *Cohen* that the First Amendment is not implicated where "[t]he parties themselves … determine the scope of their legal obligations" and therefore "any restrictions that may be placed on the publication of truthful information are self-imposed."  501 U.S. at 671.  The case is not on point.

**Fifth**, and finally, CMP's argument that NAF's confidentiality agreements are unenforceable as a matter of public policy is so specious it is difficult to know where to begin.  Petition at 12-15.  For starters, CMP's argument ignores the virtually unanimous consensus that First Amendment rights may be waived by contract.[9]  *See supra* Section I.A.  Such waivers are routinely enforced.  *See, e.g.*, *Leonard v. Clark*, 12 F.3d 885, 889-90 (9th Cir. 1993) (enforcing knowing and voluntary waiver of First Amendment right to petition); *see also Perricone*, 292 Conn. at 208 (collecting and discussing cases).

Because CMP has no First Amendment rights of its own, CMP relies upon the public's right to know to advance its "public policy" argument.  Petition at 13-

---

[9] CMP's argument was also never raised to the district court.

15.  But none of CMP's cases hold that the public's First Amendment right creates a *per se* bar to the enforceability of private confidentiality agreements.  *Leonard v. Clark*, for example, supports NAF's position that the First Amendment may be waived.  There, the Ninth Circuit upheld a contractual waiver of a union's First Amendment right to petition the government and rejected the union's argument that the waiver was unenforceable as against public policy.  *Id*. at 892 n.11.

Neither *Garcia I* nor *Garcia II* involved any contractual waivers at all.  In *Garcia*, this Court held that a plaintiff did not meet her burden to show entitlement to a broad injunction that would have required third parties—Google and YouTube—to remove all copies of an anti-Muslim film from their platforms worldwide, based on an extremely weak copyright claim that bordered on the frivolous.  *See Garcia v. Google, Inc.*, 786 F.3d 727, 728 (9th Cir. 2015) ("*Garcia I*"); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 n.4 (9th Cir. 2015) (*en banc*) ("*Garcia II*").  In affirming denial of the injunction, this Court observed that the plaintiff could have "sought an injunction against different parties or on other legal theories, including the right of publicity and defamation."  *Garcia II*, 786 F.3d at 740-41.

Similarly, *Davies* did not involve a contractual waiver of First Amendment rights, but rather a contractual waiver of an individual's right to seek elective office.  This Court held that a school district's desire to keep a "troublesome

person" from elected office did not outweigh the public interest in a democratically elected government. *Davies v. Grossmont Union High School District*, 930 F.2d 1390, 1397-98 (9th Cir. 1991). *Davies* therefore does not stand for the proposition that First Amendment waivers are *per se* unenforceable as against public policy.

Contrary to CMP's argument, the public policy consequences of its argument are staggering, and would effectively render all such agreements unenforceable. NAF's confidentiality agreements were put in place ***precisely*** to defend against the kind of attack launched by CMP, and to prevent its members from being harassed and smeared. As the California legislature has acknowledged, abortion providers "are often subject to harassment, threats, and acts of violence." Cal. Gov. Code § 6215(a). The public policy protecting these individuals from those harms is manifest in multiple state statutes enacted for their benefit. *See* Cal. Civ. Code § 3427 *et seq.*; Cal. Gov. Code § 6218 *et seq.*; Cal. Gov. Code § 6254.28; Cal. Penal Code § 423 *et seq.* Conversely, the legislature condemns the criminal acts engaged in by CMP, as reflected in criminal statutes like California's anti-wiretapping law, Penal Code § 632, and civil laws proscribing fraud, breach of contract, and trespass. To suggest, as CMP does, that NAF cannot keep its meetings confidential would effectively announce open season on NAF and its members, and render NAF members defenseless in the face of even the most outrageous fraud by anti-abortion extremists.

CMP's "public policy" argument would also sanction wholesale larceny any time a thief falsely insinuates that he found evidence of a crime. For good reason, therefore, the Ninth Circuit has rejected this exact argument in closely analogous circumstances. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1062 (9th Cir. 2011). In *Cafasso*, this Court affirmed judgment for an employer for breach of a confidentiality agreement, and rejected the employee's "public policy" argument that would have excused her wholesale theft of confidential information on the ground that she claimed it was evidence of a crime and that she wanted to provide it to the government. *Id.* at 1062 & n.15. This Court rejected this argument out of hand, holding that the employee's desire to "provid[e] information to government investigators . . . neither explains nor excuses the overbreadth of her seizure of documents. *Id.* at n.15. The employee's wholesale theft of confidential information in violation of her agreement, this Court explained, "cannot be sustained by reference to a public policy exception." *Id.* at 1062. Precisely the same thing is true here. No public policy exception could plausibly justify CMP's unlawful, fraudulent acts, especially in view of the legislature's express policy to protect abortion providers from actors like CMP.

## CONCLUSION

For the foregoing reasons, NAF respectfully requests that this Court deny CMP's extraordinary petition for mandamus, and allow discovery to proceed.

Dated:    September 18, 2015

By:   */s/ Derek Foran*
      DEREK F. FORAN

Linda E. Shostak (CA SBN 64599)
LShostak@mofo.com
Derek F. Foran (CA SBN 224569)
DForan@mofo.com
Nicholas s. Napolitan (CA SBN 251762)
NNapolitan@mofo.com
Christopher L. Robinson (CA SBN 260778)
ChristopherRobinson@mofo.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Respondent*
*National Abortion Federation (NAF)*

sf-3576667

## CERTIFICATE OF SERVICE

9th Circuit Case Number:  15-72844

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **September 18, 2015**.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Derek Foran*