UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION, <br><br> Plaintiff, <br><br> v. <br><br> CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | Case No. 15-cv-03522-WHO <br><br> **ORDER REGARDING FIFTH AMENDMENT RIGHTS OF CORPORATE ENTITIES** |

Defendants Center for Medical Progress ("CMP") and Biomax Procurement Services ("Biomax") (collectively, "defendants") seek to assert Fifth Amendment rights in response to plaintiff National Abortion Federation's ("NAF") discovery requests. At issue is whether corporate entities may assert Fifth Amendment rights against self-incrimination on the basis that their opponent has alleged that they are sham "alter ego" corporations that have no existence separate from an individual or individuals. Although defendants do not themselves contend that they are alter egos, they argue that NAF's allegations conclusively establish that they may invoke the Fifth Amendment. I heard argument on this issue on September 18, 2015.

This is not a close question. Defendants would have me adopt NAF's allegations in the Complaint that defendants are alter ego corporations to conclude that they may invoke the Fifth Amendment, while at the same time allow defendants to continue to dispute this fact for other purposes in this litigation. CMP and Biomax hold themselves out as corporations to the federal government, the state of California, and, most recently, to the United States Court of Appeals for the Ninth Circuit. Accepting the defendants' argument would not only contravene a long line of case law, it would lead to unjust results. CMP and Biomax may not refuse to comply with

discovery by invoking the Fifth Amendment.[1]

**BACKGROUND**

CMP is registered with the Registry of Charitable Trusts of the Office of the California Attorney General. *See* Dkt. No. 113-2. All corporations, associations, and trustees holding assets for charitable purposes or doing business in California are required to register with the Registry of Charitable Trusts. *Id.* at 2. On its registration form, CMP listed three directors: defendant Daleiden, defendant Newman, and Albin Rhomberg, who is not a party to this litigation. *Id.* at 3. It described its primary activity as "monitor[ing] and report[ing] on medical ethics and advances." *Id.* It continued, "[t]he Center will receive monetary donations from the public to support its work." *Id.* CMP listed the date it first received assets as March 29, 2013. *Id.* The registration was received by the Registry of Charitable Trusts on April 30, 2013. *Id.* at 2.

CMP is incorporated as a "Nonprofit Public Benefit Corporation" in California. *See Id.* at 5. It again expressed its purpose as "to monitor and report on medical ethics and advances." *Id.* The articles of incorporation state that Nichole Surkala is CMP's agent for service of process. *Id.* Daleiden is recorded as the incorporator. *Id.* In order to obtain tax-exempt status in California, he certified, among other things, that "[n]o substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and this corporation shall not participate or intervene in any political campaign." *Id.*

CMP has bylaws that affirm that it is a nonprofit public benefit corporation. *Id.* at 7. It states that it is nonpartisan and that no substantial part of its activities consists of attempting to influence legislation. *Id.* The bylaws also include corporate formalities such as instructions on who may be a Director and how to fill vacancies, when and where meetings shall be held, how the Board may take actions, and how officers shall be compensated. *Id.* at 7-11. CMP stated that most of its intellectual property would be available for free online. Dkt. No. 113-4 at 33.

CMP filed for tax exempt status with the Internal Revenue Service ("IRS") in April of 2013. *Id.* at 1. Daleiden is listed as the organization's contact on the application. *Id.* at 4. This

---

[1] This Order shall not be construed to conflict with the discovery stay currently imposed by the Ninth Circuit Court of Appeals pending defendants' Petition for Writ of Mandamus.

form asserts that CMP is a corporation organized for charitable purposes. *Id.* at 5. It lists Daleiden as CEO, earning $30,000 in annual compensation, Rhomberg as CFO with no compensation, and Newman as Secretary with no compensation. *Id.* Again, CMP indicated that it was not involved in political campaigns and did not seek to influence legislation. *Id.* at 8. It stated that it has intellectual property in the form of copyrights, and included information about its financial data. *Id.* at 9, 12-15. The IRS approved CMP's application for tax exempt status on December 30, 2013. Dkt. No. 113-5.

The front page of CMP's website requests citizens to "take action" by "sign[ing] our petition [to] ask your representative for Congress to investigate the black market in aborted baby parts." THE CENTER FOR MEDICAL PROGRESS, http://www.centerformedicalprogress.org/ (last visited September 21, 2015). Its "About Us" section describes CMP as a "501(c)3 non-profit organization" and "group of citizen journalists dedicated to monitoring and reporting on medical ethics and advances." Dkt. No. 113-6. *About Us*, THE CENTER FOR MEDICAL PROGRESS, http://www.centerformedicalprogress.org/about-us/ (last visited September 21, 2015).

Biomax is listed as a limited liability company with the California Secretary of State. Dkt. No. 113-10.

## DISCUSSION

### I. CORPORATE ENTITIES MAY NOT ASSERT THE FIFTH AMENDMENT, EVEN IF THEY ARE ALTER EGOS

In resolving whether Biomax and CMP may invoke the Fifth Amendment, I need not consider whether they are (or appear to be) alter egos of Daleiden or others. Case law is dispositive that the corporate defendants may not assert Fifth Amendment rights, regardless of whether they are alter egos of individuals who may be incriminated.

Under the collective entity rule, courts "have long recognized that, for the purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals." *Braswell v. United States*, 487 U.S. 99, 104 (1988). Corporate or business documents are not privileged, regardless of whether the collective entity is a sole proprietorship, *United States v. Doe*, 465 U.S. 605, 617 (1984), a partnership, *Bellis v. United States*, 417 U.S. 85,

86-91 (1974), a corporation, *Braswell*, 487 U.S. at 102, or even a labor union, *United States v. White*, 322 U.S. 694, 704-05 (1944). For the purposes of the Fifth Amendment right against self-incrimination, courts do not distinguish between corporate entities that are distinct entities, and those that are a sham.

In *Wilson v. United States*, the court held that the Fifth Amendment does not protect corporate records even when they were personally incriminating. 221 U.S. 361, 380 (1911) ("the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production"). The court noted that the state's "reserved power of visitation would seriously be embarrassed, if not wholly defeated in its effective exercise, if guilty officers could refuse inspection of the records and papers of the corporation." *Id.* at 384-85.

In *United States v. Doe*, the court held that the owner of a sole proprietorship could not be compelled to produce the proprietorship's business records because the act of production would be incriminating. 465 U.S. at 617. It stressed that the district court had made factual findings that the act would incriminate the owner because it would prove that the documents existed, were authentic, and were in the owner's possession. *Id.* at 613-14. Notably, the *Doe* court held that the contents of the records themselves were not privileged, but that the act of production implicated the individual's Fifth Amendment rights. *Id.* at 612.

In *Bellis v. United States*, one of three partners in a law firm was served with a subpoena directing him to produce partnership records. 417 U.S. at 86. The partner argued that production was privileged because it was "unrealistic to consider the firm as an entity independent of its three partners," instead of a personal practice of three individuals. *Id.* at 94-95. He also asserted that he had "a substantial and direct ownership interest in the partnership records, and [did] not hold them in a representative capacity." *Id.* at 95. The court rejected these arguments, stating that "[a]lthough it may not have had a formal constitution or bylaws to govern its internal affairs, state partnership law imposed on the firm a certain organizational structure in the absence of any contrary agreement by the partners." *Id.* at 96. The court examined the partnership formalities that the firm had employed, as well as the way that the entity was treated by state law. *Id.* at 96-98. It noted that "the records subpoenaed must in fact be organizational records held in a

representative capacity," and found that the requested documents satisfied these criteria. *Id.* at 93, 97-98. It emphasized that under state law, the partner had a right to access the documents and held them as a fiduciary. *Id.* at 98-99.

The leading case discussed by the parties, *Braswell v. United States*, was decided in 1988. The petitioner operated two active corporations that maintained their status with the State of Mississippi, filed corporate tax returns, and kept corporate books and records throughout the lawsuit. 487 U.S. at 101. Both corporations had three directors: Braswell, his wife, and his mother. *Id.* Braswell's wife and mother had no authority over the business of either corporation. *Id.* A subpoena was issued to Braswell to produce the corporate records. *Id.*

Braswell did not argue that his corporations could assert the Fifth Amendment, and the court noted the baselessness of any such argument. *Id.* at 102 ("it is well established that such artificial entities are not protected by the Fifth Amendment."). He also did not contend that the contents of the records were privileged. *Id.* Instead, Braswell argued that "his act of producing the documents has independent testimonial significance, which would incriminate him individually," thus implicating his personal Fifth Amendment rights. *Id.* at 102-03.

The court discussed the prior decisions that developed the collective entity doctrine in detail. It distinguished *Doe* by stressing that "petitioner has operated his business through the corporate form." *Id.* at 104. It acknowledged that the law treats corporations differently from individuals, and that "it is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Id.* at 104, 108 (quoting *Bellis*, 417 U.S. at 100).

In all of these cases, the individual asserting Fifth Amendment rights could have made a plausible argument that he was the alter ego of the collective entity, or at least exhibited some of the characteristics considered in an alter ego analysis. And as NAF points out, many lower courts have interpreted Supreme Court precedent to prohibit a corporate entity from asserting Fifth Amendment protections on the basis that it is an alter ego of an individual. *See*, e.g., *United States v. Rosenstein*, 474 F.2d 705, 715 (2d Cir. 1973) ("neither Rosenstein nor Braverman, even though they were the alter egos and sole owners of CTE, can assert Fifth Amendment privileges when

corporate records are used against them."); *In re Agan*, 498 F. Supp. 493, 494-95 (N.D. Ga. 1980) ("Production of corporate records may be compelled from an officer even if he is the sole shareholder or alter ego of the corporation"); *Segmond v. United States*, 589 F. Supp. 568, 575 (S.D.N.Y. 1984) ("There is no alter ego exception to the rule that no Fifth Amendment privilege exists for corporate records."); *Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 16 (D. Mass. 1991) (where defendant "is essentially the corporation's alter ego," rejecting the argument defendant would incriminate himself "by producing potentially inculpatory documents, and therefore ratifying their existence, accuracy and location");

From this long line of case law, it is clear that the records of a collective entity may not be protected by the Fifth Amendment. Although an individual custodian's act of producing records may implicate that person's Fifth Amendment rights in certain limited circumstances, the contents of the records are never privileged.

The defendants might have a more compelling argument if the requested documents appeared to be personal in nature; however, even this argument would likely be unpersuasive. *See Wilson*, 221 U.S. at 378 (1911) ("where an officer of a corporation has possession of corporate records which disclose his crime, there is no ground upon which it can be said that he will be forced to produce them if the entries were made by another, but may withhold them if the entries were made by himself. The books are no more his private books in the latter case than in the former; if they have been held pursuant to the authority of the corporation, that authority is subject to termination."). Courts have stressed that what matters is that the records are held in a representative capacity, not whether they personally incriminate an individual. The records that NAF requested are not documents that are personal in nature or even that inevitably incriminate one individual. Instead, they fall squarely within CMP's claimed function as described in its bylaws, articles of incorporation, and IRS documents: "to monitor and report on medical ethics and advances."

Defendants seek to distinguish all of this case law on the bare fact that here, the plaintiff, and not the defendant resisting discovery, raised the alter ego theory. This fact is immaterial. The reasoning of the cases above did not focus on who asserted the alter ego theory.

6

The collective entity rule recognizes the importance of allowing government investigations of and accountability for collective entities, and that corporate assertion of Fifth Amendment rights would allow those who use the corporate form to escape liability for crime. This purpose would be frustrated if the rule did not apply where an entity was fraudulent or otherwise an "alter ego." As the Court wrote in *Bellis*:

> In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.

417 U.S. at 90. And in *Braswell*, the Court opined: "[R]ecognizing a Fifth Amendment privilege on behalf of the records custodians of collective entities would have a detrimental impact on the Government's efforts to prosecute 'white-collar crime,' one of the most serious problems confronting law enforcement authorities." 487 U.S. at 115.

This reasoning may apply here as well. To obtain tax exempt status as a nonprofit public benefit corporation, CMP asserted that it was not incorporated for the purpose of carrying on propaganda or attempting to influence legislation. NAF asserts a colorable argument that the corporate defendants have violated, and continue to violate, numerous California laws and that their purpose was to smear NAF and its members, ostensibly for the purpose of propagating its message, making a political statement, and influencing legislation. The front page of CMP's website requests that visitors sign a petition that will be submitted to members of Congress. If these allegations are accurate, and Biomax and CMP are sham corporations, allowing them to assert Fifth Amendment rights could frustrate the government's purpose in apprehending those that abuse corporate laws.

For the reasons set forth above, the corporate defendants' arguments that they should be treated as alter egos do not impact my Fifth Amendment analysis.

## II. NAF'S ALLEGATION IN THE COMPLAINT THAT DEFENDANTS ARE SHAM CORPORATIONS IS NOT A JUDICIAL ADMISSION

The crux of defendants' argument is that because NAF alleged in the Complaint that CMP

1    and Biomax are alter egos of the corporate entities, this issue is conclusively established for the
2    purposes of the Fifth Amendment and renders the above body of case law inapplicable. As
3    discussed, this argument has no bearing on the collective entity doctrine. But it is also important
4    to clarify that defendants' argument relies on a flawed interpretation of the judicial admissions
5    doctrine.

6    The purpose of the doctrine of judicial admissions is to "act[] as a substitute for evidence
7    in that it does away with the need for evidence in regard to the subject matter of the judicial
8    admission." *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968);
9    *see also Checo v. Shinseki*, 748 F.3d 1373, 1379 n.5 (Fed. Cir. 2014). Judicial admissions are "not
10   evidence at all but rather have the effect of withdrawing a fact from contention." *Keller v. United
11   States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Parties are only bound by factual allegations in a
12   complaint, and not legal conclusions. *See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341
13   (6th Cir. 1997); *Shields v. Tracy*, No. CIVS031614DFL-PAN, 2005 WL 1490300, at *11 n.2 (E.D.
14   Cal. June 21, 2005).[2]

15   A judicial admission by NAF that CMP and Biomax are sham corporations and alter egos
16   of the individual defendants would not have the effect that defendants claim it would. The
17   corporate defendants have asserted the Fifth Amendment in this case; it is their burden to establish
18   that they may do so. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990). Although NAF
19   is permitted to respond to defendants' brief in accordance with the Civil Local Rules, it is not
20   NAF's burden to show that the corporate entities in this case are not protected by the Fifth
21   Amendment. Even if NAF is precluded from taking the position that the defendants are corporate

---

[2] The parties dispute whether the determination of a corporation as an "alter ego" is factual in nature. Although this point is moot, many courts treat this question as one of fact. *Duggan v. Hobbs*, 99 F.3d 307, 313 (9th Cir. 1996); *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811 (2010). It is less clear whether at the pleading stage, an allegation that a corporation is an "alter ego" would constitute a judicial admission. *Int'l Longshore & Warehouse Union, Local 40 v. Grain*, No. 13-cv-00513, 2013 WL 6665725, at *6 (D. Or. Dec. 17, 2013); *Banks v. Robinson*, No. 2:11-CV-00441-RLH, 2011 WL 3274049, at *6 (D. Nev. July 28, 2011); *see also Wolfe v. United States*, 798 F.2d 1241, 1243 (9th Cir.) *opinion amended on denial of reh'g,* 806 F.2d 1410 (9th Cir. 1986) (treating alter ego as legal conclusion); *Nw. Adm'rs, Inc. v. Sacramento Stucco*, 86 F. Supp. 2d 974, 987 (N.D. Cal. 2000) (same); *In re Frazier*, 82 B.R. 114, 115 (N.D. Cal. 1987) (same).

1 entities for the remainder of this litigation, and its allegation extends to the Fifth Amendment
2 issue,[3] I have to make an independent determination that CMP and Biomax are entitled to invoke
3 the Fifth Amendment. Whether CMP and Biomax may assert the Fifth Amendment is not a
4 question that can be limited by what NAF did or did not allege.

5 Defendants cite *American Title Insurance Co. v. Lacelaw Corp.* for the principle that
6 "stipulations and admissions in the pleadings are generally binding on the parties and the Court."
7 861 F.2d 224, 226 (9th Cir. 1988). This case found that "[j]udicial admissions are formal
8 admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing
9 wholly with the need for proof of the fact." *Id.* The language in *Lacelaw* indicates that a judicial
10 admission is binding on a particular party *before the court*. The court must hold parties to their
11 admissions, even if it would otherwise make a contrary factual finding. It does not necessarily
12 follow that a court must accept judicially admitted facts as true in making its own independent
13 determinations that have not been raised by the party that made a judicial admission.[4] Defendants'
14 position would require the trial court, and not just NAF, to treat as an established fact NAF's
15 allegation that CMP and Biomax are alter egos for the purposes of other issues that arise in the
16 litigation, and that were not raised by NAF. In fact, it would require me to view all of NAF's
17 factual allegations in the Complaint as conclusive.

18 Trial courts have discretion to accept or reject a judicial admission. *Singer v. State Farm*
19 *Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Even if NAF's allegations could be
20 construed as a judicial admission, I would not accept it for the purposes of the Fifth Amendment
21 analysis. Considering that CMP and Biomax are registered publicly as a corporation and limited
22 liability company, respectively, and to this day continue to hold themselves out as a corporate
23 entities, including in the recent petition to the Ninth Circuit, and considering that they will likely

---

[3] I briefly note that NAF alleged that CMP and Biomax were alter egos presumably for the purpose of liability and piercing the corporate veil. This is an entirely separate issue from the question of their Fifth Amendment rights.

[4] I am not persuaded by defendants' argument at the hearing that NAF raised the Fifth Amendment issue by requesting production of certain documents. Although NAF's discovery requests led to the corporate assertions of the Fifth Amendment, and NAF would benefit from corporate treatment in this context, this is not the same as NAF raising the issue or bearing the burden of establishing its truth or falsity.

1  continue to maintain their corporate status throughout this litigation, it is wholly improper to treat
2  NAF's allegation that they are alter egos as conclusively established.
3      For these reasons, NAF's allegations in the Complaint that CMP and Biomax are alter egos
4  do not serve as a judicial admission binding on me for the purposes of whether those entities may
5  assert Fifth Amendment rights.

### III. THE "BRASWELL EXCEPTION" IS INAPPOSITE

The parties spend a substantial amount of time discussing whether a potential exception identified in *Braswell* would apply in this case. I briefly address this issue in the interests of future clarity. In a footnote, the *Braswell* court stated that "[w]e leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." *Braswell*, 487 U.S. at 118 n.11.

This footnote is not applicable in this case. As discussed above, *Braswell* discussed the Fifth Amendment rights of a corporate custodian in the act of production. Here, the only issue is whether the corporate entities themselves may assert the Fifth Amendment, as no specific corporate custodian has been identified who could assert Fifth Amendment rights.

Although defendants contend that this is "a clear example of a situation in which a jury would inevitably conclude that [the corporate officer] produced the records," *see* Dkt. No. 103 at 6, they ignore the fact that the corporate defendants, and not specific corporate officers, have been served with the discovery requests. Defendants also improperly assume that Daleiden is the corporate officer who will produce the records. There are other Board members, and according to the Complaint other individuals who represented that they worked with CMP and Biomax who could presumably produce the corporate records. Compl. ¶¶ 18-20 (Dkt. No. 1). Defendants have not cited any cases where all employees of a multiple-person corporation successfully asserted the Fifth Amendment and the corporation did not have to respond to lawful subpoenas or other requests for production. To the extent that defendants assert that there is no corporate custodian who could produce the records, they are foreclosed by the precedent described above. *See In re*

*Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985) ("the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, then the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege.") (citations omitted); *In re Grand Jury Proceedings*, 473 F. Supp. 2d 201, 205 (D. Mass. 2007) (corporation may appoint "an outside agent to serve as 'record keeper' for purposes of responding to the subpoena").

In addition, Daleiden would be not be protected by the *Braswell* exception if he were compelled to produce the information. Daleiden is not the "sole employee and officer of the corporation." *Braswell*, 487 U.S. at 118 n.11. CMP has two other officers and allegedly others who work for or with it. In *Braswell*, the court compelled the owner of a corporation with three officers to produce corporate records. And recently, the Third Circuit rejected the argument that the alleged only employee of a one-man corporation could refuse to produce corporate records as corporate custodian. *See In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 261-62 (3d Cir. 2015) ("It is hard to imagine a jury 'inevitably' concluding that he produced the records when the records were created while the Corporation employed other staff besides [defendant] and while he utilizes the services of independent contractors whose responsibilities include '[m]aint[aining] accurate and complete medical records, kept in accordance with HIPAA and Patient Privacy standards' and assisting with billing practices.").

Finally, and dispositively, there is "no authority showing that any court, let alone a controlling court, has actually applied the potential *Braswell* exception." *United States v. Milligan*, 371 F. Supp. 2d 1127, 1129 (D. Ariz. 2005); *see also In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 159 (2d Cir. 2010) (collecting cases); *Amato v. United States*, 450 F.3d 46, 52 (1st Cir. 2006). I decline to be the first to do so, or to overrule Supreme Court precedent. *See* Dkt. No. 103 at 7-8.

**CONCLUSION**

Biomax and CMP do not have any Fifth Amendment rights and may not invoke the Fifth Amendment in this case.

**IT IS SO ORDERED**.

Dated: September 23, 2015



WILLIAM H. ORRICK
United States District Judge