# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

September 25, 2015

Writer's Direct Contact
+1 (415) 268.6323
DForan@mofo.com

*Via ECF*

The Honorable William H. Orrick
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *National Abortion Federation v. Center for Medical Progress, et al.*
        Case No. 3:15-cv-03522

Dear Judge Orrick:

To assist the Court and the parties at the telephonic conference scheduled for Monday,
September 28, NAF respectfully submits this letter to address two issues raised by the
Court's Minute Order of September 18, 2015 (Dkt. No. 132).

## (1) Schedule for Preliminary Injunction.

The Court's Minute Order requires all written discovery to be completed within 7 days of the
Ninth Circuit's denial of Defendants' Mandamus Petition, and all depositions to be
completed within 10 days of that denial. The Court set this schedule "so that the hearing on
the motion for a preliminary injunction may be set as expeditiously as possible." (*See* Dkt.
No. 132 at 1.) The Ninth Circuit denied Defendants' Mandamus Petition on September 23,
2015. (Dkt. No. 140.) Therefore, all written and document discovery is currently due by
**Wednesday, September 30**, and all depositions by **Monday, October 5**.[1]

While NAF understands (and shares) the Court's desire for an expeditious preliminary
injunction hearing, NAF respectfully submits that the current discovery schedule may not be
feasible, and may end up unintentionally impairing NAF's ability to effectively present its
case on its preliminary injunction motion. NAF is required to make a "clear showing" in
support of that motion. *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012). And as the
Court has observed, resolution of key issues at the preliminary injunction stage will turn on

---

[1] Because 10 days from September 23 is Saturday, October 3, the Court's deposition deadline
is extended to the following Monday. *See* Fed. R. Civ. P. 6(a)(1)(C).

sf-3578466

MORRISON | FOERSTER

The Honorable William Orrick
September 25, 2015
Page Two

fact-intensive issues that "need to be fleshed out" in discovery. (*See* Aug. 21, 2015 Hr'g Tr.
at 4:19-20; Aug. 3, 2015 Hr'g Tr. at 17:13-14 (stressing that "a critical piece of the next
hearing" would be discovery concerning what Defendants took and whether it fell within
scope of confidentiality agreements); Dkt. No. 95 at 3:6-8 (stating that "discovery was
essential to determining the scope of the preliminary injunction").) Moreover, given what
we currently know about the positions of the individual defendants, we will not be receiving
any documents from Mr. Newman next Wednesday, September 30, because of Fifth
Amendment privilege assertions, and we strongly suspect the same is the case with respect to
Mr. Daleiden. Therefore, we may not be in a position to complete the depositions of Mr.
Newman and Mr. Daleiden by Monday, October 5, 2015, because we will first need to
resolve whether the individual defendants are improperly withholding corporate documents
held in a representative capacity on behalf of the corporate entities.

There are therefore compelling reasons why the Court should reconsider its order requiring
all discovery (and especially all depositions) to be completed by Monday, October 5.

- **First**, there is no preliminary injunction motion pending, and therefore
  no hearing set on the yet-to-be-filed motion. Further, Defendants have
  stipulated to extending the TRO until the district court rules on NAF's
  preliminary injunction. (Dkt. No. 34 at 3; Dkt. No. 84 at 5.)

- **Second**, as stated above it is NAF's burden on its preliminary
  injunction motion. *Tower*, 672 F.3d at 657. Having waited several
  weeks to finally get to the point where discovery may proceed, it
  seems unfair to require NAF to complete all its discovery work within
  this truncated time frame simply because of delays that were not its
  fault, and that it fought against vigorously (NAF intends no criticism
  of counsel for Defendants in making this point, who as the Court
  previously observed had a right to file an anti-SLAPP motion).

- **Third**, the size of the corporate defendants' anticipated document
  production in response to NAF's request is a key unknown here, but
  NAF has reason to believe it will be substantial. The conspiracy
  alleged in this case lasted nearly three years. There should therefore
  be a large number of emails and texts to and from the conspirators
  responsive to NAF's requests.[2] Similarly, Defendants have openly

---

[2] As the Court has already held, the records NAF seeks "are not documents that are personal
in nature" but "fall squarely within CMP's claimed [corporate] function." (Dkt. No. 137 at
6.) Thus, NAF expects Defendants to produce **all** emails, texts and other correspondence
held by the Corporate entities, their Officers, or their Agents, whether or not those texts and
emails were sent using Gmail, AOL, or any other type of account.

sf-3578466

MORRISON | FOERSTER

The Honorable William Orrick
September 25, 2015
Page Three

stated that they have hundreds if not thousands of hours of videotape.
According to published reports, CMP has already compiled the
materials in response to a Congressional subpoena, and counsel for
CMP has already determined what materials they claim fall within the
scope of the TRO and what materials do not.  (See Exhibit A.)  There
is therefore no reason why CMP cannot produce to NAF materials
responsive to its discovery requests by Wednesday, September 30.
Defendants therefore may produce dozens or even hundreds of hours
of audio and video recordings taken at NAF's meetings at that time.  It
might therefore be literally impossible for NAF to review this material
and properly depose CMP, Biomax, and the individual defendants by
Monday, October 5, within the time period set by the Court.

- **Fourth**, two of NAF's declarants – its President Vicki Saporta and its
  Medical Director Dr. Matthew Reeves, are both scheduled to travel
  internationally on NAF business between September 25 and October 9.
  NAF has incurred substantial costs in making these travel
  arrangements and forcing NAF to cancel these arrangements would
  work a hardship to NAF, though of course NAF will make every effort
  to do so if the Court so orders.

- **Fifth**, the Court's current schedule does not allow any time to resolve
  discovery disputes among the parties, and as the Court itself
  previously acknowledged, disputes are "likely to arise."  (Dkt. No. 95
  at 3:6-8.)  Until the parties respond to the written discovery requests,
  provide privilege logs, and make an initial production of documents,
  neither the Court nor the parties will know the nature and volume of
  disputes that might arise.  Time therefore needs to be built into the
  schedule to resolve any such disputes, and for any supplemental
  document productions, before depositions may proceed.

- **Sixth**, and finally, NAF has had preliminary discussions with counsel
  for Defendants on a schedule.  The parties held a preliminary meet and
  confer this Wednesday, after which NAF circulated its proposed
  schedule and requested a follow-up meet and confer.  While
  Defendants, of course, may speak for themselves at the hearing, NAF
  currently understands Defendants' positions to be as follows:

  Counsel for Newman met and conferred with NAF this morning.
  Counsel for Newman agreed with NAF's proposed schedule with one
  exception:  Newman objected to providing a privilege log as to

sf-3578466

MORRISON | FOERSTER

The Honorable William Orrick
September 25, 2015
Page Four

documents withheld under a Fifth Amendment assertion, but did not
object to the timing of an *in camera* review in the event disputes arise
over Newman's privilege assertions that require the Court's resolution.

Counsel for CMP, Biomax, and Daleiden had originally agreed to a
follow-up meet and confer on Thursday, but then requested a
postponement until Friday morning. Shortly before that call was
scheduled to begin, however, counsel for CMP, Biomax, and Daleiden
wrote in an email that they would not be joining the call, citing
"questions concerning representation." Their email indicated that they
did not believe NAF's proposed schedule allowed enough time to
respond to discovery, but that they were not in a position to propose an
alternative schedule.

For these reasons, NAF respectfully requests that the Court order a schedule that gives the
parties sufficient time to work out any discovery issues and accommodate witness
availability for depositions, while nevertheless moving expeditiously toward a preliminary
injunction hearing. NAF therefore proposes the following schedule:

| Deadline | Description |
| --- | --- |
| September 30, 2015 | Exchange written discovery responses, document production, and privilege log (including a log of all material withheld based on an assertion of Fifth Amendment privilege). |
| October 7, 2015 | Submit joint letter to the Court regarding discovery, privilege, and confidentiality disputes; Provide copies for *in camera* review of any documents withheld on a disputed assertion of privilege (including Fifth Amendment privilege). |
| October 9, 2015 | Hearing to resolve discovery disputes. |
| October 14, 2015 | Exchange additional discovery per the Court's discovery rulings. |
| October 28, 2015 | Complete depositions. |
| November 4, 2015 | Preliminary injunction motion. |

MORRISON | FOERSTER

The Honorable William Orrick
September 25, 2015
Page Five

| Deadline | Description |
|---|---|
| November 18, 2015 | Preliminary injunction opposition. |
| November 25, 2015 | Preliminary injunction reply. |
| At the Court's convenience | Hearing on preliminary injunction. |
| 21 days after the Court's final disposition on NAF's preliminary injunction motion | Defendants' deadline to respond to the First Amended Complaint. |

 (2) <u>Responses to Subpoenas Issued by Government.</u>

The Court's Minute Order of September 18, 2015 also orders the corporate defendants (CMP and Biomax) to meet and confer with NAF regarding its anticipated response to the Arizona AG subpoena within 10 days of the Ninth Circuit's decision on the writ (Dkt. No. 132 at 2), which means the meet and confer must take place by **Monday, October 5**. The Court's order also states, however, that "**Defendants may respond to the subpoena ten (10 days) after the conclusion of the meet and confer**." (*Id*. (emphasis added).)

As an initial matter, requiring that a meet and confer be completed by October 5 may not allow the parties sufficient time to engage in a meaningful dialogue depending on the volume of material that CMP believes to be responsive to the subpoena.

A bigger and more fundamental problem, however, is that permitting CMP to disclose that material within 10 days after the meet and confer simply does not give NAF sufficient time to assert its rights by seeking a Protective Order and/or moving to quash or modify the subpoena in the appropriate forum prior to Defendants disclosing the information they stole from NAF. The point of the meet-and-confer, as NAF's agreements state, is for CMP to "cooperate" with NAF in order to give sufficient time to determine whether it has any lawful grounds to resist or narrow the subpoena. (Dkt. 1-2 at 2 ¶ 4.) NAF won't know the answer to that question until the meet-and-confer takes place.

Suppose, for example, we find out that Defendants have dozens or even hundreds of hours of audio or video recordings of NAF meetings that do not contain any information fairly called for by any of the subpoenas served on CMP. NAF would certainly object to turning over that information. Such a disclosure would not only be irrelevant and therefore nonresponsive to

**MORRISON | FOERSTER**

The Honorable William Orrick
September 25, 2015
Page Six

the subpoenas, it would also be incredibly invasive, and would chill NAF and its members' ability to freely associate and speak on issues concerning safe and effective abortion care.

Yet here, the Court's order could be construed to give Defendants *carte blanche* to turn over **everything they stole from NAF 10 days after the meet and confer**, or as early as October 13. NAF will almost certainly be unable to seek relief in the appropriate forum within that time frame. The Court's order might end up unintentionally defeating NAF's contract rights, and render its TRO a dead letter. The Court's order is also inconsistent with the Stipulated Protective Order in this case, which allows the "Designating Party," when the other party is served with a subpoena calling for the production of the Designating Party's records, the "opportunity to try to protect is confidentiality interests in the court or tribunal from which the subpoena or order issued." (Dkt. No. 92 at 19:3-4.) Here, the meet and confer would take place after the stolen materials have been produced to NAF. Yet, NAF would be denied its basic right under the Protective Order if the Court's order is read literally.

Moreover, even under the Northern District's Model Protective Order applicable in standard commercial cases, a party who receives a subpoena is **expressly prohibited** from responding to that subpoena if the Designating Party objects and provides notice that it intends to seek a Protective Order unless and until there is a "determination by the court from which the subpoena or order issued." (*See* Model Protective Order ¶ 8.) That is all the protection that NAF seeks here. It would seem unfair to afford parties who have acknowledged stealing confidential information in violation of agreements they signed with **more** disclosure rights than parties to ordinary commercial litigation within this District. That is especially the case given the sensitive privacy interests at stake. At the same time, granting NAF additional time to assert its rights in response to these subpoenas will not interfere with CMP's ability to produce responsive records not covered by the TRO. Indeed, CMP is already in the process of compiling and producing substantial amounts of video footage that CMP claims is not covered by the TRO in response to certain governmental subpoenas. (*See* Exhibit A.)

NAF therefore requests that the Court clarify that Defendants may not disclose information covered by the Court's TRO in response to any subpoenas or governmental requests if, after meeting-and-conferring with NAF, NAF provides notice that it objects to the disclosure and intends to seek relief in the appropriate fora.

Sincerely,

Derek F. Foran

sf-3578466

**MORRISON | FOERSTER**

The Honorable William Orrick
September 25, 2015
Page Seven


cc:  Counsel of Record