# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

October 5, 2015

Writer's Direct Contact
+1 (415) 268.6323
DForan@mofo.com

*Via ECF*

The Honorable William H. Orrick
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *National Abortion Federation v. Center for Medical Progress, et al.*
Case No. 3:15-cv-03522

Dear Judge Orrick:

NAF respectfully submits this response to a letter submitted by David Daleiden to the Court on October 2. (Dkt. No. 152.)

In his letter, Daleiden states his intent to violate this Court's TRO and disclose NAF Confidential Information he has thus far refused to turn over to NAF or to this Court to a House Subcommittee by this Wednesday "unless this Court instructs otherwise." (*Id.* at 2.) Wednesday – the day Daleiden has unilaterally selected for violating the Court's TRO – is the Court-ordered deadline for production of documents in response to NAF's discovery requests. (*See* Dkt. No. 145 at 1.) Counsel for Daleiden informed counsel for NAF of Daleiden's intent to violate the Court's TRO on a phone call minutes before the letter was filed. In that call, counsel for Defendants also indicated they were unlikely to produce to NAF this Wednesday all of the information covered by the TRO (*i.e.*, the very same information that Daleiden is now telling the Court he is going to disclose to the Subcommittee on the same day). Daleiden's counsel also declined to identify the material covered by this Court's TRO that is responsive to the Subcommittee's subpoena (or any other subpoena), and refused to commit to a date certain for doing so.

Daleiden's stated intent to violate this Court's TRO is an extraordinary affront to this Court and to this legal proceeding, and the Court should make clear that any such unilateral action is prohibited. There is no serious question that his anticipated disclosure of NAF Confidential Information is barred by this Court's Orders. The Court's TRO expressly prohibits Daleiden and his cohorts from disclosing NAF Confidential Information to "any third party." (Dkt. No. 15.) That TRO was entered over Daleiden's specific argument that

sf-3582132

he would be prevented from providing information to "legislative and executive investigators," including a "subcommittee conducting a legislative investigation." (Dkt. No. 22 at 25.) Since the TRO was entered, Daleiden has twice consented to its extension. (Dkt. Nos. 34, 83.) He represented to this Court that he was "amenable to extending the Court's temporary restraining order to remain in effect through the Court's final disposition on NAF's preliminary injunction motion." (Dkt. No. 34 at 2.) And most recently the Ninth Circuit rejected Daleiden's collateral attack on the TRO and ordered Daleiden to proceed with discovery. (Dkt. No. 140.)

It is precisely because the Court's TRO prohibits disclosures to anyone that Daleiden, CMP, and Biomax filed a motion to clarify the TRO "as it relates to any subpoenas" received from government entities. (Dkt. No. 61.) Daleiden's then-counsel represented numerous times that Daleiden would continue to honor this Court's Orders as written until that motion is resolved. Thus, when CMP was served with the Subcommittee's subpoena, Daleiden's counsel stated that Daleiden would "await the Court's ruling on the pending motion to clarify re subpoenas before providing materials covered by the TRO in response to this subpoena." (*See* Attachment A.) The lawyer who made these promises on Daleiden's behalf has now withdrawn. (Dkt. No. 141.) Daleiden, apparently, has changed his mind.

The only reason cited by Daleiden for his stated intent to violate this Court's Orders is that he "believes himself compelled" to respond to the Subcommittee's subpoena because he received a letter instructing him to comply with the subpoena notwithstanding this Court's TRO. (Dkt. No. 152 at 1.) There are multiple reasons why Daleiden's "belief" is incorrect as a matter of law.

As an initial matter, the letter is not even addressed to Daleiden or his counsel. It is addressed to counsel for "The Center for Medical Progress ('CMP')" (Dkt. No. 152-2 at 1). The Subcommittee itself makes that point crystal clear. (*See id.* (letter "concerning the subpoena *duces tecum* issued to . . . The Center for Medical Progress").) The letter sets no deadline for compliance, and does not even mention, much less threaten, contempt proceedings. It is ***CMP's*** responsibility to deal with the subpoena, and CMP, which as of last Monday is separately represented in this matter (Dkt. No. 144), has remained silent thus far. David Daleiden is not compelled to do anything in response to this letter.

Second, before a House Subcommittee subpoena may be enforced, House rules require the authorization of the full House, and there has been no such authorization here. *See* Rules of the House of Representatives, Rule XI, cl. 2(m)(3)(C) (114th Congress, Jan. 6, 2015) ("Compliance with a subpoena issued by a . . . subcommittee . . . may be enforced ***only as authorized or directed by the House***.") (emphasis added). The Supreme Court has made very clear that committees of Congress must strictly conform to their own rules in obtaining evidence. *Yellin v. United States*, 374 U.S. 109, 114 (1963) (holding that "a legislative committee has been held to observance of its own rules"); *id.* at 124 (House subcommittees

must be "meticulous in obeying [their] own rules"); *see also Watkins v. United States*, 354 U.S. 178, 187 (1957) (same). The Fifth Circuit, for example, dismissed an appeal brought by House Subcommittee chairmen who sought access to material protected by a federal court protective order because they had failed to receive full House authorization to do so in compliance with the precursor to Rule XI, cl. 2(m)(3)(C). *In re Beef Industry Antitrust Litig.*, 589 F.2d 786, 790-91 (5th Cir. 1979) ("*Beef Industry II*"). The Fifth Circuit reasoned that "Congressional committees are themselves the offspring of Congress; they have only those powers authorized by law; they do not have an unlimited roving commission merely by virtue of their creation and existence to ferret out evil or to uncover inequity." *Id.* at 787-88. Because the Subcommittee chairmen had failed to seek full House authorization to intervene in a pending federal court case, as required by its own rules, the Fifth Circuit left undisturbed the district court's order refusing to allow access to confidential documents covered by a federal court protective order. *Id.* at 791; *In re Beef Industry Antitrust Litig.*, 457 F. Supp. 210, 211 (N.D. Tx. 1978) ("*Beef Industry I*"). Thus, Daleiden's "belief" that he is compelled to do anything in response to the letter is flat wrong as a matter of law. Because there has been no authorization from the full House to enforce the subpoena, the Subcommittee has no legal authority to enforce it.

Third, Daleiden's "belief" is that a Subcommittee of Congress has the legal authority to interfere in a pending federal court case by telling a litigant that it can violate a federal court order is contrary to law. "The Federal Courts and the Congress have two different roles under our Constitution." *Beef Industry I*, 457 F. Supp. at 211. "It is the intention of the Constitution that each of the great co-ordinate departments of the government – the Legislative, the Executive, and the Judicial – shall be, in its sphere, independent of the others" and Congress has no authority to "pass[] the limit which separates the legislative from the judicial power." *United States v. Klein*, 80 U.S. 128, 147 (1871). Thus, while Congress has the power to "pass laws which regulate the procedures in the Federal Courts" it has no "power to interfere in a particular case." *Beef Industry I*, 457 F. Supp. at 212. In comments that are directly on point here, the court in *Beef Industry I* noted that it was "inconceivable" that a House Subcommittee "would just run roughshod over an order of Court entered in connection with the disposition . . . of a case pending in Court." *Id.* at 213. Congress simply has no power under the Constitution, federal law, or its own rules, to tell a party to a federal lawsuit that it can go ahead and act in violation of a federal court order. Daleiden's claim to the contrary is inimical to basic, fundamental principles of separation of powers. U.S. Const. Art. III, § 2 (vesting "The judicial power" in federal courts); *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Fourth, Daleiden's letter fails to point out clear authority that federal courts have **refused** to allow the subcommittees of Congress access to confidential information that is covered by a pre-existing federal court order, as here. *In re Beef Industry I*, 457 F. Supp. at 212; *Iowa*

*Beef Processors, Inc. v. Bagley*, 601 F.2d 949 (8th Cir. 1979).  For example, in *Beef Industry I*, two subcommittees of Congress issued subpoenas for information covered by a federal court protective order, then filed a motion to modify the protective order to allow the parties to respond to the subcommittees' subpoenas.  The federal court denied the subcommittees' motion.  457 F. Supp. at 211–12.  The Court held that "the orders of a Federal Court in its undertaking to dispose of cases . . . have some significance and importance" and "Congress by subpoenaing these documents is interfering with the processes of a Federal Court in an individual case." *Id.* at 212.  And in *Iowa Beef Processors*, the Eighth Circuit ruled that the district court abused its discretion by dissolving a protective order so that a party could respond to a congressional subpoena.  It reasoned that the documents sought by the Subcommittee "were an important part of the subject matter underlying the lawsuit," and lifting the order to allow disclosure to Congress "could well render moot [the plaintiff's] claims for relief in the underlying lawsuit."  601 F.2d at 954.  Exactly the same thing is true here.  Daleiden is effectively attempting to leverage an (unenforceable) letter from a Subcommittee in order to make an end run around this Court's Orders.  If he is permitted to do so, NAF will have no opportunity to ensure that material produced to Congress is in fact responsive to the subpoena *before* it is disclosed.  Moreover, the Court will have no ability to prevent that material from broader public dissemination, which may render moot both NAF's motion for preliminary injunction and the ultimate relief that NAF seeks in this case.

Daleiden can cite no authority that even remotely supports the notion that he can violate a federal court TRO because a House Subcommittee issued a subpoena to CMP and then wrote him a letter.  Not a single one of the authorities cited either by Daleiden or in the Subcommittee's letter deals with the situation presented here, where a pre-existing TRO prohibits disclosure of confidential information.  *Eastland v. United States Serviceman's Fund*, 421 U.S. 491 (1975), Daleiden's primary authority, simply stands for the proposition that a federal court may not interfere in a pending congressional investigation by enjoining congress from issuing a subpoena.  The exact *opposite* situation is presented here – where a litigant in federal court is construing a Subcommittee's letter in order to violate a federal court order.  And critically, there was no prior court order present in *Eastland* (much less a TRO protecting the privacy of individuals who have been the subject of harassment, intimidation, and violence for decades).  The federal court in *Beef Industry I* expressly distinguished *Eastland* on this ground, noting that "[t]he *Eastland* case by the Supreme Court did not involve a court order . . . as in this case."  457 F. Supp. at 212  (rejecting argument that *Eastland* "gave Congress carte blanche to do anything that it wanted to do free from any review by the Courts").[1]

---

[1] Nor do the other cases cited by Daleiden speak to the situation presented here.  *Exxon v. FTC*,  *FTC v. Owens Corning Fiberglass Corp.*, and *Ashland Oil, Inc. v. FTC* all involved the question of whether the FTC – which had obtained trade secrets that it was required by

Fifth, contrary to Daleiden's "belief," the correct way for a member of Congress to seek access to documents covered by a federal court order is not to write a letter to a federal court litigant informing him (incorrectly) that he may violate that order. Rather, members of Congress must seek leave to intervene pursuant to Federal Rule of Civil Procedure 24. The cases that address congressional subpoenas and the extent to which they seek confidential documents covered by a federal court order or protected by statute make this very clear. *Beef Industry II*, 589 F.2d at 789 ("There is no question that the procedurally correct course for the chairmen would have been first to obtain status in the suits as intervenors."); *Ashland Oil, Inc. v. F.T.C.*, 409 F. Supp. 297, 301 (D.D.C. 1976) (allowing subcommittee to intervene based on House resolution authorizing intervention, and court's grant of intervention motion pursuant to Fed. R. Civ. P. 24). In order to seek intervention, however, the Subcommittee first must follow its own rules and seek House authorization to do so. *See Beef Industry II*, 589 F.2d at 788 (construing precursor to House Rule XI, cl. 2(m)(3)(C) to require House authorization "not only for direct enforcement of a subpoena but also in any instance when a House committee seeks to institute or to intervene in litigation").

Intervention is no mere technicality. To the contrary, because the Court has no jurisdiction over parties not before it, "[s]ome courts have held it is reversible error to conduct any proceedings at the behest of parties who have failed to intervene formally pursuant to Rule 24." *Id.* at 788. One of those courts is the Ninth Circuit. *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (Kennedy, J.). Thus, if Daleiden wants to disclose information protected from disclosure from this Court's Orders, then the Subcommittee must first follow its own rules and seek intervention in this matter. Absent intervention, this Court cannot take any action at the Subcommittee's behest, nor can Daleiden take it upon himself to act as its messenger.

And critically, only if the Subcommittee intervenes will the Court be in a position to protect its TRO and assure itself that identifying information about NAF's members will not be

---

statute to keep confidential – could be permanently enjoined from disclosing those trade secrets to Congress. None of these cases involve pre-existing suits before federal courts, or outstanding federal court orders prohibiting disclosure of sensitive information, as here. Nor do these cases endorse an "absolute" congressional subpoena power, as Daleiden claims. (Dkt. No. 152 at 1.) For instance, *Exxon Corp. v. F.T.C.*, 589 F.2d 582 (D.C. Cir. 1978), emphasized that "[e]lection to the Congress does not give an individual subpoena power over whatever information he may happen to be interested in," and made clear that courts should "require the FTC to take steps to ascertain the validity of a subpoena . . . before it releases data it is required by statute to be kept confidential," and the FTC could "not release such sensitive information without verifying that the request satisfies the requirements of the controlling congressional rule." *Id.* 593-594. Daleiden's attempt to unilaterally produce all material to the Subcommittee without check or supervision by this Court flies in the face of the very cases he cites.

made publicly available. *See Iowa Beef Processors*, 588 F.2d at 640-41 (obtaining congressional assurances of confidentiality to craft judicial relief with respect to confidential information); *General Motors Corp. v. Finklea*, 459 F. Supp. 235, 239 (S.D. Oh. 1978) (holding federal agency had no right to subpoena "identifying names and addresses" of GM employees and ordering identifying information to be withheld). As NAF has said all along, it does not oppose Defendants providing compelled responses to lawful government subpoenas. If it turns out that information covered by the Court's TRO is responsive to the Subcommittee's subpoena, and that "information is pertinent to the investigation and within the scope of the grant of [its] authority," *Bergman v. Senate Special Comm. on Aging*, 389 F. Supp. 1127, 1130 (S.D.N.Y. 1975), then Subcommittee intervention will allow the Court to obtain appropriate assurances that its jurisdiction, and the confidentiality of NAF's members, will remain protected. *Iowa Beef Processors*, 588 F.2d at 640-41; *see also Watkins*, 354 U.S. at 187 (Congress has "no general authority to expose the private affairs of individuals without justification"); *Fed. Trade Com. v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 970 n.8 (D.C. Cir. 1980) ("[G]eneral, public distribution of information beyond Congress and its functionaries serves no legitimate legislative purpose and thus receives no constitutional protection."). It is vitally important that the Court continue to maintain control over these Defendants and ensure the information that they stole from NAF is not spread far and wide in their ongoing, brutally dishonest smear campaign against providers of abortion care.

Last, there is simply no urgency here, as Daleiden self-servingly claims. For the reasons stated above Daleiden is not compelled to do anything in response to the letter. Moreover, the Subcommittee has no hearing regarding its investigation into Planned Parenthood on calendar. And Daleiden has already taken it upon himself to send to the Subcommittee all "requested video footage that is not prohibited from disclosure to 'third parties' under the Temporary Restraining Order." (*See* Attachment B.) The Subcommittee has already received Daleiden's Fed Ex package. (*See* Attachment C at 80-82.) On the other hand, requiring Daleiden to make the material he stole from NAF available to NAF the Court ***before*** there is any disclosure will allow the Court to fairly assess the scope and responsiveness of the material in question. In *Bergman*, for example, the federal court limited the scope of disclosures in response to a Subcommittee subpoena because the production the party in question planned to make was not "'justified by a specific legislative need,' [and] the threat of a violation of an individual's constitutional rights, including his or her 'personal interest in privacy,' outweighs any right the Subcommittee might claim to the subpoenaed documents and requires that disclosure not be compelled." 389 F. Supp. at 1130 (citing *Watkins*, 354 U.S. 178). The Court needs to undertake the same inquiry here.

sf-3582132

For the foregoing reasons, NAF respectfully submits that the Court should order Daleiden to do what it has ordered him to do, and what he has agreed to do, multiple times already: Do not disclose information covered by this Court's TRO to "any third party."

Sincerely,

Derek F. Foran

cc: Counsel of Record

sf-3582132