UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>    Defendants. | Case No. 15-cv-03522-WHO<br><br>**ORDER RE CONGRESSIONAL SUBPOENA**<br><br>Re: Dkt. Nos. 152, 154 |

Plaintiff National Abortion Federation (NAF) urges me to interfere with defendant Center for Medical Progress's (CMP) response to a Congressional subpoena that seeks documents that CMP has indicated are covered by the Temporary Restraining Order entered by this Court.[1]  NAF makes no argument that the subpoena itself is infirm.  Congress has the power to investigate, and it is not up to the courts to go beyond the narrow confines of determining that the committee's inquiry is in its province.  *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 506 (1975).  Nor may courts assume (and I do not assume) that an unworthy purpose prompts a congressional act.  *Id*. at 508.  And, importantly in our Constitutional system, there are three equal branches of government, and courts should refrain from creating needless friction with a coordinate branch of government.  *Exxon Corp. v. Fed. Trade Com*., 589 F.2d 582, 590 (1978).  For these reasons, I

---

[1] The subpoena was issued by Congressman Jason Chaffetz, the Chairman of the House Committee on Oversight and Government Issues.  It commands defendant Daleiden, as Executive Director of the Center for Medical Progress (CMP), to produce documents, communications and video footage referring or relating to the "acquisition, preparation, and sale of fetal tissue" or "relating to the involvement of Planned Parenthood and its affiliates in the sale of fetal tissue, manipulation of abortion procedures, and/or related conversations."  Docket No. 152-1.  CMP has already provided responsive documents that are not covered by the TRO, which prevents defendants from disclosing to any third-party any recordings or information learned at any NAF annual meetings, including the dates or locations of any future NAF meetings and the names or addresses of any NAF members.  Docket Nos. 15, 27, 64, 84.

will not interfere with CMP's response to the subpoena.

NAF argues that (i) responding to the Congressional subpoena would violate the Court's TRO, (ii) Daleiden need not comply with the subpoena because the subpoena was issued to CMP (and not Daleiden), (iii) the subpoena cannot be enforced absent full House authorization, and (iv) the appropriate recourse for the House Committee is to move to intervene in this action to seek amendment of the TRO.  Docket No. 154.  But NAF does not argue that the information sought by the subpoena falls outside the "sphere of legitimate legislative activity" of the House Committee.  *Eastland v. United States Servicemen's Fund*, 421 U.S. at 501.  Absent an attempt to exceed that sphere, the Speech and Debate Clause provides immunity to allow Congress to independently perform its legislative duties through its subpoena powers.  *Id*. at 502, 505.  As explained by the Supreme Court, it is not the Court's role to determine the legitimacy of the Congressional investigation by looking to the Committee's motives.  *Id*. at 508.

I issued the TRO because defendants, after entering into nondisclosure agreements with NAF under false pretenses, clearly breached the agreements not to disclose information learned at NAF's annual meetings.  I remain concerned about the threat of irreparable injury to the privacy rights of NAF's members, shown by NAF through the history of violence against providers of abortion care and the specific acts of intimidation against NAF members, including death threats, harassment and reputational harm, apparently caused by the release of defendants' videos prior to the TRO.  But as defendant points out, disclosure to a Congressional committee is not "public disclosure."  *Exxon Corp. v. Fed. Trade Com*., 589 F.2d 582, 589 (1978).  And courts "must presume that the committees of Congress will exercise their powers responsibly and with due regard for the rights of affected parties." *Id*.  Likewise, the "court cannot assume that Congress will act irresponsibly in regulating or disclosing" the information at issue.  *Id*. at 590.  While case law allows courts to modify or quash Congressional subpoenas in order to protect constitutional rights from infringement by Congress, *id*., there is no evidence on this record that the subpoena at issue will result in that type of infringement, and NAF does not argue it would.

NAF's arguments that Daleidin need not comply with the subpoena do not require my intervention to prevent him from voluntarily doing so.  Daleidin, as executive director of CMP,

2

has been directed to comply with the subpoena.  This is not an issue of the House Committee taking legal action "to enforce" a subpoena – thereby requiring full House authorization – but the question of whether a recipient may voluntarily comply with a subpoena.  Similarly, this is not a case where Congress is asking a Court to modify a protective order to provide it access to information only received by a party through discovery sanctioned by the Court.  *But see In re Beef Indus. Antitrust Litig.*, 457 F. Supp. 210, 211 (N.D. Tex. 1978); *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979).

All that said, it is not lost on me that defendants seek expeditiously to provide information to Congress that they have tried in a variety of ways not to provide to NAF.  Prior to responding to the Congressional subpoena, defendant CMP shall deliver to counsel for NAF and to the Court a true and correct copy of everything defendant will provide to Congress, including all video footage, documents and communications described in the subpoena.  Further, CMP shall not provide to Congress any footage, documents or communications that have not been specifically requested by the subpoena.  *See Exxon Corp v. Fed. Trade Com.,* 589 F. 2d at 592 (limiting FTC's response to properly issued Congressional subpoena so that it only reveals statutorily protected trade secrets).

I interpret the subpoena as being directed to Daleiden in his capacity as Executive Director of CMP, as it says on the first page of the subpoena.  That is consistent with my understanding from the proceedings in this case to date; the documents, video footage and communications covered by the TRO are CMP's and do not belong to any individual defendant.  But if any defendant, such as Daleiden, intends to assert a privilege to producing a document in this case but plans to produce the document to Congress pursuant to the subpoena, he shall first file the document *in camera* with the Court, accompanied by an explanation of how he or she has the right to assert the privilege with respect to the document, and delay providing such document to Congress until I rule on the privilege and propriety of withholding production from NAF.  I will not countenance a game of hide the ball with respect to these documents, video footage and

1  communications, that interferes directly with these proceedings.

2  **IT IS SO ORDERED**.

3  Dated: October 6, 2015

_____
WILLIAM H. ORRICK
United States District Judge