Catherine W. Short, Esq.; SBN 117442
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA  93024-1313
Tel:  (707) 337-6880
LLDFOjai@earthlink.net

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
Corrine Konczal, *pro hac vice*
Thomas More Society
19 La Salle St., Ste. 603
Chicago, IL 60603
(312) 782-1680
tbrejcha@thomasmoresociety.org

Attorneys for Defendant
DAVID DALEIDEN

**UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL ABORTION FEDERATION (NAF),<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; DAVID DALEIDEN (aka "ROBERT SARKIS"); and TROY NEWMAN,<br><br>　　　　Defendants. | Case No. 3:15-cv-3522 (WHO)<br><br>Judge William H. Orrick, III<br><br>DEFENDANT DAVID DALEIDEN'S SUPPLEMENTAL BRIEF REGARDING THE INVOCATION OF FIFTH AMENDMENT PRIVILEGE AS TO THE IDENTITIES OF ALLEGED "CONSPIRATORS" |

In response to this Court's Order of October 30, 2015, Doc. 185, at 3:10-14, Defendant David Daleiden ("Daleiden") submits this supplemental brief regarding his invocation of the Fifth Amendment privilege[1] regarding the identities of individuals who attended NAF annual meetings along with Daleiden, as well as supporters and associates with whom Daleiden communicated during his investigations. The Fifth Amendment clearly authorizes Daleiden to decline to disclose this information, because it is not "perfectly clear" that responding to such questions "cannot possibly" tend to incriminate him. Moreover, Daleiden has not waived the privilege as to the identities of these persons by responding to other questions about the case, because the possibility clearly remains that disclosing their identities might tend to incriminate him "further."

### I. The Fifth Amendment Unquestionably Authorizes Daleiden to Decline to Disclose the Identities of Alleged "Conspirators."

The Fifth Amendment privilege against self-incrimination may be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). The Fifth Amendment privilege "does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461 (1975). The privilege may be overcome only if it is "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) *cannot possibly* have such tendency to incriminate." *Hoffman v. United States*, 341 U.S. 479, 488 (1951) (emphases added) (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1880)). "The privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution." *In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974).

In considering whether a particular question poses any possible risk of self-incrimination, courts construe the circumstances very liberally in favor of the privilege. "In determining whether

---

[1] As used herein, "Fifth Amendment" privilege refers both to the federal constitutional guarantee against self-incrimination and the analogous privileges protected under California law.

the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical." *Emspak v. United States*, 349 U.S. 190, 198 n.18 (1955) (quotation omitted). Rather, "an invocation of the privilege should be sustained 'if a court can, by use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution.'" *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 593 (6th Cir. 2015) (quoting *In re Morganroth*, 718 F.2d 161, 169 (6th Cir. 1983)).

Applying these liberal standards, "[b]oth the Supreme Court and this Court have repeatedly applied *Hoffman* to sustain the invocation of the Fifth Amendment privilege in response to questions regarding the individual's personal or professional associations." *Convertino*, 795 F.3d at 593. These include numerous cases in which the witness provided substantial information about the matter in question, and only refused to provide the identities of potential conspirators or associates. *See id.* (upholding a reporter's claim of Fifth Amendment privilege as to the identity of a confidential source who had leaked information to the reporter, even though the reporter had provided testimony admitting to his receipt of the leaked information); *see also Malloy v. Hogan*, 378 U.S. 1, 13-14 (1964) (holding that a witness could invoke Fifth Amendment privilege to refuse to answer questions about potential criminal associations); *Emspak*, 349 U.S. at 199 (holding that a witness could invoke Fifth Amendment privilege to avoid testifying about associations and affiliations before the House Un-American Activities Committee); *Matter of Seper*, 705 F.2d 1499, 1502 (9th Cir. 1983) (holding that a reporter could invoke the Fifth Amendment to avoid identifying source of illegally leaked materials, though the reporter testified that he had received the materials from IRS sources).

The same result should apply in this case. In this case, NAF aggressively claims that Daleiden committed numerous crimes in videotaping NAF meetings. *See, e.g.*, First Amended Compl., Doc. 131, ¶¶ 149-161 (alleging that Daleiden violated federal racketeering laws); *id.* ¶¶ 162-169 (alleging that Daleiden violated federal criminal wiretap laws); *id.* ¶¶ 170-175 (alleging conspiracy to violate other laws); *id.* ¶¶ 186-192 (alleging civil fraud, and asserting elements analogous to criminal fraud); *id.* ¶¶ 220-224 (alleging criminal violations of Calif. Penal Code § 632). Moreover, according to NAF, both federal and state criminal investigations of CMP and/or Daleiden are now pending. Under

these circumstances, this Court can easily, "by use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution." *Convertino*, 795 F.3d at 593. The identification of individuals who cooperated in these allegedly criminal activities could provide direct evidence against Daleiden to support criminal charges of conspiracy to violate the various criminal statutes cited by NAF, and it could also lead to the discovery of additional evidence that could potentially "furnish a link in the chain of evidence that could lead to a prosecution." *Maness*, 419 U.S. at 461. Indeed, the identities of associates and potential conspirators constitute particularly sensitive and potentially damaging evidence. *See Matter of Seper*, 705 F.2d at 1502 ("We have little difficulty in concluding that disclosure of Seper's sources would further incriminate him by providing links in the essential chain of proof."); *Convertino*, 795 F.3d at 596 ("The answers to the . . . questions at issue in this appeal could have revealed facts not yet disclosed that might constitute further links in a chain of incrimination, including the identity of witnesses and co-conspirators, and lead to more evidence about this or other leaks.").

To be sure, NAF's theories of criminal liability are legally erroneous, and Daleiden vigorously denies that he has engaged in any criminal wrongdoing. *See, e.g.*, Doc. 66-1. Indeed, NAF's allegations of *criminal* behavior are calculated to suppress freedom of speech and chill vital First Amendment interests. *See Animal Legal Defense Fund v. Otter*, -- F. Supp. 3d --, 2015 WL 4623943, at *3 (D. Idaho Aug. 3, 2015) (holding that an attempt to criminalize investigative journalism by undercover filming "strik[es] at the heart of important First Amendment values"). But these facts do not undermine Daleiden's ability to invoke the Fifth Amendment privilege. "[A]rguments . . . about the unsettled points of law that might ultimately render a criminal prosecution unsuccessful" do not prevent a witness from invoking the Fifth Amendment. *Convertino*, 795 F.3d at 594. "A witness is not required to shoulder such risks." *Id.*

To the extent that NAF contends that Daleiden's invocation of the privilege is pretextual, intended merely to protect the identities of Daleiden's associates, this claim has no merit. The identification of close associates who cooperated in allegedly criminal activity is particularly sensitive evidence against a potential criminal defendant, both because it provides direct evidence of

potential conspiracy and because the associates may provide troves of additional information about the witness not yet known to law enforcement. Moreover, it is irrelevant whether Daleiden might also wish to protect the identities of third parties by invoking the privilege, so long as he has an objective basis for his own personal invocation of the Fifth Amendment. *See Shendal v. United States*, 312 F.2d 564, 565 (9th Cir. 1963) (upholding the assertion of the privilege even though the trial court had found "that it was transparent from Shendal's answers that he was trying to protect someone else").

## II. Daleiden Has Not Waived the Testimonial Privilege by Responding to Questions on Other Topics.

Daleiden has not waived his right to invoke the Fifth Amendment as to the identities of individuals working with him on his investigative project by responding to questions on other topics in written discovery and deposition testimony.

In considering whether a witness has waived Fifth Amendment privilege, this Court "must indulge every reasonable presumption against waiver." *Emspak*, 349 U.S. at 198 (quotation omitted). "[A] 'testimonial waiver' is not to be lightly inferred, and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." *Klein v. Harris,* F.2d 274, 287 (2d Cir. 1981) (citations omitted). In the Fifth Amendment context, "the doctrine of waiver should be confined in its operation to narrow limits." *Hashagen v. United States*, 283 F.2d 345, 353 (9th Cir. 1960). "For a court to find waiver of the Fifth Amendment privilege, it is not enough that a party generally testifies as to a topic. Instead, the party must have already provided testimony that in and of itself is incriminating and that is specific to the topic where the questioner wants additional detail." *In re Yates*, No. BKR. 04-05619-LT7, 2008 WL 7889836, at *11 (Bankr. S.D. Cal. June 17, 2008).

To be sure, "where incriminating facts have been revealed without claiming the privilege, the privilege cannot then be invoked to avoid disclosure of the details." *In re Master Key Litig.*, 507 F.2d 292, 294 (9th Cir. 1974) (citing *Rogers v. United States*, 340 U.S. 367 (1951)). But a witness may invoke the privilege even after providing incriminating testimony, provided that the answers to the additional questions "could possibly incriminate him *further*." *Id.* (emphasis added). "[T]he

touchstone in *Rogers* is the adjective 'further,' and thus an admission of a criminating fact may waive the privilege as to the details of that fact so long as they do not *further* incriminate, but where those details would so incriminate, the privilege is not waived." *Matter of Seper*, 705 F.2d at 1501 (quoting *Hashagen v. United States*, 283 F.2d 345 (9th Cir. 1960)). "'Further incrimination' includes testimony that is not directly incriminating if it might supply a 'link' in a necessary chain of evidence." *Id.* (quoting *Hoffman*, 341 U.S. at 488). "Furthermore, the privilege is available if answers 'could possibly' supply such a link." *Id.*

The Ninth Circuit requires only a minimal showing to establish that an additional question might "further" incriminate a witness—it requires only that witness's decision to cease testifying at that point not be "ridiculous." "[I]n this circuit the witness has considerable latitude in deciding when to stop responding to questions. . . . Thus, 'granted that the area of the question is within the fifth amendment, short of being ridiculous, it would appear wiser to let the witness pick the point beyond which he will not go.'" *Id.* at 1501-02 (quoting *Shendal v. United States*, 312 F.2d 564, 566 (9th Cir. 1963)); *see also id.* at 1502 ("Because his chosen stopping point was not 'ridiculous,' the district court was correct in ruling that Seper could assert the fifth amendment privilege."). Thus, Daleiden "may 'pick the point beyond which he will not go,' and refuse to answer any questions about a matter already discussed, even if the facts revealed are incriminating, as long as the answers sought may tend to further incriminate him." *Master Key*, 507 F.2d at 294 (quoting *Shendal*, 312 F.2d at 566); *accord Convertino*, 795 F.3d at 596.[2]

---

[2] *Master Key* and other cases distinguish the case of a witness in a civil proceeding from the case of a criminal defendant who takes the stand in his own defense in a jury trial, to whom different Fifth Amendment waiver rules apply. *See Master Key*, 507 F.2d at 294 (distinguishing the case from "[w]hatever may be the rule with respect to such a 'waiver' by a criminal defendant who elects to take the stand in his own behalf"); *Convertino*, 795 F.3d at 596 (same). The waiver standard of *Rogers*, as elucidated by the Ninth Circuit in *Seper* and *Master Key*, is the correct standard to apply to a party witness participating in discovery in a civil case, such as Daleiden. *See, e.g.*, *Conant v. McCoffey*, No. C-97-0139, 1998 WL 164946, at *6 (N.D. Cal. Mar. 16, 1998) (applying *Rogers* and holding that declarations by plaintiffs did not waive Fifth Amendment privilege as to discovery requests); *Duffy v. Currier*, 291 F. Supp. 810, 814-15 (D. Minn. 1968) ("The situation is not similar to a criminal case where the defendant takes the witness stand and by so doing waives the privilege and is subject to broad questioning and cross-examination. The defendant in a civil case such as this may make partial answers and not thereby be required to answer more if it appears to the court that to answer more involves a reasonable chance or danger that the balance of the answer or further answers may be incriminating.").

5
DEF'S SUPP. BRIEF RE INVOCATION OF 5TH AM. AS TO
IDENTITIES OF ALLEGED "CONSPIRATORS"– 3:15-CV-3522

      Under these principles, it is perfectly clear that Daleiden did not "waive" his right to assert the Fifth Amendment as to the identities of associates who cooperated with him in his undercover investigation simply by responding to other questions in the case. Assuming a prosecutor were to adopt NAF's faulty criminal theories, the identities of such "conspirators" plainly have the potential to "further" incriminate Daleiden. They could provide substantive evidence for potential conspiracy charges, and they could lead to the discovery of additional evidence or additional alleged crimes that might provide a "link" for a possible prosecution. The Ninth Circuit has repeatedly held that such evidence has the obvious potential to "further" incriminate a witness who has already provided incriminating testimony. *See Matter of Seper*, 705 F.2d at 1501-02; *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980) (upholding the claim of privilege of a witness who gave complete testimony as to his involvement in a criminal conspiracy, but declined to identify the name of one individual who had lent him money).

      The Ninth Circuit's holding in *Matter of Seper* is directly controlling here. In *Matter of Seper*, a reporter illegally obtained unauthorized tax information from sources within the IRS, in potential violation of a federal criminal statute. *Matter of Seper*, 705 F.2d at 1500. When deposed in a civil proceeding, the reporter admitted that he had received the information from government sources—effectively admitting to the crime—but he declined to name his sources, invoking the Fifth Amendment. *Id.* The Ninth Circuit held that the reporter had not waived his Fifth Amendment rights by providing potentially incriminating testimony about the matter, without naming his sources. *Id.* at 1502. Observing that "in this circuit the witness has considerable latitude in deciding when to stop responding to questions," the court "ha[d] little difficulty in concluding that disclosure of Seper's sources would further incriminate him by providing links in the essential chain of proof." *Id.*; *see also Convertino*, 795 F.3d at 596 (holding, on very similar facts, that no Fifth Amendment waiver had occurred, because the sources "could have revealed facts not yet disclosed that might constitute further links in a chain of incrimination . . . and lead to more evidence about this or other leaks").

6
DEF'S SUPP. BRIEF RE INVOCATION OF 5TH AM. AS TO
IDENTITIES OF ALLEGED "CONSPIRATORS"– 3:15-CV-3522

## **CONCLUSION**

For the reasons stated, Defendant David Daleiden respectfully requests that this Court uphold his assertion of Fifth Amendment privilege as to the names of individuals who cooperated with him in his undercover investigations.

Respectfully submitted,

/s/ Catherine Short

Catherine W. Short, Esq.; SBN 117442
Life Legal Defense Foundation
Post Office Box 1313
Ojai, CA  93024-1313
Tel:  (707) 337-6880
Fax: (805) 640-1940
LLDFOjai@earthlink.net

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
Corrine Konczal, *pro hac vice*
Thomas More Society
19 La Salle St., Ste. 603
Chicago, IL 60603
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org
ckonczal@thomasmoresociety.org