Steven N.H. Wood (CA Bar 161291)
Bruce A. McIntosh (CA Bar 175607)
Stephen C. Seto (CA Bar 175458)
Christopher J. Schweickert (CA Bar 225942)
**BERGQUIST WOOD McINTOSH SETO** LLP
1470 Maria Lane, Suite 300
Walnut Creek, CA 94596
Tel: (925) 938-6100; Fax (925) 938-4354
wood@wcjuris.com

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION (NAF),<br><br>Plaintiff,<br><br>v.<br><br>THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES LLC, DAVID DALEIDEN (aka "ROBERT SARKIS"), and TROY NEWMAN,<br><br>Defendants. | Case No. 3:15-cv-3522-WHO<br><br>**DEFENDANTS' MOTION FOR STAY PENDING APPEAL AND CONDITIONAL CERTIFICATION OF INTERLOCUTORY APPEAL OF THIS COURT'S ORDER OVERRULING DEFENDANTS' CLAIM OF FIRST AMENDMENT PRIVILEGE, OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; DECLARATION OF STEVEN N.H. WOOD IN SUPPORT**<br><br>Re: Doc. 185<br><br>Judge William H. Orrick<br>Hearing Date/Time: Dec. 9, 2015, 2:00 pm<br>Hearing Location: Courtroom 2, 17th Fl.<br><br>Date Action Filed: July 31, 2015<br>Trial Date: |

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

POINTS AND AUTHORITIES ............................................................................................ 1

INTRODUCTION .................................................................................................................. 1

I.  THIS COURT SHOULD STAY ITS RULING COMPELLING DISCLOSURE OF THE IDENTITIES OF DEFENDANTS' SUPPORTERS. ......................................... 2

   A. The First Amendment protects political association and expression, even in the context of discovery. .................................................................................. 2

   B. Compelled disclosure, such as Plaintiffs' discovery request, fails exacting scrutiny. ............................................................................................................. 3

   C. This Court Should Stay Its Ruling Pending Appellate Review. ................... 5

II. THIS COURT SHOULD CONDITIONALLY CERTIFY ITS FIRST AMENDMENT RULING FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B). ..................................................................................... 11

III. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT DEFENDANTS' LEAVE TO FILE A MOTION FOR RECONSIDERATION. ................................ 13

CONCLUSION ..................................................................................................................... 14

DECLARATION OF STEVEN N.H. WOOD IN SUPPORT ............................................ 15

i

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

# TABLE OF AUTHORITIES

## *Cases*

*Abney v. United States*, 431 U.S. 651 (1977)..................................................................................11

*ACLU, Inc. v. Jennings*, 366 F. Supp. 1041 (D.D.C. 1973)...............................................................2

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486 (9th Cir. 1989) ....................11

*AFL-CIO v. FEC,* 333 F.3d 168 (D.C. Cir. 2003) ..............................................................................3

*Bates v. City of Little Rock*, 361 U.S. 516 (1960).............................................................................2

*Buckley v. Valeo*, 424 U.S. 1 (1976)................................................................................................2, 3

*Centro de la Comunidad Hispana v. Town of Oyster Bay*, 954 F. Supp. 2d 127
   (E.D.N.Y. 2013).................................................................................................................................9

*City of Greenville v. Syngenta Crop Protection, Inc.*, No. 11-mc-10, 2011 U.S.
   Dist. LEXIS 124453 (C.D. Ill. Oct. 27, 2011)...........................................................................9

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978).....................................................................11

*Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456
   (9th Cir. 1991)..................................................................................................................................9

*FEC v. Wis. Right to Life, Inc.,* 551 U.S. 449 (2007) .......................................................................3

*Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539 (1963)...................................................2

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-
   MLB-DWB, 2007 U.S. Dist. LEXIS 22090 (D. Kan. Mar. 26, 2007) ................................10

*Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010) ..................................................................5

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .......................................................................................10

*Int'l Action Ctr. v. United States*, 207 F.R.D. 1 (D.D.C. 2002)......................................................10

*Int'l Union v. Garner*, 102 F.R.D. 108 (M.D. Tenn. 1984).............................................................10

*Kusper v. Pontikes*, 414 U.S. 51 (1973).............................................................................................2

*Marfork Coal Co., Inc. v. Smith*, 274 F.R.D. 193 (S.D. W. Va. 2011).........................................10

*McCutcheon v. FEC*, 134 S. Ct. 1434 (2014) ................................................................................3, 4

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).........................................................11, 12

*NAACP v. Alabama,* 357 U.S. 449 (1958).........................................................................................2

*NAACP v. Button*, 371 U.S. 415 (1963).............................................................................................2

*NOW, Inc. v. Scheidler*, 510 U.S. 249 (1994)...................................................................................8

*NOW, Inc. v. Scheidler*, 537 U.S. 393 (2003)...................................................................................8

*NOW, Inc. v. Scheidler*, 547 U.S. 9 (2006).......................................................................................8

*NOW, Inc. v. Scheidler*, 750 F.3d 696 (7th Cir. 2014) ............................................................. 8

*Perry v. Schwarzenegger,* 591 F.3d 1147 (9th Cir.), *cert. dismissed*, 559 U.S.
    1118 (2010) ............................................................................................................... *passim*

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ............................................................................ 2

*Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 U.S. Dist.
    LEXIS 104636 (D. Mass. Aug. 10, 2015) ............................................................................ 9

*Taiwan v. U.S. Dist. Ct. for N. Dist. of Cal.*, 128 F.3d 712 (9th Cir. 1997) ............................... 11

*Tree of Life Christian Schs. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012
    U.S. Dist. LEXIS 32205 (S.D. Ohio Mar. 12, 2012) ............................................................ 9

*United States v. Playboy Entm't Group, Inc.,* 529 U.S. 803 (2000) ............................................ 4

*Virginia v. Hicks*, 539 U.S. 113 (2003) ....................................................................................... 3

### *Constitutions, Statutes, and Rules*

28 U.S.C. § 1291 ........................................................................................................................ 11

28 U.S.C. § 1292 ........................................................................................................... 11, 12, 13

Fed. R. Civ. P. 26(b)(1) ............................................................................................................... 4

Local Civil R. 7-9 ...................................................................................................................... 13

U.S. Const. amends. I, XIV ................................................................................................*passim*

Calif. Const. Article I, § 1 ........................................................................................................... 5

Calif. Code of Civil Procedure § 1985.3 ..................................................................................... 5

Calif. Code of Civil Procedure § 1985.6 ..................................................................................... 5

iii

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

**NOTICE OF MOTION**

TO PLAINTIFF AND ITS ATTORNEYS: PLEASE TAKE NOTICE that on December 9, 2015 at 2:00 pm, or as soon thereafter as the matter may be heard, in Courtroom 2, 17th Floor of the Honorable Judge William H. Orrick at the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden, and Troy Newman (collectively, "Defendants") shall and hereby do move the Court as follows:

That the Court **(1) stay its Order of October 30, 2015** (Doc. # 185) that overruled Defendants' claim of First Amendment privilege and directed the disclosure of unredacted CMP records that show the identities of individuals and organizations who associated with Defendants, and **(2) conditionally certify its ruling** on the disputed privilege issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or in the alternative **(3) grant Defendants leave to file a motion to reconsider** this Court's Order of October 30, 2015 concerning the First Amendment issues.

**POINTS AND AUTHORITIES**

**INTRODUCTION**

This case arises out of Defendants' undercover investigation to expose violations of fetal tissue laws in the abortion industry. Plaintiff National Abortion Federation (NAF) seeks information protected by the First Amendment: namely, the identities of Defendants' supporters, private citizens who received only a limited and general disclosure about the investigation. There is no evidence that any of them has disclosed what little they learned. The Court recently ordered the disclosure of their identities (Doc. 185). But compelled disclosure of the identities of those who associate with organizations involved with politically controversial issues severely impinges on First Amendment freedoms of association. Defendants intend to assert these rights on appeal. The Court should stay its order overruling these privileges and conditionally certify it for appeal, or grant leave to file a motion to reconsider.

1

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

I. **THIS COURT SHOULD STAY ITS RULING COMPELLING DISCLOSURE OF THE IDENTITIES OF DEFENDANTS' SUPPORTERS.**

   **A. The First Amendment protects political association and expression, even in the context of discovery.**

The information NAF seeks is protected by the First Amendment. The First Amendment protects political association as well as expression. *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). The "freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973). "An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the [s]tate unless a correlative freedom to engage in group effort toward those ends were also not guaranteed." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

This right can be stifled not only through direct government regulation but also through indirect, subtler forms of government action. *NAACP v. Alabama,* 357 U.S. 449, 461 (1958); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960). Thus, the Supreme Court has proscribed, for example, compelled disclosure of membership and contribution lists, holding that "the immunity from state scrutiny of membership [and contribution] lists . . . [is] so related to the right of members [and donors] to pursue their lawful private interests privately and to associate freely with others in so doing as to come within the protection" of the First and Fourteenth Amendments. *NAACP v. Alabama*, 357 U.S. at 466; *see also Buckley*, 424 U.S. at 66 ("Our past decisions have not drawn fine lines between contributors and members but have treated them interchangeably."). There exists a "strong associational interest in maintaining the privacy of [donor] lists of groups engaged in the constitutionally protected free trade in ideas and beliefs." *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 555 (1963); *see also ACLU, Inc. v. Jennings*, 366 F. Supp. 1041, 1055 (D.D.C. 1973) ("It is well established that the requirements of . . . reporting of membership lists cast a chilling effect upon an individual's right to associate freely and to voice personal views through organizational ties"). Whenever the government acts in a way that burdens

associational rights, it must be prepared to justify its actions "not only when it imposes direct limit[]s on associational rights, but also when those actions 'would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights.'" *Perry v. Schwarzenegger,* 591 F.3d 1147, 1159-60 (9th Cir.) (internal citations omitted), *cert. dismissed*, 559 U.S. 1118 (2010).

Since government actions, whether direct or indirect, can "have a chilling effect on, and therefore infringe, the exercise of fundamental rights," they "must survive exacting scrutiny." *Buckley,* 424 U.S. at 64; *Perry,* 591 F.3d at 1160. Under exacting scrutiny, "the [g]overnment may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1444 (2014). "In the First Amendment context, fit matters." *Id.* at 1456.

**B. Compelled disclosure, such as Plaintiffs' discovery request, fails exacting scrutiny.**

Compelled disclosures of associations and internal strategies during discovery, such as the ones sought here, can have a chilling effect. *Perry*, 591 F.3d at 1160. *See AFL-CIO v. FEC,* 333 F.3d 168, 175 (D.C. Cir. 2003) ("The Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation."). Thus, the Supreme Court has recognized that discovery in free-speech cases "must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect." *FEC v. Wis. Right to Life*, *Inc.,* 551 U.S. 449, 469 (2007) ("*WRTL-II*") (citing *Buckley,* 424 U.S. at 43-44). Free speech cases "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *WRTL-II*, 551 U.S. at 469 (citing *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)).[1]  In the Ninth Circuit, "[d]isclosures of

---

[1] Chief Justice Roberts's plurality opinion is the controlling opinion in *WRTL-II*. As the Ninth Circuit has recognized, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Lair v. Bullock,* 697 F.3d 1200, 1204-05 (9th Cir. 2012) (quoting *Marks v. United*

3
Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

political affiliations and activities that have a 'deterrent effect on the exercise of First Amendment rights'" are subject to exacting scrutiny. *Perry,* 591 F.3d at 1160.

In applying exacting scrutiny in the discovery context, the Ninth Circuit, treating the First Amendment rights at issue as a First Amendment privilege under Federal Rule of Civil Procedure 26(b)(1), *id.*, has established the following framework:

> The party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable [F]irst [A]mendment infringement.'"[2] . . . "This *prima facie* showing requires [Defendants] to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at 350. "If [Defendants] can make the necessary *prima facie* showing, the evidentiary burden will then shift to [Plaintiffs] . . . [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired information." . . . . More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery "has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association."

*Perry,* 591 F.3d at 1160-61 (internal citations omitted). Considerations within the analysis may include (1) the importance of the litigation, (2) the centrality of the information sought to the issues in the case, (3) the existence of less intrusive means of obtaining the information, and (4)

---

*States*, 430 U.S. 188, 193 (1977)). Justice Scalia, joined by Justices Kennedy and Thomas, concurred rather than joined the Roberts opinion, because it did not overrule *McConnell v. FEC,* 540 U.S. 93 (2003), and strike down the challenged law facially but instead simply struck down the law as applied. *WRTL-II,* 551 U.S. at 504 (Scalia, J., concurring). The Roberts opinion is a narrower subset of the Scalia concurrence, so under *Marks,* the Roberts opinion is controlling.

[2] Exacting scrutiny simply requires a First Amendment speech and associational right to be implicated and places the burden squarely on the government to justify the burdens or proscriptions placed on that right. *See McCutcheon,* 134 S. Ct. at 1452 ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions") (quoting *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 803, 816 (2000)). However, the Ninth Circuit's decisions are binding here, so Defendants present their arguments consistent with Ninth Circuit jurisprudence.

the substantiality of the First Amendment issues at stake. *Id.* at 1161 (internal citations omitted). Of crucial importance is that:

> the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable.

*Id.*

Compelled disclosure also violates important California privacy interests. In California, where personal records are sought, the person to whom the records pertain must be given special notice that such records are being sought and of his or her privacy rights. (See Calif. Code of Civil Procedure §§ 1985.3, 1985.6; Calif. Constitution, Article I, § 1.) They have been afforded no such notice here.

### C. This Court Should Stay Its Ruling Pending Appellate Review.

This Court should stay its ruling (Doc. 185) on Defendants' claim of First Amendment privilege pending appellate review. It is well established that, in cases of disputed privilege, "an appeal after disclosure of the privileged communication is an inadequate remedy for the irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (quotation marks and citation omitted). In the specific context of claims of First Amendment-associational privilege, the Ninth Circuit has emphasized that "a post-judgment appeal would not provide an effective remedy, as no such review could prevent the damage that [claimants] allege they will suffer or afford effective relief therefrom." *Perry*, 591 F.3d at 1157 (alterations and quotations omitted) (citing numerous cases). "One injury to Proponents' First Amendment rights is the disclosure itself. Regardless of whether they prevail at trial, this injury will not be remediable on appeal. . . . If [claimants] prevail at trial, vindication of their rights will be not merely delayed but also entirely precluded." *Id.* at 1158.

The irreversible harm to Defendants' First Amendment rights from the disclosure of these identities outweighs any countervailing interest asserted by NAF and counsels heavily in

favor of granting a stay to permit appellate review. In its Memorandum re: Defendants' Disclosures, the only clear interest identified by NAF in obtaining the redacted identities of CMP's supporters is NAF's desire to "bind them to any preliminary injunction and any subsequent judgment and permanent injunction." NAF's Mem. re Defs.' Redaction, Doc. 178-3, at 7:8-9. This interest is slight and is outweighed by Defendants' associational privacy interests.[3] By contrast, as recognized by the Ninth Circuit in *Perry*, the First Amendment privilege implicates extremely weighty interests. *See Perry*, 591 F.3d at 1159-60.

Besides, the Court could implement less restrictive means to accomplish Plaintiff's ends *at the preliminary-injunction stage* – which is where this action stands now. *See id.* at 1161. Defendants submit that the best of these means is to order Defendants to inform those with redacted identities of any preliminary injunction. Plaintiff does not need to know the redacted identities for the Court to bind those with redacted identities to any preliminary injunction. In addition, the purpose of the current discovery is to determine *whether* a preliminary injunction is warranted. The redacted identities are irrelevant to *whether* a preliminary injunction is warranted. Their identities may be relevant, if it all, if one of the individuals violates a permanent injunction. Even then, the only identity that may be relevant – if it *is* relevant – is the identity of the person who violates the permanent injunction, not the identity of everyone else. If, at the end of this action, Plaintiff receives a permanent injunction, then the redacted identities are still available to whatever extent they are relevant and to whatever extent identifying them is appropriately tailored.

Moreover, NAF has not made the required showing of compelling interest. The redacted materials are email communications merely conveying

---

[3] In fact, NAF's stated interest in disclosure—naming these donors and supporters as parties and binding them to any subsequent preliminary injunction—stands in direct conflict with this Court's justification in ordering the disclosure: that an "attorneys' eyes only" order is in place, at least for now, to protect their identities.

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* There is no showing that the supporters received anything else.

4       There is also no evidence that any of the participants on these emails had anything to do with the planning and execution of the investigation or the Human Capital Project. Further, noticeably absent from the reports and the emails is *any* discussion of NAF contracts allegedly restricting the ability to tape, much less the specific exhibitor and attendee agreements that are the core of NAF's arguments in support of interlocutory injunctive relief.[4] While NAF characterizes these email recipients as being "very clearly aware of CMP/Biomax's *illegal* conspiracy," undercover investigative journalism necessarily requires the use of a "front" or "cover" in order to gain access to and the trust of investigative targets. NAF's Mem. re Defs.' Redaction, Doc. 178-3, at 2:4-7 (emphasis supplied). This fact alone does not make undercover journalism *per se* illegal or tortious.

      Moreover, the fact that this Court's Order currently restricts the disclosure of these identities to "Attorneys' Eyes Only," pursuant to the protective order, does not provide adequate protection for the First Amendment interests at stake. *See* Doc. 185, at 2:11-26. First, NAF has stated that it does not concede that a "confidential" designation of the relevant documents under the Protective Order would be proper. NAF's Mem. re Defs.' Redaction, Doc. 178-3, at 3, n.2. Defendants have no guarantee that, should they be forced to turn over unredacted versions of the documents at issue with assurances that they will be seen only by attorneys, NAF will not later challenge that designation seeking to make the documents public.

---

[4] In last week's deposition of Daleiden, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Dep. of David Daleiden* (Doc. # 187-3), v. 1, 288:17-289:04. Additionally, NAF has cited with approval to this Court a section of the Daleiden Deposition affirming that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Doc. # 199-4, Mem. re Def. David Daleiden's Fifth Amendment rights, p. 3 (quoting Dep. of David Daleiden (Doc. # 187-3), 247:11-24).

Next, the protective order allows NAF's own employees—all of its in-house counsel—to access material so designated. And disclosure of these identities to attorneys for NAF, whether outside counsel or in-house counsel, is at least as chilling to Defendants' First Amendment rights as disclosure to Plaintiff and its members since NAF's *attorneys* are the ones threatening to bring litigation against these people and organizations. *See* NAF's Mem. re Defs.' Redaction, Doc. 178-3, at 7 (asserting that NAF's principal interest in identifying these individuals is to bring legal proceedings against them); Declaration of Chris Doe, Doc. 179-1, at ¶ 8 (attesting that the affiant cannot afford litigation against NAF).

This is not an idle threat. Plaintiff has already explicitly recited lead defense counsel for Defendant Daleiden, Catherine Short, and the public interest law firm for which she works, Life Legal Defense Foundation, as providing "support and direction" for CMP and its "fraudulent campaign," along with implicitly sweeping them in as the "dangerous extremists . . . . behind Biomax and the fraud perpetrated on NAF." First Amended Compl., at ¶¶ 16-17. This sort of improper "guilt by association" is rightly feared by those whose identities are at issue here, and anyone else who would otherwise seek to support or donate to investigative journalism efforts focusing on illegal activities of abortion providers and their associates. NAF desires to "name names," based on its mere suspicion of some assumed wrongdoing, provoked simply by reason of these individuals' association with and financial support of Daleiden and CMP. The chilling effect alone will be enormous: who will donate in the future to CMP, or other similar pro-life groups? Both to the existing defendants and new ones, the disclosure order will necessarily magnify the discovery costs and burdens of this case, especially in view of the expedited discovery schedule under which the parties are currently laboring. Keeping this case within its proper bounds will put a stop to these scare tactics and certainly move the matter much more rapidly toward some sort of decisive milestone, if not its end.[5]

---

[5] This is not the first time a plaintiff with deep ties to the pro-abortion-rights movement has sought to bring an expensive, lengthy RICO and conspiracy action against a broad swath of individuals in the pro-life movement. *See, e.g.*, *NOW, Inc. v. Scheidler*, 510 U.S. 249 (1994), 537 U.S. 393 (2003), 547 U.S. 9 (2006), 750 F.3d 696 (7th Cir. 2014).

As the Ninth Circuit observed in *Perry* in response to the suggestion that a protective order would necessarily provide sufficient protection for First Amendment rights, although "[a] protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect" on First Amendment interests in some cases, "[t]he mere assurance that private information will be narrowly rather than broadly disseminated . . . is not dispositive." *Perry*, 591 F.3d at 1160 n.6 (citing *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991)). And, as in *Dole*, the evidence submitted by Defendants in support of their claim of First Amendment privilege does not "suggest[] that it is the *unlimited* nature of the disclosure . . . that underlies [Chris Doe's] unwillingness" to engage in future associations if his/her identity is disclosed. *See Dole*, 950 F.2d at 1461. Rather, as Chris Doe's affidavit indicates, the disclosure of his/her identity to NAF's attorneys, with the attendant threat of litigation and other adverse economic consequences, serves to chill his/her future association and First Amendment-protected activity. *See* Doe Decl. ¶¶ 2-8 (Doc. # 179-1).

In addition to *Perry*, numerous other cases have recognized that a protective order cannot adequately protect First Amendment rights in situations like the present one. *See, e.g., Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 U.S. Dist. LEXIS 104636, at *13-15 (D. Mass. Aug. 10, 2015) (relying on *Perry* in upholding associational privilege claim and concluding, "[t]he potential for harm cannot be wholly mitigated by the existing protective order. . . . Even assuming compliance with the protective order . . . it is not possible to guard against all possibility of exposure."); *Centro de la Comunidad Hispana v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 144 (E.D.N.Y. 2013) (denying discovery requests that would require plaintiff to reveal names of its members so that some of them may be deposed, and concluding that a protective order would not adequately protect plaintiff's associational rights); *Tree of Life Christian Schs. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-13 (S.D. Ohio Mar. 12, 2012) (denying defendant's request to obtain the identity of plaintiff's largest donor in order to depose the donor, and citing *Perry* in stating, "[e]ven assuming that a protective order would prevent public disclosure, revelation of the donor's

identity will still adversely impact the associational rights of Plaintiff and its donor. . . . [and] will almost certainly put at least some strain on the relationship between Plaintiff and its donor."); *City of Greenville v. Syngenta Crop Protection, Inc.*, No. 11-mc-10, 2011 U.S. Dist. LEXIS 124453, at *28-29 (C.D. Ill. Oct. 27, 2011) (quashing subpoenas due to associational privilege, and relying on *Perry* in holding that "a protective order would not be sufficient to protect First Amendment rights in this case"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 22090, at *47, 76-77 (D. Kan. Mar. 26, 2007) (holding that a protective order was sufficient to protect "highly confidential" financial data, whereas documents protected by First Amendment privilege were "not subject to disclosure"); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2-4 (D.D.C. 2002) (precluding various discovery inquiries relating to the identities of those who associated with plaintiffs, and rejecting the argument that a protective order limiting use of the information would adequately address plaintiffs' concerns); *Int'l Union v. Garner*, 102 F.R.D. 108, 109, 114-16 (M.D. Tenn. 1984) (denying motion to compel production of documents that would reveal identities of union authorization cardholders, and concluding that "[t]heir rights would not be satisfactorily protected by remedial or protective orders after names on authorization cards are revealed"); *cf. Marfork Coal Co., Inc. v. Smith*, 274 F.R.D. 193, 205-06 (S.D. W. Va. 2011) (holding that discovery designed to identify defendants' associates so that plaintiff may add them as defendants would likely have a chilling effect, which provided a sufficient basis for a valid First Amendment claim).

      For the reasons stated in Defendants' prior (10/23/2015) brief on this issue, including the recent success of a very similar claim of First Amendment privilege in *Perry*, Defendants have demonstrated a strong likelihood of success on appeal. *See* Doc. 179 (Defendants' Joint Brief Re: First Amendment Privilege). Because the absence of a stay will effectively extinguish the asserted First Amendment rights, and because Defendants have a strong likelihood of success on appeal, this Court should grant a stay pending appeal. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (noting that the factors governing preliminary injunctive relief guide whether to

grant a stay pending appeal). This Court has authority to grant a stay to permit appellate review of disputed claims of privilege, regardless of whether appellate review is sought by direct review of a collateral order or a certified interlocutory order, or by petition for writ of mandamus. *See, e.g.,* 28 U.S.C. § 1292(b) (authorizing the district judge to order a stay of proceedings pending review of an interlocutory order). As the Supreme Court and the Ninth Circuit have indicated, such stays are particularly appropriate where a novel and important claim of privilege is asserted. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (observing that a district court "should not hesitate to certify an interlocutory appeal" when "a privilege ruling involves a new legal question or is of special consequence"); *Perry*, 591 F.3d at 1152 (noting that the Ninth Circuit granted a stay pending appeal to permit review of a disputed claim of First Amendment privilege).

Stays of discovery orders pending appeal have been granted in closely analogous cases. *See Perry*, 591 F.3d at 1152; *see also Taiwan v. U.S. Dist. Ct. for N. Dist. of Cal.*, 128 F.3d 712, 716 (9th Cir. 1997) (noting that the district court granted a stay to permit mandamus review of an order determining the scope of statutory testimonial immunity); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1489 (9th Cir. 1989) (granting a stay pending mandamus review to permit appellate review of disputed claim of attorney-client privilege). This Court should grant a similar stay in this case as well.

**II.   THIS COURT SHOULD CONDITIONALLY CERTIFY ITS FIRST AMENDMENT RULING FOR INTERLOCUTORY REVIEW UNDER 28 U.S.C. § 1292(b).**

In addition to granting a stay of its ruling pending appellate review, this Court should conditionally certify its ruling on Defendants' claim of First Amendment privilege for interlocutory review under 28 U.S.C. § 1292(b). Because the ruling is likely appealable as a collateral order,[6] the certification should be conditionally effective only if the ruling is determined not to be an appealable collateral order.

---

[6] Because it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal

In *Perry*, the Ninth Circuit explicitly declined to decide whether a district court's order overruling a claim of First Amendment privilege may constitute an appealable "final decision[]" within the meaning of 28 U.S.C. § 1291 under the "collateral order" doctrine. *See Perry*, 591 F.3d at 1154-56 (stating that whether an order overruling a claim of First Amendment privilege constitutes an appealable collateral order "presents a close question," and declining to decide the question due to "our uncertainty about the availability of collateral order review after *Mohawk*"). Defendants respectfully submit that this Court's ruling on the First Amendment associational privilege is a final "collateral order" subject to immediate review; in the alternative, it is subject to permissive interlocutory review or mandamus review. *See id.* at 1156 (relying on mandamus to review a claim of First Amendment privilege, without deciding whether direct review is available). In the event that it may not be determined to be a final appealable order, however, Defendants respectfully request that this Court certify the ruling for interlocutory review under § 1292(b).

Section 1292(b) provides that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the Court may certify the question for interlocutory appeal. 28 U.S.C. § 1292(b). As noted above, in *Mohawk*, the Supreme Court indicated that this procedure is particularly appropriate for reviewing disputed claims of privilege: "The preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when the privilege ruling involves a new legal question or is of special consequence, and ***district courts should not hesitate to certify an interlocutory appeal in such cases***." *Mohawk*, 558 U.S. at 110-11 (emphasis added) (quoting 28 U.S.C. § 1292(b)). In this case, as noted *supra*, the application of First Amendment privilege to these facts presents "a new legal question," and the

---

from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978) (citing *Abney v. United States,* 431 U.S. 651, 658 (1977)).

12

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

1  assertion of First Amendment privilege in this context "is of special consequence." *Id.*  Indeed,
2  as the Ninth Circuit emphasized in *Perry*, the assertion of First Amendment privilege involves
3  particularly weighty interests, involving a "potential chilling effect" on "the myriad social,
4  economic, religious and political organizations" involved in hotly disputed social and political
5  issues. *Perry*, 591 F.3d at 1158.  Certainly, as also noted *supra*, the limitation of this lawsuit to
6  its proper bounds will also materially advance its ultimate termination.  Moreover, while
7  Defendants respectfully submit that their claim of First Amendment privilege is clear and
8  indisputable, the Court should find that their claim is one, at the very least, "as to which there is
9  substantial ground for difference of opinion."  28 U.S.C. § 1292(b). For these reasons,
10 Defendants respectfully request that this Court conditionally certify its ruling on the assertion of
11 First Amendment privilege for interlocutory review under 28 U.S.C. § 1292(b).

### III. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT DEFENDANTS' LEAVE TO FILE A MOTION FOR RECONSIDERATION.

14  In the alternative to interlocutory appellate review, Defendants move for leave to file a
15 motion to reconsider this Court's Order of October 30, 2015, with respect to the First
16 Amendment issues, pursuant to Local Rule of Civil Procedure 7-9.  Defendants respectfully
17 submit that there has been "a manifest failure . . . to consider material facts or dispositive legal
18 arguments" presented by Defendants.  *See* Civil L.R. 7-9(b)(3).  As supported, *supra*, and in
19 Defendants' Joint First Amendment Brief (Doc # 179), the Court did not perform the balancing
20 required by *Perry* (*id.*, *passim*), did not require NAF to meet the strict legal and factual standard
21 required under *Perry* prior to ordering Defendants to produce the privileged information (*id.*, at
22 II-III), and erroneously concluded that a protective order is adequate to protect the associational
23 rights of Defendants and those supporters and donors on the emails at issue here (*id.*, at IV).
24 Because this motion has been filed within three business days of the issuance of the October 30
25 order, Defendants have shown "reasonable diligence" in bringing this motion. *Id.* 7-9(b).
26 ///

# CONCLUSION

For the reasons stated, Defendants respectfully request that this Court (1) stay its Order of October 30, 2015, that overruled Defendants' claim of First Amendment privilege and directed the disclosure of unredacted CMP records that show the identities of individuals and organizations who associated with Defendants, and (2) conditionally certify its ruling on the disputed privilege issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); or in the alternative (3) grant Defendants leave to file a motion to reconsider this Court's Order of October 30, 2015 concerning the First Amendment issues.

Respectfully submitted on November 4, 2015.

/s/ Steven N.H. Wood

Steven N.H. Wood (CA Bar 161291)
Bruce A. McIntosh (CA Bar 175607)
Stephen C. Seto (CA Bar 175458)
Christopher Schweickert (CA Bar 225942)
BERGQUIST WOOD McINTOSH SETO LLP
1470 Maria Lane, Suite 300
Walnut Creek, CA 94596
Tel: (925) 938-6100; Fax (925) 938-4354
wood@wcjuris.com

*Attorneys for Defendants The Center for Medical Progress and BioMax Procurement Services LLC*

Catherine W. Short (CA Bar 117442)
LIFE LEGAL DEFENSE FOUNDATION
P.O. Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880; Fax: (805) 640-1940
LLDFOjai@earthlink.net

Thomas Brejcha*
Peter Breen*
Corrine Konczal*
THOMAS MORE SOCIETY
19 La Salle St., Ste. 603
Chicago, IL 60603
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org

*Attorneys for Defendant David Daleiden*

Erik M. Zimmerman* (MI Bar P78026)
Edward L. White III* (MI Bar P62485)
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Road, Suite 203
Ann Arbor, MI 48105
Tel: (734) 680-8007; Fax: (734) 680-8006
ezimmerman@aclj.org

Brian R. Chavez-Ochoa (CA Bar 190289)
CHAVEZ-OCHOA LAW OFFICES, INC.
4 Jean Street, Suite 4
Valley Springs, CA 95252
Tel: (209) 772-3013; Fax: (209) 772-3090

Vladamir F. Kozina (CA Bar 95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Boulevard
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818

Jay Alan Sekulow (DC Bar 496335)
Carly F. Gammill* (TN Bar 28217)
Abigail A. Southerland* (TN Bar 022608)
Joseph Williams* (TN Bar 033626)
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel: (202) 546-8890; Fax: (202) 546-9309

*Attorneys for Defendant TROY NEWMAN*

* Admitted pro hac vice

14

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.

# DECLARATION OF STEVEN N.H. WOOD

I, Steven N.H. Wood, Esq., declare as follows:

1. I am a partner with the law firm of Bergquist, Wood, McIntosh Seto LLP, which represents Defendants THE CENTER FOR MEDICAL PROGRESS (CMP) and BIOMAX PROCUREMENT SERVICES LLC (BIOMAX) in the above captioned action. I am admitted to practice in the State of California and before the United States District Court of the Northern District of California, and am a member of good standing in the State bar. I make this declaration based on personal knowledge in support of CMP/BIOMAX's Administrative Motion to File Document Under Seal ("Motion").

2. Per Local Rule 7-5, the citations in this motion to the Deposition Transcript of David Daleiden herein (also Doc. # 187-3) are correct to the best of my knowledge.

Executed this 4th day of November, 2015, in San Francisco, California.


/s/ Steven N.H. Wood
STEVEN N.H. Wood

15

Case No. 3:15-cv-3522
Defs.' Mot. For Stay Pend. Appeal & Condit. Certif., or Leave to File Reconsideration Mot.