UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>        Plaintiff,<br><br>   v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>        Defendants. | Case No.  15-cv-03522-WHO<br><br>**ORDER ON MOTION TO STAY, CERTIFY OR RECONSIDER AND DEFENDANTS' INVOCATION OF THE FIFTH AMENDMENT**<br><br>Re: Dkt. Nos. 199, 202, 206 |

## I.  DEFENDANTS' MOTION TO STAY, CERTIFY OR RECONSIDERATION

In my October 30, 2015 Order (Dkt. No. 185), I directed defendants to provide to NAF the names of the individuals and entities who received NAF confidential information under an "Attorneys Eyes Only" designation and ordered that the individuals and entities – for the time being – be referred to by Doe identifiers in any public filing or proceeding absent further order of the Court.  *Id*. at 2.  Defendants seek relief from that Order in three ways; they first ask me to stay that portion of my order, so they can appeal it to the Ninth Circuit; second, they ask me to certify that portion of my ruling for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b); and third, in the alternative, they seek leave to file a motion for reconsideration on this issue.  Defendants' Motion (Dkt. No. 205-4).  NAF opposes all three forms of relief.  NAF Opposition (Dkt. No. 207-4).

Because I have reviewed the arguments of the parties, I GRANT defendants' motion for reconsideration.  But nothing in the arguments causes me to change my earlier decision, as I explain more fully below.[1]

---

[1] This matter is set for hearing on December 9, 2015.  Under Civil Local Rule 7-1(b), I find this matter appropriate for determination on the papers and VACATE the hearing.

United States District Court
Northern District of California

United States District Court
Northern District of California

### A. Reconsideration

Having fully reviewed the substance of defendants' arguments for reconsideration (expressed in their opening and reply briefs), as well as NAF's opposition, I find that disclosure of the small number of CMP supporters at issue is still warranted. Defendants argue that my order – disclosing to NAF's counsel the identities of a discrete, small number of individuals and entities ("supporters") who received NAF confidential information from defendants – is akin to a compelled disclosure of membership and supporter lists that burdens defendants' and their supporters' First Amendment right to freedom of association. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958) (order compelling disclosure of memberships lists "a substantial restraint upon the exercise by petitioner's members of their right to freedom of association" based on showing that disclosure "is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure."); *cf. NAACP v. Button*, 371 U.S. 415, 417 (1963) (law restricting provision of advice and counsel was not justified by state's rationale and unconstitutionally restricted the NAACP's freedom of expression and association). Defendants' argument misses the mark.

The Order at issue does not require defendants to disclose the members or funders of CMP, much less "lists" of the same. It is narrowly tailored to allow NAF to learn the identities of who received NAF's confidential information from defendants in order for NAF to ensure that the appropriate individuals are covered by the Court's TRO and included in the scope of its requested preliminary injunction. This critically important fact distinguishes this case from the cases relied on by defendants.

However, even assuming that First Amendment associational rights are implicated by my Order, the limited disclosure must still be made. As the Ninth Circuit explained in *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), claims that discovery would unduly interfere with First Amendment privileges are subject to a two-part framework. First, the party

2

asserting the privilege must make a "prima facie showing" of "arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of members' associational rights. *Id*. at 1160-61. If that showing is made, at the second step the "evidentiary burden" shifts and the party seeking the information must show that the information sought is "rationally related to a compelling governmental interest" and that there are no other less restrictive means of securing that information. *Id*. (internal quotations omitted).

At the second step, the "analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'" *Id*. at 1161 (quoting *NAACP*, 357 U.S. at 463.). This standard is applied by balancing the burden imposed on individuals and associations against the significance of the interest in disclosure to determine whether the interest outweighs the harm. *Id*. Courts take into account the importance of the litigation, the centrality of the information sought to the issues in the case, the existence of less intrusive means of obtaining the information, and the substantiality of the First Amendment interests at stake. *Id*. Finally, "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)" and the request "must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id*.[2]

---

[2] In *Perry*, plaintiffs challenged the constitutional validity of a statewide proposition and served a request for production of documents on the proponents of the proposition. The plaintiffs sought, among other things, production of the proponents' internal campaign communications relating to campaign strategy and advertising. The plaintiffs sought those materials in order to gather evidence concerning the purpose of the proposition, as well as evidence concerning the rationality and strength of purported state interests for the proposition. Based on the declarations of several individuals, the Ninth Circuit concluded that disclosure of campaign strategies could deter protected interests, including participation in political campaigns and the free flow of ideas within

United States District Court
Northern District of California

United States District Court
Northern District of California

Turning to the first step, there is scant evidence in the record regarding the nature of CMP as a membership organization and the interests of its members; *e.g.*, how many members CMP has, how many funders CMP has, how those members or funders participate in the organization or otherwise support CMPs goals and aims. The only evidence regarding CMP before the Court is the information I considered in ruling that CMP could not assert the Fifth Amendment, which focused solely on CMP's status as a non-profit corporation and the number of its officers. *See* September 23, 2015 Order, Dkt. No. 137. The only evidence regarding supporters of CMP is from Chris Doe (a pseudonym), who declares that he would not have provided financial support to CMP if he knew his support would become public, and that he could not provide further support to CMP if his support became publicly known because of financial repercussions to his business. Dkt. No. 179-1. There is no evidence from other funders or members of CMP.

This thin record regarding CMP and its supporters is why I ordered that the names of the individuals/entities who received confidential NAF information be disclosed to NAF and identified by Doe identifiers in public filings absent "a fuller record." Dkt. No. 185 at 2. Without more information about CMP and its supporters, I can only speculate how or whether the limited disclosure at issue could adversely impact CMP's ability to undertake its mission or chill individuals' rights to associate freely or voice personal views through organizational ties with CMP.[3]

However, for purposes of this ruling on this motion for a stay, certification, or reconsideration, I will *assume* that defendants have met their prima facie case showing that the limited disclosure at issue will result in harassment or discouragement of new supporters. Turning to the second step of the *Perry* analysis, I find that the limited disclosure at issue should

---

a campaign. *Id*. at 1162-64. At the second step, the Court concluded that "bearing in mind other sources of information," plaintiffs had not shown a sufficient need for the information. The information plaintiffs seek is attenuated from the issue of voter intent, while the intrusion on First Amendment interests is substantial." *Id*. at 1165.

[3] NAF argues that defendants cannot make their prima facie showing because "[t]he freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994); Oppo. (Dkt. No. 207-4) at 2. NAF assumes the merits of its claims against defendants, which is premature.

United States District Court
Northern District of California

1   be made to NAF as "Attorneys Eyes Only."  I find that NAF is entitled to this information in order

2   to make sure all appropriate parties are covered by both the TRO and any resulting preliminary

3   injunction.  There is no dispute that the individuals/entities at issue received confidential NAF

4   information; the redacted documents produced by CMP demonstrate that.  Dkt. No. 156-7.[4]  It is

5   important to emphasize again the narrow nature of the mandated disclosure and the obvious fact

6   that NAF cannot secure this information from any other source.  Only CMP can identify to whom

7   CMP released NAF's confidential information.  The information is central to determine the

8   appropriate scope of any preliminary injunction and there is no less intrusive way to obtain that

9   information.[5]  While I have assumed in this Order that defendants have shown a prima facie case

10  of some impact on their associational rights, even though the record to this point does not establish

11  it, whatever impact there is has not been shown to be *substantial*.   There is no evidence, for

12  example, that Chris Doe is such a major or important financial contributor that CMP's operations

13  will be affected without his support or that other unknown supporters will be chilled from funding

14  or otherwise supporting CMP.

15          With respect to narrow tailoring, the disclosure covers only a handful of supporters and

16  does not reach CMP's membership or funder "lists."  The Attorneys Eyes Only designation and

17  protection from public disclosure also demonstrate the narrow tailoring of the disclosure Order.

18  While the *Perry* Court determined that a protective order limiting dissemination of the information

19  would only ameliorate but not necessarily eliminate the threatened harms at issue in that case

20  (chilling of participation and free speech in political campaigns), given the much narrower

21  disclosure at issue here and my requirement that Doe identifiers be used, the concerns of Chris

22

23

24  [4] As far as the record shows, NAF confidential information was shared in a CMP "First Quarter
    Report" dated April 12, 2014 and an "Operation Report" dated April 12, 2014, by email to a small
25  number of individuals.  Dkt. No. 156-7. The email addresses and names of most of the recipients
    and senders of those emails have been redacted.
26  [5] While not necessary (or ripe) for my Order at this juncture, I note that the identities of the
    "supporters" at issue could be relevant to the merits of NAF's conspiracy claims, as the redacted
27  emails produced by CMP indicate that some of the supporters knew of and expressly funded
    CMP's efforts to infiltrate the NAF meetings before that infiltration occurred.  *See* Dkt. No. 156-7
28  at 25 of 44.   Therefore, defendants' repeated assertion that the supporters at issue are mere
    "passive recipients of information," Reply (Dkt. No. 211) at 3, may not be accurate.

Doe – the only CMP declarant in this case – and CMP are adequately protected at this time.[6]

Given that information covered by the TRO has already been leaked – although the source of that

leak has not been identified – and the individual who has been identified as having received that

information is apparently intending to refuse to answer questions as to his sources (Dkt. No. 230),

I reject defendants' proposal that the "best means" to protect against further disclosure of NAF's

confidential information is to "order Defendants to inform those with redacted identities of any

preliminary injunction."  That will not adequately protect NAF's interests concerning the

confidentiality of its information and discovery of the identity of the recipients.[7]  Motion at 6.   On

this record, the *Perry* test has been met.[8]

Having considered the parties' additional arguments concerning the limited disclosure of

the recipients of NAF's confidential information, I affirm my prior Order requiring that discrete

_____

[6] Chris Doe's declaration explains that his fear of retaliation against his business if his support of CMP is publicly disclosed is based on prior incidents where his business was boycotted when Doe's pro-life support was revealed and because one of his business' managers was informed by an unidentified Planned Parenthood "senior official" that Doe's business would be "destroyed." Dkt. No. 179-1.  There is no other *evidence* of potential for harassment or chilled speech or association if, contrary to my Order, the CMP supporters' identities become publicly known.

[7] The cases relied on by defendants for the proposition that production pursuant to a protective order is insufficient to protect First Amendment associational rights are factually inapposite. *See, e.g., Sexual Minorities of Uganda v. Lively*, 2015 U.S. Dist. LEXIS 104636, *13 (D. Mass. Aug. 10, 2015) (protective order would not adequately protect individuals and entities associated with plaintiff organization where enforcement of terms of the protective order in Uganda would be problematic and disclosure of members could subject them to criminal prosecution and documented safety concerns); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 144 (E.D.N.Y. 2013) (protective order would not adequately protect immigration status of plaintiffs challenging an ordinance restricting day laborers, "the agreement does nothing to assuage the plaintiffs' fears about harassment from the Town, the very entity to whom the plaintiffs' members wish to remain anonymous."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205, *2 (S.D. Ohio Mar. 12, 2012) (disclosure of identity of a confidential donor whose donation allowed plaintiff to purchase a property was not mandated in a Religious Land Use and Institutionalized Persons Act action against the government for failure to allow a conditional use permit, because disclosure to government would inhibit donor's future donations and donor identity not "highly relevant" to the case); *see also Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 206 (S.D. W. Va. 2011) (rejecting disclosure of identities of activists who joined in a protest with defendants because plaintiff did not need the information to prove its case, plaintiff sought identity of activists to presumably to sue them in state court proceedings).

[8] Defendants' reliance on California Code of Civil Procedure §§ 1985.3, 1985.6 and Article I, section 1 of the California Constitution is not helpful.  C.C.P. § 1985.3 regulates subpoenas for information regarding "consumers"; C.C.P. § 1985.6 regulates subpoenas for employment records; and defendants fail to show that the right to privacy under the California Constitution is implicated (*i.e.*, that the supporters at issue are citizen of California) or that their privacy rights would be violated by the limited discovery at issue given my analysis of the *Perry* factors.

United States District Court
Northern District of California

1    disclosure.

2       **B. Stay & Certification**

3       Turning to defendants' request for a stay, it is DENIED, except that I will grant a limited

4    14 day stay to allow defendants to seek mandamus relief from the Ninth Circuit.  I also DENY the

5    request for certification under 28 U.S.C. § 1292(b).  There is no controlling question of law at

6    issue and an immediate appeal of this determination will not materially advance the ultimate

7    termination of the litigation.[9]  The law applied – the two-step *Perry* test – is not in dispute and the

8    narrow disclosure at issue is not likely to advance the ultimate termination of the litigation,

9    although the identities are relevant (as discussed above) to the scope of the preliminary injunction

10   and NAF's arguments on the merits.

11   **II. DEFENDANTS' INVOCATION OF THE FIFTH AMENDMENT**

12      Defendant Daleidin has refused to identify the individuals who attended the NAF annual

13   meetings at his direction, invoking the Fifth Amendment privilege against incrimination based on

14   his concern about conspiracy liability.  Dkt. No. 202.[10]  CMP has refused, or in its view been

15   unable, to identify the individuals who attended the NAF annual meetings based on its "insulated

16   witness" objection.  *See* Defendant CMP/Biomax Responses to NAF's First Set of Preliminary

17   Injunction Interrogatories, Response to Interrogatory No. 2.  Dkt. No. 157-13.[11]

18   _____

19   [9] "A non-final order may be certified for interlocutory appeal where it 'involves a controlling
     question of law as to which there is substantial ground for difference of opinion' and where 'an
20   immediate appeal from the order may materially advance the ultimate termination of the
     litigation.'"  *Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 687-88 (9th Cir. 2011) (quoting 28
21   U.S.C. § 1292(b)).
     [10] In the October 16, 2015 hearing, I advised Daleidin's counsel that I would allow Daleidin to
22   invoke the Fifth Amendment – at least at the preliminary injunction stage – regarding allegedly
     false identification.  The only other subject matter Daleidin's counsel identified about which
23   Daleidin intended to assert the Fifth was with respect to the names of individuals who attended a
     NAF meeting at Daleidin's direction in light of potential conspiracy liability.  October 16, 2015
24   Transcript at 9:3-12.
     [11] CMP raised the "insulated witness" objection, explaining that it was not withholding documents
25   based on that objection but that it was unable to get this information from the unidentified
     "insulated witnesses."  Dkt. No. 156-4 at 31.  I have already held that CMP/Biomax may not
26   invoke the Fifth Amendment.  *See* September 23, 2015 Order (Dkt. No. 137 at 12 ("Biomax and
     CMP do not have any Fifth Amendment rights and may not invoke the Fifth Amendment in this
27   case.")).  To determine whether CMP was nevertheless withholding any documents under any
     individual's assertion of the Fifth Amendment privilege against self-incrimination, I ordered CMP
28   to lodge with the Court any such documents for in camera review by October 23, 2015.  October
     16, 2016 Order (Dkt. No. 162) at 2 ("If CMP is withholding documents in CMP's possession

1

2          As an initial matter, it appears that there are CMP corporate records that might disclose

3  some or all of the identities of these individuals.  In his deposition, Daleidin testified that these

4  individuals were "independent contractors for CMP," and that the contracts with these individuals

5  (he was unsure whether they were original drafts or executed contracts) were turned over to "his

6  counsel."  Daleidin Deposition Transcript (Dkt. No. 187-3) at 194:1, 194:10 – 195:6.  These

7  contracts are CMP corporate records that CMP should have access to, as are the emails, texts, and

8  other correspondence between Daleidin and these independent contractors generated during the

9  project.  Daleidin Depo. Tr. at 198:18 – 199:8.

10         These CMP/Biomax corporate records will likely identify the independent contractors and

11 allow CMP to provide a full answer to Interrogatory No. 2.  As an officer of CMP, Daleidin

12 cannot refrain from providing these to CMP's agent in order to prevent CMP from disclosing the

13 identities of the CMP independent contractors.[12]  Daleidin, it appears, is attempting to hide the

14 ball, contrary to my prior Orders.

15         With respect to Daleidin's own refusal to identify these independent contractors, in my

16 October 30, 2015 Order, I asked the parties to submit supplemental briefing on whether Daleidin

17 could assert the Fifth Amendment privilege with respect to potential conspiracy charges or

18 whether he had "waived" that right based on prior disclosures.  Dkt. No. 191.[13]  Having reviewed

19 the supplemental briefing and the record in this case, I find that Daleidin cannot assert the Fifth

20 Amendment privilege against self-incrimination to refuse to identify the CMP independent

21 contractors because he fails to show that the narrow disclosure at issue could reasonably subject

22 him to *further* criminal liability in light on his prior disclosures.[14]

---

based on any individual's Fifth Amendment rights, CMP shall produce those documents for in camera review.").  CMP did not lodge any documents for the Court's review.

[12] In my September 23, 2015 Order, I explained in detail why Daleidin *could not* refuse to produce CMP/Biomax corporate documents under the Fifth Amendment.  Dkt. No. 137 at 11.

[13] In the October 30, 2015 Order I also held that Daleidin could not invoke the Fifth Amendment on behalf of those individuals because the Fifth Amendment privilege to avoid self-incrimination is personal.  Dkt. No. 185 at 3.

[14] In his Supplemental Brief re Invocation of 5th Amendment (Dkt. No. 202) Daleidin identified a number of crimes which NAF has asserted he committed, including federal racketeering, criminal wiretap, conspiracy, civil fraud and violation of Cal. Penal Code § 632.  Daleidin Supp. Brief at 2. However, as his counsel confirmed, the potential incriminating testimony at issue is related only to conspiracy.  Daleidin has not asserted the Fifth Amendment privilege with regards to his video or

United States District Court
Northern District of California

The Fifth Amendment privilege against self-incrimination provides protection against compelled disclosure of facts that have a tendency to incriminate.  As the Supreme Court explained in *Maness v. Meyers*, 419 U.S. 449, 461 (1975), "[t]he protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *See also Hoffman v. United States*, 341 U.S. 479, 488 (1951) (upholding invocation of privilege where it was not "perfectly clear" that answers "cannot possibly" have a "tendency" to incriminate the witness).  The privilege protects against compelled disclosure of associational contacts where that testimony could incriminate a witness. *See, e.g.*, *Emspak v. United St*ates, 349 U.S. 190, 192 (1955); *Convertino v. United States DOJ*, 795 F.3d 587, 593 (6th Cir. 2015) ("Both the Supreme Court and this Court have repeatedly applied *Hoffman* to sustain invocation of the Fifth Amendment privilege in response to questions regarding the individual's personal or professional associations 'when asked in a setting of possible incrimination.'" (quoting *Emspak*,  349 U.S. at 199)).

However, when "incriminating facts have been revealed without claiming the privilege, the privilege cannot then be invoked to avoid disclosure of the details." *In re Master Key Litig*., 507 F.2d 292, 294 (9th Cir. 1974).  The issue is not so much one of waiver as it is "whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures." *Rogers v. United States*, 340 U.S. 367, 374 (1951).  In the context of a civil action, a witness may disclose some information about a subject without "waiving" the Fifth Amendment privilege as to other undisclosed information on the same subject matter, but *only* where disclosure of additional information would subject him to additional liability.  As the Ninth Circuit has explained, "an ordinary witness may 'pick the point beyond which he will not go', and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further

---

audio taping and his entrance to and securing materials from NAF annual meetings except concerning his use of allegedly fake identification, which is not at issue here.

1    incriminate him." *In re Master Key Litig*., 507 F.2d at 293-94.

2          Here, Daleidin has already voluntarily disclosed too much for disclosure of the identities of

3    the independent contractors to "further" incriminate him.  To review, Daleidin has disclosed the

4    following: he used false pretenses to provide him and the independent contractors access to NAF

5    meetings (Daleidin Depo. Trans. 117:17-118:4, 152:4-160:22, 180:4-11); at his direction and in

6    roles assigned by him, the independent contractors acted as investigators and attended NAF annual

7    meetings (Daleidin Supp. Resp. to NAF Interrogatory No. 2, Daleidin Depo. Trans. at 131:7-24,

8    135:21-136:11); during the course of the NAF meetings, Daleidin and the independent contractors

9    covertly video and/or audiotaped those proceedings (as shown by the recordings submitted for in

10   camera review) with equipment controlled by Daleidin (Daleidin Supp. Resp. to NAF

11   Interrogatory No. 7, Daleidin Depo. Trans. at 118 – 123); at the end of each day, Daleidin

12   retrieved from each investigator all recording equipment, memory cards, and other storage devices

13   as well as all materials picked up the investigators.  Daleidin Supp. Resp. to NAF Interrogatory

14   No. 7.

15         To support his Fifth Amendment invocation, Daleidin wraps himself in the "reporter's

16   shield" and relies on a series of cases where courts have upheld reporters' assertions of the Fifth to

17   avoid disclosing the identity of their sources, despite having admitted receiving information from

18   government sources.  Those cases are not on point.  In those cases, the criminal statutes at issue

19   made the identity of the source *matter* to the witness's potential liability.  For example, in

20   *Convertino v. United States DOJ*, 795 F.3d 587, 589 (6th Cir. 2015), the reporter disclosed he had

21   a government source for his reporting on a confidential investigation into the conduct of an

22   Assistant United States Attorney.  The reporter refused to identify his source when he was

23   subpoenaed in the underlying Privacy Act suit brought by the AUSA against the government.  The

24   Sixth Circuit upheld the reporter's invocation of the Fifth because the reporter's potential criminal

25   liability hinged on the actual identity of the government source (e.g., was the government source

26   authorized to release the information) and the source could provide testimony to further

27   incriminate the reporter (e.g., the reporter participated in illegal conduct to secure the

28   information).

United States District Court
Northern District of California

United States District Court
Northern District of California

Similarly, in *In re Seper*, 705 F.2d 1499, 1500 (9th Cir. 1983), a reporter published an article based in part on confidential tax information. The taxpayer whose information was disclosed, sued the government. The Ninth Circuit upheld the invocation of the Fifth Amendment because in order to convict the reporter, the government would need to prove the disclosure at issue was "unauthorized" and that the reporter "willfully" disclosed the information, proof that "would be more difficult if his sources remain undisclosed. In addition, to prove willfulness, the government probably must show that Seper knew that the information was disclosed to him in violation of the law. . . . Nothing in Seper's previous testimony supplies these two essential elements." *Id*. at 1502.

Here Daleiden's potential criminal liability does not depend on the identity of the alleged co-conspirators or their testimony about Daleidin's role. Daleidin has already disclosed that himself, as well as that the contractors were acting at his direction.[15]

Nor does Daleidin's reliance on *In re Master Key Litig*., 507 F.2d 292, 293 (9th Cir. 1974), help him. In that civil antitrust conspiracy case, the witness testified regarding certain corporate practices but invoked the Fifth as to others. He was allowed to invoke the Fifth because his "knowledge and intent [regarding] specific instances of attempted restraint on competition, could very well provide a link in the chain of evidence needed in a subsequent prosecution." *Id*. at 294. Here, Daleidin has already disclosed what the NAF project entailed; not only his role but the roles of the contractors who acted at his direction. The only thing not disclosed is their actual identities. Daleidin fails to explain how the disclosure of those identities – or the testimony of the contractors

---

[15] The Supreme Court has recognized that a "voluntary witness" in a lawsuit "has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all." *Brown v. United States*, 356 U.S. 148, 155 (1958). In that circumstance, the witness has less room to pick and choose where to stop his or her testimony in order to avoid waiver of the Fifth Amendment privilege. *Id*. at 156. While not technically a "voluntary witness" in this action, I note that Daleidin has sought public attention for his role and efforts in directing the CMP project to infiltrate the NAF meetings, yet now seeks to protect the identity of those he organized and directed for his own interests. The facts of this case also steer closer to *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 191 (2004), where the Supreme Court recognized that answering "a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances. . . . Even witnesses who plan to invoke the Fifth Amendment privilege answer when their names are called to take the stand."

once identified – could subject him to *further* incrimination or provide a link to additional evidence that the government would not otherwise have. *Cf. Rogers v. United States*, 340 U.S. at 374-75 ("After petitioner's admission that she held the office of Treasurer of the  Communist Party of Denver, disclosure of acquaintance with her successor presents no more than a 'mere imaginary possibility' of increasing the danger of prosecution.").

On this record, Daleidin has not shown that disclosing the identity of the CMP independent contractors could possibly subject him to further criminal liability based on his fulsome admissions regarding the scope of his role in the NAF project concerning the independent contractors.[16]

Daleidin and CMP have had a choice in disclosing the identities of the independent contractors.  CMP could have, after reviewing all relevant corporate records, disclosed this information in response to NAF's interrogatory.  Despite my September 23, 2015 Order, CMP attempted to constrain itself by asserting an "insulated witness" objection and not seeking and/or viewing its own corporate records, apparently possessed by Daleidin, that likely disclose this very information.  Daleidin, having failed to return  those corporate documents and apparently concealing them from view by the agent responding on behalf of CMP to NAF's interrogatories, wants to avoid identifying the independent contractors by invoking the Fifth Amendment.  But having failed to identify any reasonable possibility that disclosure of their identities could subject him to further incrimination, Daleidin cannot retreat behind the privilege against self-incrimination.  It is time to end this shell game.

## CONCLUSION

For the foregoing reason, absent a stay imposed by the Ninth Circuit, within 14 days of the

---

[16] The amount of testimony Daleidin has already provided and the nature of the potential criminal liability distinguish this case from ones he relies on where courts have allowed witnesses to refuse to testify about their associates. *See, e.g., Emspak v. United States*, 349 U.S. 190, 200-01 (1955) ("To reveal knowledge about the named individuals – all of them having been previously charged with Communist affiliations – could well have furnished 'a link in the chain' of evidence needed to prosecute petitioner for a federal crime. . . ."); *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980) (non-defendant witness allowed to invoke the Fifth Amendment to refuse to identify the source of funds he used to purchase goods from the defendants on trial for interstate transport of property taken by fraud).

United States District Court
Northern District of California

date of this Order defendants shall disclose to NAF as "Attorneys Eyes Only" the identity of the recipients of NAF's confidential information and disclose unredacted documents regarding the same.  Defendant CMP shall also, within 14 days of the date of this Order, produce the contracts with its independent contractors, as well as communications with them regarding the project. Finally, defendant Daleidin shall, within 14 days of the date of this Order, provide a supplemental interrogatory response identifying the independent contractors who attended NAF meetings at his direction.[17]

**IT IS SO ORDERED**.

Dated: November 20, 2015



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

---

[17] I will not certify, reconsider, or grant a longer stay with respect to my ruling on the Fifth Amendment, but provide a limited 10 day stay to allow defendants to seek mandamus relief at the Ninth Circuit if they so choose.