1    MARK BRNOVICH, ATTORNEY GENERAL
     STATE OF ARIZONA
2
     MARIA M. SYMS (CA SBN 208427)
3    Maria.Syms@azag.gov
     BRUNN W. ROYSDEN III (CA SBN 265810)
4    Beau.Roysden@azag.gov
     Assistant Attorneys General
5    Office of the Attorney General
     1275 West Washington Street
6    Phoenix, Arizona 85007-2926
     Telephone: (602) 542-8472
7    Facsimile: (602) 542-4377

8    Attorneys for Amici Curiae

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12   NATIONAL ABORTION FEDERATION (NAF),    | Case No. 3:15-cv-3522

13                   Plaintiff,             | Judge:  Hon. William H. Orrick, III

14          v.                              | **MEMORANDUM OF LAW BY AMICI
                                            | CURIAE STATE ATTORNEYS GENERAL
15   THE CENTER FOR MEDICAL PROGRESS,       | IN SUPPORT OF DEFENDANTS'
     BIOMAX PROCUREMENT SERVICES LLC,       | OPPOSITION [DKT. NO. 265-1] TO
16   DAVID DALEIDEN (aka "ROBERT SARKIS"),  | PLAINTIFF'S MOTION FOR
     AND TROY NEWMAN,                       | PRELIMINARY INJUNCTION [DKT.
17                                          | NO. 228]**
                     Defendants.
18                                          | Hearing Date: December 18, 2015
                                            | Time:  10:00 a.m.
19                                          | Location: Courtroom 2, Floor 17

20                                          | Date Action Filed:  July 31, 2015
                                            | Trial Date:
21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ..............................................................................................................1

I.     THE INTEREST OF AMICI CURIAE STATE ATTORNEYS GENERAL. ...................2

II.    THE FACTORS FOR INJUNCTIVE RELIEF WEIGH AGAINST ENJOINING
       PRODUCTION OF DOCUMENTS TO LAW ENFORCEMENT ENTITIES. ................4

       A.     Plaintiff Has Not Shown A Likelihood of Irreparable Harm From Defendants'
            Disclosure to Law Enforcement Agencies. ............................................................5

       B.     The Public Interest Strongly Favors Law Enforcement's Right to Exercise Its
            Investigative Powers.............................................................................................7

CONCLUSION .............................................................................................................. 10

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                 Page(s)

3
4
*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ................................................................ 4, 5

5
*Angelotti Chiropractic, Inc. v. Baker,*
    791 F.3d 1075, 1081 (9th Cir. 2015) ........................................................ 4

6
7
*Aviation Consumer Action Project v. Washburn,*
    535 F.2d 101 (D.C. Cir. 1976)) ............................................................... 4

8
*Buckwalter v. Nev. Bd. of Medical Examiners,*
    678 F.3d 737 (9th Cir. 2012) .................................................................... 8

9
10
*Comm. in Solidarity with El Salvador v. Sessions,*
    705 F. Supp. 25 (D.D.C. 1989) ................................................................ 8

11
*Commonwealth ex rel. Hancock v. Pineur,*
    533 S.W.2d 527 (Ky. 1976) ..................................................................... 3

12
13
*Crowley Foods, Inc. v. Lefkowitz,*
    1979 WL 18648 (N.Y. 1979) ................................................................... 5

14
*CUNA Mut. Ins. Society v. Attorney General,*
    404 N.E.2d 1219 (Mass. 1980) ............................................................. 3, 9

15
16
*Federal Maritime Comm'n v. Port of Seattle,*
    521 F.2d 431 (9th Cir. 1975) ................................................................. 6-7

17
*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) .................................................................... 5

18
19
*Harmon Law Offices, P.C. v. Attorney General,*
    991 N.E.2d 1098 (Mass. Ct. App. 2013) .................................................. 3

20
*Henke v. Dep't of Interior,*
    842 F. Supp. 2d 54 (D.D.C. 2012) ........................................................... 6

21
22
*Huffman v. Pursue, Ltd.,*
    420 U.S. 592 (1975) .............................................................................. 4-5, 8

23
*Johnson v. Commonwealth ex rel. Meredith,*
    165 S.W.2d 820 (Ky. 1942) ..................................................................... 2

24
25
*Lachman v. Sperry-Sun Well Surveying Co.,*
    457 F.2d 850 (10th Cir. 1972) .................................................................. 7

26
*Middlesex County Ethics Committee v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982) .................................................................................. 8

27
28
*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
    434 U.S. 1345 (1977) ................................................................................ 8

*Oklahoma Press Pub. Co. v. Walling*,
    327 U.S. 186 (1946) ................................................................................................. 7

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) .................................................................................... 5

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir. 2004) .................................................................................. 4

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ................................................................................................. 1

*Roemer v. Cuomo*,
    888 N.Y.S.2d 669  (N.Y. App. Div. 2009) ............................................................... 3

*Schneiderman v. Rillen*,
    930 N.Y.S.2d 855  (N.Y. Sup. Ct. 2011) ................................................................. 3

*SEC v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735 (1984) ................................................................................................. 7

*State ex rel. Miller v. Publishers Clearing House, Inc.*,
    633 N.W.2d 732 (Iowa 2001) ................................................................................... 9

*State of Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
    435 F.3d 326 (D.C. Cir. 2006) .................................................................................. 4

*State v. Culp*,
    823 So. 2d 510 (Miss. 2002) .................................................................................... 2

*Streter v. Hynes*,
    419 F. Supp. 546 (E.D.N.Y. 1976) .......................................................................... 8

*Trainor v. Hernandez*,
    431 U.S. 434 (1977) ................................................................................................. 8

*United States v. Dionisio*,
    410 U.S. 1 (1973) ................................................................................................. 9-10

*United States v. Golden Valley Elec. Ass'n*,
    689 F.3d 1108 (9th Cir. 2012) ................................................................................ 10

*United States v. Morton Salt*,
    338 U.S. 632 (1950) ............................................................................................. 2-3, 9

*United States v. Whispering Oaks Residential Care Facility, LLC*,
    673 F.3d 813 (8th Cir. 2012) ................................................................................. 6, 9

*Wilson Corp. v. State ex rel. Udall*,
    916 P.2d 1344  (N.M. Ct. App. 1996) ...................................................................... 3

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7  (2008) ............................................................................................. 4, 5, 7

AMICI STATE ATTORNEYS GENERAL MEM. LAW RE: NAF MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 228]
CASE NO. 3:15-cv-3522

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985)......................................................................................... 6

*Younger v. Harris*,
    401 U.S. 37 (1971)........................................................................................................... 8

*Zepeda v. INS*,
    753 F.2d 719  (9th Cir. 1983))........................................................................................ 4

**S**TATUTES

Ariz. Rev. Stat. § 44-1524 ................................................................................................... 3

Ariz. Rev. Stat. § 44-1525 ................................................................................................... 5

Ariz. Rev. Stat. § 44-1526 ................................................................................................... 3

Ind. Code § 4-6-3-3............................................................................................................. 3

Ky. Rev. Stat. § 367.240(1) ................................................................................................ 3

Miss. Code Ann. § 75-24-27 ............................................................................................... 3

**O**THER **A**UTHORITIES

Nat'l Ass'n of Att'ys Gen., *State Atty's Gen. Powers and Responsibilities* 12-14 (2d ed. 2007 Emily
    Myers & Lynne Ross eds.)............................................................................................ 4

**INTRODUCTION**

The Attorneys General of Alabama, Arizona, Arkansas, Michigan, Montana, Nebraska, and Oklahoma ("Amici") submit this Memorandum of Law supporting Defendants' Opposition (Dkt. 265-1 ("Opposition")) to Plaintiff's Motion for Preliminary Injunction (Dkt. No. 228 ("Motion")).[1] Simply put, there is no proper basis for restraining Defendants—or any third party for that matter—from communicating with law enforcement regarding potential wrongdoing. This is *especially true* because the video and audio recordings at issue have generated controversy on an issue of immense public concern. As the Supreme Court recognized in a different context, "the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980) (plurality) (discussing right of access to criminal trials). Accordingly, law enforcement's role in fulfilling that prophylactic purpose should not be constrained by overly broad injunctive relief.

The State Attorneys General for Alabama, Arizona, Michigan, and Oklahoma previously filed a Memorandum of Law (Dkt. No. 99-1) supporting Defendants' request to clarify the scope of the Temporary Restraining Order ("TRO"), and Amici incorporate that Memorandum herein by reference. Although the Court partially granted clarification, it nonetheless placed significant restrictions on Defendants' abilities to communicate with law enforcement during the pendency of the TRO. Now Plaintiff seeks an injunction that would appear to prohibit Defendants from communicating with law enforcement on certain subjects for the remainder of this case. (Dkt. 234-3 at 1 (asking the Court to "prohibit[] the Enjoined Individuals and Entities from publishing or otherwise disclosing to *any third party*" five categories of information (emphasis added)). The Court should deny Plaintiff's request for the following reasons:

> *1. The TRO has short circuited existing investigations as NAF has dramatically reduced 500 hours of audio and video recordings to a meager one hour in response to Arizona's subpoena.* Allowing third-party witnesses to continue as gatekeepers of responsive materials will further compromise the states' authority and their sworn obligations to conduct complete

---

[1] All Parties have consented to the filing of this Memorandum. Citations in this Memorandum are to the public redacted versions of the Motion (Dkt. 234-3) and Opposition (Dkt. 265-2).

and accurate investigations.  State law enforcement agencies (like their federal counterparts and Congress) possess an overriding interest in preserving their investigative capabilities. The TRO's restrictions should not be carried forward to a preliminary injunction;

   2. ***Plaintiff cannot show a likelihood of irreparable harm from disclosure to law enforcement because Arizona has fully complied with its state-law confidentiality provision for materials that are outside the TRO, and there is no reason to doubt that other states would similarly comply with their confidentiality laws.***  Plaintiff can only speculate that state law is insufficient to protect against the alleged harm and such speculation is completely unfounded given that confidentiality has been maintained.  Moreover, states conducting investigations are simply gathering information, and Plaintiff has the added protection of being able to challenge any resulting legal action in state court; and

   3. ***There is a substantial public policy interest in allowing witnesses to voluntarily come forward with evidentiary leads and a corresponding interest in law enforcement being able to investigate those leads without outside interference.***  Precluding the public from coming to law enforcement with information negatively impacts public safety. The TRO had the unprecedented effect of making the parties, rather than state law, the arbiters of what is legally responsive, and principles of federalism weigh heavily against enjoining cooperation with state law enforcement investigations.

## I.    THE INTEREST OF AMICI CURIAE STATE ATTORNEYS GENERAL.

Amici are their respective states' chief law enforcement officers and hold authority to investigate matters affecting the public interest.  "It is generally recognized that unless denied by statute the attorney general of any state is clothed with all the powers incident to and traditionally belonging to his office." *Johnson v. Commonwealth ex rel. Meredith*, 165 S.W.2d 820, 826 (Ky. 1942).  The common law, statutory, and constitutional duties of Attorneys General are "many." *State v. Culp*, 823 So. 2d 510, 514 (Miss. 2002).  Among the duties of Attorneys General, however, "paramount . . . is his duty to protect the interests of the general public." *Id.* (citation and internal quotation marks omitted).

To fulfill this paramount duty, Attorneys General have broad authority to investigate potential violations of state laws within their jurisdictions.  *See, e.g.*, *United States v. Morton Salt Co.*, 338 U.S.

-2-

632, 652 (1950) ("Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest."); *Commonwealth ex rel. Hancock v. Pineur*, 533 S.W.2d 527, 529 (Ky. 1976); *Harmon Law Offices, P.C. v. Attorney General*, 991 N.E.2d 1098, 1103 (Mass. Ct. App. 2013) (finding that the Massachusetts consumer protection statute "gives the Attorney General broad investigatory powers to conduct investigations whenever she believes a person has engaged in or is engaging in any conduct in violation of the statute"); *Schneiderman v. Rillen*, 930 N.Y.S.2d 855, 855-56 (N.Y. Sup. Ct. 2011) ("The Attorney General is permitted broad authority to conduct investigations, based on the complaint of others or on his own information, with respect to fraudulent or illegal business practices.") (citation omitted).

Administrative subpoenas, which include civil investigative demands ("CIDs"), are a vital investigative tool. *See Wilson Corp. v. State ex rel. Udall*, 916 P.2d 1344, 1348 (N.M. Ct. App. 1996) (observing that "CIDs enable the Attorney General to obtain information without first accusing anyone of violating" laws). Because CIDs are valuable investigative devices, many state statutes and state courts grant Attorneys General considerable latitude and discretion in issuing them. *See Roemer v. Cuomo*, 888 N.Y.S.2d 669, 670-71 (N.Y. App. Div. 2009) (noting that the New York Attorney General has "broad authority" to issue subpoenas in connection with investigations into fraudulent or illegal business activities). In Arizona, for example, the Attorney General can require examinations under oath and examine any merchandise, record, book, document, account or paper as deemed necessary. Ariz. Rev. Stat. § 44-1524. The Arizona Attorney General's power to issue subpoenas extends beyond the person being investigated to "any person." *See, e.g.*, Ariz. Rev. Stat. § 44-1526(A)(1).[2] This is but one example of the investigative authority of state Attorneys General. *See, e.g.*, *CUNA Mut. Ins. Society v. Attorney General*, 404 N.E.2d 1219, 1222 (Mass. 1980) (state Attorney General is not limited to issuing CIDs only to the person being investigated and is entitled to documentary material from respondent that could demonstrate legal violations by others).

---

[2] Other states grant similar powers. *See, e.g.*, Ind. Code § 4-6-3-3; Ky. Rev. Stat. § 367.240(1); Miss. Code Ann. § 75-24-27.

Investigative authority is recognized as among the "most common and important functions identified with the office of Attorney General[.]"  Nat'l Ass'n of Att'ys Gen., *State Att'ys Gen. Powers and Responsibilities* 12-14 (2d ed. 2007 Emily Myers & Lynne Ross eds.).  Further, Attorneys General frequently cooperate in multistate investigations, which often prove instrumental in a state's efforts to advocate for its citizens and hold potential wrongdoers responsible for illegal actions.  Amici thus have a strong interest in preserving their ability to carry out their duties.

## II.    THE FACTORS FOR INJUNCTIVE RELIEF WEIGH AGAINST ENJOINING PRODUCTION OF DOCUMENTS TO LAW ENFORCEMENT ENTITIES.

Plaintiff has not—and cannot—meet the legal test for injunctive relief prohibiting Defendants' from making disclosures to law enforcement.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).[3]

Any injunction "must be narrowly tailored 'to affect only those persons over which [the Court] has power,' . . . and to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'"  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS,* 753 F.2d 719, 727-28 n.1 (9th Cir. 1983)); *see also State of Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (recognizing that "'[a]n injunction must be narrowly tailored to remedy the specific harm shown'" and collecting cases (alteration in original) (quoting *Aviation Consumer Action Project v. Washburn,* 535 F.2d 101, 108 (D.C. Cir. 1976))).  Moreover, "[t]he seriousness of federal judicial interference with state civil functions has long been recognized," and courts have "consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence."  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603 (1975).

---

[3] "'Serious questions going to the merits and hardship balance that tips sharply towards [plaintiffs] can [also] support issuance of a[ ] [preliminary] injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest.'"  *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1132).

-4-

**A.      Plaintiff Has Not Shown A Likelihood of Irreparable Harm From Defendants'
Disclosure to Law Enforcement Agencies.**

Plaintiff has not shown the required *likelihood* of irreparable harm to justify enjoining disclosure by Defendants—whether pursuant to subpoenas or voluntarily—to government officers or agencies with power to investigate wrongdoing.  The harm Plaintiff has identified is "harassment and death threats" by members of the public directed at individuals appearing in videos publicly released thus far.  (Dkt. No. 234-3 at 23.)  Plaintiff predicts that its employees and members would continue to suffer such harm if Defendants release additional videos and audio recorded at Plaintiff's annual meetings.  (*Id.*)

As Defendants note in their Opposition (at 44-45), Plaintiff must "prove a 'causal connection' between the irreparable injury [it] faces and the conduct [it] hopes to enjoin."  *Garcia v. Google, Inc.*, 786 F.3d 733, 748 (9th Cir. 2015) (Watford, J., concurring in the judgment) (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011)).  Judge Watford explained this also requires movant to show that granting the requested injunctive relief "would likely eliminate (or at least materially reduce)" the irreparable harm.  *Id.*  Here, Plaintiff has not shown, or even suggested, that "harassment and death threats" are likely to result from disclosure to law enforcement and that restricting disclosure to law enforcement will eliminate or materially reduce such harm.

Plaintiff only can speculate that law enforcement obtaining additional audio and video files (beyond the files that have already been publicly released) would result in harassment or death threats to Plaintiff's members.  *Winter* "explicitly rejected" that "the 'possibility' of irreparable harm was sufficient, in some circumstances, to justify a preliminary injunction." *Alliance for the Wild Rockies,* 632 F.3d at 1131.  As this Court reasoned with respect to the Congressional subpoena, disclosure to a state Attorney General cannot even be considered "public disclosure" in the first place.  The disclosure is subject to the confidentiality provisions of state law.  *See, e.g.*, Ariz. Rev. Stat. § 44-1525 (relating to confidentiality of information provided to the Attorney General); *see also Crowley Foods, Inc. v. Lefkowitz*, 1979 WL 18648, at *2 (N.Y. 1979) (enforcing subpoena and noting that disclosure of trade secrets was protected by "the cloak of confidentiality which surrounds the Attorney General's investigations").  Arizona has complied with all court orders without incident.  Furthermore, Arizona has maintained the confidentiality of over 100 hours of video recordings CMP deemed outside the scope

-5-

of the TRO.  There is no evidence that the Arizona Attorney General would not continue to abide by the confidentiality provisions set forth in Arizona law.  So too with other existing or potential state investigations.  Just as this Court recognized the Congressional power to investigate, it should also recognize the power of the state Attorneys General.  *See* Part I, *supra*.  The same legal rationale applies in the current context and, as the Court noted, it should not "assume . . . that an unworthy purpose prompts" investigations.[4]

Moreover, Plaintiff should not be allowed to use injunctive relief as a shield against law enforcement agencies obtaining information relevant in investigating possible state-law violations.  Because investigative demands simply seek information related to investigations under laws meant to protect the public, state law enforcement's contribution to any of Plaintiff's alleged harm is mere conjecture and certainly does not rise to the level of an actual, imminent threat of irreparable harm. *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54 (D.D.C. 2012) (denying protestors' preliminary injunction request to block National Park Service from evicting them because they failed to provide proof that actual "harm is certain to occur in the near future" (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (injury "must be actual and not theoretical" and courts will not grant injunctive relief "against something merely feared as liable to occur at some indefinite time")).

As with other types of lawfully issued subpoenas, this Court should assume that a subpoenaed party must produce material in response unless a party can show otherwise.  *See Federal Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 433-34 (9th Cir. 1975) (observing that district courts are "obligated" to compel document production in response to an administrative subpoena if information is "relevant to any lawful purpose of the administrative authority"); *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (recognizing a "respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena").  Whether issued subpoenas or requests are overbroad is not a question for this Court, and Plaintiff is not the arbiter of what may or may not be relevant in a law enforcement investigation, especially given that Plaintiff

---

[4] No one contends that any state law enforcement agency had anything to do with collecting the video and audio at issue.  Instead, this case simply presents whether a federal court can enjoin a third party from turning information over to law enforcement.

1    may not in fact be the target of a law enforcement investigation.  *See Federal Maritime Comm'n*, 521

2    F.2d at 434-35; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) (holding that an investigating

3    agency makes the initial determination of whether it has jurisdiction to investigate).

4         Finally, injunctive relief also should not encompass voluntary communications with law

5    enforcement.  Law enforcement investigations are often prompted by third parties voluntarily coming

6    forward with information of potential wrongdoing.  The Supreme Court has stated, it is "[e]specially

7    debatable" that "a target may obtain a restraining order preventing voluntary compliance by a third party

8    with an administrative subpoena" and noted that it has "never before expressly so held."  *SEC v. Jerry T.*

9    *O'Brien, Inc.*, 467 U.S. 735, 749 (1984).  As with information turned over pursuant to subpoenas, law

10    enforcement treats that information confidentially.  In legal contexts involving whistleblowers or

11    confidential informants, the idea that a party, regardless of connection to a government investigation,

12    could preclude information-sharing with law enforcement through injunctive relief is absurd and would

13    severely harm law enforcement's ability to investigate effectively.  Such is the relief Plaintiff seeks, and

14    the Court should not grant it.

15         For all of these reasons, Plaintiff has not shown a likelihood of irreparable harm to justify

16    enjoining disclosure by Defendants—whether pursuant to subpoenas or voluntarily—to government

17    officers or agencies with power to investigate wrongdoing.

18       **B.**      **The Public Interest Strongly Favors Law Enforcement's Right to Exercise Its**
19              **Investigative Powers.**

20         An injunction excluding disclosure to law enforcement agencies is also contrary to the

21    compelling public interest served by legitimate investigations of potential wrongdoing.  *See Winter*, 555

22    U.S. at 20.  In determining whether injunctive relief is appropriate, the Court should give great weight to

23    the substantial public interest served by law enforcement investigations into suspected illegal activity.

24    "It is public policy . . . everywhere to encourage the disclosure of criminal activity . . . ."  *Lachman v.*

25    *Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972).  Moreover, the Court must give

26    great weight to the federalism concerns presented by a request to enjoin (at least indirectly) state law

27    enforcement investigative activity.  The Supreme Court has "consistently required that when federal

28    courts are confronted with requests for such relief, they should abide by standards of restraint that go

well beyond those of private equity jurisprudence" given "[t]he seriousness of federal judicial interference with state civil functions." *Huffman*, 420 U.S. at 603.

State investigations seek to protect the public as a whole, which weighs heavily against the decision to grant injunctive relief in this case.  *See Buckwalter v. Nev. Bd. of Medical Examiners*, 678 F.3d 737, 747 (9th Cir. 2012) (investigations of healthcare regulatory violations "implicate [an] important state interest"); *see also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., as Circuit Justice) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Comm. in Solidarity with El Salvador v. Sessions*, 705 F. Supp. 25, 30 (D.D.C. 1989) (alleged constitutional injury was outweighed by the "equally valid[] interest in effective police investigation" (emphasis omitted)).

The same principles of comity and federal restraint that are detailed in *Younger v. Harris*, 401 U.S. 37 (1971), are compelling with respect to a state Attorney General's subpoena power and related investigation.  *See Streter v. Hynes,* 419 F. Supp. 546, 548 (E.D.N.Y. 1976) ("considerations of comity and federalism would lead this court to refrain from interfering" in state investigation and subpoena of nursing home).[5]  *Younger* requires a federal court to abstain from decisions that would affect state "proceedings" that implicate important state interests and afford an adequate opportunity for review.  An injunction that prevents disclosure to state law enforcement not only places this Court in the position of dictating whether and what information may be relevant to state law enforcement investigations, but it also circumvents any possible state court proceeding that would review and resolve any investigation, whether through litigation or narrowing a subpoena.

Plaintiff's use of the Court's TRO and instructions allowing pre-production review to frustrate state law investigations demonstrates how preliminary injunctive relief would continue to delay state investigations.  There are 504 hours of audio and video recordings related to NAF conferences in CMP's possession.  Within that universe of materials, CMP has identified 47 hours of video and 100 hours of

---

[5] The Supreme Court has repeatedly recognized that principles of comity and federal deference apply in the civil context. *Trainor v. Hernandez*, 431 U.S. 434, 443-44 (1977) ("[T]he principles of *Younger* and *Huffman* are broad enough to apply to interference by a federal court with an ongoing civil enforcement action . . . ."); *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432-34 (1982) (applying abstention principles to a state bar disciplinary action brought by the State).

audio recordings responsive to the Arizona subpoena, including contextual information necessary for the information to be sufficiently meaningful.  Plaintiff takes a starkly different position, refusing to voluntarily turn over responsive materials except for snippets of materials that *specifically involve conversations with Arizona abortion providers*.  Plaintiff is thus improperly imposing a "relevance" standard within responsive files, and this imposition is especially absurd when one considers that Plaintiff does not even know—nor should it know—the person(s) or entity(ies) that are the focus of the Arizona Attorney General's investigation.  Plaintiff is therefore not abiding by the legal standard for responding to a subpoena.[6]  *See Whispering Oaks Residential Care Facility, LLC*, 673 F.3d at 817 (recognizing that a "respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena").  This Court's TRO has had the unprecedented effect of making the parties, rather than state law, the arbiters of what is legally responsive.  This is precisely why federal judicial restraint is not only appropriate but essential in this context to avoid giving potential witnesses and wrongdoers a safe haven from legitimate inquiry.

Injunctive relief would allow Plaintiff to continue limiting Amici's investigations into potentially relevant facts and witnesses.  This would be an improper infringement of state authority with broad, negative implications for the public interest served through states' investigatory powers.  Not only would such relief hinder law enforcement, it would also establish precedent inviting additional federal court challenges to scores of civil investigative demands issued every year by state Attorneys General across the county – needlessly consuming scarce judicial resources.  *Cf. United States v. Dionisio*, 410 U.S. 1, 17 (1973) ("Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and

---

[6] Attorney General investigations regularly seek materials from sources other than investigative targets.  A more expansive approach is essential for gathering evidence, following leads, and corroborating or disproving stories.  *CUNA Mut. Ins.*, 404 N.E.2d at 1222 (rejecting "argument that the Attorney General may issue a C.I.D. only to a person being investigated"); *State ex rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 736-38 (Iowa 2001) (describing Attorney General investigative powers as broad and plenary, "which do[] not depend on a case or controversy for power to get evidence 'but can investigate merely on suspicion the law is being violated, or even just because it wants assurance that it is not'") (quoting *Morton Salt*, 338 U.S. at 642-43 ("The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so")).

-9-

1    expeditious administration of the criminal laws."); *United States v. Golden Valley Elec. Ass'n*, 689 F.3d

2    1108, 1115-16 (9th Cir. 2012) (noting "[g]rand jury and administrative subpoenas function in similar

3    ways").    By Plaintiff's rationale for a preliminary injunction, *any* group of individuals desiring

4    confidentiality from law enforcement could enter into confidentiality agreements and use the federal

5    courts to short circuit state investigations.   A price-fixing cartel, for example, could make its members

6    sign confidentiality agreements and then have that agreement enforced.   This is clearly an absurd result

7    and contrary to the public interest law enforcement is sworn to protect.

8           For all of these reasons, the public interest strongly disfavors the injunctive relief Plaintiff seeks.

9                                          <u>**CONCLUSION**</u>

10           Amici request that this Court deny the entry of a preliminary injunction against Defendants.

11   Alternatively, Amici request that this Court narrowly tailor any injunctive relief to allow disclosure of

12   materials in compliance with lawfully issued subpoenas, other requests from law enforcement, and

13   Defendants' voluntary disclosure of information to law enforcement.

14   DATED:  December 8, 2015                        RESPECTFULLY SUBMITTED,

15                                                   MARK BRNOVICH, ATTORNEY GENERAL
                                                     STATE OF ARIZONA
16
                                                     By: /s/ Maria M. Syms_____
17                                                       Maria M. Syms
                                                         Brunn W. Roysden III
18                                                       Assistant Attorneys General

19                                                       Attorneys for Amici Curiae

20           **ALSO SUPPORTED BY:**

21           **LUTHER STRANGE**
             **ATTORNEY GNERAL OF ALABAMA**
22           501 Washington Ave.
             Montgomery AL, 36130
23
             **LESLIE RUTLEDGE**
24           **ATTORNEY GENERAL OF ARKANSAS**
             323 Center Street, Suite 200
25           Little Rock, Arkansas 72201

26           **BILL SCHUETTE**
             **MICHIGAN ATTORNEY GENERAL**
27           P. O. Box 30212
             Lansing, MI  48909
28

                                                  -10-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TIMOTHY C. FOX**
**ATTORNEY GENERAL OF MONTANA**
P.O. Box 200151
Helena, Montana 59620

**DOUGLAS J. PETERSON**
**ATTORNEY GENERAL OF NEBRASKA**
2115 State Capitol
Lincoln, Nebraska 68509

**E. SCOTT PRUITT**
**ATTORNEY GENERAL OF OKLAHOMA**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105-4894