LINDA E. SHOSTAK (CA SBN 64599)
LShostak@mofo.com
DEREK F. FORAN (CA SBN 224569)
DForan@mofo.com
NICHOLAS S. NAPOLITAN (CA SBN 251762)
NNapolitan@mofo.com
CHRISTOPHER L. ROBINSON (CA SBN 260778)
ChristopherRobinson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
NATIONAL ABORTION FEDERATION (NAF)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION (NAF),<br><br>Plaintiff,<br><br>v.<br><br>THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES LLC, DAVID DALEIDEN (aka "ROBERT SARKIS"), and TROY NEWMAN,<br><br>Defendants. | Case No. 3:15-cv-3522<br><br>Judge:  William H. Orrick, III<br><br>**NAF'S REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY THE CENTER FOR MEDICAL PROGRESS ("CMP") AND DAVID DALEIDEN (AKA "ROBERT SARKIS") SHOULD NOT BE HELD IN CONTEMPT**<br><br>Hearing Date:  December 18, 2015<br>Hearing Time:  9:00 a.m.<br>Location:         Courtroom 2 |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT .......................................................................................................................... 1

    A. NAF Has Presented Clear and Convincing Evidence Daleiden and CMP Violated This Court's Order. ........................................................................... 1

    B. Defendants Post-Hoc Justifications Are Unreasonable and Provide No Grounds for This Court to Decline to Issue an Order to Show Cause. ............................................................................................................................ 3

III. CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ascend Health Corp. v. Wells*,
    No. 4:12-CV-00083-BR, 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013) .................................. 9

*FTC v. Affordable Media, LLC*,
    179 F.3d 1228 (9th Cir. 1999) ................................................................................................ 2

*Google, Inc. v. Hood*,
    96 F. Supp. 3d 584 .................................................................................................................. 8

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000), overruled on other grounds ................................................. 10

*Harmston v. City and Cnty. of San Francisco*,
    2007 WL 3306526 (N.D. Cal. Nov. 6, 2007) .......................................................................... 4

*Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc'y*,
    774 F.3d 935 (9th Cir. 2014) .......................................................................................... *passim*

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
    No. 11-CV-04494-WHO, 2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) ........................... 3, 7

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ................................................................................................................ 8

*On Command Video Corp. v. LodgeNet Entm't Corp.*,
    976 F.Supp.917 (N.D. Cal. 1997) ........................................................................................... 4

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 ................................................................................................................ 9

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*,
    970 F.2d 552 (9th Cir. 1992) ........................................................................................... 11, 12

*S.E.C. v Goldfarb*,
    No. 11-CV-0938-WHA, 2012 WL 2343668 (N.D. Cal. June 20, 2012) ................................ 4

*See v. City of Seattle*,
    387 U.S. 541 (1967) ................................................................................................................ 8

*U.S. v. Yacoubian*,
    24 F.3d 1 (9th Cir. 1994) ................................................................................................ 11, 12

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
    689 F.2d 885 (9th Cir. 1982) .................................................................................................. 3

*Wilson v. U.S.*,
   221 U.S. 361 (1911) .................................................................................................... 10

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ........................................................................................................ 10

*Yellin v. United States*,
   374 U.S. 109 (1963) ...................................................................................................... 6

**STATUTES**

47 U.S.C. § 230 ..................................................................................................................... 9

**RULES**

Civil Local Rule 7-3(a). ....................................................................................................... 12

Rules of the House of Representatives,
   Rule XI, cl. 2(m)(3)(C) (114th Congress, Jan. 6, 2015) ............................................... 6

**OTHER AUTHORITIES**

First Amendment .................................................................................................................. 8

Fourth Amendment ............................................................................................................... 8

Fifth Amendment .................................................................................................................. 3

## I. INTRODUCTION

In its opening brief NAF established by clear and convincing evidence that CMP and David Daleiden had violated this Court's October 6 Order expressly prohibiting them from disclosing "any footage, documents or communications that have not been specifically requested by the [Congressional] subpoena." The overbroad, nonresponsive materials Daleiden insisted on disclosing despite this Court's order wound up in the hands of his great friend Charles C. Johnson a week and a half later, who splashed them all over the Internet, leading to further instances of harassment and intimidation against NAF's members.

Defendants (really Daleiden), claim that they believed that the audio/video/document dump orchestrated by Daleiden complied with this Court's order, because the subpoena uses the words "all" and "unedited" and because Congressional staffers told them to produce "unedited" files. This post hoc justification is directly contrary to the position Defendants took with respect to a substantively identical subpoena directed to CMP, as to which, according to Defendants themselves, only 116 out of 635 complete, unedited files contained material relating to fetal tissue. Nor can it remotely explain the disclosure of hundreds of clearly nonresponsive documents, some of which contain ▮▮▮▮▮▮. Courts, including this one, routinely reject such after-the-fact justifications for a party's failure to comply with a clear and unambiguous order. The remainder of Defendants' claims fare no better. The Court should grant the motion and issue an Order to Show Cause.

## II. ARGUMENT

### A. NAF Has Presented Clear and Convincing Evidence Daleiden and CMP Violated This Court's Order.

As NAF explained in its opening brief[1], civil contempt consists of a "'party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014). The contempt "need not be willful." *Id.* To avoid contempt, a

---

[1] Motion for an Order to Show Cause Why The Center for Medical Progress and David Daleiden (AKA "Robert Sarkis") Should not be Held in Contempt (Dkt. 221-4) ("Mot.") at 7-8.

NAF'S REPLY IN SUPPORT OF MOTION FOR OSC AS TO CMP AND DALEIDEN
CASE NO. 3:15-cv-3522-WHO
sf-3601573

1

1  party bound by a federal court order must establish "categorically and in detail" that compliance

2  with the order was not possible. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir.

3  1999).

4        This Court's October 6 Order granting Daleiden permission to respond to the

5  Congressional subpoena on CMP's behalf expressly prohibited him from disclosing "any footage,

6  documents or communications that have not been specifically requested by the subpoena." (Dkt.

7  155 at 3:12-14.) There is clear and convincing evidence that Daleiden and CMP violated that

8  order. Less than 48 hours after being ordered not to disclose "footage, documents or

9  communications that have not been specifically requested by the subpoena," (*id.*), ▮

10 ▮ to produce to Congress all 635 audio and video files (or 504 hours) illegally

11 obtained at NAF's meetings. (Mot. at 2.) CMP's counsel would later admit that only 116 of

12 those audio and video files (or 151 hours) obtained material responsive to the Congressional

13 subpoena. (Mot. at 4-5; Dkt. 222-3 at 4-8 (identifying just 116 out of 635 audio and video files as

14 responsive); Dkt. 222-4 at 2.)

15       Non-responsive complete audio and video files that Daleiden directed be disclosed include

16 entire presentations about ▮

17 ▮

18 ▮. (Mot. at 2-3.) There are hundreds of other examples of non-responsive video and

19 audio files. (*See id.*)

20       In addition to 519 non-responsive audio and video files, ▮

21 ▮ disclose hundreds of documents that have nothing to do with the subject matter sought by the

22 Congressional subpoena. These documents include presentations on ▮

23 ▮

24 ▮

25 ▮. (Mot. at 5-6.) These are mere examples. There are dozens more. (*See id.*) There is

26 no credible argument that the disclosures of hundreds of nonresponsive audio and video files and

27 documents comply with this Court's order.

28

NAF'S REPLY IN SUPPORT OF MOTION FOR OSC AS TO CMP AND DALEIDEN       2
CASE NO. 3:15-cv-3522-WHO
sf-3601573

### B. Defendants Post-Hoc Justifications Are Unreasonable and Provide No Grounds for This Court to Decline to Issue an Order to Show Cause.

CMP and Daleiden make five arguments in their opposition brief, none of which provide grounds for this Court not to issue an order to show cause.

**First**, they claim that they had a "reasonable and good faith" belief that they were entitled under this Court's order to disclose all 635 audio and video files and all documents stolen at NAF's meetings in response to the Congressional subpoena. (Defendants' Response to Plaintiff's Mtn. for an Order to Show Cause why The Center for Medical Progress and David Daleiden Should not be Held in Contempt (Dkt. 262-4) ("Opp.") at 10.) This "reasonable and good faith" belief turns exclusively on their position—disclosed to NAF and the Court for the first time in their opposition brief[2]—that the subpoena "required the production of "[a]ll *unedited* video footage," (original emphasis), and Congressional staffers told Daleiden and his counsel that the subpoena sought "full unedited video" and that the files should be produced "in full unedited format." (Opp. at 11.)

It is true that there is a "narrow 'good faith' exception" to the "general rule that intent is irrelevant in civil contempt proceedings," but that "narrow" exception is of no assistance to Daleiden and CMP here. *Inst. of Cetacean Research*, 774 F.3d at 953; *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (recognizing good faith exception where order in question was "vague").That exception, the Ninth Circuit has held, "only applies where a defendants' interpretation is 'reasonable.'" *Inst. of Cetacean Research*, 774 F.3d at 953. Parties, for example, "who act on the unreasonable advice of counsel risk being held in contempt if their actions violate a court's order." *Id.*

Courts have therefore repeatedly refused to apply this exception where the order in question is clear and unequivocal. *See id.* (refusing to inquire into "reasonableness" of Defendants' interpretation of a clear and unambiguous court order); *LifeScan Scotland, Ltd. v.*

---

[2] [redacted]

1  *Shasta Techs., LLC*, No. 11-CV-04494-WHO, 2013 WL 4604746, at *4 (N.D. Cal. Aug. 28,
2  2013) (Orrick, J.) (acknowledging parties' "subjective good faith" of interpretation but
3  nevertheless issuing an order to show cause because the conduct at issue "was not based on a
4  reasonable interpretation"); *see also Harmston v. City and Cnty. of San Francisco*, 2007 WL
5  3306526, at *6 (N.D. Cal. Nov. 6, 2007) (a party's violation of the protective order is not excused
6  as good faith where interpretation of the order "is in no way supported by the plain language of
7  the protective order"); *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F.Supp.917,
8  922-23 (N.D. Cal. 1997) (same).The burden is on the non-compliant party to show a good faith
9  and reasonable effort to comply. *S.E.C. v Goldfarb*, No. 11-CV-0938-WHA, 2012 WL 2343668,
10 at *5 (N.D. Cal. June 20, 2012).

11     Defendants have failed to meet that burden here. The order in question is clear and
12 unambiguous: Do not disclose "any footage, documents or communications that have not been
13 specifically requested by the subpoena." (Dkt. 155 at 3:12-14.) Yet Defendants turned around
14 less than 48 hours later and did exactly that. Defendants' entire argument boils down to the
15 assertions that the subpoena says "all ***unedited*** footage" (original emphasis), and Congressional
16 staffers in various (and previously undisclosed) ex parte communications with Daleiden directly
17 and separately with his counsel (not counsel for CMP) said that they wanted the "full unedited
18 video" and that "everything be produced in full unedited format." (Opp. at 11.) Throughout their
19 brief Defendants repeat over and over again the mantra that the subpoena says "all" and
20 "unedited." (Opp. at 11-12.)

21     As an initial matter these justifications have no application to the document dump
22 Daleiden orchestrated, in violation of this Court's order. There is no plausible interpretation of
23 the Congressional subpoena and this Court's instructions for compliance with that subpoena that
24 could remotely justify disclosure of documents concerning among other nonresponsive content,
25 ███████████████████████████████████████████
26 ███████████████████████████████████████████
27 ███████████████████. (Mot. at 5-6.) Some of these nonresponsive documents disclose
28 ████████████████████████████████████ (Amended Declaration of

Derek Foran In Support of NAF's Motion for Order To Show Cause Why CMP and Daleiden Should Not Be Held in Contempt ("Am. Foran Decl.") ¶ 10.)  The disclosure of hundreds of nonresponsive documents *by itself* supports the issuance of an order to show cause.

Regarding the audio and video files, Defendants' self-serving interpretation of the Court's unambiguous order is plainly unreasonable, because it ignores the indisputable fact that no "editing" of complete and audio files was required in order to comply with the Congressional subpoena consistent with this Court's instructions.  Defendants' ouvre of audio and video files consists of 635 audio and video files (or 504 hours) obtained at NAF's meetings.  (Mot. at 2.) Each of these files is a complete, unedited, video or audio file.  As Defendants concede in their brief, the 504 hours of material is "automatically divided" into "separate digital files based on length." (Opp. at 4, n.3)  And at most, just 116 of those files contains material that is relevant to the subject matter sought by the Congressional subpoena, *i.e.*, material "relating to the provision, acquisition, preparation, transportation, and sale of fetal tissue." (Dkt. 61-2.)

The Court need not take NAF's word for it.  That is *exactly* how counsel for CMP interpreted this language when it identified just 116 files out of 635 they claimed to be responsive to the substantively-identical subpoena issued by the Arizona AG.  (Dkt. 222-4 (email from counsel for CMP identifying full, unedited files).)  Defendants' claim that the Arizona AG's subpoena is distinguishable because it does not contain the word "unedited," (Opp. at 6), is not credible.  In identifying only 116 files that contained material "relating to the provision, acquisition, preparation, transportation, and sale of fetal tissue," counsel for CMP expressly stated that its "position is that . . . *we should not edit material out of individual files*" because "the authenticity and accuracy of the recordings has repeatedly been . . . called into question" and "the subpoenas request 'all video footage'" and "therefore, *we do not believe it is appropriate to respond to the subpoena with edited video files*." (Dkt. 222-4 at 2.) (emphases supplied.)

Yet Daleiden and CMP now repeatedly claim after-the-fact that they were compelled to provide all 635 files (notwithstanding this Court's order), because they wanted to avoid "editing" and the subpoena says "all" and "unedited." (Opp. at 11-12.)  These claims are not credible in light of their prior admission that only a small subset of the complete, unedited files of NAF's

NAF'S REPLY IN SUPPORT OF MOTION FOR OSC AS TO CMP AND DALEIDEN                                                            5
CASE NO. 3:15-cv-3522-WHO
sf-3601573

1  meetings contain material responsive to the Congressional subpoena.  It is an unreasonable

2  interpretation of this Court's order that clearly prohibited them from disclosing material "not

3  specifically requested by the subpoena."

4        As for Defendants' claim that various Congressional staffers told Daleiden and his

5  counsel that they wanted "all of the materials generated during the Human Capital Project,"

6  (Breen Decl. ¶ 3; Daleiden Decl. ¶ 7), that is not what the subpoena says, and that is most

7  definitely not a reason to violate this Court's express instructions to only provide materials

8  "specifically requested" by the subpoena.  Of course, had they genuinely wanted to comply with

9  the Court's order, Defendants could easily have sought the Court's guidance.  No deadline was

10 established for a disclosure nor was there any threat of contempt (nor could there have been

11 because the Subcommittee never followed its own rules).  *See* Rules of the House of

12 Representatives, Rule XI, cl. 2(m)(3)(C) (114th Congress, Jan. 6, 2015) ("Compliance with a

13 subpoena issued by a . . . subcommittee . . . may be enforced only as authorized or directed by the

14 House."); *Yellin v. United States*, 374 U.S. 109, 114, 124 (1963) ("[A] legislative committee has

15 been held to observance of its own rules" and must be "meticulous in obeying its own rules").

16 Instead, they rushed to make as broad a disclosure as possible before either NAF or the Court had

17 the chance to learn what was on those tapes.  If CMP and Daleiden really relied on these

18 statements without disclosing them to the Court or to NAF, they did so at their own peril.  *Inst. of*

19 *Cetacean Research*, 774 F.3d at 953 (parties "who act on the unreasonable advice of counsel risk

20 being held in contempt if their actions violate a court's order.").  As the Ninth Circuit has

21 explained:

22       To find the Defendants' self-serving interpretation of their
      obligations under our injunction reasonable would be to invite
23       'experimentation with disobedience.' . . . Though they had every
      opportunity, the Defendants did not seek clarification of their
24       obligations.  By construing their obligations [themselves] the
      Defendants assumed the risk that their attempts at technical
25       compliance would prove wanting.  We accordingly reject the
      Defendants' good faith argument, and hold [Defendants] in civil
26       contempt.

27 774 F.3d at 954.

28       Contrary to Defendants' claims, the circumstances strongly suggest they cared not a whit

for this Court's order. The disclosure occurred less than 48 hours after the Court issued its order, and Defendants present no evidence that they reviewed the files for compliance with that order before rushing to make sure they disclosed everything before either the Court or NAF could review the materials. Yet just two weeks later, counsel for CMP identified just 116 complete, unedited files as containing responsive content. In light of these facts, Defendants' subjective interpretations of the subpoena and this Court's instructions imposing limits on what may be disclosed "was not based on a reasonable interpretation" of this Court's clear and unambiguous order. *LifeScan Scotland, Ltd.*, 2013 WL 4604746, at *4 (Orrick, J.)

**Second**, Defendants claim that holding them in contempt would create "needless friction," and "significantly interfere with a lawful subpoena issued by the United States Congress." (Opp. at 14.) The argument makes zero sense. Daleiden has already forced through his overbroad and nonresponsive disclosure, a week later his friend Johnson and a hacker in Siberia published some of that material all over the Internet, and NAF's members have now been irreparably harmed. (Dkt. 225 at 13.) The deed is done. There is therefore no possibility that holding Daleiden and CMP accountable for their conduct would "significantly interfere with a lawful subpoena issued by the United States Congress." (Opp. at 14.) To the contrary, it is Daleiden's use of the Congressional subpoena as a smokescreen to effect a nonresponsive and overbroad production of materials that has threatened the integrity of these proceedings, and that has placed NAF's members in harm's way.

The argument is also directly contrary to law. "'The purpose of contempt proceedings is to uphold the power of the court'" and to "ensure that the court's vindication of litigant's rights is not merely symbolic." *Inst. of Cetacean Research*, 774 F.3d at 952 (quoting *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 327 (1904)). Otherwise, a federal court's orders "would have little practical force, and would be rendered essentially meaningless." *Id.* The Court should reject Defendants' invitation to abrogate its responsibility under Article III and refuse to police their compliance with its orders because of some nonexistent "friction" with a Congressional Subcommittee.

NAF'S REPLY IN SUPPORT OF MOTION FOR OSC AS TO CMP AND DALEIDEN  7
CASE NO. 3:15-cv-3522-WHO
sf-3601573

And of course, the argument ignores the black letter law cited by the Court that "allows courts to modify or quash Congressional subpoenas in order to protect constitutional rights from infringement by Congress." (Dkt. 155 at 2, citing *Exxon Corp. v. Fed. Trade Com.*, 589 F.2d 582, 589-90 (D.C. Cir. 1978); *see id.* at 3, citing *Exxon Corp v. Fed. Trade Com.,* 589 F. 2d at 592 (limiting FTC's response to properly issued Congressional subpoena so that it only reveals statutorily protected trade secrets).). Here, the overbroad and nonresponsive disclosure that Daleiden forced through – a disclosure to Congress that includes nonresponsive documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that has directly led to its members suffering irreparable harm – directly implicates NAF's First Amendment rights of association, *NAACP v. Alabama*, 357 U.S. 449, 460, (1958), as well as NAF's Fourth Amendment right to be free from unwarranted searches and seizures. *See v. City of Seattle,* 387 U.S. 541, 544 (1967) ("[T]he Fourth Amendment requires that a subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome"); *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598-99 (S.D. Miss. 2015) ("It is no answer to a challenge to [a government] Subpoena[] . . . for the Attorney General to say that some small fraction of what is actually being sought might be properly within his purview.).

**Third**, Defendants claim that Charles C. Johnson's disclosure of materials provided to Congress and subject to the Court's TRO "has no bearing on the issues at hand" because there is "no evidence" that "Daleiden had any role in the leak of TRO materials to Johnson." (Opp. at 16.)

This misunderstands the point, which is that Daleiden's forced, rushed, overbroad and nonresponsive disclosure to Congress indisputably led directly to the Johnson disclosures (whether or not the material came from a Congressional staffer or from Daleiden directly), which in turn led to NAF members suffering irreparable harm. (Dkt. 225 at 13.) The materials Johnson disclosed include video files of panel discussions that were not "specifically requested by the [Congressional] subpoena." (Dkt. 155 at 3; Mot. at 7).) Thus, it is ***Daleiden's*** refusal to comply with, and his disregard for, this Court's October 6 order that led directly to NAF members suffering irreparable harm.

**Fourth**, Defendants claim that they should not be required to remove materials covered by this Court's TRO from CMP's Facebook page.[3] CMP's Facebook page contains links to the materials provided to Congress and that subsequently showed up on Johnson's website a weak later. (Mot. at 7.) Daleiden testified ▮▮▮▮ (Dkt. 187-3 at 80.)

His refusal to do so is based on a claim that "it would violate" the Communications Decency Act "to hold CMP or Daleiden responsible for the internet postings" on CMP's Facebook page. (Opp. at 18.) As an initial matter the Communications Decency Act, 47 U.S.C. § 230, is concerned with immunity for "information content providers" like YouTube, Google, CraigsList, and Facebook for material that third parties create and post on their hosted websites. Even if CMP were an "information content provider" within the meaning of the Act (Daleiden cites no law for the assertion), it would not matter, because it does not apply to an entity "that is responsible, in whole or in part, *for the creation or development*" of the material at issue. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1043 (N.D. Cal. 2014) (emphasis added); *Ascend Health Corp. v. Wells*, No. 4:12-CV-00083-BR, 2013 WL 1010589, at *8 (E.D.N.C. Mar. 14, 2013) (Act "does not cover content which [the defendant] created herself"). Here, Daleiden and CMP are indisputably the creators of the materials disclosed to Congress, and that subsequently went to Johnson, and that are now disclosed for the world to see on CMP's Facebook page. It is irrelevant that the TRO materials were posted by someone else in the first instance. *Inst. of Cetacean Research*, 774 F.3d at 952 (rejecting argument that plaintiff had to show clear and convincing evidence that defendant "incited" or "controlled" third-party acts, and holding defendant in "contempt for the acts *it* committed after the injunction issued") (original emphasis). Daleiden created the material covered by the TRO, he is well aware that these materials are now posted on a website that he controls ▮▮▮▮ and he is continuing to publish that material on his website despite that

---

[3] NAF withdraws its request to have Daleiden remove from his Twitter page his statement that the TRO materials Johnson disclosed and that are now published on CMP's website "confirm everything we've been saying for 3 months," which is that "#PPSellsBabyParts." (Dkt. 226-16 at 2.)

awareness, in violation of the TRO.

Daleiden also claims that he should be not be required to take TRO materials off a website that he controls, because he "reasonably interpreted" the TRO as not being a "mandatory injunction" requiring him to take "affirmative action." (Opp. at 18.) His "interpretation" is unreasonable. On its face it prohibits Daleiden from "publishing or otherwise" disclosing the materials specified in the order. Daleiden is now "publishing or otherwise disclosing" hours of materials subject to that order. NAF is not seeking to turn a prohibitory injunction into a mandatory injunction; it is simply seeking to enforce the TRO.

If Daleiden's argument were correct, then he could publish TRO materials on CMP's website anytime he chooses, and the Court would be powerless to order him to remove those materials because the TRO does not require him to take "affirmative action." That is not the law. "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (emphasis added), overruled on other grounds in *Winter v. NRDC, Inc.*, 555 U.S. 7, 21 (2008). The "last uncontested status which preceded the pending controversy" here is one in which Daleiden and CMP are bound by Court order from publishing or "otherwise disclosing" materials taken at NAF's meetings. CMP and Daleiden have now upended that status quo by unlawfully publishing or "otherwise disclosing" NAF confidential information on a website that they control.

**Fifth**, Daleiden claims that this Court has "no authority" to order Daleiden to turn over the TRO materials to outside counsel for CMP, because NAF's "claim" that they "belong to CMP" is "not supported by evidence in the record." (Opp. at 20.)

This is not a serious argument. These are indisputably corporate records, not Daleiden's. (Dkt. 113-4 at 32 (CMP Articles of Incorporation stating that any "videos and other media produced" by CMP is its property). *See Wilson v. U.S.*, 221 U.S. 361, 378 (1911) ("[W]here an officer of a corporation has possession of corporate records which disclose his crime, there is no ground upon which it can be said that he will be forced to produce them if the entries were made by another, but may withhold them if the entries were made by himself. The books are no more

1  his private books in the latter case than in the former; if they have been held pursuant to the
2  authority of the corporation, that authority is subject to termination."). The Court has made this
3  point time and again, including in the very October 6 Order at issue in this motion. (Dkt. 155 at 3
4  ("[T]he documents, video footage and communications covered by the TRO are CMP's and do
5  not belong to any individual defendant."); Dkt. 137 at 6 ("The records that NAF seeks are not . . .
6  personal in nature . . . Instead, they fall squarely within CMP's claimed function as described in
7  its bylaws, articles of incorporation, and IRS documents.").)

8        The "independent contractor" agreements with Biomax agents that Daleiden withheld in
9  discovery and finally produced last Friday night after the Supreme Court denied his emergency
10 application for a stay put the lie to Defendants' claim that there is no "evidence" the records
11 belong to CMP. (Opp. at 21.) It is little wonder Daleiden orchestrated a "shellgame" in
12 discovery to hide these and other records, because they expressly state that ████
13 ████
14 ████
15 ████ (Rebuttal Declaration of Derek F. Foran in
16 Support of NAF' Reply for OSC ("Rebuttal Foran Decl."), Ex. 1, ¶ 5 (emphasis supplied).)
17 Daleiden withheld these corporate records from the Court and NAF, while at the same time he
18 was testifying under penalty of perjury that ████
19 ████ (Dkt. 187-3 at 228:22-229:6 ████
20 ████
21 ████

22       Given the black letter law, and the facts, establishing the indisputably *corporate* nature of
23 these records, the Court does not have to find Daleiden in contempt to order him to turn over
24 these records to outside counsel for CMP. It has the inherent power to do so to ensure the
25 ongoing integrity of these proceedings and compliance with its orders. *See, e.g.*, *U.S. v.*
26 *Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) ("There [is] no question that courts have inherent power
27 to enforce compliance with their lawful orders"); *Reebok Int'l, Ltd. v. Marnatech Enterprises,*
28 *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (courts have "inherent equitable power to issue

provisional remedies ancillary to its authority to provide final equitable relief"). In light of the irreparable harm suffered by NAF's members following the Johnson disclosures, the Court should not countenance any further games of hide-the-ball on Daleiden's part. NAF's members should not be required to suffer any further overbroad, nonresponsive disclosures orchestrated by Daleiden in violation of this Court's orders, nor should they be required to suffer through any more "Johnson"-type leaks.

Defendants' remaining arguments are equally meritless. The "requested turnover" is "not, in essence . . . a modification of the TRO." (Opp. at 20.) It is simply a request that the Court order Daleiden to turn over the TRO materials to outside counsel for CMP to ensure ongoing compliance with the Court's TRO and subsequent orders, no more, no less. *Yacoubian*, 24 F.3d at 5; *Reebok Int'l, Ltd.*, 970 F.2d at 559. Nor would turning over records that indisputably do not belong to him "violat[e] the Due Process Clause." (Opp. at 21.) Defendants cite no authority for this remarkable proposition, nor do they explain how turning over these records to CMP's outside counsel would with "interfere with [Daleiden's] and CMP's ability to present a defense in this action." (Opp. at 22.) The Preliminary Injunction is now fully briefed. Daleiden and CMP have said whatever it is they want or need to say about these materials in response to NAF's motion, and there is no schedule for further discovery at this time. There is no sense to Daleiden's claim that requiring him to turn over records that do not belong to him to outside counsel for CMP would violate due process.

**Last**, in addition to a 22-page opposition (in response to an 8 page motion), Defendants separately filed a set of "evidentiary" objections, as they did in opposition to NAF's motion for preliminary injunction. Those objections violate the local rules, are otherwise frivolous, and should be disregarded. *See* Civil Local Rule 7-3(a). Undersigned counsel has submitted an amended declaration to correct the technical defect identifed by Defendants.

### III. CONCLUSION

For the foregoing reasons, NAF respectfully requests that the Court issue an order to show cause as to why Daleiden and CMP should not be held in contempt.

Dated: December 10, 2015

LINDA E. SHOSTAK
DEREK F. FORAN
NICHOLAS S. NAPOLITAN
CHRISTOPHER L. ROBINSON
MORRISON & FOERSTER LLP

By: */s/ Derek F. Foran*
    Derek F. Foran

Attorneys for Plaintiff
NATIONAL ABORTION FEDERATION

NAF'S REPLY IN SUPPORT OF MOTION FOR OSC AS TO CMP AND DALEIDEN
CASE NO. 3:15-cv-3522-WHO
sf-3601573

13