UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| NATIONAL ABORTION FEDERATION, | Case No. 15-cv-03522-WHO (JD) |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE MOTION FOR DISQUALIFICATION OF DISTRICT JUDGE UNDER 28 U.S.C. §§ 144 AND 455** |
| CENTER FOR MEDICAL PROGRESS, et al., | |
| Defendants. | Re: Dkt. No. 428 |

Defendants David Daleiden and The Center for Medical Progress seek to disqualify United States District Judge William H. Orrick, III from continuing to preside over this case. The motion is denied.

## BACKGROUND

This case began on July 31, 2015, when plaintiff National Abortion Federation ("NAF") sued The Center for Medical Progress ("CMP"), BioMax Procurement Services, LLC, David Daleiden and Troy Newman. Dkt. No. 1. Judge Orrick was randomly assigned to the case, and he has presided over it continuously ever since. *See* Dkt. No. 4 (assigning case to Judge Orrick). The case has been actively litigated, to say the least. As of June 8, 2017, the docket contained 430 separate entries. Judge Orrick has issued multiple orders, including a temporary restraining order and a preliminary injunction. Dkt. Nos. 15, 354. The circuit court has been involved as well -- more frequently than is the norm at this stage of a civil case -- and has denied a writ of mandamus for a discovery order and affirmed the preliminary injunction, among other actions. Dkt. Nos. 140, 401.

In the order affirming the preliminary injunction, the circuit court described the individual defendants as "anti-abortion activists" who "misrepresented themselves as representatives of a

United States District Court
Northern District of California

company, BioMax Procurement Services LLC, purportedly engaging in fetal tissue research." Dkt. No. 401 at 2. They did this to gain access to NAF's annual meetings. NAF is a non-profit professional association of abortion providers whose mission is "ensur[ing] safe, legal, and accessible abortion care." *Id.* at 1-2 (quotations and alterations in original). At NAF's 2014 and 2015 annual meetings, the individual defendants and others posing as BioMax representatives surreptitiously recorded several hundred hours of events, including informal conversations with other attendees. The defendants "attempted in those conversations to solicit statements from conference attendees that they were willing to violate federal laws regarding abortion practices and the sale of fetal tissue." *Id*. at 3. The defendants then made some of the recordings public, and "[a]fter the release of the recordings, incidents of harassment and violence against abortion providers increased, including an armed attack at the clinic of one of the video subjects that resulted in three deaths." *Id*. On these facts, the circuit court affirmed Judge Orrick's issuance of the preliminary injunction, which enjoined defendants and related individuals from:
"(1) publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings;
(2) publishing or otherwise disclosing to any third party the dates or locations of any future NAF meetings; and (3) publishing or otherwise disclosing to any third party the names or addresses of any NAF members learned at any NAF annual meetings." Dkt. No. 354 at 42.

On May 8, 2017, the circuit court granted defendants' unopposed motion to stay the mandate for the appeal of Judge Orrick's preliminary injunction order, but emphasized that "[t]he preliminary injunction . . . remains in effect." Dkt. No. 407. After receiving a letter from plaintiff's counsel outlining what could be intentional violations of the preliminary injunction (*e.g.*, that Daleiden's counsel in a separate criminal case had made available on counsel's website copies of the enjoined recordings), Judge Orrick held a telephonic hearing on May 25, 2017. *See* Dkt. No. 409. Daleiden and his criminal counsel did not appear, in violation of the court's direction (for Daleiden) and invitation (for counsel) that they participate. *Id*. at 1. In a written order issued the same day, Judge Orrick ordered remedial measures such as taking down from the

website all links to recordings covered by the preliminary injunction, and he set a contempt hearing for June 14, 2017, at 2:00 p.m. *Id*. at 2.

It was not until June 7, 2017, just seven days before the contempt hearing, that defendants Daleiden and CMP filed the present motion to disqualify Judge Orrick on the basis of bias or prejudice, or the appearance of partiality. Dkt. No. 428. The motion, which was brought under 28 U.S.C. §§ 144 and 455, was the first of its kind to be filed in this nearly two-year-old and highly active case. Judge Orrick promptly referred it for random reassignment to another judge. Dkt. No. 430. Strictly speaking, that was not a legal necessity. Under 28 U.S.C. § 144, reassignment is required only if there is a "timely and sufficient affidavit," as determined by the judge to whom the motion is directed. *See United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980). On this point, Judge Orrick said that he did "not think that [the affidavit] is legally sufficient," and he had "concerns about its timeliness and whether the timing is simply an attempt to delay the resolution of the OSC re Contempt." Dkt. No. 430 at 2. Similarly, motions under 28 U.S.C. § 455 are determined by the judge to whom the motion is directed. *See* 28 U.S.C. § 455(a) ("judge . . . shall disqualify himself"); *see also Sibla*, 624 F.2d at 867-68 (Section 455 is "directed to the judge," "is self-enforcing on the part of the judge," and "includes no provision for referral of the question of recusal to another judge"). Motions under Section 455 must also "be made in a timely fashion." *Davies v. Commissioner of the Internal Revenue*, 68 F.3d 1129, 1131 (9th Cir. 1995). Judge Orrick would have been well within the law to deny the disqualification motion outright, yet he chose instead to refer the entire motion under both Sections 144 and 455 to another judge to be selected at random. *See* Dkt. No. 430 at 2 (citing to the Commentary to Civil Local Rule 3-14 and noting that there is no bar to a judge "likewise referring a motion under Section 455 to the Clerk so that another Judge can determine disqualification.").[1]

---

[1] Defendants do not argue that this was improper in any way, for good reason. *See*, *e.g.*, *United States v. Zagari*, 419 F. Supp. 494, 499 (N.D. Cal. 1976) ("Although he did not have to do it, Judge Conti asked that an outside judge be assigned to reconsider" his denial of the recusal motion, and "took action to make it possible that the hearing on the motion be de novo. . . . The defendant here got more, not less, than he was entitled to, and is therefore in no position to complain.").

3

Undoubtedly this was done out of an abundance of caution and to maximize the parties' and the public's confidence in the judicial process. The Court shares Judge Orrick's skepticism that the affidavit is timely and sufficient, and a good case could be made that this motion should be terminated on that ground alone. Nevertheless, in the interest of completeness and clarity, the Court addresses the substance of the motion. *See*, *e.g.*, *Melendres v. Arpaio*, No. CV-07-2513-PHX-MHM, 2009 WL 2132693, at *7 (D. Ariz. July 15, 2009) ("Overall, the law supports the denial of defendants' recusal motion as untimely. However, because the Court must abide by an unwavering commitment to the perception of fairness in the judicial process, it will not deny the petition on the basis of timeliness and will instead address the substantive questions raised by the request for recusal."); *United States ex rel. Hamilton v. Yavapai Community College District*, No. CV-12-08193-PCT-PGR, 2014 WL 12656540, at *2 n.4 (D. Ariz. Dec. 9, 2014) (noting that "for purposes of facilitating the consideration of the merits of the [recusal] motion," court "assumes that the motion was timely filed notwithstanding that this action is now going into its third year of litigation.").

## DISCUSSION

Defendants invoke 28 U.S.C. §§ 144, 455(a) and 455(b)(1) for disqualification. *See* Dkt. No. 428 at 1 nn.1-2. Section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." Section 455(a) states that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." And under Section 455(b)(1), the judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

While the procedure for motions under Section 144 and Section 455, respectively, is slightly different, the governing standard is the same. Our circuit has held that "[t]he test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1)," and "section

4

1  (b)(1) simply provides a specific example of a situation in which a judge's 'impartiality might

2  reasonably be questioned' pursuant to section 455(a)." *Sibla*, 624 F.2d at 867. Consequently,

3  where, as here, the only question is whether a district judge should be removed from a case for

4  personal bias or prejudice under Sections 144, 455(a) and 455(b)(1), the "same substantive

5  standard will be applied to each section." *Id*. That standard is an objective one and asks "whether

6  a reasonable person with knowledge of all the facts would conclude that the judge's impartiality

7  might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008).

8  The "reasonable person" for this inquiry is not "someone who is 'hypersensitive or unduly

9  suspicious,' but rather is a 'well-informed, thoughtful observer.'" *Id*. at 913 (citations omitted).

In evaluating recusal or disqualification, the Court is mindful that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Court for Central Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (quotation omitted). Our circuit also holds that "section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id*. at 1178.

## I. MRS. ORRICK'S FACEBOOK ACTIVITY

Defendants seek disqualification on the basis of three instances of Facebook activity by Judge Orrick's wife. In one instance, defendants say she "pinkified" her Facebook page and added "I stand with Planned Parenthood" as a Facebook profile picture overlay sometime in the summer or fall of 2015. Dkt. No. 428 at 3. Mrs. Orrick's profile picture for this instance featured her alone. *See* Dkt. No. 428-1 (Daleiden Decl.), Exh. 9.

For the two other instances, defendants say she "liked" a Facebook post by "Keep America Pro-Choice" that appears to have linked to an article by the National Abortion Rights Action League (NARAL). Dkt. No. 428 at 3; Daleiden Decl., Exh. 11. The article mentioned, ostensibly in reference to Daleiden and CMP's work, the "highly publicized release of heavily edited videos by a sham organization run by extremists who will stop at nothing to deny women legal abortion services." *Id*. Mrs. Orrick also "liked" another Facebook post by "Keep America Pro-Choice"

5

that reported Daleiden's criminal indictment in Texas as a positive development. Dkt. No. 428 at 3; Daleiden Decl., Exh. 12. Both of these "likes" appeared with a profile picture that showed her together with Judge Orrick.

That is the sum total of defendants' concerns with respect to Mrs. Orrick, and they do not amount to a reason to disqualify Judge Orrick. This is so because the premise of defendants' argument is the faulty and anachronistic assumption that a wife's communicative activity necessarily represents the views of, or should be attributed to, her husband. Defendants' counsel extended this idea even further at the hearing by stating that Mrs. Orrick should not be deemed an independent speaker and thinker because Judge Orrick had not expressly vouched for that. *See also* Dkt. No. 449 at 7 (contrasting this case with *Perry v. Schwarzenegger*, 630 F.3d 909 (9th Cir. 2011), where Judge Reinhardt declined recusal over his wife's activities and expressly stated that "her views regarding issues of public significance are her own"). These are not credible arguments for disqualification. While marriage imposes some limits on each partner's personal autonomy, spouses do not give up their freedom of thought and expression. It is beyond question that a woman's right to speak out on the issues she cares about does not end when she says "I do," and her status as an independent actor does not depend on her husband's express declaration of that fact. No thoughtful or well-informed person would simply assume that one spouse's views should always be ascribed or attributed to the other in the absence of an express disclaimer. *See*, *e.g.*, *Perry*, 630 F.3d at 916 (wife "is an independent person who need not obtain my approval or agreement to advocate for whatever social causes she chooses. The views are hers, not mine"); *Akins v. Knight*, No. 2:15-cv-4096-NKL, 2016 WL 127594, at *3 (W.D. Mo. Jan. 11, 2016) (husband "is an independent person . . . [whose] views are his own. The average person on the street would not reasonably believe the undersigned would approach a case in a partial manner due to Mr. Kelly's independent views regarding a subject, whether those views are publicly expressed or not.").

Consequently, defendants bear the burden of showing that there is a particular reason in this case to believe that Mrs. Orrick's Facebook posts may in fact express Judge Orrick's views. They have not identified a single fact that supports that conclusion. That two of the posts featured

6

1 a generic photo of the couple is of no moment. Only Mrs. Orrick's name was stated with her

2 "likes" and her image is clearly visible and identifiable as the female half of the pictured couple.

3 *See*, *e.g.*, Daleiden Decl., Exh. 12. Even assuming a reasonable observer were to recognize Judge

4 Orrick by sight in the picture, there is no realistic likelihood that the observer might then confuse

5 the "like" as having come from Judge Orrick.

6 This case is not at all like *Melendres v. Arpaio*, No. CV-07-2513-PHX-MHM, 2009 WL

7 2132693 (D. Ariz. July 15, 2009), which defendants heavily rely upon. There, Judge Mary

8 Murguia, then on the district court, recused herself because of articles disparaging the parties in

9 the case that were published on a website that prominently pictured her identical twin sister next to

10 each article. "Even though the picture is correctly labeled as belonging to" the twin sister, Judge

11 Murguia sought to "avoid the risk of confusing the Court's picture with that of her sibling," and

12 found it necessary to consider "the possibility that a reasonably well-informed and impartial

13 observer might mistake the Court for her identical twin sister." 2009 WL 2132693, at *15 n.9.

14 No similar risk of mistake exists here.

## II. JUDGE ORRICK'S RELATIONSHIP WITH GOOD SAMARITAN FAMILY RESOURCE CENTER

17 The moving defendants also point to Judge Orrick's "longstanding relationship" with the

18 Good Samaritan Family Resource Center as grounds for disqualification. Dkt. No. 428 at 1. This

19 matters, they say, because Good Samaritan "has a 'key partnership' with a Planned Parenthood

20 affiliate that is a member of the plaintiff National Abortion Federation." *Id*. It is not disputed that

21 Good Samaritan is a non-profit organization that provides a wide range of assistance to low-

22 income Latino families in San Francisco, including English as a Second Language classes,

23 parenting classes, a domestic violence support group and child development classes. *See* Dkt.

24 No. 447 at 10; Daleiden Decl., Exh. 5 at ECF pp. 75-81. It is also not disputed that Planned

25 Parenthood Shasta Pacific (now Planned Parenthood Northern California) had a clinic onsite at

26 Good Samaritan's facility.

27 Defendants place particular emphasis on the fact that Judge Orrick was secretary of Good

28 Samaritan's Board of Directors in 2001, "when GSFRC entered into its 'key partnership' with

PPSP." Dkt. No. 428 at 2. Defendants say that because of this timing, Judge Orrick must "necessarily" have been involved in the board's decision to initiate that partnership and he must have "had access to confidential, extrajudicial information which will or could bias or affect his decision." Dkt. No. 428 at 7; Dkt. No. 449 at 5. This allegation, however, is purely conclusory and speculative. Defendants do not proffer any evidence supporting it, and "Section 455(a) does not require recusal based on speculation." *See Clemens*, 428 F.3d at 1180; *see also Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (recusal not warranted under § 144 or § 455 based on mere speculation).

Although defendants also take issue with Judge Orrick and Mrs. Orrick's financial donations to Good Samaritan, that is immaterial given that Good Samaritan is, as counsel acknowledged at the hearing, a separate legal entity from Planned Parenthood Shasta Pacific. Planned Parenthood Shasta Pacific itself is a wholly separate entity from the only plaintiff in this case, the National Abortion Federation. *Cf. United States ex rel. Hamilton v. Yavapai Community College District*, No. CV-12-08193-PCT-PGR, 2014 WL 12656540, at *1 (D. Ariz. Dec. 9, 2014) (in denying recusal motion based on fact that judge and his wife "are financial supporters of the College," noting that judge and his wife donated not to the College but to the Yavapai College Foundation, which is "a separate legal entity from the College and is not a named party to this action").

As counsel also stated at the hearing, even by defendants' own potentially overbroad measure, Judge Orrick's service as an active board member of Good Samaritan ended no later than 2006, almost a decade before this case was filed. That he continued to be listed by Good Samaritan as an "emeritus" board member in recognition of his past service would not cause the well-informed, thoughtful observer to have doubts about Judge Orrick's impartiality. The greatly attenuated connection that is alleged between Judge Orrick and plaintiff NAF -- through Good Samaritan and then again through Planned Parenthood Shasta Pacific -- is miles away from the kind of entanglements that would support recusal under the standard that governs this motion. Recusal has been denied in circumstances featuring much closer ties. *See, e.g., Datagate, Inc. v.*

*Hewlett-Packard Co.*, 941 F.2d 864, 870-71 (1991) (affirming district judge's denial of recusal where judge's son had been employed by HP, the defendant, "for the past fifteen years").

### III. JUDGE ORRICK'S COMMENTS AT THE MAY 25 TELEPHONIC HEARING

As a final challenge, the moving defendants contend that Judge Orrick should be disqualified based on his comments on the record at the May 25, 2017 telephonic hearing that Daleiden would be "well advised . . . that he is obligated to follow the Court's orders [and] not try to skate around them and cause real harm to human beings . . . ." Dkt. No. 428 at 9. Even giving defendants the benefit of the doubt that in-court comments of this sort can be the basis for recusal, *see Liteky v. United States*, 510 U.S. 540, 555 (1994), there is plainly nothing of concern in this on-the-record admonition, which was based on facts contained not only in Judge Orrick's preliminary injunction order but also in the circuit court's order affirming it.

Defendants say the comment was improper because "[w]hether there was a violation of the preliminary injunction remains to be determined." Dkt. No. 449 at 8. But nothing in the comment is inconsistent with that proposition. Judge Orrick made no finding that the preliminary injunction had been violated; he was only advising Daleiden that he had better not violate it. That is well within the bounds of what a trial judge may say and do.

Nor did Judge Orrick ascribe any "intent to harm" to Daleiden, as he and CMP allege. Judge Orrick stated that Daleiden had better not "skate around" his order "*and* cause real harm," not "*to* cause real harm." To the extent the statement about causing harm was a reference to the violence that followed the release of the recordings at issue in this case, Judge Orrick carefully explained the basis of his finding that the attacks on abortion clinics were connected to the release of the videos. *See* Dkt. No. 354 at 16-18, 36-38. Far from being an inappropriate comment that might support the appearance of partiality, the statement, to the extent it was a reference to those earlier findings, was an opinion "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings," which "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 544. There was nothing improper about the comments.

## IV. CUMULATIVE IMPACT

Defendants say disqualification should also result from the "cumulative effect" of the facts and circumstances they have identified, Dkt. No. 428 at 9, but the Court finds there is no "effect" to "cumulate." Each of defendants' arguments adds up to a zero, and the whole is not greater than the sum of these parts.

## CONCLUSION

The motion to disqualify is denied.

**IT IS SO ORDERED.**

Dated: June 26, 2017

JAMES DONATO
United States District Judge