UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION, | Case No. 15-cv-03522-WHO |
| Plaintiff, | |
| v. | **ORDER OF CIVIL CONTEMPT** |
| CENTER FOR MEDICAL PROGRESS, et al., | |
| Defendants. | |

Based on the evidence before me, the record in this case, the failure of defendant Center for Medical Progress (CMP), defendant David Daleiden, respondent Steve Cooley and respondent Brentford J. Ferreira to provide sufficient evidence in response, and for the reasons discussed below, I HOLD CMP, Daleiden, Cooley, and Ferreira in CIVIL CONTEMPT for multiple violations of the February 5, 2016 Preliminary Injunction (PI). As detailed below, these individuals and the entity willfully violated the clear commands of the PI by publishing and otherwise disclosing to third-parties recordings covered by the PI.[1]

## BACKGROUND

### I. PRELIMINARY INJUNCTION

The parties and respondents are familiar with the factual and procedural history of this case. Significant to the issue of contempt, on February 5, 2016, I entered a preliminary injunction (affirming a prior existing Temporary Restraining Order), mandating the following:

> Pending a final judgment, defendants and those individuals who gained access to NAF's 2014 and 2015 Annual Meetings using aliases and acting with defendant CMP (including but not limited to the following individuals/aliases: Susan Tennenbaum, Brianna

---

[1] The motions to seal, Docket Nos. 416, 433, 437, 442, 462, and 470 are GRANTED as compelling reasons justify the continued sealing of the materials at issue.

Allen, Rebecca Wagner, Adrian Lopez, and Philip Cronin) are restrained and enjoined from:

   (1) publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings;

   (2) publishing or otherwise disclosing to any third party the dates or locations of any future NAF meetings; and

   (3) publishing or otherwise disclosing to any third party the names or addresses of any NAF members learned at any NAF annual meetings.

Preliminary Injunction [Dkt. No. 354] at 42. The PI was affirmed by the Ninth Circuit. *National Abortion Federation v. Center for Medical Progress*, 2017 WL 1164450 (9th Cir. March 29, 2017).[2]

## II.   CRIMINAL INVESTIGATION AND COMPLAINT

On April 5, 2016, the California Attorney General executed search warrants and seized Daleiden's computers and devices containing materials covered by the PI. Foran Decl., Ex. A. (Affidavit in Support of Arrest Warrant). A few days later, Daleiden retained Steve Cooley and Brentford J. Ferreira of Steve Cooley & Associates (SCA) to represent him in any criminal proceedings. On April 15, 2016, NAF's counsel sent a letter to the California Attorney General, notifying the AG that the seized materials are covered by the PI in this case. In July 2016, Ferreira and Deputy Attorney General (DAG) Johnette Jauron meet with the Honorable Terri Jackson of the San Francisco Superior Court to consolidate proceedings related to the search warrants and venue them in San Francisco. During that meeting, Presiding Judge Jackson ordered the DAG to provide all seized evidence to SCA so that SCA could review the evidence for materials that were privileged in connection with this civil case.

On March 28, 2017, the California Attorney General's Office issued a press release that it had filed a criminal complaint against Daleiden and Sandra Susan Merritt. Foran Decl., Ex. A. (Criminal Complaint). The Criminal Complaint alleges that Daleiden and Merritt illegally tape recorded 14 "Does" on various dates in California, the majority of which occurred during NAF's

---

[2] Defendants may seek *certiorari* with the United States Supreme Court; the time for filing a petition for a writ of *certiorari* has not yet run.

2014 Annual Meeting in San Francisco. *See generally* Criminal Complaint. On the same day as the announcement, the Hon. Carol Yaggy of San Francisco Superior Court sealed the declaration in support of the arrest warrant. *Id.*

On May 3, 2017, Daleiden was arraigned and the Criminal Complaint was filed with Judge Yaggy's sealing order. On the same day, SCA filed a demurrer challenging the sufficiency of the Criminal Complaint on behalf of Daleiden. Foran Decl., Ex. D (Demurrer). Footnote 1 of the Demurrer contained a link to a YouTube "playlist" containing 337 videos "published" by CMP and labelled "San Francisco Superior Court Defense Filing." Foran Decl., Ex. E ("Defense Filing" playlist).[3] The Demurrer was accompanied by a Request for Judicial Notice (RJN) asking the Superior Court to take notice of the videos under California Evidence Code § 452. Foran Decl., Ex. F. Exhibit 1 to the RJN included the same YouTube link to the Defense Filing playlist as Footnote 1. Foran Decl. ¶ 13. 334 of the videos "published" by CMP in the YouTube Defense Filing playlist were recordings included within the scope of the PI. Foran Decl., ¶ 12. Videos 4 through 336 contain raw unedited footage taken by Daleiden at NAF's Annual Meetings in San Francisco and Baltimore. *Id.* & Ex. E.[4]

SCA did not seek to seal Footnote 1 of the Demurrer or Exhibit 1 to the RJN. Foran Decl., ¶ 13. The Defense Filing playlist link was described by SCA as "private" in the Demurrer, but anyone could use that link to access the playlist. Foran Decl., ¶ 12. A flash drive containing the same videos was also submitted to the Superior Court on May 3, 2017. Demurrer, Footnote 1.[5]

On May 16, 2017, the DAG sent SCA a thumb drive containing just over 20 excerpts of videos that were the basis of the Criminal Complaint. The thumb drive was password protected.

---

[3] The full title of the playlist is "San Francisco Superior Court Defense Filing" and the last updated date is May 3, 2017. Ex. E.

[4] Video 337 is the Preview video discussed below.

[5] The flash drive was maintained by the Hon. Christopher Hite (the judge assigned to the criminal proceedings) and was not accessible by the public. Foran Decl. ¶ 12. In the June 21, 2017, hearing on Daleiden's Demurrer, Judge Hite declined to take judicial notice of the videos and ordered the flash drive be removed from the court's docket. Foran Reply Decl., Ex. C (Transcript of June 21, 2007 hearing) at 5:27 – 6:5.

### III. FURTHER PUBLISHING AND DISCLOSURE OF PI MATERIALS

Also on May 3, 2017, another video was uploaded to CMP's YouTube channel. This 3 minute and 9 second video was titled "Preview." Foran Decl., Ex. G. It was marked as "private/unlisted" so members of the public could not (yet) know it was there. Foran Decl. ¶ 14. The Preview video contains fifteen "clips" or segments, all or substantially all of which were taken at NAF's 2014 and 2015 Annual Meetings in San Francisco and Baltimore and covered by the PI. Foran Decl. ¶ 4. The video features CMP's logo and website in the bottom right corner and identifies the titles and affiliations/locations of eleven NAF members. Foran Decl. ¶ 5. The video concludes with a request for viewers to "share" the video, to "hold Planned Parenthood accountable for their illegal sale of baby parts" and "to learn more at centerformedicalprogress.org." *Id*. Only seven of the eleven NAF members identified in the Preview video are Does in the Criminal Complaint. Transcript of July 11, 2017 Hearing at 42:1-4.

Between May 12 and May 24, 2017, a further 2 hours and 9 minutes of PI materials were uploaded to CMP's YouTube channel. Foran Decl. ¶¶ 9-10. These 14 videos were taken at NAF's Annual Meetings in San Francisco and Baltimore, and are excerpts of recordings of each of the Does from the Criminal Complaint. Foran Decl. ¶ 10. The videos, plus three others not covered by the PI, were collected into a playlist titled "San Francisco Superior Court Defense Filing – Accusers." Foran Decl., Ex. C (hereafter "Accusers" playlist). The videos and playlist were marked as private/unlisted. Foran Decl. ¶ 9.

On May 24, 2017, at 8:43 p.m. Eastern Standard Time ("EST"), the online blog "The Next Right Step" published a "Breaking News" story that referred to SCA's launch of a media resource page regarding SCA's representation of Daleiden. Foran Decl., Ex. H; Second Supp. Foran Decl., Ex. A. The story provided links to the SCA "Media Page" and includes links to the Criminal Complaint, Demurrer, RJN, and all the video footage "referenced" in the Criminal Complaint. *Id*., Ex. H. On May 25, 2017, at 12:01 a.m. EST, the Preview video was published on the National Review website. Foran Decl., Ex. J; Foran Second Supp. Decl., Ex. B. The video was embedded on the site and described as a "shocking new video" "from The Center for Medical Progress." *Id*. The National Review website also linked to SCA's Media Page where "all the video footage"

4

referenced by the California Attorney General's office "can be found." *Id.* At 5:47 a.m. EST, the

Susan B. Anthony list published the Preview video on Twitter, also describing it as a "shocking

new video" attributed to CMP. Foran Decl., Ex. L. Then at 8:15 a.m. EST, the Preview video

was published by another Twitter user. Foran Decl., Ex. N.

At some point on May 25, 2017, SCA's Media Page went live and was accessible to the

public from the SCA website. Foran Decl. ¶ 4. NAF's counsel declares on information and belief

that the page went live in "the early hours" of May 25, 2017. *Id.* The first thing on the SCA

Media Page is an embedded copy of the Preview video. Foran Decl., Ex. B. The Media Page

goes on to announce SCA's representation of Daleiden and acknowledges the existence of the

Preliminary Injunction "preventing David from posting any videos taken at the 2014 and 2015

NAF conventions." *Id.* The SCA Media Page then linked to the Demurrer and RJN (and Exhibit

1), from which readers could see the "private" YouTube link and get to the CMP "Defense Filing"

playlist, allowing access to the 337 videos (including the 144 hours of raw footage from the NAF

San Francisco and Baltimore conferences). Foran Decl. ¶ 11. The 14 Does from the Criminal

Complaint were also identified on the SCA Media Page. *Id.* Finally, viewers were provided a link

to access the Accusers playlist containing the "video-recordings related to interviews" with the

Does. *Id.*; *see also* Foran Decl. ¶ 9.

## IV.    TAKE DOWN ORDER

NAF's counsel became aware of the disclosures of the PI material around 8:30 a.m. on

May 25, 2017, and immediately contacted defense counsel in this civil case, demanding immediate

removal of the materials from YouTube and SCA's website. Foran Decl., ¶ 22 & Ex. O. Shortly

thereafter, NAF's counsel contacted SCA and likewise demanded removal of all PI materials.

Foran Decl., ¶¶ 23-24 & Ex. P. NAF then alerted me to the disclosures. I set a telephonic hearing

for 4:00 p.m. Pacific Standard Time that day. Dkt. No. 408. Shortly before the 4:00 p.m.

telephonic hearing, YouTube blocked access to the links on its site. Foran Decl. ¶ 26.

During the telephonic conference, I directed the parties that the links to PI materials on the

SCA website and YouTube should "be taken down within the next 15 minutes, if they haven't

been taken down already." May 25, 2017 Transcript [Dkt. No. 413] at 6:12-15:11:23-24. Shortly

after the hearing, but before my written Order was issued, the list of "Doe" names and the Preview

video were removed from the SCA website.  Foran Decl. ¶ 28.  The links to the YouTube

playlists, however, remained.  *Id*.

At 5:24 p.m. on May 25, 2017, my Order Directing Compliance with Preliminary

Injunction and Order to Show Cause re Contempt was filed.  Dkt. No. 409.  Under that Order:

> To protect the integrity of the Preliminary Injunction and given the significant privacy concerns at stake, Daleiden is hereby ORERED to require his counsel – Steve Cooley and Brentford J. Ferreira of Steve Cooley & Associates and all those working with or for his counsel –IMMEDIATELY to take down from their website all links to recordings covered by the Preliminary Injunction and remove all references to the identities of any NAF members who were subjects of the recordings covered by the Preliminary Injunction. Daleiden and his counsel are also ORDERED IMMEDIATELY to undertake all efforts to remove from YouTube the recordings covered by the Preliminary Injunction. If Daleiden, his counsel, or any defendant in this action or their counsel has caused any of the information covered by the Preliminary Injunction to be published or posted in any other manner since entry of the Preliminary Injunction, they are ORDERED IMMEDIATELY to take it down.

May 25, 2017 Order at 2.  However, the links to YouTube playlists remained on the SCA Media

Page through May 26 and 27.  Foran Decl. ¶ 28.  The SCA media page was taken down sometime

over the following weekend.  *Id*.[6]

## V.  ADDITIONAL DISSEMINATION OF THE PI MATERIALS

Despite the blocking on YouTube, and the belated actions of SCA in removing the Preview

video, Doe names, and eventually the YouTube links, the PI materials were accessed and shared

by numerous third parties.  In one instance, the 144 hours of the raw footage were loaded to a site

for public viewing (that site was subsequently blocked through NAF's efforts).  Foran Decl. ¶ 31.

The Preview video – containing excerpts of PI material and disclosing the names of the NAF

members shown – was posted on Facebook and viewed more than 469,000 times and shared

---

[6] In declarations submitted after the OSC re Contempt Hearing, Cooley and Ferreira declare that the PI materials were "taken down at approximately 4:55 p.m. on May 25, 2017."  Dkt. Nos. 477, 478, ¶ 3.  Cooley goes on to declare that he hired a computer forensic firm, and the research that firm conducted made it "reasonable to conclude" that the SCA Media Page was "removed sometime between 5/25/2017 and 5/26/2017."  Dkt. No. 478-1, ¶ 7.  However, neither Cooley nor Ferreira – who presumably have knowledge about their own website, and who admit to posting the Media Page in the first instance – provide any evidence as to when the Media Page came down.

13,400 times.  Foran Decl., ¶¶ 33-34 & Ex. V.

## VI.    NAF'S RESPONSE

After being alerted to the disclosures, NAF placed its security team on "high alert." Declaration of Senior Director of Security Gannon in Support of NAF's Response to Order to Show Cause re Contempt [Dkt. No. 416-4] ¶ 3.  NAF immediately contacted all of the members shown or mentioned in the Preview video or disclosed as a Doe on SCA's website to advise them of the situation and encourage them to take precautions to ensure their safety.  Gannon Decl. ¶ 3. NAF's outside security firm was asked to monitor social media platforms for threats made against any of its members who appeared in the Preview video, as well as any of the identified Does.  *Id*. Within one hour, NAF's outside security firm reported back, detailing a number of what it considered threats; defendants characterize them as merely rhetoric.  *Id*. ¶ 4.

The monitoring by NAF and its outside security firm has confirmed that since May 25th, NAF and its members whose identities were disclosed in the Preview video and on SCA's website have seen a sharp increase in "negative and disturbing" threats.  *Id.* ¶ 8; *see also* Gannon Supp. Declaration [Dkt. No. 462-9] ¶¶ 2-4.[7]  For example, one NAF member shown in the "Preview" video received direct written communications just hours after it was published calling them "evil," "a baby killer," and a "systematic murderer."  Gannon Decl. ¶ 6.  Another NAF member's image— utilizing a headshot from the "Preview" video — has been circulating online and generating comments that caused the NAF member to hire a private security firm to drive them to and from work and caused other disruptions to their and their families lives.  *Id*. ¶ 7.

NAF security personnel have met with other NAF members and members of their families to monitor and provide recommendations on their security.  *Id*. ¶ 9.  It was forced to divert both internal and outside consultant staff from other projects to work on monitoring and responding to

---

[7] Daleiden and CMP object to Paragraph 4 of the Gannon Supplemental Declaration – discussing the threats a NAF-member physician identified in the Preview video received – as hearsay and lacking personal knowledge.  Objections [Dkt. No. 469].  The personal knowledge objection is OVERRULED.  The hearsay objection is sustained in part as to the quoted threats, but OVERRULED as Gannon's understanding that specific threats were made to the physician. Daleiden and CMP also object as hearsay to news reports attached as Exhibit A and B to the Supplemental Foran Declaration.  *Id*.  I have not considered those news reports in reaching my conclusion as to contempt and remedy.  Therefore, those objections are OVERRULED as moot.

the disclosure of the PI information. Gannon Decl. ¶¶ 3,10; Gannon Supp. Decl. [Dkt. No. 462-9] ¶¶ 2.

According to NAF's Senior Director of Communications & Membership, as of June 1, 2017, NAF had incurred $1,568.26 in direct security costs to fly a member of their Security Staff to conduct security reviews of the home and office of a NAF member shown in the Preview video. Fowler Decl. ¶ 3. Through June 30, 2017, NAF diverted approximately $26,000 in staff time from regular tasks as a result of the disclosures, assigning those staff to monitor and respond to threats and conduct research into threats related to the disclosures. Supplemental Fowler Decl. ¶ 4 [Dkt. No. 462-5] ¶ 4. An additional $1,282.50 has been incurred for outside consultant staff. *Id*. & Ex. B. One NAF member facility has been invoiced for direct security costs of $11,411.92 to provide armed security for a physician featured in the Preview video. *Id*. ¶ 5 & Ex. C.

Finally, as of the close of business on Wednesday, May 31, 2017, attorney fees incurred on behalf of NAF as a result of the disclosures amount to $96,610.50. Foran Decl. ¶ 35.

## VII. OSC RE CONTEMPT HEARING

Prior to the OSC re Contempt Hearing, I issued an order identifying the timeline of pertinent events relevant to the OSC hearing. The defendants and respondents offered no material disagreement to the timeline or the evidence offered by NAF. I also posed questions that I intended to ask of civil defense counsel, criminal defense counsel, and Daleiden. July 10, 2017 Order Concerning OSC Hearing [Dkt. No. 468]. The questions were:

> [For] Ms. Short, Mr. LiMandri, and the other Civil Case Defense Counsel:
> - When did you first become aware of the existence of the "Preview" Video? How?
> - When did you first become aware of the existence of the "Defense Filing" playlist videos on CMP's YouTube channel? How?
> - What steps did you take to comply with my May 25, 2017 Order requiring all efforts be made to take down links to the Preliminary Injunction materials?
>
> [For] Messrs. Cooley & Ferreira:
> - When did you receive the Preview Video or a link to the Preview Video? From whom?
> - When did you receive a link to the "Defense Filing" playlist hosted on CMP's YouTube channel? From whom?
> - When did you receive a link to the 144 hours of raw footage hosted on CMP's YouTube channel? From whom?

- When exactly did the Steve Cooley & Associates "Media Page" about your defense of David Daleiden become accessible to the public through the SCA website? Who took the steps to make that page accessible to the public?
- When did you become aware of my May 25, 2017 Order requiring all efforts be made to take down links to the Preliminary Injunction materials? What steps did you undertake to comply with that Order?

[For] Mr. Daleiden:

- Did you have any role in creating the Preview video? When was it created? Did you upload the Preview video to CMP's YouTube channel? When was it uploaded? Have you shared the Preview video in any way (i.e., by sharing a link or sharing the actual video file) with others since its creation?
- Who has "administrator" access to/can post material on CMP's YouTube channel?
- Did you have any role in creating/editing the video excerpts included in the "Defense Filing" playlist on CMP's YouTube channel? Did you upload those videos to CMP's YouTube channel? When?
- What steps did you personally take to comply with my May 25, 2017 Order requiring all efforts be made to take down links to the Preliminary Injunction materials?

Dkt. No. 468 at 3-4.

At the July 11, 2017 hearing on the OSC re Contempt, the civil case defense counsel refused to answer any of the questions on the basis of the attorney-client privilege.[8] Criminal defense counsel Cooley and Ferreira also asserted the attorney-client privilege as the basis for refusing to answer the first four sets of my questions. As to the fifth set of questions ("When did you become aware of my May 25, 2017 Order requiring all efforts be made to take down links to the Preliminary Injunction materials? What steps did you undertake to comply with that Order?"), Cooley and Ferreira both asserted the attorney work-product doctrine in addition to attorney-client privilege, refusing to answer those questions as well. Finally, Daleiden asserted the attorney-

---

[8] While Attorney Matthew Heffron initially stood up and on behalf of "all civil defense counsel" asserted the attorney-client privilege as a basis to refuse to answer any of my identified questions, Attorney Paul Jonna subsequently stood up and read out a "statement" from Attorney Charles LiMandri. That statement provided some answers and arguable defenses to contempt with respect to the civil defense counsel. *See* Transcript of July 11, 2017 hearing at 16:11 – 20:5. However, to the extent my questions called for attorney-client information (and most did not), LiMandri's statement arguably waived any properly asserted privilege. *See, e.g.*, *id.* at 18:14 – 22 ("During the May 25th teleconference with the Court, Your Honor ordered us to instruct specific persons to remove the YouTube links to the videos within 15 minutes. It's our understanding that any links posted by those persons the Court asked to us contact were, in fact, removed within 15 minutes. The civil defense counsel confirmed that all the videos we knew and were informed about on YouTube were down.").

client privilege and refused to answer any of the four sets of questions I posed to him. As a back up, his counsel also indicated that Daleiden could also take the Fifth Amendment to decline to answer the questions.

In declarations submitted after the OSC re Contempt Hearing on July 14, 2017, Cooley and Ferreira declare that the PI materials were "taken down" from YouTube and remote hosts within their control at approximately 4:45 p.m. on May 25, 2017, as confirmed by their computer forensic firm. Dkt. Nos. 477, 478 & 478-1. Neither Cooley nor Ferreira say who took down that material. Nor do they provide any information about who posted the information to their Media Page, when their Media Page went live, when their Media Page was taken down, or who did any of those acts.

## LEGAL STANDARD

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993). "A party may also be held liable for knowingly aiding and abetting another to violate a court order." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (*citing Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). "As a result, a party to an injunction who assists others in performing forbidden conduct may be held in contempt, even if the court's order did not explicitly forbid his specific acts of assistance." *Id*. at 948.

As the party alleging civil contempt, NAF must demonstrate that the alleged contemnors violated my Preliminary Injunction by "clear and convincing evidence" and not merely by a preponderance of the evidence. *Id*. Once the moving party makes that showing, the burden then "shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.1999).

"Whether a contempt sanction is civil or criminal is determined by examining 'the character of the relief itself.'" *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). As "the Supreme Court explained, [] a sanction generally is civil if it coerces compliance with a court order or is a remedial sanction meant to

compensate the complainant for actual losses. " *Id.* "A criminal sanction, in contrast, generally seeks to punish a 'completed act of disobedience.'" *Id.* (quoting *Bagwell*, 512 U.S. at 828).

As I noted in the Order Concerning OSC Hearing and explain in more detail below, the sanctions imposed here are civil. They are intended to coerce CMP and Daleiden to abide by the Preliminary Injunction on a going forward basis and remove any incentive for further violations, and they will compensate NAF for the costs and expenses it has reasonably incurred in responding to the disclosures made in violation of the Preliminary Injunction.[9]

## DISCUSSION

## I.    FAILURE TO CONTROVERT OR OFFER ANY EVIDENCE

NAF presented clear and convincing direct and circumstantial evidence showing that CMP and Daleiden violated the PI by uploading and disclosing PI materials to CMP's YouTube channel. NAF presented additional clear and convincing evidence that Cooley and Ferreira acting on behalf of Daleiden, violated the PI by posting PI material on the SCA Media Page, and including publicly accessible links to PI materials hosted on CMP's YouTube channel in their court filings.

In response, CMP, Daleiden, Cooley, and Ferreira offer *no evidence*. They dispute whether NAF met its initial burden, but based on the evidence adduced in the OSC proceedings and in the record of this case, NAF has. The burden to prove that they did not violate the PI then shifted to them. *Fed. Trade Comm'n v. Enforma Nat. Prod.*, Inc., 362 F.3d at 1211. Instead of addressing my specific and narrow questions about their respective roles in the creation, uploading, and posting of the PI materials, each of them refused to answer any of my questions, resting on their assertion of the attorney-client privilege.

---

[9] Defendants' and respondents' cases that apply criminal contempt standards to proceedings involving "complex" injunctions are inapposite. *See, e.g., Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 837 (1994) (distinguishing the injunction at issue from "a complex, complex injunction" where court "effectively policed petitioners' compliance with an entire code of conduct"); *U.S. Equal Employment Opportunity Comm'n v. Univ. of Louisiana at Monroe*, No. CV 05-1158, 2016 WL 917331, at *3 (W.D. La. Mar. 8, 2016 (court addressed "complex factual interpretations of the Decree"). This Court's injunction is in no way "akin to 'an entire code of conduct that the court itself had imposed.'" *N.Y. State Nat. Org. for Women v. Terry*, 41 F.3d 794, 797 (2d Cir. 1994) (quoting *Bagwell*, 512 U.S. at 837).

I explicitly stated in the July 10th Order Concerning OSC Hearing and at the start of the hearing that the *only* potential form of contempt being considered was civil contempt. Criminal contempt was not contemplated. Dkt. No. 468 at 1. In the context of civil contempt, adverse inferences are appropriately drawn in light of refusals to testify or rebut evidence, *even* where the refusal is made on Fifth Amendment grounds. *See, e.g.*, *Aradia Women's Health Ctr. v. Operation Rescue*, 929 F.2d 530, 532 (9th Cir. 1991) (adverse inferences permissible to draw from invocation of Fifth Amendment privilege).

Moreover, the vast majority of questions I posed did not call for disclosure of attorney-client privileged information or attorney work-product, such as when someone learned about a certain action, who had access to CMP's YouTube channel, when the SCA Media Page went live, or what steps they took to comply with my May 25th Order. Nonetheless, Daleiden, Cooley, and Ferreira each refused to answer any part of my questions based on the attorney-client privilege.[10] Even if there was a good-faith basis to assert the attorney-client privilege to refuse to answer the questions (and I do not find that there was), defendants and respondents could have chosen to make a limited waiver of the privilege. They could have asked to give their answers to me *ex parte* with an order limiting the waiver to the questions posed for purposes of determining whether they should be held in civil contempt. They did not seek to do this either. Instead, they chose to stonewall my effort to discover their version of the truth.

NAF's clear and convincing showing remains unrebutted. Given that showing it is not necessary to draw "adverse" inferences against defendants and respondents. To be sure, the reasonable inferences supported by NAF's evidence only strengthen my conclusions. As discussed below, the direct and circumstantial evidence lead to the conclusion that CMP, Daleiden, Cooley and Ferreira each knowingly violated the PI.

## II. DALEIDEN AND CMP

NAF's evidence shows that CMP produced the "new" Preview video and asked supporters

---

[10] As noted above, after the OSC re Contempt Hearing, Cooley and Ferreira submitted declarations that, as confirmed by their forensic expert, the PI materials had been taken down by 4:45 p.m. Dkt. Nos. 477, 478. Those declarations, however, do not answer my questions concerning the steps Cooley and Ferreira took in response to my May 25 Order.

to share it and get more information from CMP's website. According to NAF, the Preview video "has all the hallmarks" of the prior videos that Daleiden admittedly produced and took credit for on behalf of CMP, videos whose release led to the filing of this action. It is undisputed that the Preview video was uploaded to CMP's YouTube channel, as were the 14 videos containing *excerpts* of PI recordings labelled by each Doe's name as the "Accusers" playlist, as were the 337 videos (334 of which contained recordings covered by the PI) under the "Defense Filing" playlist. It is significant that both the Preview video and the Accusers playlist videos were not just raw footage but were *edited* and cut down from over 500 hours of recordings from the NAF Annual Meetings. The Accusers playlist is comprised of excerpts of recordings showing and identifying the Does in the Criminal Complaint. The Preview video shows seven of those Does and contains other excerpts of PI recordings; excerpts I viewed and addressed in the Preliminary Injunction Order that were characterized by NAF as misleadingly edited and taken out of context and characterized by defendants as showing criminal acts or extreme callousness by NAF members. The conclusion I draw from the direct and circumstantial evidence, from Daleiden's admitted role with CMP, and from his failure to rebut NAF's allegations, is that Daleiden was the one who created the Preview video and Accusers playlist, uploaded them onto CMP's YouTube channel, and forwarded those links to his criminal counsel for their use on his behalf.

Daleiden's civil case defense counsel has described Daleiden as being the person with intimate knowledge of the 500 hours of recordings. That characterization was made in support of defendants' objection to NAF's *prior* request for me to order Daleiden and his civil counsel to relinquish control over the PI materials. According to civil defense counsel at that time, counsel needed Daleiden to retain control over the recordings so that he could parse through the materials to help them defend this case.

All of the relevant videos – both edited/excerpted and the raw footage – were uploaded to CMP's YouTube channel.[11] At the time of the materials were uploaded to CMP's YouTube

---

[11] Daleiden has declared under penalty of perjury that he is the founder and "Director" of CMP. *See* Dkt. Nos. 268-2 ¶ 2. Daleiden's counsel has also sought relief on the theory that CMP is not a separate entity from Daleiden, in other words that Daleiden and CMP are one and the same. *See, e.g.*, Dkt. No. 103 at 1-3; Dkt. No. 118 at 1-3.

channel between May 3, 2017 and May 24, 2017, Daleiden had possession of the PI materials. There is no evidence, except for the limited production of just over 20 video excerpts provided by the DAG to SCA on May 16, 2017, that the SCA attorneys had access to those materials prior to May 24, 2017, much less the intimate knowledge of where in the over 500 hours of recordings excerpts showing the Does could be found. Similarly, there is no evidence that the 337 videos comprising the Defense Filings playlist (including 144 hours of raw footage from the NAF Annual Meetings) was in the criminal defense counsel's possession before they were uploaded to CMP's YouTube channel.[12]

Daleiden and CMP admit the "inescapable inference" from the facts is:

> that someone with access to CMP's YouTube channel posted enjoined videos to a private—i.e., accessible by direct link only— playlist on YouTube and *then provided that link to Daleiden's criminal counsel* with the apparent expectation that the videos would be used as evidence in Daleiden's criminal case. *Plaintiffs have provided no evidence suggesting that Daleiden or CMP had any expectation that the videos would be used in any other way than that single one.*

Daleiden/CMP OSC Resp. [Dkt. No. 433-2] at 12 (emphasis added). According to Daleiden and CMP, criminal defense counsel played no role in the creation or uploading of the videos and recordings to CMP's YouTube channel.[13] In light of Daleiden and CMP's deafening silence as to their role, there is clear and convincing evidence sufficient to hold them in contempt.[14]

In addition to their self-created "no evidence" argument, Daleiden and CMP raise a

---

[12] In their brief, Cooley and Ferreira assert that at the time Presiding Judge Jackson ordered the DAG to make all seized evidence available to SCA for purposes of privilege review, "Defense counsel already possessed the videos for purposes of investigating the case against Mr. Daleiden." SCA OSC Resp. at 3. There is, however, no declaration or other evidence supporting that assertion.

[13] CMP and Daleiden also admit they knew SCA planned to "use," and therefore disclose and publish, the videos.

[14] There is some additional evidence that CMP likely acting through Daleiden directly disclosed the Preview video, separate and apart from SCA's disclosure. For example, the 12:01 am EST May 25, 2017 publication of the Preview video on the National Review's website, where the National Review attributed the shocking new video to CMP. There is no mention of SCA in connection with the Preview video. Foran Decl., Ex. J; Foran Second Supp. Decl., Ex. B.

United States District Court
Northern District of California

number of other arguments that they cannot or should not be held in civil contempt. First, they argue that there is insufficient evidence that the disclosures of the PI materials caused NAF harm resulting from Daleiden's and CMP's alleged role in the disclosures because of the alleged lack of evidence of any harm flowing from the Demurrer and RJN link to the Defense Filing playlist. Dalieden/CMP Resp. OSC at 6-7. Defendants are wrong. *See* Foran Decl. ¶ 31 (noting efforts NAF and its counsel took to take down all 150 hours of materials from all three YouTube links uploaded to Google by one particular user).[15]

Second, Daleiden and CMP argue that they bear no responsibility for the ultimate disclosures on SCA's Media Page. As an initial matter, this argument wholly ignores that the first "disclosure" (if not publication) was the *uploading* of PI materials to YouTube during the May 2017 time period. The PI prevented CMP and Daleiden from "publishing or otherwise disclosing to any third-party" any of the materials covered by the PI. Dkt. No. 354 at 42. Daleiden and CMP do not defend why the uploading of materials to a server operated and controlled by a third-party is not a disclosure to a third-party. Even if the links were "unlisted" and "private" so that they could not be seen (yet) by members of the public, those videos were still disclosed to a third-party, namely YouTube and its employees. The whole purpose of YouTube is to facilitate video-sharing. Marking a video as "private" does not mean it cannot be shared, but only that it will not be searchable or viewable absent having received a link to it. *See, e.g., Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (discussing YouTube.com's default public setting and how videos marked as "private" are nonetheless sharable). The only reasonable conclusion to draw from uploading materials to YouTube is that they were uploaded for the purpose of facilitating the publishing and distribution of those videos, which is what in fact occurred.[16]

---

[15] Defendants argue that if there was a violation of the PI, NAF can only be compensated for harms flowing from the first disclosure, *i.e.*, defense counsel's choice to make public the Defense Filing link in the Demurrer and RJN, and that subsequent or cumulative disclosures cannot have separately harmed NAF. Defendants' OSC Resp. at 6-7. That argument, if accepted, would give contemnors a free pass to continue their contempt and provide no disincentive to continued or future violation of court orders.

[16] At oral argument, counsel for Daleiden and CMP posited that the videos could have been

Beyond this unaddressed point, Cooley and Ferreira *admit* that they posted the PI materials and links to CMP's YouTube playlists on their client's behalf. SCA OSC Resp. at 13. While Daleiden attempts to walk away from the conduct of his criminal defense attorneys, he cannot. As the Supreme Court has explained, "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962). Had Daleiden come forward with sworn testimony that he did not know, intend, or approve his attorneys to publicly disclose these materials, additional analysis might be required. [17] But given Daleiden's silence, no additional analysis is required.[18]

Daleiden attempts to escape liability for anything SCA did with the YouTube links because he acted in good faith and believed that this Court's PI could not possibly prohibit the use of the videos in his criminal proceeding. CMP/Daleiden Resp. OSC at 6-7. As an initial matter, generalized "good faith" isn't a defense to civil contempt based on violation of a court order, absent a showing that the court's order was ambiguous or vague. *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014). There is no argument that

---

uploaded to YouTube for the limited purpose of "sharing" them with criminal defense counsel, an action that in their view would not have violated the PI. That potential explanation is not supported by a declaration or by any reasonable inference from the evidence that is in the record. Neither the attorney-client privilege nor work product doctrine would have been necessary to shield such an explanation.

[17] Daleiden's own conduct with uploading the materials to CMP's YouTube channel would still be at issue. This is not "a situation where the lawyer alone commits misconduct and the court visits the lawyer's sins on the innocent client when awarding sanctions." Douglas R. Richmond, *Sanctioning Clients for Lawyers' Misconduct-Problems of Agency and Equity*, 2012 Mich. St. L. Rev. 835, 837 (2012).

[18] During oral argument, defendants' counsel also relied on *Lal v. California*, 610 F.3d 518 (9th Cir. 2010), to argue that Daleiden and CMP should not be held liable for SCA's "gross negligence" if I determine that Cooley and Ferreira violated the PI. As discussed, I find Daleiden and CMP in contempt for *their own conduct*, separate and apart from the conduct of Cooley and Ferreira. In addition, *Lal* is inapposite. It addresses whether attorney gross negligence constitutes an "extraordinary circumstance" for relief under Fed. R. Civ. Proc. 60(b). *Id.* at 524-527.

16

the short, simple commands of the Preliminary Injunction are vague or ambiguous.  Even if Daleiden may have held a genuine a belief that the PI did not reach use of the videos in support of his criminal defense (and there is no evidence what Daleiden's alleged good faith belief was because Daleiden refused to answer any questions at the OSC re Contempt Hearing and failed to provide a declaration to support the existence of his supposed good faith belief), that does not provide him cover.  *Id*. at 943 (rejecting "Defendants' self-serving interpretation of their obligations under our injunction" as an unwarranted invitation to "experimentation with disobedience").

Moreover, as will be described in more detail below, the vast majority of the videos uploaded to YouTube and published on websites, Twitter, and eventually on the SCA Media Page *had little or nothing to do* with the criminal court filings and arguments made in Superior Court. The Criminal Complaint is limited to recordings made in California, but many hours of recordings disclosed by Daleiden, CMP, Cooley and Ferreira were taken at NAF's Baltimore meeting and are irrelevant to the criminal proceedings.  Moreover, while the Defense Filing list was submitted to the Superior Court in support of the Demurrer,[19] the Preview video and the Accusers playlist were not.

Finally, Daleiden and CMP argue that NAF has not established its entitlement to damages for the contempt.  I disagree.  The declarations of Fowler and Gannon from NAF and the Foran Declarations show exactly how NAF was damaged; by having to expend money, staff time, and attorney time (a) to identify and get websites to take down the PI materials, (b) to address their members' security needs caused by the identification of those members in the disclosed PI materials and the threats those members received following the May 25 disclosures, (c) to monitor websites for PI materials and threats against the members identified in the disclosed PI materials, and (d) by their attorneys' legal efforts to secure take downs and sanctions.  The harms have been identified and sufficiently established.  The reasonable amount of monetary sanctions necessary to

---

[19] The Defense Filing list should have been filed under seal, absent an order of the Superior Court. As noted above, the Superior Court denied Daleiden's request that it take judicial notice of the videos and removed them from the docket. *See supra.*

compensate NAF for those harms will be "proved up" as described below.

### III.    COOLEY AND FERREIRA

The facts showing express and repeated violations of the PI are even stronger with respect to Cooley and Ferreira.  The SCA Media Page expressly acknowledged the existence of the PI and that the PI prevented Daleiden from "publishing or otherwise disclosing to any third-party" any recordings covered by the PI.[20]

Cooley and Ferreira argue, instead, that they reasonably believed the PI did not bind *them*, even though they admit that at all times they were acting on their client's behalf.  SCA OSC Resp. at 4.  Cooley and Ferreira admit that all of their acts were in furtherance of representing their client.   But if Daleiden could not violate the PI, they could not do so on his behalf.  Rule 65(d) specifically binds a party's "officers, agents, servants, employees, and attorneys" to an injunction binding the party.  Fed. R. Civ. Proc. 65(d)(2(B).

Cooley and Ferreira's arguments that they had a good faith belief the injunction did not cover them fails for the same reasons that argument fails for Daleiden.[21]  There is nothing ambiguous about the scope of or language in the PI.  That the PI does not "enjoin in the future criminal defense counsel" from using the PI materials "should criminal charges be brought in a separate sovereign" is irrelevant.  SCA OSC Resp. at 10.  The PI expressly covered Daleiden, and Cooley and Ferreira were at all times working as his agents.  If there was any doubt, prudent counsel could have sought guidance from me or from the Superior Court.  Cooley and Ferreira did not.[22]  They decided to publicly disclose the materials with full knowledge of the existence of the

---

[20] As noted above, Cooley and Ferreira provide no evidence explaining how they received the information at issue – the Preview video link to embed on their site, the YouTube link to the Accuser playlist containing excerpts from PI recordings showing the Does named in the Criminal Complaint, or the YouTube Defense Filings playlist linking to the 144 hours of raw footage.  As discussed above and arguably admitted by CMP and Daleiden, the only reasonable conclusion is that all of the YouTube materials were edited, uploaded to YouTube, and delivered via link to Cooley and Ferreira by Daleiden.

[21] As with Daleiden, neither Cooley nor Ferreira submit a declaration attesting under penalty of perjury as to what their belief actually was with respect to the PI.  There is simply no evidence at all on this topic.

[22] In contrast, the civil case defense counsel notified me that a defendant received a grand jury subpoena from a local law enforcement agency and that they expected the testimony and responses

1   PI binding their client and them.

2       Cooley and Ferreira also argue that the PI could not prevent them from publicly disclosing

3   the PI materials because they did so in order to mount a full and vigorous criminal defense for

4   Daleiden.  In their OSC Response, Cooley and Ferreira do not even attempt to show how the

5   embedding of the Preview video on their website and providing the link to the Accusers YouTube

6   playlist was done in connection with contemplated or actual legal proceedings in Superior Court.

7   Instead, they focus on their use of the Defense Filing YouTube playlist in their Demurrer and RJN,

8   arguing that it was important to submit that to the Superior Court to "defend their client's right to

9   due process as well as demonstrate to the superior court their position that the videos themselves

10  disproved there was a violation of any alleged victim's right to privacy."  SCA OSC Resp. at 4.

11  They fail to acknowledge that submission of the Defense Filing YouTube link was unnecessary

12  when they also filed a thumb drive containing the same videos.  Nor do they address why, if using

13  the link in the Demurrer itself and the RJN was necessary, they did not file those portions of the

14  documents under seal.  They fail to address that if their purpose was to defend their client's right

15  to due process – presumably access to the Does' names and specific identification of the

16  recordings charged by the AG (the arguments that were made in the Demurrer) – and to show that

17  there was no privacy violation, *why* did they include in that link recordings made at NAF's

18  Baltimore conference (which were not charged in the Criminal Complaint)?  Why did they include

19  all 144 hours when the vast majority of those hours were irrelevant to the issues raised?

20      Absent explanation from Cooley and Ferreira, the only conclusion I can draw from the

21  uncontroverted facts is that Cooley and Ferreira's use of the Defense Filing link was a wholly

22  gratuitous effort to give Cooley and Ferreira a fig leaf to cover their plan to violate the PI by

23  making the raw footage and the other videos available to the public.  Despite the lip service

24  argument that disclosure of the raw footage was necessary to show the Court and the public why

25  the Demurrer should be granted, Cooley and Ferreira admit that their real goal was to score a win

26

27  called for might touch upon or disclose PI information.  Dkt. No. 323-3.  Counsel notified me in
    advance of the appearance and sought guidance to the extent I had concerns about that intended
28  testimony.  No response from me was necessary, but the civil case defense counsel adopted the
    appropriate approach, seeking guidance in advance.

in the court of public opinion by releasing the PI materials.  They admit that the decision to post the videos on their website "was in the first instance a way criminal defense counsel through which they could get their side of the story out."  SCA OSC Resp. at 5.  Relying on the fact that *they* had first failed to file under seal the YouTube link in the Demurrer and RJN, and that the AG had not objected to the YouTube link in the Demurrer and RJN, Cooley and Ferreira argue that they believed they were then free to include that link on their website as well as the edited and excerpted Preview video and Accuser playlist "in response to the Attorney General's press release" on the criminal case.  *Id*.  There is no rational or legal basis for such a belief.

Cooley and Ferreira also complain of a double standard, arguing that because the California Attorney General is not bound by the Preliminary Injunction and is free to use the PI materials, they should be free to do so as well.  SCA OSC Resp. at 11.  However, what law enforcement agencies do with evidence secured through legally obtained search warrants or pursuant to criminal subpoenas is not something I have interfered with or intend to interfere with. *See* Dkt. No. 323-3.[23]  Cooley and Ferreira are not on equal footing with state or local law enforcement agencies.

I also reject Cooley and Ferreira's argument that complying with the Preliminary Injunction would hamper their ability to defend Daleiden.  They have already made a successful (in part) Demurrer.  Foran Reply Decl., Ex. C (Transcript of Superior Court proceedings).[24]  As the criminal case progresses, I will not interfere with Judge Hite's determinations concerning what information about the Does or what portion of the relevant recordings should become publicly accessible or disclosed in connection with the criminal pre-trial and trial proceedings.  Those determinations are Judge Hite's, not Cooley's, Ferreira's or Daleiden's.[25]

---

[23] Relatedly, a number of subpoenas were issued by state attorneys generals for the PI materials. NAF and defendants negotiated agreements to *defer* responses or legal challenges to those subpoenas pending the appeal of the Preliminary Injunction Order.  I have taken steps to ensure that those attorneys generals *supported* those deferments.  *See* Dkt. Nos. 379, 380.

[24] In so ruling, Judge Hite declined to take judicial notice of the videos and ordered the flash drive removed from the court's docket.  *Id*. at 5:27 – 6:5.

[25] There is no support for defendants' or respondents' assumption that, given Daleiden's public trial rights under the Sixth Amendment, all of the PI materials they disclosed in contravention of

Defendants and respondents' apparent request for *Younger* abstention with respect to the PI has no merit. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court explained how "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38 (1984). Abstention is not warranted here because *significant* federal proceedings have already occurred, and they occurred well before the state court action was initiated. *Id*.[26] Instead, because "federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them," this case will proceed (pending exhaustion of the Supreme Court *certiorari* process by defendants if they choose to seek it) and the PI remains in place and in effect. *Id*. Finally, even if *Younger* abstention was theoretically feasible, it is not necessary given the lack of any true conflict between NAF's interests in this case and Daleiden's ability defend himself in state court.

### CONCLUSION AND REMEDIES

Based on the foregoing, defendants Center for Medical Progress and David Daleiden, and Daleiden's criminal defense attorneys Steve Cooley and Brantford J. Ferreira, as the agents of Daleiden, ARE FOUND IN CIVIL CONTEMPT for violating the clear mandate of the Preliminary Injunction Order, due to the following conduct each of them facilitated, conducted, or directed:

(i) the uploading and hosting of the Preview video containing recordings covered by the PI Order on CMP's YouTube channel; the posting of CMP's Preview video on the SCA website; and the posting/sharing of CMP's Preview video through links to its location on CMP's YouTube channel;

(ii) the uploading and hosting excerpts of video materials covered by the PI Order on

---

the PI would become public through the trial. For example, they ignore that a substantial amount of the disclosed PI materials were from the Baltimore NAF meeting and there are no criminal charges related to those recordings. Judge Hite will determine what is relevant, admissible, and accessible to the public in the criminal proceedings.

[26] The posture of this case is the opposite of the posture in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), relied on by respondents. In that case, Texaco filed a federal action *after* a state court jury verdict, to prevent that verdict from becoming an enforceable judgment. *Id*. at 5-6.

CMP's YouTube channel, subsequently collected as the "Superior Court Defense Filing - Accusers" playlist; posting on SCA's website the link to the Accusers playlist hosted on CMP's YouTube channel; and

(iii) the uploading and hosting of the over 144 hours of PI Materials to CMP's YouTube channel collected as the Defense Filing playlist; the posting on SCA's website of the Demurrer and related Request for Judicial Notice, making the link to the Defense Filing playlist hosted on CMP's YouTube channel accessible to the public; and the failure to file Footnote 1 and Ex. 1 to RJN under seal in the first instance.

In order to secure these parties' and respondents' current and future compliance with the Preliminary Injunction Order and to compensate NAF for expenses it has incurred that are directly the result of the violation of the Court's Preliminary Injunction Order, CMP, Daleiden, Cooley, and Ferreira are held jointly and severally liable for:

(i) NAF's security costs, incurred from May 25, 2017 as a result of the violations of the Preliminary Injunction Order. NAF's Security Costs are calculated, based on the Fowler declarations as:

(a) $1,568.26, for the security assessment of the home and office of one of the individuals named and featured in the Preview video. Fowler Decl. ¶3.

(b) $11,411.92, for security costs incurred by a NAF-member facility to protect a physician identified in the Preview video. Fowler Supp. Decl. ¶ 5 & Ex. C.

(ii) NAF's personnel time, incurred as a result of the violations of the Preliminary Injunction Order, because NAF was required to divert in-house staff from other work and provide additional assignments to outside consultants. NAF's personnel costs are calculated, based on the Fowler Declarations, as:

(a) $26,000 for in-house staff time through June 30, 2017. Fowler Supp. Decl. ¶ 4.

(b) $1,282.50 for outside consultant time. *Id*.

(iii) NAF's attorneys' fees incurred as a result of the violations of the Preliminary Injunction, including counsel's efforts to get websites to "take down" the PI materials and the time reasonably incurred in communicating with civil and criminal defense counsel and

1   moving for contempt sanctions. The amount of attorneys' fees incurred by NAF's counsel,

2   as of June 1, 2017, is $96,610.50. Foran Decl. [Dkt. No. 462-5] ¶ 37.

3       By July 28, 2017, NAF's counsel shall lodge *in camera* with chambers their detailed and

4   contemporaneous billing records substantiating their attorneys' fees request. At the same time,

5   NAF shall e-file a redacted copy of the same, redacting only information protected by the

6   attorney-client or attorney work product doctrines. By August 4, 2017, if they wish, counsel for

7   CMP, Daleiden, Cooley, and Ferreira may file a joint objection, not exceeding 10 pages,

8   challenging specific entries or the reasonableness of the time spent by NAF's counsel.

9       Similarly, by July 28, 2017, NAF shall lodge *in camera* with chambers a detailed

10  breakdown of the $26,000 in time NAF has incurred by diverting in-house staff to respond to the

11  disclosures. That breakdown shall list the title of each staff member whose time is sought, the

12  hourly rate sought for staff member's time, the hours spent by each staff member, and a general

13  description of the tasks completed by each staff member. At the same time, NAF shall e-file a

14  redacted version (if redaction is necessary) of the same. By August 4, 2017, if they wish, counsel

15  for CMP, Daleiden, Cooley, and Ferreira may file a joint objection, not exceeding 10 pages,

16  challenging specific entries or the reasonableness of the time spent by NAF's in-house staff.

17      I will take the billing records and any objections under submission, and issue a final order

18  quantifying the total amount of sanctions imposed for the civil contempt.

19      In addition to these monetary sanctions, as announced at the hearing on July 11, 2017, I

20  ORDER the following:

21      (i) On or before Friday July 14, 2017, CMP, Daleiden, Cooley, and Ferreira must confirm

22          under oath that they have "taken down" or otherwise removed any materials covered by the

23          PI Order from any third-party hosting service (*e.g.*, YouTube) and removed any materials

24          covered by the PI Order from websites under their control[27]; and

25      (ii) On or before Friday July 14, 2017, CMP and Daleiden must turn over to counsel all

26

27  ─────────────────────
    [27] Pursuant to the Minute Order following the July 11, 2017 hearing, on July 13, 2017 and on July

28  14, 2017, Daleiden, Cooley and Ferreira filed these confirmations under oath. Dkt. Nos. 476, 477, 478.

materials covered by the PI Order and must not retain control over any of that material, absent further Order of this Court or the Superior Court handling the criminal matter. Absent an order from this Court or the Superior Court providing Daleiden with greater access to that material, Daleiden may only access the PI material onsite at the offices of SCA or his civil defense counsel.

In imposing these sanctions for civil contempt, I have considered the character and magnitude of "the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). If there are any further violations of the PI, I will move swiftly to ensure compliance with the PI. If that occurs, I will consider further and more significant civil sanctions, as well as criminal contempt sanctions.

**IT IS SO ORDERED.**

Dated: July 17, 2017

William H. Orrick
United States District Judge