UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>Defendants. | Case No. 15-cv-03522-WHO<br><br>**ORDER SETTING AMOUNT OF CIVIL CONTEMPT SANCTIONS** |

On July 17, 2017, I issued an order finding defendants Center for Medical Progress (CMP) and David Daleiden and Daleiden's criminal counsel, Steve Cooley and Brentford J. Ferreria (respondents), in contempt for willfully violating the clear commands of the Preliminary Injunction Order (PI), Dkt. No. 354, by publishing and otherwise disclosing to third-parties recordings covered by the PI. Dkt. No. 482 at 21 (Contempt Order). In order to secure those parties' and respondents' current and future compliance with the Preliminary Injunction Order and to compensate NAF for expenses incurred as a result of the violation of my Preliminary Injunction Order, I held CMP, Daleiden, Cooley, and Ferreira jointly and severally liable for: (i) NAF's security and personnel costs incurred as a result of the violations of the PI; and (ii) attorneys' fees incurred as a result of the violations of the Preliminary Injunction, including counsel's efforts to get websites to "take down" the PI materials and the time reasonably incurred in communicating with civil and criminal defense counsel and moving for contempt sanctions. *Id*. at 22-23. As directed in the Contempt Order, NAF has since submitted detailed records regarding its security costs and attorneys' fees and costs, and defendants/respondents have objected to those requests on both general and specific grounds. Dkt. Nos. 484, 485, 487, 488, 489, 490.

In this Contempt proceeding, my ultimate purpose is to consider the character and magnitude of "the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). For the reasons discussed below, I set the amount of civil contempt sanctions to be paid jointly and severally by CMP, Daleiden, Cooley, and Ferreira at $195,359.04, an amount significantly less than sought by NAF but an amount sufficient, I hope, to insure future compliance.[1]

## I. NAF'S COSTS

### A. In general

As an initial matter, defendants object to the costs NAF seeks to recover, arguing that the costs were not "reasonably" incurred and are not recoverable under NAF's breach of contract claim (the only claim NAF asserted in support of the PI). Defendants' Objections ("Objs.") [Dkt. No. 487-3] at 7-14.[2] Similar arguments were raised in defendants' response to the OSC and rejected when I issued the Contempt Order. *See* Dkt. No. 434 at 9-13. Briefly, because the purpose of the civil contempt sanctions is to compensate NAF for the expenses incurred and to encourage defendants and respondents to abide by the PI going forward, the NAF costs that I include in the civil contempt sanctions award do not have to be damages that would flow from the underlying breach of contract claim. As to "reasonably incurred," I have already considered this in connection with the Contempt Order and conclude that, in general, the costs NAF seeks to recover were reasonably incurred in response to the violations of the PI Order.

### B. Specific Costs

According to the Declaration of Melissa Fowler, NAF seeks to recover four categories of costs. First, security costs paid to outside vendors amounted to $28,176.62, incurred to: (i) uncover and monitor threats made in response to the Preview video and release of PI materials; (ii) complete related research; and (iii) provide personal security services at a NAF-member clinic to a

---

[1] The administrative motions to seal, Dkt. Nos. 485, 487, are GRANTED for good cause shown.

[2] Respondents Cooley and Ferreira join defendants' objections. Dkt. No. 490.

2

physician featured in the Preview video. Fowler Decl. ¶¶ 3, 4, 6 & Exs. A, C-1, C-2. Second, NAF incurred travel costs of $397.40 to send security staff to conduct an on-site assessment. *Id*. ¶ 5, Ex. B. Third, it absorbed personnel costs in the amount of $29,417.96 for staff time diverted from normal duties to address and respond to the disclosures of PI materials. Fourth, it also absorbed "other costs" in the amount of $6,327.56 for staff travel and meal expenses.

As to the monitoring and research costs ($5,150 and $1,282.50), I conclude that those costs were reasonably incurred and necessarily related to the disclosure of the PI materials. Similarly, the travel expenses ($397.40) were reasonably incurred and necessarily related to the disclosure of PI materials. As to the personnel costs ($29,417.96), I find that the monitoring done and additional security issues addressed by staff identified in the Fowler Declaration are compensable and were reasonably incurred and necessarily related to the disclosure of the PI materials. The attendance at the Contempt hearing by three NAF staff members is also reasonable and compensable, as in-person testimony may have been (although in the end was not) necessary. The $6,327.56 in "other costs" including travel time for the three staff to attend the Contempt hearing are reasonable and were necessarily incurred.

However, I will not include the costs incurred by a NAF-member clinic for security ($21,744.12) as part of the civil contempt sanctions award. In the Contempt Order, I limited the sanctions to "NAF's security costs."[3]

Therefore, NAF's costs in the amount of $42,575.42 are included in the civil contempt sanctions award.

## II. ATTORNEY'S FEES AND COSTS

NAF seeks compensation for $280,482.00 in attorney time and $7,297.95 in costs incurred as a result of the violation of the PI. Dkt. No. 484 at 5.

---

[3] I am not reaching any conclusion that a NAF-member clinic is or is not entitled to damages flowing from the underlying action. In addition to the limitation in the Contempt Order cited above, my primary task here is not to determine whether the NAF-member security costs were proximately caused by the actions of respondents, but to weigh the character and magnitude of threatened continued harm with the probable effectiveness of the sanction in order to secure compliance.

3

### A. Hourly Rate

Defendants object to the hourly rates requested by NAF's counsel, arguing that the requested rates have not been adequately supported by declaration or citation to cases approving those rates for similarly situated counsel. Defendants suggest, instead, that NAF's counsel should be compensated at the *Laffey* matrix rates, adjusted upwards by eight percent to account for San Francisco's higher costs. Objs. at 2.[4]

As an initial matter, neither side addresses whether case law applicable to statutory fee awards applies in the context of setting sanctions for violation of a Court order. I will assume that case law applies. In that context, "[t]he burden is on the fee applicant to produce evidence 'that the requested rates are in line with those prevailing in the community'" and "[i]n general, '[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.'" *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) and *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

NAF's counsel have not justified their requested rates in reference to fee awards in other cases or with affidavits demonstrating that the requested rates are reasonable for similarly situated attorneys in similar practice areas. *Hiken v. Dep't of Def.*, 836 F.3d at 1044 (the "reasonable rate should generally be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." (internal quotation omitted)). And at the same time, I have serious concerns about using rates based on the *Laffey* matrix. As I and other courts in this District have recognized, "[a]bsent some showing that the rates stated in the matrix are in line with those prevailing in this community . . . the matrix is not persuasive evidence of the reasonableness of its requested rates." *Public.Resource.org v. United States Internal Revenue Serv.*, No. 13-CV-02789-WHO, 2015 WL 9987018, at *6 (N.D. Cal. Nov. 20, 2015). Defendants have made no showing that their suggested rates (the matrix plus 8%) are in

---

[4] Defendants also object to the characterization of the years of counsels' practice, instead relying on the NAF attorneys' dates of bar admission to set their "years" of practice. Dkt. No. 487-3 at 3.

4

line with the rates prevailing in this community for the legal work at issue.

Given that I lack any other evidentiary basis to set the rates, and that using higher rates would cause the sanctions to exceed the amount probably necessary to bring about compliance with the PI Order going forward, under these unique circumstances I will adopt the rates for counsel suggested by defendants; matrix plus 8%. I am **not** finding that the *Laffey* matrix rates are in line with what experienced attorneys in similar practices in the San Francisco area charge or have been awarded in statutory fee cases, and I recognize that reasonable attorney rates for similarly situated counsel are undoubtedly higher than those based off of the matrix. The rates awarded here will not serve as any precedent that I will use for fees awarded in the future in this case or any other. The two paralegals shall be compensated at a rate of $210/hour, a rate slightly higher than I have approved for experienced paralegals in the past. *See, e.g., James v. AT&T West Disability Benefits Program*, Case No. 12-6318, December 22, 2014 Order (awarding $195/hour). The rates approved are as follows:

| Attorney/Paralegal | Requested Rate | Approved Rate |
|---|---|---|
| Derek Foran | $910/Partner/April 2003 admission | $503 |
| Marc Hearron | $885/Partner/Nov. 2015 admission | $503 |
| Maggie Mayo | $785/9th yr/Dec. 2008 admission | $427 |
| Christopher L. Robinson | $785/9th yr/Dec. 2008 admission | $427 |
| Nicholas A. Roethlisberger | $695/6th yr/Dec. 2011 admission | $359 |
| Lena Hughes | $650/5th yr/2013 admission | $359 |
| Alexandra E.S. Laks | $600/4th yr/Dec. 2013 admission | $348 |
| Randy D. Zack | $540/3rd yr/Dec, 2014 admission | $348 |
| Tom Beyer | $360/Sr Paralegal | $210 |
| Priscilla R. Fernandez | $300/Paralegal | $210 |

### B. Reasonable Hours

Defendants also complain about the reasonableness of the hours expended by NAF's

counsel, arguing that hours should be cut for various reasons.[5]

### 1. Duplicative time.

Defendants argue that over 85 hours should be cut because the time billed was duplicative and unnecessary.[6] As an example, defendants object to NAF seeking compensation for the time spent by four attorneys to prepare for and attend the July 11, 2017 Contempt hearing. Objs. at 5. I have reviewed the hours challenged as duplicative and conclude that the majority of the contested hours were not duplicative or unnecessary. As the time entries show, while a number of attorneys worked on the pleadings, many handled/researched different topics or had different backgrounds (appellate specialty, sixth amendment focus, etc.).

However, I agree in part with defendants that two of the attorneys' time spent preparing for an attending the contempt hearing was unnecessary (Laks and Robinson), but leave the time of the two other attorneys (Foran, who argued and Roethlisberger, who drafted significant parts of the relevant pleadings). Therefore, 3.6 hours of Laks' time should be deducted and 2.5 hours of Robinson's time should be deducted.

### 2. Time spent "conferring"

Defendants also challenge time counsel spent conferring and seek to cut 14 hours for those time entries. However, the majority of the challenged entries are for time counsel spent conferring with their client, a necessary part of their representation. The remainder of the challenged time entries are of limited time spent by the attorneys directing the research and briefing that needed to be completed. No time will be reduced because there was no unnecessary or excessive conferring.

### 3. Time spent on clerical or paralegal tasks

Defendants challenge approximately 20 hours of time billed by attorneys that they contend should be charged at a paralegal rate given the clerical nature of the tasks. I have reviewed the

---

[5] According to the Declaration of Derek Foran, Foran made various reductions in the hours incurred by his firm to account for any duplication and significantly reduced his own time. Foran Decl. ¶¶ 13, 15. Foran also did not include the time incurred by more senior attorneys James J. Brosnahan and Linda Shostak. *Id.* ¶ 16. Those reductions eliminated 273 hours and $160,200 (as calculated using plaintiffs' proposed rates) in attorney time. *Id.* ¶ 17.

[6] Some of the allegedly duplicative hours (coded blue) are also challenged as paralegal work (coded pink) or work on the challenged reply brief or request for attorneys' fees (coded yellow).

challenged entries and while it is not very clear, the majority of the challenged time was for attorney Roethlisberger's "review, revise, and file" or "review, revise, and supervise filing" entries. The vast majority of that time, presumably, was spent on reviewing and revising, and not filing or supervising filing. However, I will reduce the Roethlisberger hours by 2 hours to account for any paralegal work.[7]

### 4. Time spent on preparing the application for attorney's fees and costs

Defendants challenge the time NAF's counsel spent preparing its and NAF's declarations in support of fees and costs, arguing that if I do not grant NAF's full request (of $280,482.00), then somehow NAF should not be compensated at all for the time spent seeking fees. Objs. at 4. The case law relied on by defendants does not support their argument. *Id.*[8] This time is reasonable, although as discussed below, it will be excluded from the sanctions amount for other reasons.

### 5. Time spent on motion to disqualify that was inadvertently included

Defendants challenge time that was apparently spent on the motion to disqualify heard by Judge Donato. NAF meant to exclude all of this time, but apparently failed to exclude 0.5 hours billed by Beyer on June 12, 2017. This time is excluded.

### 6. Time spent on unauthorized "reply"

Finally, defendants challenge the time NAF's counsel spent on the reply brief, arguing that it was not originally allowed by the Court (because no time frame for filing a reply was provided in the initial OSC). However, I granted NAF's request to file the reply brief. Dkt. No. 468. This time is compensable.

In sum, other than the few discrete examples identified above, the time spent is reasonable.

---

[7] The other challenged entry is by attorney Laks who billed on 5/30/17 for reviewing and adding exhibits and citations in a motion. From the context of the entry, I find that this work is compensable attorney time.

[8] For example in *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990), the Supreme Court recognized that "if the Government's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate." But here there has been no time expended "defending a higher rate" because no reply on the amount of fees was allowed.

However, the purpose of the imposition of civil contempt sanctions is both to compensate NAF as a result of defendants' and respondents' contempt and to encourage defendants and respondents to adhere to the PI going forward. As part of that analysis, I consider the character and magnitude of "the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). In line with that consideration, I will not include as sanctions the amount of time NAF's counsel spent compiling and submitting the fee declarations. While the time spent on the fee declarations was reasonable, I do not find that including this additional time in the amount of sanctions awarded will serve any further deterrent purpose. Therefore, none of the 15.90 hours spent on the fees application will be included.

The sum of attorneys' fees reasonably incurred by NAF in response to the violations of the PI Order and included as part of the civil sanctions award is $148,967.90.

### C. Costs

Defendants object to NAF's counsel's request for $7,297.95 in costs, arguing first that there is no explanation for the line item in the cost bill for $3,482.23 in costs. Objs. at 7; Foran Decl., Ex. 2 [ECF Dkt. No. 484-2 pg. 5]. There is no explanation for the $3,482.23 charge, and it appears to be a subtotal of the *prior* costs. The total amount of costs incurred, according to the line items included in Exhibit 2 is $3,815.72.

Of that amount, defendants challenge the outside copying and color copying costs. However, color copies were submitted to the court in conjunction with the opening motion and the reply and the number of copies made is not excessive. Therefore, the $3,815.72 in reasonable costs incurred is included as part of the civil sanctions award.

### CONCLUSION

For the foregoing reasons, the amount of civil sanctions is set at $195,359.04. In setting this amount, I have considered the magnitude of "the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). CMP, Daleiden, Cooley,

and Ferreria are jointly and severally liable for this amount to be paid to NAF.

**IT IS SO ORDERED.**

Dated: August 31, 2017



William H. Orrick
United States District Judge