UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>Defendants. | Case No.  15-cv-03522-WHO<br><br>**ORDER ON PENDING MOTIONS**<br><br>Re: Dkt. Nos. 544, 545, 546, 547, 548 |

This case stems from defendants' alleged use of false identification and a "phony" corporation to gain access to conferences and meetings held by the National Abortion Federation (NAF).  Once there, defendants surreptitiously recorded NAF's staff as well as speakers and participants in alleged contravention of agreements they signed to gain access.

There have been many orders issued in this case to date, including a preliminary injunction, an order of contempt, and orders on various privilege issues.  Now that the Ninth Circuit has affirmed the Order Granting the Preliminary Injunction (Dkt. No. 354) (the "Preliminary Injunction Order"), *Natl. Abortion Fedn., NAF v. Ctr. for Med. Progress*, 685 Fed. Appx. 623 (9th Cir. 2017)(unpublished),[1] defendants move to dismiss the operative complaint, challenge the state law claims under California's anti-SLAPP statute (Cal. Code of Civ. Proc. § 425.16), and move to dissolve, modify, or clarify the injunction.

On their motions to dismiss, defendants seek to reargue issues decided against them in the Preliminary Injunction Order without pointing to any new case law in support, except for one that does not alter my prior analysis.  Defendants also make a range of "evidentiary-based" arguments

---

[1] Cert. denied sub nom. *Daleiden v. Natl. Abortion Fedn.*, 138 S. Ct. 1438 (2018), and cert. denied sub nom. *Newman v. Natl. Abortion Fedn.*, 138 S. Ct. 1439 (2018).

that cannot be resolved on a 12(b)(6) motion. On the special motion to strike, defendants introduce no new, material evidence that would undermine plaintiff's likelihood of success on the merits as found in the Preliminary Injunction Order based on the evidentiary record at that juncture.

Finally, I will not dissolve, modify, or clarify the Preliminary Injunction. I have explained, repeatedly, that nothing in the Preliminary Injunction prevents the Hon. Christopher Hite, who is supervising the state court criminal proceedings, from making orders about how materials covered by the injunction can be used in those proceedings. There is simply no merit to defendants' arguments that the injunction infringes on Daleiden's constitutional rights to present his defense to the state criminal charges. I recognize that, depending upon how Judge Hite rules on whether and how defendants will be able to use materials covered by the injunction in connection with the state court proceedings, revisiting the scope of the injunction may be appropriate. When that need arises (and it has not yet), defendants may seek relief on an expedited basis to modify or clarify the existing injunction.

## BACKGROUND

The background to this case has been extensively discussed in my prior orders, including the the Preliminary Injunction Order. The evidentiary record relied upon in the Preliminary Injunction 2016 Order is relevant to the special motion to strike. For purposes of determining defendants' motions to dismiss, I am limited to reviewing only the allegations in the first amended complaint (FAC), as well as matters that are appropriate for judicial notice.

Significant to arguments made in the motion to dismiss and special motion to strike are the contents of the contracts to which defendants agreed in order to gain access to the 2014 and 2015 NAF Annual Meetings. The 2014 and 2015 NAF "Exhibit Agreements" attached to the FAC were required for exhibitors at NAF's 2014 and 2015 Annual Meetings, and were signed by specified defendants.

Both the 2014 and 2015 Exhibit Agreements contain confidentiality clauses:

> In connection with NAF's Annual Meeting, Exhibitor understands that any information NAF may furnish is confidential and not available to the public. Exhibitor agrees that all written information

provided by NAF, or any information which is disclosed orally or visually to Exhibitor, or any other exhibitor or attendee, will be used solely in conjunction with Exhibitor's business and will be made available only to Exhibitor's officers, employees, and agents. Unless authorized in writing by NAF, all information is confidential and should not be disclosed to any other individual or third parties.

*See* Dkt. Nos. 131-1 & 131-5 at ¶ 17. Above the signature line, the Exhibit Agreements provide:

"*I also agree to hold in trust and confidence any confidential information received in the course of exhibiting at the NAF Annual Meeting and agree not to reproduce or disclose confidential information without express permission from NAF*." Dkt. Nos. 131-1, 131-5 (emphasis in originals).

The Exhibit Agreements required Exhibitor representatives to "be registered" for the NAF Annual Meeting and to wear badges in order to gain entry into exhibit halls and meeting rooms. *Id*. ¶ 8. They also provide that "[p]hotography of exhibits by anyone other than NAF or the assigned Exhibitor of the space being photographed is strictly prohibited." *Id*. ¶ 13. They required an affirmation: "[b]y signing this Agreement, the Exhibitor affirms that all information contained herein, contained in any past and future correspondence with either NAF and/or in any publication, advertisements, and/or exhibits displayed at, or in connection with, NAF's Annual Meeting, is truthful, accurate, complete, and not misleading." *Id*. ¶ 19. Finally, the Exhibit Agreements provide that a breach can be enforced by "specific performance and injunctive relief" in addition to all other remedies available at law or equity. *Id*. ¶ 18.

In order to gain access to the NAF Annual Meetings, Exhibitor representatives also had to show identification and sign a "Confidentiality Agreement." Dkt. Nos. 131-2, 131-3, 131-4. The Confidentiality Agreements provide:

It is NAF policy that all people attending its conferences (Attendees) sign this confidentiality agreement. The terms of attendance are as follows:

1. **Videotaping or Other Recording Prohibited**: Attendees are prohibited from making video, audio, photographic, or other recordings of the meetings or discussions at this conference.
2. **Use of NAF Conference Information**: NAF Conference Information includes all information distributed or otherwise made available at this conference by NAF or any conference participants through all written materials, discussions, workshops, or other means. . . .
3. **Disclosure of NAF Materials to Third Parties**: Attendees may

3

> not disclose any NAF Conference Information to third parties
> without first obtaining NAF's express written consent . . . .

Dkt. Nos. 131-2, 131-3, 131-4.

In entering the Preliminary Injunction, I found that the evidence of record demonstrated that defendants secured false identification and set up a phony corporation to make surreptitious recordings in violation of agreements they had signed. Preliminary Injunction Order at 3-9. I also concluded that plaintiffs made a significant showing of potential and actual harm resulting from the breach and that additional harms would likely occur if defendants were not enjoined from further breaches by releasing additional recordings. *Id.* at 36-38.

In July 2018, NAF voluntarily dismissed some of its claims. Dkt. No. 542.[2] The only claims remaining in the operative First Amended Complaint (FAC) are the: (i) Third Cause of Action for Civil Conspiracy; (ii) Fourth Cause of Action for Promissory Fraud; (iii) Fifth Cause of Action for Fraudulent Misrepresentation; and (iv) Sixth Cause of Action for Breach of Contact(s). Dkt. No. 131 (FAC).

Defendants CMP, BioMax, Daleiden, and separately Newman, move to dismiss those remaining claims. CMP, BioMax, and Daleiden separately move to strike those claims under California's anti-SLAPP statute, and also separately move to dissolve, modify, or clarify the injunction. Dkt. Nos. 544-547.

## LEGAL STANDARD

### I.      MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

---

[2] The claims voluntarily dismissed were: (i) First Cause of Action – Violation of 18 U.S.C. §§ 1962(a) and 1962(d); (ii) Second Cause of Action – Violation of 18 U.S.C. § 2511; (iii) Seventh Cause of Action – Tortious Interference with Contracts; (iv) Eighth Cause of Action – Trespass; (v) Ninth Cause of Action – Violations of Cal. Bus. & Prof. Code § 17200; (vi) Tenth Cause of Action – Violation of Cal. Penal Code § 632; and (vii) Eleventh Cause of Action – Violation of Maryland Ann. Code § 10-402. Dkt. No. 542.

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. SPECIAL MOTION TO STRIKE

California Code of Civil Procedure section 425.16 is California's response to "strategic lawsuits against public participation," or SLAPP lawsuits. It was enacted "to provide a procedure for expeditiously resolving nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542-43 (2008). It provides that a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1). An "act in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in

connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,

> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or

> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

"When served with a SLAPP suit, the defendant may immediately move to strike the complaint under Section 425.16." *Id.* at 1543. That motion is known as an anti-SLAPP motion. To determine whether an anti-SLAPP motion should be granted, the trial court must engage in a two-step process. "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.*

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high." *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2009). A plaintiff must show "only a 'minimum level of legal sufficiency and triability.'" *Mindys*, 611 F.3d at 598 (quoting *Linder v. Thrifty Oil Co*., 23 Cal. 4th 429, 438 n.5 (2000)). The plaintiff need only "state and substantiate a legally sufficient claim." *Id*. at 598-99 (citation and internal quotation marks omitted). In conducting its analysis, the "court 'does not weigh the credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" *Id*. at 599 (quoting *Wilson v. Parker, Covert &*

*Chidester*, 28 Cal. 4th 811, 821 (2002).  At this stage, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id*. at 598 (quoting Cal. Code Civ. Proc. § 425.16(b)(2)).

## DISCUSSION

## I.    CMP, BIOMAX, AND DALEIDEN'S MOTION TO DISMISS

### A.    Jurisdiction

Defendants[3] argue, first, that since NAF dismissed its two federal claims, I lack subject-matter jurisdiction over the remaining state law claims.  They contend that NAF cannot establish diversity jurisdiction because there is no diversity amongst NAF's members and the defendants, which defendants contend is required because NAF is suing to enforce the rights of its members and to prevent further harm to its members.  *See* FAC ¶ 50 (alleging harm to "NAF members and other abortion provides" from disclosure of "selectively edited, misleading videos"); *see also id*. ¶ 171 ("defrauding NAF and its constituent members in order to unlawfully obtain access to NAF's annual meetings"), ¶¶ 184 & 191 ("harm to the safety, security, and privacy of Plaintiff and its members, harm to the reputation of Plaintiff and its members"), ¶ 196 ("the purpose of these agreements was to protect NAF and NAF Confidential Information, and to protect NAF's staff, its members, and the attendees at NAF's annual meetings"), ¶ 200 ("Plaintiff and the intended third-party beneficiaries described above have suffered and/or will suffer economic harm and other irreparable harm caused by Defendants' breaches, including harm to the safety, security, and privacy of Plaintiff and its members, harm to the reputation of Plaintiff and its members").[4]  NAF simply pleads that there is diversity between NAF and each of the defendants.

---

[3] I refer to "defendants" in this section of the Order, recognizing the defendant Newman has moved to dismiss separately, and cite to their motion as "CMP Mot." and their reply as "CMP Reply."

[4] NAF alleges it is incorporated in Missouri and headquartered in Washington, D.C.  FAC ¶ 10. NAF alleges that CMP is charitable trust based in Irvine, California, *id*. ¶ 12; BioMax Procurement Services, LLC is a California limited liability company headquartered in Norwalk, California, *id*. ¶ 18; Daleiden is an individual who, on information and belief, resides in Yolo County, California, *id*. ¶ 19; and Newman is an individual who, on information and belief, resides in Wichita, Kansas.  *Id*. ¶ 20.

Defendants rely on a line of cases analyzing the citizenship of trade associations for diversity jurisdiction purposes. Those cases hold that association members are the "real parties in interest" when it is the members' claims for damage or potential damage at stake and the members' business dealings that have been impacted. In those circumstances, courts have concluded that it is the members' citizenship that counts for the diversity analysis.

Those cases are significantly different from this one. NAF is alleging that defendants broke contracts that they had with NAF, not with NAF's members. In that event, as the Seventh Circuit recognized, "the wrong would be to the association even though the loss resulting from it would be borne ultimately by the" corporation's members. *Natl. Ass'n of Realtors v. Natl. Real Est. Ass'n, Inc.*, 894 F.2d 937, 939 (7th Cir. 1990); *see also CCC Info. Services, Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 347 (7th Cir. 2000) ("In a suit where the members sought to enforce their rights as third party beneficiaries, the members' citizenship would control. But where the members are incidentally benefitted by the association's enforcement of its own contract rights, the citizenship of the association is the only relevant factor in the diversity analysis."); *but see Zee Med. Distributor Ass'n, Inc. v. Zee Med., Inc.*, 23 F. Supp. 2d 1151, 1156 (N.D. Cal. 1998) ("by coming to federal court to obtain a declaratory judgment on the language of contracts entered into by its individual members, asserts no corporate interest of its own. ZMDA is not a party to any of these contracts, nor would the declaratory judgment affect its rights or privileges as a legal entity in any way.").[5]

Significantly, that *some* harm was allegedly suffered by NAF's members as the result of defendants' alleged conduct does not turn this case into one seeking vindication of unasserted legal rights by those members. It is NAF's contracts that were allegedly breached and it was the fraud perpetrated on NAF by defendants in order to gain access to NAF's meetings that resulted in the alleged harms. NAF, therefore, was "in the front line" of defendants' actions. *See Natl. Ass'n*

---

[5] In reply, defendants argue that courts in the Northern District do not follow the Seventh Circuit's "paramount" test but, instead, look to the diversity of both members and their representative when both have "rights" at stake. CMP Reply 1. However, the only decision defendants rely on for that argument, *Majestic Ins. Co. v. Allianz Intern. Ins. Co.*, 133 F. Supp. 2d 1218, 1221 (N.D. Cal. 2001), was addressing the admittedly unique nature and structure of the Lloyd's of London reinsurance market and is not useful here.

*of Realtors*, 894 F.2d at 940 (members of non-profit corporation were "in the front line" of defendants allegedly fraudulent conduct). It is NAF's citizenship that must be compared to defendants and under that comparison diversity exists.

### B.    Damages

Defendants argue that because NAF has not asserted a defamation claim, its claims for "damages" stemming from all remaining causes of action are barred by the First Amendment. CMP Mot. 3-5. I addressed this exact argument in the related case, *Planned Parenthood v. CMP, et al*., Case No. 16-236. In the Order Denying the Motions to Dismiss and Strike in that case (September 2016 Order), I explained that while "reputational" damages stemming solely from the publication of recordings may be barred by the First Amendment, other damages were not, including "increased security costs for the protection of their staff, their clinics, their conferences, and their websites and IT systems." September 2016 Order at 33-36, *aff'd* 890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). Here, NAF has alleged *non-reputational* damages, including increased security costs (for staff and at conferences and meetings). FAC ¶¶ 142-146. The line demarking permitted damages from purely reputational damages (that stem only from truthful, non-misleading publication of material), as I noted in the *Planned Parenthood* case, cannot be determined on a motion to dismiss.[6]

Defendants mischaracterize the FAC as only seeking damages caused by the publication of the recordings and the resulting actions of third parties by pointing to the allegation in the FAC that prior to the publication of the recordings, "NAF and its members did not know, and could not have known, that Defendants had fraudulently obtained NAF Confidential Information and access to NAF's meetings, or that they had surreptitiously made recordings during those meetings." FAC ¶ 141; CMP Mot. 5 n.3; CMP Reply 3-4. That NAF only learned of the infiltration after publication began does not mean the damages are from the publication. At least some of the

---

[6] This is consistent with my more cursory analysis of this argument earlier in this case. In my August 2015 Order Denying Motion to Stay Discovery Pursuant to California Code of Civil Procedure Section 425.16(g), I explained that plaintiff's request for damages could not be dismissed "as a matter of law." Dkt. No. 95 at 11. Defendants reply brief on this motion proves this point. *See* CMP Reply 7 ("But why did NAF incur 'out-of-pocket expenses?'").

1    damages pleaded are the result of the infiltration and would have been incurred even if none of the

2    recordings were published and NAF learned of the infiltration through some other means.

3            In reply, defendants rely on the Ninth Circuit's decision in *Animal Leg. Def. Fund v.*

4    *Wasden*, 878 F.3d 1184 (9th Cir. 2018) to argue that my prior analysis should change.  In *Wasden*,

5    the Ninth Circuit affirmed an injunction striking down two provisions of an "Ag-Gag" law,

6    concluding that Idaho's criminalization of misrepresentations to enter a production facility and ban

7    on audio and video recordings of a production facility's operations "cover protected speech under

8    the First Amendment and cannot survive constitutional scrutiny."  *Id*. at 1190.  Two other

9    provisions of the law withstood scrutiny, Idaho's "criminalization of misrepresentations to obtain

10   records and secure employment," because those provisions were not aimed at "protected speech

11   under the First Amendment and do not violate the Equal Protection Clause."  *Id*.

12           *Wasden* does not support defendants' argument because the laws being applied in this case

13   are "generally" applicable laws, not laws criminalizing speech.  *Cf. Wasden*, 878 F.3d at 1190 (the

14   "First Amendment right to gather news within legal bounds does not exempt journalists from laws

15   of general applicability.").  Further, when striking down the provisions criminalizing

16   misrepresentations made to enter a facility, the *Wasden* panel explained the statute was

17   "staggeringly" overbroad, particularly because it applied to property that was "generally open to

18   the public" and broadly criminalized "innocent behavior."  *Id*. at 1195; *see also id*. at 1195-1198

19   (discussing overbreadth).[7]  Finally, *Wasden* recognizes – consistent with my prior decisions in this

20   and the related case – that allowing tangible damages stemming from misrepresentations but

21   excluding "reputational and publication damages" is consistent with the constitution even in the

22   context of undercover journalism.  *Id*., 878 F.3d at 1202.[8]

23   _____

24   [7] *Wasden* also supports some of NAF's allegations in this case.  As the Ninth Circuit noted,
     securing records by false misrepresentations may be penalized as it impairs the owner's ability to

25   control the records and who gets to see the records and in addition may "infringe on other rights
     by, for example, exposing proprietary formulas, trade secrets, or other confidential business

26   information to unwanted parties."  *Id*. at 1199.

27   [8] *Wasden's* rejection of the ban on unconsented recording at agricultural facilities does not support
     defendants' other arguments.  That decision turned on the content-based nature of the statute that

28   could not survive strict scrutiny because it was both under-inclusive (as not prohibiting
     photographs and aimed at keeping "controversy and suspect practices out of the public eye") and

1   NAF's damages claims will not be dismissed at this juncture.  They may, of course, be

2   narrowed as the case progresses to summary judgment and trial.

3       **C.     Civil Conspiracy**

4   Defendants argue that the conspiracy claim fails because the FAC does not plausibly allege

5   any underlying tort (an argument I reject, as explained below) and because NAF has not identified

6   a conspiracy between more than one legally distinct person.  NAF alleges that the individual

7   defendants – Daleiden and Newman – were acting as "agents" of BioMax and CMP and that CMP

8   and BioMax are one and the same.  Defendants interpret these allegations to show that all

9   defendants are one entity that cannot conspire with itself.

10  I disagree.  The FAC explains the separate roles and actions Daleiden and Newman took as

11  part of the conspiracy, as well as the roles of CMP and BioMax.  That the individuals are also

12  alleged to be alter egos of the corporate entities cannot be used to preclude the conspiracy

13  allegation at this juncture.  *See* September 2016 Order at 19 in Case No. 16-236 (rejecting

14  materially identical argument).

15      **D.     Promissory Fraud**

16  Defendants argue that NAF cannot plead a claim for promissory fraud because NAF has

17  not pleaded and cannot plead the elements required under California law.  They contend that this

18  claim must be dismissed because: (i) as NAF has not rescinded the contracts, the alleged

19  misrepresentations could not have caused NAF harm; (ii) NAF has not adequately alleged the

20  fraud with requisite particularity; and (iii) NAF's fraud claim is based on the same conduct as the

21  breach claim which, as discussed below, defendants assert that NAF cannot plausibly plead.

22  That NAF has not moved to rescind the breached contracts does not preclude this claim

23  from going forward.  In California, it is "the well settled rule that one who is induced by fraud to

24  enter into a contract is entitled both to 'affirm' the contract and to sue for damages in tort. . . . In

25  other words, the victim of the fraud may elect to undo the transaction in its entirety, restoring both

26  parties to the status quo ante.  However, the victim cannot be required to adopt this course; he has

27  ————————————

28  over-inclusive (as it suppressed more speech than necessary to protect the privacy and property
    interests at stake).  *Id*., 878 F.3d at 1204-05.

the right to 'retain the benefits of the contract ..., and make up in damages the loss suffered by the fraud. Hence, he may affirm the contract, and simply sue for damages for the fraud.'" *Denevi v. LGCC, LLC*, 121 Cal. App. 4th 1211, 1220 (Cal. App. 6th Dist. 2004) (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1990) Torts § 726).[9]

Defendants also argue that because they did not breach the underlying contracts, there could be no harm that proximately flows from NAF having allegedly been fraudulently induced into allowing defendants access to their meetings. As discussed below, even if an allegation of breach is required to support the promissory fraud claim, NAF has more than adequately alleged breach and proximate harm from that breach. Accordingly, this dependent argument on promissory fraud likewise fails.

Defendants further contend that under Rule 9(b) they are entitled to know every single instance that NAF believes shows how defendants violated the agreements. This argument is meritless. NAF has provided extensive details in the FAC, laying out in full its theory how defendants made false promises to induce NAF into entering the contracts that defendants subsequently breached.

### E. Fraudulent Misrepresentation

Defendants' first contention concerning fraudulent misrepresentation, that NAF's claim fails because it has no legally cognizable damages flowing from defendants' alleged fraud, has been rejected above. Their assertion, that the FAC lacks sufficient particularly under Rule 9(b), fails because NAF has explained, in paragraphs 187-188 of the FAC, exactly what representations it contends were false and why. Defendants have no authority for requiring NAF to identify at this juncture *why* NAF believes BioMax was a phony company or why NAF believed defendants intended to make those misrepresentations. Discovery can be used to adduce these contentions, but they are not grounds to dismiss.

---

[9] The cases relied on by defendants are inapposite because they address situations where the party claiming fraudulent inducement is seeking, at the same time, to "escape from its obligations" under the agreement. *See Goldman v. Seawind Group Holdings Pty Ltd*, 13-CV-01759-SI, 2015 WL 433507, at *8 (N.D. Cal. Feb. 2, 2015) (relying on *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co*., 50 Cal.4th 913, 921, (2010)). NAF is not seeking to escape from its obligations under the contracts at issue.

Defendants' final argument, that there is no plausible claim for relief based on *Wasden,* is without substance. The part of *Wasden* on which defendants rely does not preclude all fraud claims based on misrepresentations made to secure access to a facility; it instead found a criminal statute unconstitutionally overbroad because it could be applied to in "almost limitless times and settings." *Wasden*, 878 F.3d at 1194. Context matters. And the implications of the context here, and related disputed facts, cannot be resolved on a motion to dismiss.

### F. Breach of Contract

At the heart of defendants' motion to dismiss is their second-run at arguments made and lost when first seeking a discovery stay under California's anti-SLAPP statute (Dkt. No. 95) and then again at the preliminary injunction stage. Dkt. No. 354. Defendants claim that NAF has failed to allege facts showing that consideration exists for the separate Confidentiality Agreements (CAs) or facts plausibly supporting NAF's contentions that defendants breached the CAs or Exhibit Agreements (EAs).

### 1. Confidentiality Agreements and Consideration

Defendants contend that NAF extracted no specific, separate consideration for the CAs, which defendants assert (relying on facts outside of the FAC) that they did not expect or know would be presented prior to their being allowed to enter the meetings. This argument was expressly addressed and rejected in the Preliminary Injunction Order. Dkt. No. 354 at 21-22. There is no reason raised to revisit that conclusion on the more circumscribed record for a motion to dismiss.

### 2. Manner of Use of Information

Defendants next argue that they cannot be held liable for breach of either set of agreements because NAF has not plausibly alleged that defendants used the information they secured in a way inconsistent with the purpose of the meetings (to "enhance the quality and safety of abortion services") and even if NAF could so allege, that purpose it too open-ended to be enforceable under California law. CMP Mot. 11-12. To the first point, NAF alleges in detail how defendants used the information they secured in a manner inconsistent with the purpose of the meetings. FAC ¶ 196, 197, 215. Defendants dispute those facts. That debate demonstrates why this argument is too

fact-dependent to be resolved on a motion to dismiss.  To the second point, the argument that the "misuse" provision is too vague and indefinite to be enforceable under California law delves into intent and the reasonable expectations under the contract as well as potential narrowing constructions that are more appropriately addressed on a motion for summary judgment on a full evidentiary record.

### 3.     Violation of Agreements by Recording

Defendants contend that the language of CAs is "most naturally" read as prohibiting only recording of the formal panels and presentations at the meetings, and the prohibition does not extend to "informal" discussions and discussions with participants.  That argument was rejected in the Preliminary Injunction Order.  Dkt. No. 354 at 25-26 & fn.30.   There is no reason to revisit that determination now.[10]

### 4.     Breach

Separately, defendants argue that there are no plausible or particular allegations that they breached the EAs.  The basis for this argument is defendants' contention that NAF has not adequately identified *its own* beliefs about BioMax and what BioMax allegedly represented to it that was false.  But the FAC provides more than sufficient and plausible details to support NAF's allegations that BioMax and the other defendants misrepresented themselves and violated the EAs. *See, e.g.*, FAC ¶¶ 84, 88-90.  Additional contentions can be uncovered during discovery.

### 5.     Damage from Breach

Defendants, making another fact-based argument, contend that the breach of contract claims fail because of a lack of proximate cause between their alleged actions and NAF's damages.  This is simply a repeat of the argument made above, that the damages NAF seeks here are barred by the First Amendment and that all of the damages to NAF flow from the breach of the non-disclosure agreement and not from the alleged fraud committed by BioMax to secure entry to the meetings.  Again, that NAF learned of defendants' breaches when defendants published their

---

[10] Nor does defendants' argument that NAF has failed to specify which portions of the meetings defendants improperly recorded help them.  CMP Mot. 13-14.  Defendants are not entitled, in a complaint, to a list of all the portions of the meetings recorded by them.  That information is readily within their own possession.

14

recordings does not mean that NAF's damages flowed from the recordings (implicating the First Amendment). The publication was simply the mechanism by which NAF found out about the infiltration. NAF has plausibly alleged that at least some of its damages would have been incurred no matter how the infiltration came to light and are separate from damages stemming from publication.

### 6.     Violation of Agreements

Defendants make several arguments that the EAs and CAs are not enforceable against them and were not violated by them. I address each in turn.

#### a.     Enforceability

Defendants argue that the EAs and Cas' restriction of any participant from disclosing any information learned at the meetings – at least without the consent of NAF – is an illegal restraint of trade with respect to abortion providers because the agreements prevent and unlawfully control the flow of information about abortion providers and their businesses. Defendants also claim that the EAs and CAs are overbroad because the agreements on their faces prohibit participants from disclosing any information, even non-confidential information.

Regarding their novel antitrust argument, defendants' briefs acknowledge that the evaluation of the anti-competitive effect of an agreement is a "practical, fact-specific inquiry." CMP Mot. 19. As such, despite the "admission" by NAF that its "members collectively care for half the women who choose abortions in the United States and Canada each year," FAC ¶ 10, whether the EAs and CAs constitute an impermissible restraint on trade is not appropriately resolved on a motion to dismiss. That analysis will necessarily turn on what powers NAF has over its members and perhaps other non-member providers. It will also turn on whether "membership" of over half of the providers in the United States, connotes the sort of powers – given NAF's purpose and influence in the market – that create the type anti-competitive impact the antitrust laws seek to prevent.[11] Even if the concept is apposite, this analysis cannot be conducted on a

---

[11] Given the context of this case, the "restraint of trade" cases addressing confidentiality agreements imposed in the employer-employee context and covenants not to compete are inapposite, as are cases under California Bus. & Prof. Code § 16600. CMP Mot. 18-19.

motion to dismiss.

Defendants' overbreadth argument was addressed in depth and rejected in the Preliminary Injunction Order at 23-25.  There is no reason to revisit it here.

### b. Information Provided by NAF in Formal Session is Only Information Protected

Raising more arguments expressly rejected in the Preliminary Injunction Order, defendants argue that the EAs only prohibit disclosure of information provided by NAF in the context of formal proceedings and the CAs only prohibit disclosure of information provided in formal sessions.  *Id.* at 23 & n.27, 25-26 & n.30.  Similarly, defendants' argument regarding the "absurd" overbreadth of the agreements (arguing that on their face they would prevent disclosure of readily known or otherwise non-confidential information and should be limited to NAF's proprietary information) has already been rejected.  *Id.* at 24.[12] There is no reason to revisit those arguments or my conclusions.

### c. No Allegations Defendants Intend to Disclose Information Covered by the Agreements

Finally, building on their prior arguments that the EAs and CAs should be interpreted to cover only information disclosed by NAF in formal conference proceedings, defendants argue that the FAC fails to allege facts that defendants violated those narrowed provisions by disclosing or threatening to disclose in the future any information furnished by NAF in formal conference proceedings.  Again, those arguments are not well taken at this juncture and are rejected.

CMP, BioMax, and Daleiden's motion to dismiss is DENIED.[13]

---

[12] "Defendants' argument might have some merit if it was made concerning a challenge to the application of the EAs' confidentiality provisions with respect to specific pieces or types of information that are otherwise publicly known or intended by NAF to be shared with individuals not covered by the EA. Defendants do not make that type of 'as applied,' narrow argument. Instead, they argue that the whole EA is unenforceable. There is no legal support for that result or for defendants' speculation that the EA might be enforced in an unreasonable manner against other NAF attendees." *Id.* at 25.

[13] In support of their motion to dismiss, defendants ask me to take judicial notice of: (i) two Congressional reports regarding human fetal tissue research (Reports); and (ii) the final judgment in the California Superior Court case imposing a penalty on a company who admitted to unlawfully selling fetal tissue, as well as the press release issued by the Orange County District Attorney about the same.  RJN, Dkt. No. 545-1.  Defendants do not simply ask me to take judicial notice of the fact of the Congressional investigations and Reports or the prosecution and judgment,

### G.     NAF's request for sanctions

NAF argues that sanctions against CMP, BioMax, and Daleiden are warranted under my inherent power and 28 U.S.C. § 1927 for defendants' reckless, bad faith, and vexatious conduct.  It contends that defendants raise no legitimate arguments in their motion to dismiss (given my findings and the affirmance of the Preliminary Injunction Order) and that the motion was brought only to further delay this case.  NAF Opposition to CMP Mot. 19 (Dkt. No. 558).  NAF requests that I issue an Order to Show Cause why defendants should not be forced to pay NAF's fees in responding to this motion.  *Id*. 19-20.

The request for an OSC re sanctions is DENIED.  While I have rejected the breach of contract arguments consistent with conclusions I made in the affirmed Preliminary Injunction Order, I recognize that these defendants had not yet had the opportunity to challenge jurisdiction and the fraud-based claims.  Sanctions are not warranted.

## II.     CMP, BIOMAX, AND DALEIDEN'S SPECIAL MOTION TO STRIKE

As in the related *Planned Parenthood* case, these three defendants filed a special motion to strike under California's anti-SLAPP statute in conjunction with and essentially duplicative of their motion to dismiss.  For the reasons discussed below, this motion is DENIED.

### A.     Prong One – Acts in Furtherance

Defendants argue that they easily satisfy their burden to make a prima facie case that NAF's remaining causes of action arise out of defendants' investigatory actions, which were undertaken in support of their intent (and eventual conduct) in publishing the information gained. As in *Planned Parenthood,* for purposes of determining this motion I will assume that defendants have met their initial burden and made a prima facie showing that NAF's suit arises from an act in furtherance of the defendants' rights of petition or free speech.

---

but want me to take judicial notice of the disputed facts within these documents.  Because the purpose of the judicial notice as requested is improper, the request is DENIED, I will take judicial notice of the existence of the Congressional Reports as well as judicial notice of the existence of the Orange County action and the judgment entered.

### B.    Prong Two – Probability of Prevailing

#### 1.    Legal Sufficiency

Defendants make two arguments under the second prong of the anti-SLAPP statute.  The first, is that to the extent their anti-SLAPP motion is based on a Rule 12(b)(6) failure to state a claim standard, their motion should be successful to the same extent it was above.  As recently explained by the Ninth Circuit in the *Planned Parenthood* case, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).  Having rejected the motion to dismiss, I DENY the anti-SLAPP motion on the same grounds.

#### 2.    Factual Sufficiency

Defendants, however, are not simply resting on a 12(b)(6) challenge in their anti-SLAPP motion.  They are also making a "nonsuit" type of challenge only to the breach of contract claim, which in their view then requires NAF to come forward with evidence regarding the legal sufficiency (and probability of success) on its breach of contract claims.  Motion to Strike 8-10. Defendants' specific challenges are to evidence that: (i) defendants breached the contracts; (ii) damages that were proximately caused by those breaches; (iii) that the confidentiality agreements were supported by consideration; and (iv) defendants used information from the meetings inconsistent with the purposes of the confidently agreements.  *Id*. 13.  They expressly disclaim any intent to make a summary judgment-style challenge.  *Id*. 15.

Defendants have not submitted any evidence on any of these points.[14]  They argue that they can simply assert "nonsuit" and then they do not need to do anything other than identify the parts of the breach of contract claim they believe NAF does not have a likelihood of success on and force NAF to present its affirmative evidence in opposition.

---

[14] As on the motion to strike in the related *Planned Parenthood* case, the only evidence defendants provide in support of their motion to strike is a declaration from defendant Daleiden that is relevant only to the first prong of the anti-SLAPP statute to support the argument that defendants' actions were in furtherance of defendants' rights to free speech.  *See* Dkt. No. 546-1.

Even if there is support for this nonsuit type of anti-SLAPP challenge under California law, its applicability is at best questionable under federal law in the Ninth Circuit. As the Ninth Circuit most recently explained in *Planned Parenthood*, 890 F.3d at 834, there are two standards under which an anti-SLAPP motion is assessed in federal court. First, defendants can challenge the legal sufficiency under the Rule 12(b)(6) standard. Second, defendants may challenge the factual sufficiency under the Rule 56 standard. However, when a factual sufficiency challenge is made, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id*. 890 F.3d at 834.

Defendants argue that there is no need for further discovery before an analysis of the merits of the breach of contract claim can go forward because NAF has admitted in its most recent Case Management Conference statement that it does not need additional discovery on its contract claim. Dkt. No. 538 at 8. However, in their anti-SLAPP motion, defendants explicitly disclaim bringing a summary judgment type of challenge because "they have not had the opportunity to engage in enough of their own discovery." Motion to Strike 15. Defendants cannot have it both ways.

Further, defendants' position – that they can bring a factual sufficiency claim in federal court without having to first present any evidence themselves – flies in the face of the Ninth Circuit's rejection of defendants' position in *Planned Parenthood* and recognition that evidence must be submitted *by defendant* in bringing a factual sufficiency claim. *See id*. at 834 ("In defending against an anti-SLAPP motion, if the defendants have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence *to oppose contrary evidence that was never presented by defendants*.") (emphasis added).

That said, in *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010), when the panel was discussing the operation of anti-SLAPP motions to strike *under California law*, the panel indicated that the moving defendant did not need to present evidence and the standard for evaluating factual sufficiency was akin to nonsuit or directed verdict. *Id*. at 599. Given this arguably contradictory language, I address below the motion on the merits, considering the

evidence presented by the parties on the preliminary injunction motion.

### 3. Merits

In the Preliminary Injunction Order, I considered sufficient evidence regarding NAF's breach of contract claim and found that NAF had demonstrated a strong likelihood of success on that claim, sufficient to support the injunction. That conclusion was affirmed by the Ninth Circuit on appeal.

Defendants attempt to avoid that conclusion by arguing – in their reply – that "practically all" of the evidence considered at the preliminary injunction stage was deficient for purposes of this motion. They reason that at the prior stage, evidence was considered under a lower admissibility standard but is inadmissible hearsay or otherwise objectionable for lack of personal knowledge for purpose of a non-suit motion. Reply 8-9. But defendants do not object specifically to any evidence and do not address the evidence I relied on in my Preliminary Injunction Order except to "incorporate" their prior wholesale objections to NAF's preliminary injunction evidence. *Id*. 9.

Defendants criticize NAF for its failure to re-present the evidence that would support its breach claim in NAF's opposition to this motion, arguing that NAF is attempting to force the court to do its own work. That criticism, however, is more aptly lodged against defendants rather than NAF. [15] Absent specific evidentiary objections from defendants raised in their Reply, and considering the record that was before me at the preliminary injunction stage and the analysis laid out in the Preliminary Injunction Order, I conclude that NAF has submitted sufficient evidence to support its breach claim and to defeat defendants' nonsuit anti-SLAPP motion.

Assuming defendants can move for nonsuit on the breach of contract claim as opposed to summary judgment under Rule 56, and may do so in absence of presenting any evidence regarding

---

[15] Defendants also mischaracterize the record. A close reading of the Preliminary Injunction Order shows that the majority of the evidentiary objections asserted by defendants based on hearsay and lack of personal knowledge and overruled by me in that Order involved NAF's evidence of threats and harassment following the release of CMP's videos. That evidence was not relevant to success on the merits of the breach of contract claim, but relevant to whether the injunction should otherwise issue. That evidence is irrelevant to defendants' nonsuit anti-SLAPP motion.

that claim themselves or having fully completed discovery, I DENY the motion on its merits. Defendants point to no *new* evidence or material changes of law to cause me to revisit any of the findings in the Preliminary Injunction Order.

### C. Whether this motion is frivolous or intended only for delay

NAF argues that considering my Preliminary Injunction Order and its affirmance by the Ninth Circuit, as well as the affirmance by the Ninth Circuit of my denial of the anti-SLAPP motion in the related *Planned Parenthood* case, the inescapable conclusion is that defendants' special motion to strike is frivolous and brought solely to delay this case. It asks me to impose sanctions under the anti-SLAPP statute (Cal. Code Civ. Proc. § 426.15(c)(1)), under 28 U.S.C. § 1927, or under my inherent authority. Defendants oppose, arguing that this was their first opportunity to challenge the pleading and evidentiary sufficiency of NAF's remaining causes of action. They also contend that sanctions are not available under the anti-SLAPP statute because the request for sanctions was not brought in a separate motion on 21 days' notice. *See* Cal. Code Civ. Proc. §§ 128.5(f)(1)(A), 128.5(f)(1)(B) (safe harbor provision).

As with the motion to dismiss, I DENY the request for sanctions related to the anti-SLAPP special motion to strike. While the special motion to strike was unsuccessful and may well have been brought to delay the case, given that the Preliminary Injunction Order was based (for likelihood of success) on only the breach of contract claim, this was the first time defendants could effectively challenge the other remaining fraud-based claims. They were not successful, but sanctions are not warranted.

## III. NEWMAN'S MOTION TO DISMISS

Defendant Newman separately moves to dismiss, arguing that the FAC contains few and insufficient allegations against him and that this Court lacks personal jurisdiction over him. His motion lacks merit.

### A. Facts Regarding Newman

The FAC contains the following allegations regarding Newman, which are sufficient to establish specific jurisdiction. CMP, Daleiden, Newman and individuals acting in concert with them, conspired to defraud and did defraud NAF by setting up a fake company, defendant

BioMax, which held itself out as a legitimate fetal tissue procurement organization. Newman and others "acting at Newman's behest" pretended to be officers and employees of their fake company in order to secure access to NAF's meetings. FAC ¶¶ 1-2, 82-84; *see also* ¶ 85 (asserting that Daleiden and Newman "registered Biomax as a limited liability company, and filed Articles of Organization with the California Secretary of State on October 11, 2013.").

Newman "publicly admitted in interviews with Fox News and other news outlets that Biomax was a bogus company that misrepresented its identity and purpose in order to obtain NAF's confidential information, and to gain access to abortion providers and their facilities, including NAF's confidential annual meetings" and he "publicly boasted about the size and scope of the conspiracy" admitting that he and Daleiden used fake "actors" to infiltrate providers of abortion care. *Id*. ¶¶ 3, 18, 80, 81-84, 139. Newman also publicly boasted that the "genesis" of the "conspiracy began in his office in Wichita" and that he remains in control of the release of CMP's illegally obtained recordings. *Id*. ¶¶ 14, 80. He has claimed that he has provided "material support" for the activities complained of in this case. *Id*. ¶ 20.

NAF alleges, in support of its alter ego allegations, that there is a "unity of interest and ownership between Defendants CMP, Biomax, David Daleiden, Troy Newman and unnamed co-conspirators, . . . such that any individuality and separateness between these Defendants has ceased. CMP, Daleiden, Newman and unnamed co-conspirators among other actions, established Biomax as a fake company for the purpose of perpetrating a fraud on NAF, Planned Parenthood, and providers of abortion care." *Id*. ¶ 23.

Newman is listed as the Secretary of CMP in filings with the California Secretary of State (Daleiden is listed as the CEO). *Id*. ¶ 13. NAF asserts jurisdiction exists over Newman because he is an officer for CMP (a company incorporated in the state of California) and because he and the other defendants "have directed, participated in and provided material support for a scheme to deceive Plaintiff and its members within California." *Id*. ¶ 25.

**B.    Personal Jurisdiction**

Newman argues that there is no jurisdiction – specific or general – over him. I disagree. Specific jurisdiction is satisfied given Newman's admissions regarding his role in the alleged

conspiracy and his provision of material support for it. Newman's statements demonstrate that he purposefully directed the defendants' actions, including actions directed towards California, and his conduct gives rise in significant part to the claims.[16] NAF has adequately alleged that Newman purposefully directed his activities at California and its resulting claims against Newman arise out of those activities.

Significantly, the purposeful direction is not based on Newman's mere status as a director of CMP. This case is not about typical corporate activities, and the line of cases relied on by Newman regarding when a corporate officer can be personally liable for actions taken by a corporation is inapposite. Newman Mot. 5-6. Here, the allegations are that Newman set up CMP (in part) and BioMax (exclusively) to conduct the conspiracy and infiltrate of NAF's meetings. The allegations suffice to plausibly show how Newman's purposeful actions towards California gave rise to the causes of action NAF brings. Finally, given the nature of the contacts alleged, exercising jurisdiction over Newman in California fully comports with notions of fair play and substantial justice.[17] NAF is entitled to pursue its claims against Newman here in California.[18]

### C. Direct Liability

Newman argues that there are no allegations that he has direct liability for the breach of

---

[16] The Ninth Circuit has articulated a three-prong test to determine whether a party has sufficient minimum contacts to be subject to specific personal jurisdiction: (i) the non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (ii) the claim must be one which arises out of or relates to the defendant's forum related activities; and (iii) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

[17] On the third prong of the specific jurisdiction test, to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice" courts evaluate the burden on the defendant in appearing in the forum, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

[18] I, therefore, do not need to address NAF's arguments that Newman waived his jurisdictional challenge because he opposed the motion for preliminary injunction, made 62 separate filings in this case, and had his attorneys appear at nine separate hearings.

contract, promissory fraud, or fraudulent misrepresentation causes of action. NAF essentially agrees by arguing that its alter ego or agency allegations are sufficient to hold Newman liable for each of these causes of action.

### D. Agency, Alter Ego, or Conspiracy Liability

#### 1. Breach of Contract

##### a. Alter Ego & Agency

NAF argues that Newman can be held responsible for the breach of contract claim as the "alter ego" of CMP. Its theory is that because CMP is the alter ego of BioMax, and Newman is the alter ego of CMP, Newman can be held responsible for the breach of contracts by BioMax and the other individual defendants.

NAF relies on a well-established line of cases that when a corporation is used to "evade the law" the fiction of corporate separateness can be pierced to hold the individual liable. *See, e.g., Say & Say, Inc. v. Ebershoff*, 20 Cal. App. 4th 1759, 1768 (Cal. App. 2d Dist. 1993) (recognizing under California law two general requirements necessary to pierce the corporate veil: (1) there is unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow).[19] The complexity here, however, is that neither Newman nor CMP signed any of the contracts at issue – BioMax and Daleiden and the other co-conspirators, using pseudonyms, did. There are no allegations that Newman was an officer of BioMax (the entity that did enter into the contracts) although there are allegations that Newman was responsible with Daleiden for creating, setting up, and directing the activities of BioMax.

NAF argues that Newman is liable for CMP and the other individual defendants' breaches

---

[19] On "unity of interest," courts consider whether there is evidence of commingling of funds or other assets, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, and identical directors and officers. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (internal quotation omitted). As to "inequity," courts look to whether defendant's use of the corporate form would be inequitable, fraudulent, unjust or otherwise used in bad faith. *Id.* at 956.

of contract because Newman allegedly lied when setting up CMP – where Newman is a corporate officer – with the State of California. But any lies he made to the California Secretary of State's office or the IRS are not at issue in the breach claim.[20] At most, the breach allegations flow from the role of CMP and Newman in setting up and directing the activities of BioMax.

NAF contends that because both CMP and BioMax were created by Newman and Daleiden as sham companies intentionally set up to engage in tortious behavior, the wrongs of BioMax (and the individual conspirators) can flow up through CMP to Newman. However, while the very detailed allegations regarding Newman's role are sufficient to establish for pleading purposes Newman's plausible liability for conspiracy (addressed below), they do not appear to fit the concept of alter ego liability, absent some on-point California authority, given that Newman is not a corporate director of BioMax even though he allegedly directed its creation and activities.

That said, the result is different under the theory of agency. NAF points out that a "contract made in the name of an agent may be enforced against an undisclosed principal, and extrinsic evidence is admissible to identify the principal." *Sterling v. Taylor*, 40 Cal. 4th 757, 773 (2007). It makes extensive and detailed allegations that Newman directed and supported Daleiden and the individual conspirators who signed the contracts and pretended to be officers and employees of BioMax, to support its allegation that BioMax and the individuals were the agents of Newman. FAC ¶¶ 2, 104 ("Daleiden, "Tennenbaum" and "Allen" signed these agreements while acting as agents not only for Biomax, but also as agents for CMP, Newman and Daleiden"), ¶ 128 (same), ¶ 199 (same).[21] These allegations, combined with Newman's alleged comments about the

---

[20] NAF alleges that in setting up CMP and registering it with the State of California as a not-for-profit corporation, Newman and Daleiden "falsely averred that CMP was a 'nonprofit' and 'nonpartisan' organization, and that no substantial part of its activities would consist of 'carrying on propaganda, or otherwise attempting to influence legislation.' Newman and Daleiden also used CMP's false status as a 'nonprofit' and 'nonpartisan' organization to apply for tax-exempt status, which the IRS granted in December 2013." FAC ¶ 84.

[21] The particular allegations about Newman's role in creating and directing the conspiracy, through setting up BioMax and advising and directing the activities of the participants, distinguish this case from *whiteCryption Corp. v. Arxan Techs., Inc*., No. 15-cv-00754-WHO, 2016 U.S. Dist. LEXIS 78106 (N.D. Cal. June 15, 2016) and similar cases where parent corporations are not found liable under an agency theory for their subsidiary's conduct where the parent corporation simply establishes the "general policy and direction" for the subsidiary. *Id*. at *31-34.

scope of his involvement, suffice to adequately plead agency for breach of contract.

### 2. Fraud Claims

NAF relies on the general line of cases under California law recognizing that corporate directors are, despite the corporate form, personally liable for any tortious conduct they directed the corporation to commit. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379 (Cal. App. 2d Dist. 2000), *as modified on denial of reh'g* (Apr. 7, 2000) (recognizing that personal liability of a corporate action "if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise").

Newman contends that even if NAF has adequately alleged his personal participation in the fraud – and I find that NAF has – NAF's claim still fails because it does not "allege and prove that an ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 509 (1986); Newman Reply 5. That concept applies only where a director knows of a condition hazardous to third parties or that the corporate conduct will likely cause harm and then knowingly fails to act. *See, e.g., id.* at 510-511 (discussing failure to act cases); *see also Cody F. v. Falletti*, 92 Cal. App. 4th 1232, 1246 (2001) (same); *PMC, Inc.*, 78 Cal. App. 4th at 1380 (same). That type of allegation is not required where the individual defendant is alleged to having knowingly directed or otherwise affirmatively help cause the tortious conduct, as in this case.

In sum, even though the line of corporate liability cases seems inapposite to the facts alleged here because Newman is not the corporate director of BioMax, the allegations that BioMax and the individual conspirators committed the alleged torts as agents of and at the direction of Newman suffices at this juncture to keep Newman as a defendant for the fraud-based claims.

### 3. Conspiracy

Finally, Newman argues that NAF failed to plausibly show that there was a collective plan among the conspirators to engage in conduct with an unlawful purpose and that Newman knew of and concurred with the unlawful purpose. His motion to dismiss this claim hinges, first, on supposed admissions by NAF that Newman and the other conspirators had a lawful purpose

(conducting investigative journalism). But that is not the unlawful purpose alleged in the FAC. Instead, the unlawful purpose alleged is the intent to illegally infiltrate the NAF meetings through false promises and broken contracts.

Newman's argument hinges, second, on whether NAF was required to allege that CMP was formed solely for that unlawful purpose, since CMP might also be engaged in or have been engaged in lawful activities that would undermine the conspiracy claim. Whether CMP may have had a legitimate goal (to uncover illegality by abortion providers and other entities) would not undermine NAF's allegations that Newman and CMP specifically agreed to the conspiracy's unlawful purpose, enacted through the "sham" corporation BioMax and the co-conspirators' use of pseudonyms to illegally infiltrate NAF's meetings.[22]

At this juncture, NAF adequately pleads all of the elements of conspiracy as to Newman and the co-conspirators. Newman's motion to dismiss is DENIED.

## IV. CMP, BIOMAX, AND DALEIDEN'S MOTION TO DISSOLVE, MODIFY, OR CLARIFY PRELIMINARY INJUNCTION

### A. Standard

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). A "district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002).

### B. Undermined Legal Reasoning and Factual Conclusions

Defendants argue that the following legal reasons regarding NAF's likelihood of success in the Preliminary Injunction Order have since been undermined: (i) defendants waived any First Amendment rights they had by agreeing to the agreements; (ii) NAF suffered harm following the

---

[22] The repeated and (on this record) plausible allegations that the co-conspirators had an unlawful purpose in enacting the conspiracy to infiltrate NAF's meetings distinguishes this case from those where a tort or other violation of the law was simply committed during undercover newsgathering investigations. *See, e.g., Dowd v. Calabrese*, 589 F. Supp. 1206, 1209 (D.D.C. 1984) (dismissing conspiracy claim on summary judgment where "proof of cooperation between two individuals who had a common purpose to produce a news story was not a sufficient basis for an actionable conspiracy when there was no evidence of a joint purpose to defame.").

1    disclosures; and (iii) liability for NAF harms can be imputed to defendants' conduct. They also

2    assert that two factual findings underlying the Preliminary Injunction Order have likewise been

3    undermined: (i) the recordings showed no evidence of criminal wrongdoing and (ii) defendants'

4    disclosures led to harassment, threats and violent acts against NAF and its members. Mot. to

5    Dissolve 4-5. They contend that at least two Congressional reports, of which they seek judicial

6    notice, "repudiated" my conclusions that defendants' investigation lacked legitimacy and point

7    specifically to my characterization of the videos they edited and released as "not pieces of

8    journalistic integrity, but misleadingly edited videos and unfounded assertions." Dkt. No. 354 at

9    38-39.

10      As a general matter, I will not reconsider arguments that were made or could have been

11    made at the preliminary injunction stage. Defendants are not entitled to an endless number of

12    opportunities to make their arguments. They will have another opportunity to make their

13    arguments based on a full evidentiary record at summary judgment. For purposes of ruling on

14    this motion, I will only consider new evidence and intervening case law.

15      <u>Congressional Reports and Illegality</u>. To start, it bears emphasizing that I have never

16    broadly discussed the legitimacy or illegitimacy of defendants' investigation into the sale of

17    human fetal tissue. The "integrity" comment defendants focus on was based on my finding that

18    defendants' Human Capital Project videos were misleadingly edited. The "unfounded assertions"

19    were not about whether some individuals or entities were illegally selling fetal tissue for profit, but

20    only that defendants' repeated assertion that their recordings (those covered by the Preliminary

21    Injunction Order) showed illegal conduct were unfounded. My findings were narrow and specific,

22    and they have not been shown to be false by anything defendants point to, then or now.

23      The Congressional reports found evidence of "possible" violations of law and referred

24    some portions of evidence gathered by the Committees to prosecutors.[23] Those comments and

25

---

26    [23] The two Reports are: Majority Staff Report of the U.S. Senate Judiciary Committee titled "Human Fetal Tissue Research: Context and Controversy," and dated December 2016; and the

27    Final Report of the Select Investigative Panel of the U.S. House of Representatives Energy & Commerce Committee, dated December 30, 2016. I have taken judicial notice of these Reports,

28    upon defendants' request, for purposes of recognizing the scope of the Congressional investigation and the findings of the Committees, but not for the determination of any disputed adjudicative

referrals do not identify the specific information on which they are based, let alone any of the materials reviewed by me prior to issuing the Preliminary Injunction Order. [24] The characterization in the Congressional Reports of "possible" illegality in unidentified information in no way undermines my finding that there was no evidence of illegality in the enjoined materials.[25]

Harms. As to the harms justifying the injunction, defendants argue at this juncture that I should look beyond hearsay evidence. If defendants want me to look beyond hearsay (mere months after the injunction was affirmed on appeal and the petition for a *writ of certiorari* denied), I would be happy to do so on a motion for summary judgment, which defendants have yet to bring. Defendants also assert that the harms that I found occurred after the release of the recordings have been "proven false" because NAF's report on violence and disruption (Daleiden Decl., Ex. 11) shows no increase in actual threats of harm. They exclude instances of threats and harassment that they believe should not have been counted (for example, incidents of constitutionally protected-picketing activity or "accidental" trespassing). NAF disputes defendants' attempt to downplay what it characterized as a significant increase in threats and harassment.

Much of this argument is simply a repeat of that made in opposition to NAF's motion for a preliminary injunction. The small amount of "new" evidence (mostly from discovery in the

---

facts. *See* Daleiden Decl. (Dkt. No. 547-1) ¶¶ 14-15.

[24] In the Executive Summary of the Report from the Senate Judicial Committee, the Report expressly disclaims any reliance on the CMP videos and noted that it reviewed over 20,000 documents from numerous sources. Senate Report at 1.

[25] I recognize that the Executive Summaries from the House Report characterize some of the CMP videos as showing "abortion providers and executives admitting that their fetal tissue procurement agreements are profitable for clinics and help keep their bottom line healthy. Multiple clips also show them admitting that they sometimes changed the abortion procedure in order to obtain a more intact specimen, and some use the illegal partial birth abortion procedure." House Report at xviii. The House Report does not identify the particular video segments it relies on to support those summaries, but having reviewed all of the video segments defendants relied on in opposition to the motion for a preliminary injunction, I disagree with the House Report's characterization. It is also significant, for purposes of defendants' motion here, that the House Report later noted, that "The Panel did not design its investigation to prove or disprove the credibility of tapes released by the Center for Medical Progress (CMP)." *Id*. at xix.

29

related *Planned Parenthood* case) is not as clear cut or significant as defendants contend.

Jurisdiction. Defendants raise, as a ground to dissolve or modify the injunction, their "lack of diversity jurisdiction" argument rejected above. There is no further need to discuss it.

New Law. Defendants place heavy weight on the *Wasden* decision, also discussed above. For the reasons given, suffice it to say that the *Wasden* decision – issued four months *before* the Ninth Circuit affirmed the injunction in this case – does not undermine any of the legal or factual findings supporting the Preliminary Injunction Order.

Daleiden's Criminal Prosecution. Defendants argue that the criminal prosecution of Daleiden requires a reassessment of the balancing of the public interest, which I found favored issuing the injunction. In particular, defendants argue that Daleiden has a constitutional, Sixth Amendment right to counter negative publicity by releasing to "the court of public opinion" the materials I enjoined in the Preliminary Injunction Order ("the Preliminary Injunction materials") so that the defendant may counter public perceptions, including those of potential jurors, that Daleiden's investigation was illegitimate.

Defendants may hold as many press conferences as they care too (unless restricted by Judge Hite). *But see Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) (recognizing importance of public awareness and criticism of government prosecutions, but allowing curtailment of extrajudicial statements by counsel where there is a "substantial likelihood of material prejudice" to the fairness of a judicial proceeding). But they have no constitutional right to further disobey the Preliminary Injunction Order.

Defendants also argue the "anti-injunction act" prevents the Preliminary Injunction from interfering with the state court criminal proceedings. But nothing in the Preliminary Injunction interferes with those proceedings. If Daleiden believes he needs to use Preliminary Injunction materials to support his defense, he can notify Judge Hite in advance of the specific portions of the materials he wants to use and seek leave from Judge Hite to file those materials under seal or in the public record or show those materials in open or closed court. If Judge Hite orders that some of the Preliminary Injunction materials may be released in some public manner to allow Daleiden to fully contest the criminal charges, Judge Hite may do so without my interference. That

determination rests with Judge Hite, not with defendants.[26]

There is, finally, no merit to defendants' argument that Judge Hite's recent protective order, requiring the use of Doe monikers and allowing the individuals who were allegedly illegally recorded by defendants to remain anonymous at least up to the preliminary hearing, supersedes the Preliminary Injunction Order. There is nothing in the protective order that discussed or otherwise allows defendants to use in open court (or unsealed filings) any of the Preliminary Injunction materials.

To be crystal clear, defendants' motion to dissolve or modify the Preliminary Injunction is DENIED. The Preliminary Injunction Order remains in full effect.

### C.    Clarification

I have repeatedly admonished defendants to seek clarification from me on what they can do with the Preliminary Injunction materials in advance of taking any action. Accordingly, defendants seek clarification on the following point: if a video enters the public domain through the criminal proceedings, may defendants' or their counsel comment on it, share it, or otherwise use it without violating the Preliminary Injunction? Mot. to Dissolve 24.

If Judge Hite rules that specific portions of the Preliminary Injunction materials may be used in open court or in unsealed pleadings, then defendants may come to me on an expedited basis under Civil Local Rule 7-11 (governing motions for administrative relief) for a modification or clarification of the Preliminary Injunction Order with respect to the collateral use they would like to make of the materials. Any such modification or clarification is premature at this juncture because Judge Hite has not (as far as I am aware) made any such rulings and because Judge Hite may himself restrict the scope of Daleiden's use of the Preliminary Injunction materials (for example, materials may be shown in open court to the judge or jury, but not be further disseminated).

---

[26] As Judge Hite is presiding over the criminal proceedings, he will have a better sense of what portion of the Preliminary Injunction materials Daleiden legitimately needs to use for his defense, whether any of those materials should be publicly disclosed in open court or unsealed filings, and if disclosed whether any further restrictions should be placed on the materials' use or dissemination.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss and the special motion to strike are DENIED. Defendants' motion to dissolve, modify, or clarify the Preliminary Injunction is DENIED, without prejudice to defendants seeking expedited relief under Civil Local Rule 7-11 based upon rulings of Judge Hite with respect to use of the Preliminary Injunction materials in the state court proceedings.

**IT IS SO ORDERED.**

Dated: November 7, 2018

William H. Orrick
United States District Judge