UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>    Defendants. | Case No.  15-cv-03522-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTIVE RELIEF**<br><br>Re: Dkt. Nos. 665, 669, 707 |

Plaintiff National Arbitration Federation (NAF) moves for entry of summary judgment on its claim of breach of contract against defendants Center for Medical Progress (CMP), BioMax Procurement Services (BioMax) and David Daleiden. NAF argues that given the claims pursued, evidence adduced, and judgments entered in a related case against defendants – *Planned Parenthood Federal of America, et al. v. Center for Medical Progress et al*., Case No. 16-cv-236 (*PPFA* case)[1] – summary judgment in its favor is appropriate as a matter of issue preclusion because the breaches of the same NAF contracts at issue here were determined against defendants in the *PPFA* case. As a remedy for those breaches, NAF seeks to convert the existing preliminary injunction into a permanent injunction that broadly prevents defendants from publishing or disclosing any recordings or other information learned at any NAF meeting, disclosing the dates or locations of any future NAF meeting, publishing or otherwise disclosing the names or addresses of any NAF members learned at any NAF meeting, and entering any NAF office, NAF meeting, or other NAF event by misrepresenting their true identity. Defendants respond that issue preclusion

---

[1] The remaining defendants in this case – Daleiden, CMP, and BioMax, herein referred to as "defendants" – were defendants in the *PPFA* case along with others who worked for CMP and/or conspired with Daleiden and CMP.

1    cannot prevent them from relitigating the issue of whether they breached NAF's contracts.  They

2    also argue that NAF's proposed permanent injunction is illegal and inappropriate under the

3    Copyright Act and is otherwise not merited.

4           As discussed below, issue preclusion is appropriate: The contract issues concerning these

5    parties were decided in the *PPFA* case.  Defendants' Copyright Act defense is insubstantial.  NAF

6    is entitled to a permanent injunction whose scope is cabined by the breach of contract claim.  It

7    may not enjoin conduct based on the broader set of claims that were proved in the *PPFA* case.

8                                      **BACKGROUND**

9           The parties are intimately familiar with the factual and procedural background of this case.

10   In brief, there is no dispute that Daleiden and others working for CMP secured entrance to the

11   2014 and 2015 NAF Annual Meetings using aliases and purporting to be exhibitors from a front

12   company, defendant BioMax.  While at those Annual Meetings, Daleiden and others

13   surreptitiously recorded hundreds of hours of footage of NAF staff, presenters, exhibitors, and

14   attendees.  These recordings were secured and portions of them were released as part of

15   defendants' Human Capital Project (HCP), whose goal was to expose abortion providers that

16   allegedly sold aborted fetal tissue for profit in violation of state and federal laws or who altered

17   abortion procedures in violation of state and federal laws to procure specimens to be sold to

18   researchers.

19          After NAF learned that defendants had secured access to its meetings, it sued defendants in

20   this court, secured a temporary restraining order (Dkt. Nos. 15, 27),[2] and then sought and secured

21   _____

22   [2] The TRO, entered initially on July 31, 2015, restrained and enjoined defendants and their
     officers, agents, servants, employees, and attorneys, and any other persons who are in active
23   concert or participation with them from:
           (1) publishing or otherwise disclosing to any third party any video, audio, photographic, or
24         other recordings taken, or any confidential information learned, at any NAF annual
           meetings;
25         (2) publishing or otherwise disclosing to any third party the dates or locations of any future
           NAF meetings; and
26         (3) publishing or otherwise disclosing to any third party the names or addresses of any
           NAF members learned at any NAF annual meetings.

27   Dkt. No. 15.  On August 3, 2015, after reviewing the arguments and additional evidence submitted
     by defendants, I issued an order keeping the TRO in place pending the hearing and ruling on
28   NAF's motion for a preliminary injunction. Dkt. No. 27.

a preliminary injunction (Preliminary Injunction).  The Preliminary Injunction enjoined defendants from:

> (1) publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings;
> (2) publishing or otherwise disclosing to any third party the dates or locations of any future NAF meetings; and
> (3) publishing or otherwise disclosing to any third party the names or addresses of any NAF members learned at any NAF annual meetings.

Dkt. No. 354 (Preliminary Injunction) at 42.[3]

At that juncture, NAF adequately demonstrated a likelihood of success on the merits of its breach of contract claim, showing that defendants agreed to and then violated NAF's Exhibitor Agreements (EA) and Confidentiality Agreements (CA) (collectively NAF Agreements) that were required for access to NAF's 2014 and 2015 Annual Meetings.  NAF showed that defendants: (i) breached the EAs by misrepresenting BioMax and their own identities; (ii) breached the EAs and CAs by secretly recording during the Annual Meetings; and (iii) breached the EAs and CAs by disclosing and publishing NAF's confidential materials.  Preliminary Injunction Order at 20-26.[4]

At various points during the pendency of this litigation, the contours of the Preliminary Injunction have been discussed and refined.  In July 2017, when I held that Daleiden and his criminal defense counsel were in civil contempt for violating the terms of the Preliminary Injunction and releasing NAF Materials to the public, Dkt. No. 482, I ordered that CMP and Daleiden "turn over to counsel all materials covered by the PI Order and must not retain control over any of that material, absent further Order of this Court or the Superior Court handling the criminal matter.  Absent an order from this Court or the Superior Court providing Daleiden with greater access to that material, Daleiden may only access the PI material onsite at the offices of

---

[3] The material covered by the first section of the Preliminary Injunction ("any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings") is referred to herein as NAF Material.

[4] The Ninth Circuit affirmed the Order Granting the Preliminary Injunction at *Natl. Abortion Fedn., NAF v. Ctr. for Med. Progress*, 685 Fed. Appx. 623 (9th Cir. 2017) (unpublished).  In July 2018, NAF voluntarily dismissed some of its claims. Dkt. No. 542.  The remaining claims in the operative First Amended Complaint (FAC) are: (i) Third Cause of Action for Civil Conspiracy; (ii) Fourth Cause of Action for Promissory Fraud; (iii) Fifth Cause of Action for Fraudulent Misrepresentation; and (iv) Sixth Cause of Action for Breach of Contact(s).

United States District Court
Northern District of California

[his criminal defense counsel] or his civil defense counsel." *Id*. at 23-24.  With respect to the pending criminal proceedings against Daleiden, that Order emphasized:

> As the criminal case progresses, I will not interfere with Judge Hite's determinations concerning what information about the Does or what portion of the relevant recordings should become publicly accessible or disclosed in connection with the criminal pre-trial and trial proceedings. Those determinations are Judge Hite's, not Cooley's, Ferreira's or Daleiden's.

*Id*. at 20.

In November 2018, I again considered the Preliminary Injunction's scope when addressing defendants' motions to dismiss and strike and their request that the Preliminary Injunction be dissolved, modified, or clarified in light of Daleiden's argument that the injunction infringed on his constitutional rights to present his defense to the state criminal charges.  Dkt. No. 572.  I declined to modify or dissolve the injunction.  I reiterated:

> [N]othing in the Preliminary Injunction interferes with [the criminal proceedings in Superior Court].  If Daleiden believes he needs to use Preliminary Injunction materials to support his defense, he can notify Judge Hite in advance of the specific portions of the materials he wants to use and seek leave from Judge Hite to file those materials under seal or in the public record or show those materials in open or closed court.  If Judge Hite orders that some of the Preliminary Injunction materials may be released in some public manner to allow Daleiden to fully contest the criminal charges, Judge Hite may do so without my interference.  That determination rests with Judge Hite, not with defendants.

*Id*. at 30-31; *see also id*. 30 n.26 (noting also, "[a]s Judge Hite is presiding over the criminal proceedings, he will have a better sense of what portion of the Preliminary Injunction materials Daleiden legitimately needs to use for his defense, whether any of those materials should be publicly disclosed in open court or unsealed filings, and if disclosed whether any further restrictions should be placed on the materials' use or dissemination.").  I further emphasized that:

> If Judge Hite rules that specific portions of the Preliminary Injunction materials may be used in open court or in unsealed pleadings, then defendants may come to me on an expedited basis under Civil Local Rule 7-11 (governing motions for administrative relief) for a modification or clarification of the Preliminary Injunction Order with respect to the collateral use they would like to make of the materials.

*Id*. at 31.

After my order denying defendants' motions to dismiss and strike and to modify or

dissolve the Preliminary Injunction were affirmed by the Ninth Circuit, and in light of the fact that

the *PPFA* case had been tried and a final judgment would be entered, I agreed with NAF's

proposal that its motion for summary judgment on the breach of contract claim and request for

permanent injunctive relief be determined separately from the rest of its remaining claims.  NAF

repeatedly committed that "in the event it secures summary judgment on its contract claim and a

permanent injunction, NAF will dismiss all remaining claims with prejudice, ending this case."

Dkt. Nos. 620 at 3; 538 at 3.

    During the *PPFA* case, the issue of Daleiden, CMP, and BioMax's breach of the NAF

Agreements was resolved against them.  I found based on undisputed facts at summary judgment

that in order to gain access to NAF's 2014 and 2015 Annual Meetings, Daleiden (acting on behalf

of CMP and purporting to be an exhibitor from BioMax) signed and then breached provisions of

both NAF's Exhibitor Agreements (EAs) and Confidentiality Agreements (CAs).  Dkt. No. 753

(*PPFA* Order on Summary Judgment) at 43; *see also id*. at 45-49 (rejecting defendants' arguments

that the NAF Agreements were void for lack of consideration or vagueness).[5]  During trial, I

granted plaintiffs' Rule 50 motion regarding the NAF contracts, concluding that the undisputed

evidence showed:

> that Plaintiffs' Rule 50 motion should be granted as to the breach of
> the NAF Agreements, specifically as to defendants Merritt, Daleiden,
> BioMax, and CMP in 2014 and defendants Daleiden, Lopez, BioMax,
> and CMP in 2015 concerning the first term of the 2014 and 2015
> Confidentiality Agreements prohibiting "Videotaping or Other
> Recording" and as to defendants Daleiden, BioMax, and CMP with
> respect to the NAF Exhibitor Agreements in 2014 and 2015
> concerning the requirement to provide "truthful, accurate, complete,
> and not misleading" information. I reject defendants' arguments as to
> ambiguity, the liability of CMP and BioMax through their agents
> (Daleiden, Lopez, Merritt), and lack of consideration. A reasonable
> jury would not have a legally sufficient basis to find otherwise.

*PPFA* Rule 50 Order, Dkt. No. 994, at 1-2.[6]

---

[5] In connection with these motions, exemplars of the CA and EAs signed by defendants are
attached as Exhibits 11-13 in connection with NAF's Motion for Summary Judgment and
Permanent Injunction.  Dkt. Nos. 666-11 through 666-13.

[6] The trial testimony and evidence PPFA cited to support the Rule 50 motion on breach of the
NAF Confidentiality and Exhibitor Agreements included: Trial Exs. 228, 248, 352, 370, 568,

United States District Court
Northern District of California

The jury subsequently found that defendants' breach of the 2014 and 2015 NAF Agreements caused PPFA $49,360 in damages.  *PPFA Verdict*, Dkt. No. 1016 at 7.  In April 2020, I entered judgment following the Rule 50 Order, the jury's Verdict, and my findings and conclusions on plaintiffs' Unfair Competition Law Claim (UCL).  *PPFA UCL Order*, Dkt. No. 1974.  I also granted plaintiffs' request for a permanent injunction based on their success on their illegal recording, fraud, trespass, and UCL claims, entering an injunction that was narrower than plaintiffs sought.[7]  *PPFA Judgment*, Dkt. No. 1074.  I denied defendants' post-trial motions in August 2020.  *PPFA Order on Post-Trial Motions*, Dkt. No. 1116.

Returning to this case, I agreed for purposes of efficiency to resolve the narrow issue of the preclusive effect of the *PPFA* Verdict and Judgment on NAF's breach of contract claim and the permanent injunctive relief to which NAF might be entitled under that claim here on the evidence

---

1012, 6064; Trial Tr. 413:20-415:23, 426:1-6, 445:22-446:24, 447:6-10, 487:25, 611:23-615:17, 2088:1-15, 2172:22-2173:5, 2173:10-23; 2112:12-16, 2198:10-12, 2209:6-2211:6, 2212:21-2213:5, 2233:21-2235:15, 2468:9-13, 2469:13-15, 3588:23-3589:13.  *See PPFA* Dkt. No. 979 at 2-3.

[7] The *PPFA* permanent injunction provides:

A. Upon service of this Order, all Defendants (except Lopez, unless he is acting in concert or participation with another Defendant) and their officers, agents, servants, employees, owners, and representatives, and all others persons who are in active concert or participation with them are permanently enjoined from doing any of the following, with respect to PPFA, PPNorCal, PPPSW, PPOSBC, PPCCC, PPPSGV, PPRM, and PPGC/PPCFC:
    (1) Entering or attempting to enter a PPFA conference, or an office or health center of any plaintiff identified above, by misrepresenting their true identity, their purpose for seeking entrance, and/or whether they intend to take any video, audio, photographic, or other recordings once inside; and
    (2) recording, without the consent of all persons being recorded (where all party consent is required under the laws of the state where the recording is intended):
        (a) any meeting or conversation with staff of a plaintiff identified above that Defendants know or should know is private; or
        (b) in a restricted area at a PPFA conference or restricted area of an office or health center of any plaintiff identified above. "Restricted area" is defined as areas not open to the general public at the time of the recording, for example areas requiring registration or an appointment to access.
B. In addition, Defendants shall serve a copy of this injunction on any person who, in active concert or participation with Defendants, either has or intends to enter a restricted area at a PPFA conference or property of any plaintiff identified above or to record the staff of any plaintiff identified above without securing consent of all persons being recorded (where that consent is required under the laws of the state where the recording is intended), and provide Plaintiffs with proof of service thereof.
*Id*. at 9-10.

presented in the *PPFA* trial and in this case.  This motion followed.

## DISCUSSION

## I.      SUMMARY JUDGMENT BASED ON PRECLUSION

NAF moves for entry of summary judgment on its breach of contract claim.  It argues that principles of issue preclusion prevent defendants from relitigating their breaches of the NAF EAs and CAs.

### A.      Legal Standard

Issue preclusion, or collateral estoppel, is appropriate when: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000).

### B.      Factors

Defendants do not dispute NAF's showing – and my independent conclusion having presided over the *PPFA* case – that defendants had a full and fair opportunity to litigate the issue of defendants' breaches of the NAF Agreements.  That issue was actually litigated and determined against defendants, and the defendants here were defendants there.

Instead, defendants argue that collateral estoppel is not appropriate because the NAF breach of contract claim in the *PFFA* case was not identical to the alleged breach of the NAF Agreements here.  *See, e.g.*, *Grimes v. Ayerdis*, 16-CV-06870-WHO, 2018 WL 3730314, at *5 (N.D. Cal. Aug. 6, 2018) ("For collateral estoppel to apply, defendants must show that the estopped issue is identical to an issue already litigated and that the issue was decided in the first case.").  Defendants point out that the breach claim that supported the Preliminary Injunction in this case was based on three portions of the NAF EAs and CAs:  (i) misrepresentation prohibitions (EA, ¶ 15), (ii) taping/recording prohibitions (CA, ¶ 1), and (iii) non-disclosure provisions (CA ¶ 17, CA ¶ 3).[8]  Defendants contrast that with the *PPFA* case, where the breach of the NAF

---

[8]  The EAs required exhibitors to affirm they (1) have a legitimate business interest in reaching reproductive health care professionals (*id*. ¶ 1); (2) will "truthfully [and] accurately" represent

United States District Court
Northern District of California

Agreements Judgment and Verdict was based only on the (i) misrepresentation prohibitions (EA, ¶ 15) and the (ii) taping/recording prohibitions (CA, ¶ 1). That is a distinction without a difference: the identical issue – breach of the NAF EAs and CAs – was established in the *PPFA* case[9]

Defendants also argue that there is a material dispute over whether NAF suffered "actionable harm." Oppo. at 12-13. Not so. The NAF EAs provide that "monetary damages would not be a sufficient remedy for any breach" of the EAs and that "NAF [would] be entitled to specific performance and injunctive relief as remedies" for any breach. EA ¶ 18. Defendants do not separately challenge that provision of the EAs except with respect to the scope of appropriate relief.[10]

Defendants maintain that NAF failed to show a knowing and voluntary waiver of their First Amendment rights when defendants signed the EAs and CAs to attend the 2014 and 2015 Annual Meetings. Oppo. at 13-14. That does not prevent application of issue preclusion or undermine NAF's "success on the merits" showing. I rejected that argument at the Preliminary Injunction stage and defendants had a full opportunity to raise it in the *PPFA* case. *See, e.g., Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined."). The defendants' First Amendment arguments do not defeat preclusion or otherwise weigh against entry of judgment on the breach of contract claim.[11]

---

their business at the meetings (*id*. ¶¶ 15, 19); and (3) will keep all information learned at the meetings in confidence and not disclose that information to third parties without NAF's consent. *Id*. ¶ 17. The *PPFA* Verdict and Judgment were based on violation of (1) and (2) only and did not reach (3).

[9] Defendants' arguments in their Opposition identifying "issues of material fact" regarding breach of the non-disclosure provisions in the EAs or CAs are irrelevant, as those provisions are not relied on by NAF as bases for preclusion here. Reply at 2-3. But, defendants' arguments regarding the non-disclosure *and* the other provisions of the NAF Agreements (as void for lack of mutual assent, as adhesive, and as unconscionable) were rejected in this case at the Preliminary Injunction stage. Oppo. at 8-12; *see also* Preliminary Injunction Order, Dkt. No. 354 at 23-26, 28-29.

[10] Moreover, actionable harm is readily established given that, "nominal damages [] are presumed as a matter of law to stem merely from the breach of a contract." *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (Cal. App. 3d Dist. 1959).

[11] Contrary to defendants' characterization, just because NAF seeks injunctive relief and cites

1   Summary judgment is GRANTED and entered in NAF's favor on the breach of contract

2   claim.

3   **II.     PERMANENT INJUNCTION**

4   **A.     Legal Standard**

5   According to well-established principles of equity, a plaintiff seeking
a permanent injunction must satisfy a four-factor test before a court

6   may grant such relief. A plaintiff must demonstrate: (1) that it has
suffered an irreparable injury; (2) that remedies available at law, such

7   as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff

8   and defendant, a remedy in equity is warranted; and (4) that the public
interest would not be disserved by a permanent injunction.

9   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In addition, to establish standing

10  plaintiffs must demonstrate a "real and immediate" threat of future injury without an injunction to

11  justify injunctive relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

12  **B.     NAF's Proposed Injunction**

13  NAF asks me to enter the following permanent injunction based solely on its breach of

14  contract claim:

15  All Defendants and their officers, agents, servants, employees,

16  owners, and representatives, and all other persons, firms, or
corporations acting in concert or participation with them, are hereby

17  permanently restrained and enjoined from:

18  1) Publishing or otherwise disclosing to any third party any
video, audio, photographic, or other recordings taken, or any

19  confidential information learned, at any NAF meeting;

20  2) Publishing or otherwise disclosing to any third party the
dates or locations of any future NAF meeting;

21

22  3) Publishing or otherwise disclosing to any third party the
names or addresses of any NAF members learned at any NAF

23  meeting;

24  4) Entering or attempting to enter a NAF office, NAF meeting,
or other NAF event by misrepresenting their true identity,

25  their purpose for seeking entrance, and/or whether they intend
to take any video, audio, photographic, or other recordings

26  once inside;

27  _____

28  evidence from the *PPFA* trial and the record in this case to address the relevant injunction factors
(*i.e.*, irreparable injury, balance of hardships, public interest), that does not mean that NAF is
seeking to remedy a "reputational injury" through its breach of contract claim.  Oppo. at 12-13.

United States District Court
Northern District of California

5) Retaining possession of any materials covered by this permanent injunction. Any and all such materials covered by this permanent injunction must be turned over to counsel of record in this matter, the identity of whom shall be disclosed to this Court. Access to any and all such materials by individuals covered by this permanent injunction shall occur only onsite at the offices of said counsel and subject to the supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.).

Nothing in this permanent injunction shall prevent the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from making orders about how materials covered by this injunction can be used in those proceedings.

Dkt. No. 665-4.

The scope of the requested permanent injunction is broader than the Preliminary Injunction. It effects a permanent dispossession of the recordings and NAF Materials from defendants and adds a provision barring defendants and their agents from entering or attempting to enter NAF offices or events by misrepresenting their identity or with the intent to take video or audio recordings.

## C.    Defendants' General Arguments on the Remedy

Defendants make threshold arguments over whether an injunction is an appropriate remedy in the first place. They contend that injunctive relief is not an appropriate form of relief for NAF's breach of contract claim because NAF is seeking to protect itself from "reputational harm." I disagree; the relief granted below is directly related to and stems from defendants' breach of specific provisions in the NAF Agreements. Relatedly, defendants assert that any permanent injunction would impermissibly trample on their First Amendment rights to disclose what they learned and recorded at the NAF Annual Meetings. But to repeat what I wrote earlier, the EAs, specifically provide that exhibitors agree that "monetary damages would not be a sufficient remedy for any breach" of the EAs, and that "NAF [would] be entitled to specific performance and injunctive relief as remedies" for any breach. EA ¶ 18.

As noted, I rejected defendants' argument at the Preliminary Injunction stage that NAF has not shown that defendants knowingly and intelligently signed the EAs, such that they voluntarily waived their First Amendment rights. Defendants also had a full and fair opportunity to litigate

10

that defense in the *PPFA* case.[12]  The evidence at the *PPFA* trial established that Daleiden *knew* what he was signing when he signed the two EAs and signed at least one CA for the 2014 NAF conference given his own, personal experience with NDAs.  His testimony that he had a different, subjective understanding of what the NAF CA covered or what the NAF EAs meant was not reasonable nor relevant to enforceability.  *See, e.g.*, Trial Tr., 2487:5-25, 2489:4-2490:4, 2491:1-22, 2509:10-22, 2510:15-2511:13, 2660:3-6, 2722:7-14.  Defendants' general arguments against permanent injunctive relief fail.

### D.    Irreparable Injury and Inadequate Remedies at Law

NAF argues that evidence in the *PPFA* trial and the declarations submitted and depositions taken in this case demonstrate the emotional harm that defendants' prior release of NAF Materials inflicted on NAF's own staff and NAF members; it caused NAF's staff worry and concern over their own and their colleagues' safety and their ability to have full and frank conversations and to share information at future NAF meetings.[13]  NAF also points to evidence that its members suffered a "significant" increase in harassment, threats, and violent incidents following defendants' 2015 and 2017 releases of the NAF Materials and argues that these results are more than likely to recur if defendants are not enjoined from future disclosures.[14]  It explains that following the 2015 and 2017 releases, it had to divert significant resources that otherwise would have been used to provide support for NAF members and their services to investigating, responding to, and providing additional security resources in response.[15]  NAF contends these are irreparable injuries that are not adequately addressed through remedies at law and that justify

---

[12] Defendants raised a host or arguments as to why the NAF Agreements were otherwise void or unenforceable on summary judgment in the *PPFA* case.  Those arguments were rejected.  *PPFA* Summary Judgment Order, Dkt. No. 753, at 43, 45-49.  As noted above, similar arguments were rejected at the Preliminary Injunction stage in this case.

[13] Declaration of Melissa Fowler, Dkt. No. 665-1, ¶¶ 6-8, 10; Declaration of Michelle Davidson, Dkt. No. 665-2, ¶¶ 3-5; *see also PPFA* Trial Tr. 993:10-994:14, 1378:10-1379:6, 1490:13-22, 1513:14-20, 1558:13-21,1978:6-7.

[14] *See* Davidson Decl., ¶¶ 10-13, 15-16, 18, 21-22; *see also* Pl. Ex. 9 Deposition of Vicki Saporta at 39:13-20; *PPFA* Trial Tr. 1516:6-1517:7, 1675:24-1676:19.

[15] *See* Fowler Decl. ¶¶ 11-12; Davidson Decl., ¶¶ 14, 17, 19-21, 23-24, 26.

permanent injunctive relief.  I agree.

Defendants attempt to dispute some of NAF's evidence by relying on their security expert, Jonathan Perkins.  Dkt. No. 707-6, ("Expert Report of Jonathan Perkins").  He attacks the opinions of NAF's Security Director Michelle Davidson concerning the increase in threats and incidents of violence following the 2015 and 2017 release of recordings because: (i) Davidson lacked formal "training" in security and NAF did not adhere to the FBI's standard for categorizing criminal incidents, meaning that NAF and Davidson are not able to "properly evaluate and classify security incidents," *id*. ¶¶ 15-18, 26; (ii) NAF lacked a form for recording security incidents and Davidson took member reports at their word and conducted no further investigation, *id*. ¶¶ 15, 17; and (iii) NAF's reporting system did not allow for an "accurate assessment" of what security resources are necessary to address the purported harm or threat.  *Id*. ¶¶ 15, 17, 20.

According to Perkins, these deficiencies result in a "faulty data set" that does not consistently or accurately distinguish between "true threats" and incidents that pose no "real risk." *Id*. ¶ 20.  He also points to data tracking serious incidents taking place directly "at" health centers in California as reflected in the California's Department of Justice's data tracking "Anti-Reproductive Rights Crimes (ARRC)," which showed a lack of "significant" criminal activity during the two-year period prior to and after the CMP videos containing NAF Materials were released in 2015.  According to Perkins, the California DOJ data shows a decrease in property damage and no violent crimes occurring "at health centers in California" during those timeframes. *Id*. ¶¶ 29-31, 33.

These arguments do not undermine NAF's showing.  The California DOJ data is not persuasive because the incidents of threats and harassment on which NAF relies are primarily "threats" and "harassment" directed at the individuals highlighted in the CMP videos (and not necessarily towards the property of the health centers where they worked), as well as incidents outside of California.  Perkins does not show that those types of incidents would be tracked by the California DOJ.  *See* Davidson Decl. ¶ 16 ("In total, during the last half of 2015, NAF reported 69 threats we had uncovered through our monitoring to the [federal] DOJ for investigation. This number far exceeded any other time period during my time at NAF up to that point.").  More

United States District Court
Northern District of California

significantly, Perkins disputes only whether *some* of the incidents experienced by NAF members following the 2015 and 2017 releases of the CMP videos containing NAF Materials were "true threats" or mere protests or angry responses to the activities of NAF members.  Perkins Report ¶¶ 27-28.  Perkins does not dispute that following the 2015 and 2017 releases, NAF members received significant, actual threats, some of which directly referenced the content of the CMP videos.  Instead, he simply disputes the number by arguing that some did not rise to the level of true criminal threats or criminal harassment.

Having presided over the *PPFA* trial, which included testimony of NAF staff and NAF members, and having reviewed all of the evidence identified by NAF on this motion, I find that NAF has adequately alleged irreparable injury as well as the likelihood of future irreparable injury if defendants are not permanently enjoined from releasing the NAF Materials.  These injuries are not adequately addressed at law.  This significant showing of irreparable and unredressable injury – disputed by defendants only to its extent but not fully to its existence – is sufficient. *See also* UCL Order, Dkt. No. 1073 in *PPFA* case, 16-236 at 21-22.  My conclusion is only strengthened by the provision in the EAs, discussed above, where defendants agreed that "monetary damages would not be a sufficient remedy for any breach" of the EAs, and that "NAF [would] be entitled to specific performance and injunctive relief as remedies" for any breach.  EA ¶ 18.  NAF has satisfied these factors in support of permanent injunctive relief.[16]

### E.    Balance of Hardships

The balance of hardships weighs in favor of permanent injunctive relief preventing defendants from disclosing the NAF Materials.  As noted above, ample evidence exists supporting NAF's claim of irreparable injuries following the 2015 and 2017 CMP video releases.  Similar injuries would likely occur again if there were future releases of NAF Material.

Defendants contend that the balance of hardship tips in their favor because they have a

---

[16] Defendants argue that there is no "causal relationship" between the 2015 release and the alleged instances of harm and threats because any such incidents are – according to defendants – attributable to the "negative sentiment surrounding the abortion industry" and that NAF failed to identify which specific portions of the CMP videos led to specific threats or violence to NAF's members.  Oppo. at 24.  Defendants provide no support for requiring that granular level (and likely unproveable) showing to support permanent injunctive relief.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   First Amendment right to publish the recordings and any permanent injunction would constitute an

2   impermissible prior restraint.  Oppo. at 25-26.  But as the Ninth Circuit recognized in affirming

3   the Preliminary Injunction, "[e]ven assuming arguendo that the matters recorded are of public

4   interest, however, the district court did not clearly err in finding that the defendants waived any

5   First Amendment rights to disclose that information publicly by knowingly signing the agreements

6   with NAF."  *Natl. Abortion Fedn., NAF v. Ctr. for Med. Progress*, 685 Fed. Appx. 623, 626 (9th

7   Cir. 2017) (unpublished).  Defendants point to no *new* evidence to support a theory that Daleiden's

8   signing of the EAs and CAs was not voluntary and knowing and that it did not effectuate a full

9   waiver of any First Amendment rights he might otherwise have possessed.  Indeed, the *PPFA* trial

10  testimony demonstrated Daleiden's intimate familiarity with and his own frequent use of NDAs.

11  His attempt to downplay that experience by claiming that he had a subjective belief that the NAF

12  CAs were not as broad as they were expressly drafted was unreasonable and unpersuasive.

13       In terms of hardship and the public interest (addressed in more depth below), it bears

14  emphasizing that there is no evidence that the Preliminary Injunction – which has been in place

15  since 2015 – has ever stood in the way of law enforcement or governmental investigations or that

16  it has hindered any part of the criminal prosecution of Daleiden in California state court.  I have

17  repeatedly offered to make and made myself available on an expedited basis to hear the

18  defendants' or investigatory requests for access to the NAF Materials and to address any concerns

19  with the scope of the Preliminary Injunction.  *See, e.g.*, Dkt. Nos. 374, 378, 382, 572; *see also* Dkt.

20  No. 155 at 3:12-14.  Likewise, I have repeatedly confirmed Judge Hite's authority to make

21  decisions about how the NAF Materials should be treated in his court, including regarding

22  defendants' access to the Materials and for their use in court.  *See, e.g.,* Dkt. Nos. 572, 594.[17]

23       Finally, in considering the Unfair Competition Law claim (Cal. Bus. & Prof. Code § 17200

24  *et seq.*) and granting injunctive relief in the *PPFA* case, I identified numerous facts that supported

25

26  [17] Daleiden nonetheless argues that the Preliminary Injunction has harmed his ability to prepare
    his defense.  *See* Declaration of David Daleiden (Dkt. No. [707-9]) ¶¶ 106-108.  But Judge Hite

27  has determined what is necessary and relevant for Daleiden to prepare and present his defense
    with respect to the NAF Materials.  Daleiden is free to seek further relief from Judge Hite as his

28  criminal defense counsel see fit.

United States District Court
Northern District of California

injunctive relief in that case and that likewise support injunctive relief here.  Those facts include: the steps defendants took to effectuate their fraudulent scheme of misrepresentation and surreptitious recordings at the NAF Annual Meetings; their goal to create "maximum negative impact – legal, political, professional, public – on [Planned Parenthood]" and others in the "abortion industry;" their "ability to continue the activities found to be illegal by the jury; and Daleiden and CMP's intent to release more videos through CMP from their surreptitious recordings.  *PPFA* UCL Order, Findings of Fact 3, 56, 58-60; *id.* at 22-25 (finding balance of hardships tips sharply in favor of injunctive relief); *see also* PPFA Trial Tr. 2294:20-22 (expressing intent to release more recordings); Fowler Decl. ¶ 14.

> The balance of hardships here tips sharply in favor of injunctive relief, albeit not as broadly as sought by NAF.[18]

### F.     Public Interest

> The public interest also weighs in favor of permanent, injunctive relief.  Defendants argue to the contrary by pointing to the various federal, state, and local investigations that their HCP videos prompted, resulting in investigations, prosecutions, and regulatory terminations and guidance.[19]  Defendants do not, however, identify any NAF Materials specifically identified by or

---

[18] Defendants' First Amendment arguments are not irrelevant.  As discussed below, they weigh against restricting the future conduct of defendants beyond that expressly covered by the NAF Agreements at issue.

[19]  On the federal level, the investigations included an investigation by the House of Representatives' Select Investigative Panel (within the Energy and Commerce Committee), and an investigation by the Senate Judiciary Committee that led to "criminal and regulatory referrals to federal, state, and local law enforcement entities," including an investigation by the federal Department of Justice.  Oppo. at 3-4.  Defendants note that the U.S. Department of Health & Human Services terminated the FDA's contract with NAF-member Advanced Bioscience Resources because ABR had not assured HHS that it was not selling fetal tissue for valuable consideration.  The National Institutes of Health published "new considerations for researchers to make sure they understand their duty to comply with the prohibition on selling fetal tissue."  *Id.* at 4-5.  At the state level, defendants add that the Texas Health and Human Services Division ("Texas HHS") terminated the enrollment of various NAF-member Planned Parenthood franchises in the Texas Medicaid Program, a decision affirmed by the Fifth Circuit in *Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020).  At the local level, defendants state that the Orange County, California, District Attorney prosecuted two companies for illegally re-selling fetal tissue and that the Arizona Attorney General prosecuted a NAF-member Camelback Family Planning for illegally transferring fetal tissue to a NAF-member company and NAF tradeshow sponsor StemExpress, LLC.  *Id.* at 4.

United States District Court
Northern District of California

relied on by those entities that led directly to any of the prosecutions or regulatory actions.[20] Defendants also neglect to mention that my personal review of the NAF recordings (those identified by defendants that, in their view, showed NAF members willing to engage in or admitting to illegal conduct) and other information defendants secured at the 2014 and 2015 NAF Annual Meetings, disclosed no criminal activity.  Defendants do not identify any overlooked or unidentified-before-now NAF recordings to support their repeated claims about the contents of those recordings.[21]  Simply put, while some *part* of the HCP resulted in government investigations, criminal prosecutions, and regulatory activity, there is at most a weak connection between those activities and the specific NAF Materials covered by the Preliminary Injunction.

As I recognized in the *PPFA* case when entering the permanent injunction there and in issuing the Preliminary Injunction here, future release of additional NAF Materials creates a significant risk of future threats and harassment with the irreparable and unredressable consequences identified above.  While enjoining the release of the recordings from the 2014 and 2015 Meetings will not ensure that the next NAF Annual Meeting will be a safe and secure space for participants to discuss their work and concerns, release of the past recordings will continue to harm that aim.  The public interest will be served by enforcing the NAF Agreements, including EA provision allowing for injunctive relief.

### G.     Copyright Defense

Defendants also claim that Daleiden's copyright in the recordings taken at the 2014 and 2015 NAF Annual Meetings bars any permanent injunction that would prevent his use of the recordings, dispossess him of those recordings, or prevents him from registering his works with

---

[20] For example, the Texas proceedings and Fifth Circuit opinion focused on recordings made and information secured in Texas and the prosecutions in Orange and Maricopa Counties presumably relied on recordings of StemExpress staff, all of which fall outside the enjoined NAF Materials.

[21] The "expert report" of Dr. Forrest Smith does not alter that conclusion.  Dkt. No. 707-7.  I had excluded it from the *PPFA* trial as irrelevant, but he amended it and submitted it here to support defendants' public interest argument  The Smith Report is mentioned only in passing in defendants' opposition brief as supporting defendants' arguments that the NAF recordings show "information concerning violations of law, willingness to violate the laws, public health and safety, and matters of great public importance."  Oppo. at 13-14.  As defendants do not themselves rely on specific portions of the Smith Report, it is not appropriately considered on this motion.

the Copyright Office under 17 U.S.C. § 407(a)(1) to fully benefit from the protections of the Copyright Act.  They have not raised this issue before.  Daleiden argues that under Section 201(e) of the Copyright Act, his rights to the recordings and his ability to make derivative works therefrom are protected and cannot be infringed by the requested injunction.[22]

NAF does not dispute that the audio recordings Daleiden took could theoretically possess the minimal degree of creativity required to be copyrightable or that Daleiden could theoretically be considered the "author" of the recordings.[23]  Instead, it argues that its contract rights trump potential Copyright Act rights.  *See* 17 U.S.C. § 301 ("(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106"); *see also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) ("Most courts have held that the Copyright Act does not preempt the enforcement of contractual rights.").  The relevant contract rights are the CAs and EAs that defendants have violated, which were entered into as a condition of Daleiden gaining access to the Annual Meetings and that he signed before he made any of the recordings at issue.

Defendants cite no authority that recordings made in violation of a contract can be copyrighted when but-for the breach (established here) the recordings would not have been made.  The cases defendants rely on – dealing with content that the law might consider illegal, *e.g.,* obscene materials or gambling games (Oppo. at 19-20) – do not establish that content *can* be copyrighted if it was illegally procured and the other contracting-party has a right to enjoin or restrict its distribution.[24]

---

[22] 17 U.S.C. § 201(e) provides: "Involuntary Transfer.--When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11."

[23] NAF does reserve its right to contest Daleiden's ownership of copyrights in the NAF Materials, if any, in a future proceeding.  Reply at 10 n.5.

[24] Defendants' made-in-passing argument – that I am without power to enjoin defendants from submitting illegally obtained materials to the Copyright Office because registering copyrights is an

17

NAF also argues that Section 201(e) of the Copyright Act cannot apply to these recordings for two independent reasons. First, the section only precludes *involuntary* transfers. Here, Daleiden voluntarily gave up his right to record and disseminate information by signing the EAs and CAs. *See, e.g., Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 997 (9th Cir. 2014) (noting section 201(e) is concerned with involuntary transfers of works owned by the author). Second, the recordings must be vested in an "individual author" who cannot be a corporate entity. NAF contends that Daleiden repeatedly testified in this and the *PPFA* case that CMP owns the "recordings." *Intl. Code Council, Inc. v. UpCodes, Inc.*, 17 CIV. 6261 (VM), 2020 WL 2750636, at *14 (S.D.N.Y. May 27, 2020) ("Claims regarding the Copyright Act are equally inapposite, as 17 U.S.C. Section 201(e) applies only to copyrights held by individual rather than corporate authors and more fundamentally 'addresses government actions avowedly intended to coerce a copyright holder to part with his copyright, so that the government itself may exercise ownership of the rights.'").

On the second issue, at oral argument Daleiden contended that while the CMP possesses the copyrights to the HCP videos (the produced videos released as part of the HCP), he still owned the rough footage. That dispute is not material. The point remains that a permanent injunction covering recordings that were only created in violation of an express contract does not effectuate the sort of involuntary transfer prohibited by Section 201(e).

Finally, defendants' attempt to draw distinctions between the "confidential" material that in their view might be covered by the EAs and CAs and other material captured on the recordings (*e.g.*, conversations between Daleiden or his co-conspirators pretending to be exhibitors for BioMax and individuals who voluntarily approached their exhibitor table) does not assist defendants. All conversations in the Exhibitor Hall – restricted space that was part of the NAF Annual Meetings – were covered by the EA and CA and only occurred as a result of the defendants' violations of the EA and CA.

---

act in furtherance of a person's constitutionally protected right to petition under California's anti-SLAPP law (Cal. Code of Civ. Proc. § 425.16) – is wholly without support.

United States District Court
Northern District of California

In short, the Copyright Act does not bar a permanent injunction restricting the dissemination of and access to the NAF Materials, even if that injunction restricts the ability of Daleiden to submit the NAF Materials to the Copyright Office.

### H.      Scope

Considering all of the relevant factors, and the evidence in support, I agree that NAF is entitled to permanent injunctive relief that precludes defendants and their agents from publishing or otherwise releasing the recordings they took at NAF's 2014 and 2015 Annual Meetings.  That the injunction might benefit Planned Parenthood affiliates who did not attempt to enjoin distribution of recordings taken at the NAF Meetings through the *PPFA* case does not mean that the requested injunction is overbroad or that NAF is precluded from seeking it.  NAF is asserting its own rights that also benefit its members as third-party beneficiaries to the NAF Agreements, as noted throughout this case and the related *PPFA* case.  This includes the Planned Parenthood affiliates who litigated the *PPFA* case and hundreds of other NAF members who were not involved in the *PPFA* litigation.  In the end, the benefit to third-party beneficiaries does not mean that separate relief cannot be sought by NAF as the first-party beneficiary, especially considering that the EA provides specifically for equitable relief.  NAF has its own significant interests in preventing disclosure of the NAF Materials.[25]

That said, the permanent injunction must be based solely on NAF's breach of contract claim and must be supported by the evidence in this case (submitted at the Preliminary Injunction

---

[25] The posture of this case with respect to the *PPFA* case, as well as the nature of the relationship between NAF and PPFA and the Planned Parenthood affiliates who litigated the *PPFA* case are significantly different from the situation the Ninth Circuit addressed in *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regl. Plan. Agency*, 322 F.3d 1064 (9th Cir. 2003).  There, the Ninth Circuit applied *res judicata* in light of a previous lawsuit by an association to bar a subsequent suit brought on the same facts by members of the association.  The court noted where "there is no conflict between the organization and its members, and if the organization provides adequate representation on its members' behalf, individual members not named in a lawsuit may be bound by the judgment won or lost by their organization.  A finding of privity in such circumstances is particularly appropriate in cases involving interests in real property. . . ."  *Id*. at 1082.  Here NAF is seeking injunctive relief based on the breach of its own contracts on its own behalf and also to benefit members who were not represented in the PPFA case.  There are no apposite similarities with the *Tahoe-Sierra* case to support defendants' apparent request to find that *res judicata* precludes the relief NAF seeks here.

United States District Court
Northern District of California

stage, depositions taken in this case, and declarations submitted in connection with this motion)

and by the relevant evidence from the *PPFA* case.  The scope of the *PPFA* Permanent Injunction

is not directly relevant to the scope of an appropriate injunction here because the Judgment in the

*PPFA* case was based on RICO, fraud, trespass, recording statute, conspiracy, and UCL claims not

litigated here.  I note defendants' uncontested position that they are committed to their mission of

opposing abortion and intend to continue their use of surreptitious recordings in circumstances

where they believe one-party recording is legal.  While defendants' First Amendment rights do not

defeat a permanent injunction restricting their access to and use of the NAF Materials they secured

only because of the breach of the NAF Agreements, those rights do require a significant narrowing

of the scope of relief.

The persons and entities NAF seeks to enjoin ("All Defendants and their officers, agents,

servants, employees, owners, and representatives, and all other persons, firms, or corporations

acting in concert or participation with them, are hereby permanently restrained and enjoined

from") are appropriately tailored.  NAF's request to prevent these persons and entities from

"[p]ublishing or otherwise disclosing to any third party any video, audio, photographic, or other

recordings taken, or any confidential information learned, at any NAF meeting" is appropriate if

limited to the 2014 and 2015 Annual Meetings that defendants only gained access to and from

which they secured information and recordings due to their breaches of the NAF Agreements.

The request to cover "any" NAF meeting no matter where or when held or how defendants

may access them is overbroad, unsupported, and not appropriate.  Similarly, NAF's request to

prevent these persons and entities from "[p]ublishing or otherwise disclosing to any third party the

dates or locations of any future NAF meeting" irrespective of how or where that information is

learned is likewise overbroad, unsupported, and not appropriate.[26]  Likewise, a prohibition on

"[p]ublishing or otherwise disclosing to any third party the names or addresses of any NAF

members learned at any NAF meeting" is similarly deficient where that request is not tied to the

---

[26]  This and other prohibitions were appropriate with respect to the Preliminary Injunction because
the scope of defendants' activities, including how they accessed the NAF Meetings, was not fully
known.  At this juncture, and based only on the breach of contract claim, such broad relief is no
longer warranted.

1    2014 and 2015 NAF Meetings.  Even if it were, it would arguably cover "publishing" names or

2    addresses of NAF members that have since been voluntarily and publicly disclosed.

3            The prohibition of "[e]ntering or attempting to enter a NAF office, NAF meeting, or other

4    NAF event by misrepresenting their true identity, their purpose for seeking entrance, and/or

5    whether they intend to take any video, audio, photographic, or other recordings once inside,"

6    suffers from numerous deficiencies.  There is no evidence in the record that defendants attempted

7    to access any NAF office or any NAF event *other* than the 2014 and 2015 NAF Annual Meetings.

8    There is no evidence regarding how access to those facilities or events is or will be controlled.  In

9    addition, unlike in the *PPFA* case, here there are no fraud-based or conspiracy-based claims that

10   have been litigated that could conceivably cover and extend to future misrepresentations.  The

11   appropriate relief here is constricted by the breach of contract claim and there is no information

12   about the provisions of any current or future NAF EAs and CAs.  This future prohibition is not

13   justified.

14           Finally, NAF asks me to prevent these persons and entities from "[r]etaining possession of

15   any materials covered by this permanent injunction.  Any and all such materials covered by this

16   permanent injunction must be turned over to counsel of record in this matter, the identity of whom

17   shall be disclosed to this Court.  Access to any and all such materials by individuals covered by

18   this permanent injunction shall occur only onsite at the offices of said counsel and subject to the

19   supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*,

20   No. 2502505 (S.F. Super. Ct.)."  NAF further proposes that "[n]othing in this permanent

21   injunction shall prevent the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from

22   making orders about how materials covered by this injunction can be used in those proceedings."

23           Under the Preliminary Injunction as modified by the Civil Contempt Order, defendants are

24   already required to turn over the NAF Materials to their counsel and may access those materials

25   only at counsel's office, absent further order from this court or the Superior Court.  *See* Dkt. No.

26   482 at 23-24.  NAF's proposal would *further* restrict defendants' access to the NAF Materials by

27   (apparently) eliminating the provision allowing access at Daleiden's criminal defense counsel's

28   offices.  That restriction is not justified considering the pending criminal proceedings.

United States District Court
Northern District of California

21

Considering all of the above, the following permanent injunctive relief is appropriate:

> All Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations acting in concert or participation with them, are hereby permanently restrained and enjoined from:
>
>> 1) Publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned at the 2014 and 2015 NAF Annual Meetings;
>>
>> 2) Retaining possession of any materials covered by this permanent injunction. Any and all such materials covered by this permanent injunction must be turned over to counsel of record in this matter or counsel of record in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.), the identity of whom shall be disclosed to this Court. Access to any and all such materials by individuals covered by this permanent injunction shall occur only onsite at the offices of said counsel and subject to the supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.).
>
> Nothing in this permanent injunction shall prevent the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from making orders about how materials covered by this injunction can be used in those proceedings.

## III.    FORM OF JUDGMENT

In its motion, NAF asked me to enter judgment on its breach claim and its requested injunctive relief under Federal Rule of Civil Procedure 54(b), so that any appeal of the core issues would be expedited. Mot. at 24. It proposed to stay its other claims, and if the breach claim and permanent injunction were preserved on appeal, it would then dismiss the remaining claims. *Id.*[27]

Following the hearing on this motion, NAF withdrew "its request for entry of partial final judgment pursuant to Rule 54(b)" and confirmed that it "would not seek to stay the remainder of this action if the Court grants its motion. Instead, should the Court grant NAF's motion, NAF would seek to stipulate with Defendants to dismiss NAF's three other claims prior to entry of judgment. This would allow the Court to enter complete final judgment in this case and for a single appeal to proceed to the Ninth Circuit." Dkt. No. 716.

---

[27] Other than the breach claim considered in this Order, NAF's remaining claims are for civil conspiracy, promissory fraud, and fraudulent misrepresentation.

1       Having withdrawn its request for partial judgment, within twenty (20) days of the date of

2  this Order NAF shall file a stipulation dismissing its other claims (or a motion to voluntarily

3  dismiss, if not stipulated) as well as a proposed form of final Judgment.

4  **IV.**     **MOTIONS TO SEAL**

5       NAF filed portions of its motion for summary judgment and many exhibits in support

6  conditionally under seal because that information and those exhibits were either covered by the

7  Preliminary Injunction or had been designated as confidential or attorney's eyes only under the

8  protective order in this or the related *Planned Parenthood* case.  Dkt. No. 669.  In opposition,

9  defendants likewise filed a substantial amount of material under seal, likewise covered by the

10  Preliminary Injunction or designated as confidential in this or the related case.  Dkt. No. 707.

11       Having reviewed NAF's motion and defendants' opposition brief, nothing contained in the

12  text of those documents should remain sealed.  The redacted information is identical or materially

13  similar to information disclosed to the public in the *PPFA* trial.  The Clerk shall unseal Dkt. Nos.

14  669-3, 707-4.

15       The materials covered by the Preliminary Injunction and the Permanent Injunction outlined

16  above **shall remain under seal**, including but not limited to the video and audio recordings

17  submitted in connection with this motion by NAF and defendants (Dkt. No. 707, Ex. 59), as well

18  as the indices of those recordings.  Dkts. Nos. 669-11, 669-12 (Exs. 37 & 38).

19       With respect to the other information (mainly deposition testimony, deposition exhibits,

20  and expert reports from this and the related *PPFA* case), the parties shall meet and confer and

21  within thirty (30) days of the date of this Order and shall submit one joint chart, supported by

22  references to existing or newly filed declarations, designating the information by ECF Docket No.

23  and by Exhibit or Appendix number the parties (i) agree may be unsealed, (ii) agree may remain

24  sealed, or (iii) have a dispute about sealing.  Two principles should guide the parties in conducting

25  that review.  First, information disclosed to the public in the *PPFA* trial should generally not

26  remain under seal.  Second, *only* information that was cited by the parties in the briefing on this

27  motion, referred to during the February 17, 2021 argument, or cited in this Order needs to be

28  reviewed.  Because of concerns that more-than-necessary information designated as confidential

United States District Court
Northern District of California

23

was submitted to the court in connection with this motion, and that much of that information was *not* referred to by the parties nor considered by me, requiring the parties to review that information through this process is neither necessary nor efficient.  This irrelevant or unconsidered evidence may remain under seal.

## CONCLUSION

Plaintiff's motion for summary judgment on its breach of contract claim is GRANTED. Plaintiff's request for permanent injunctive relief flowing from that judgment is GRANTED, as narrowed and amended in this Order.  Plaintiff shall file a proposed final form of Judgment within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: April 7, 2021



William H. Orrick
United States District Judge