Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel: (858) 759-9948
cslimandri@limandri.com

Harmeet K. Dhillon (CA Bar No. 207873)
Mark P. Meuser (CA Bar No. 231335)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com

*Attorneys for Defendants the Center for Medical
Progress, BioMax Procurement Services, LLC,
and David Daleiden*

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

*Attorneys for Defendant David Daleiden*

Patrick D. Duplessis (CA Bar No. 265384)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT 06901
Tel: (203) 703-0800
pduplessis@whipgroup.com

*Attorneys for Defendants the Center for
Medical Progress and David Daleiden*

## UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION (NAF),<br><br>Plaintiff,<br><br>vs.<br><br>THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, LLC, DAVID DALEIDEN (aka "ROBERT SARKIS"), and TROY NEWMAN,<br><br>Defendants. | Case No. 3:15-cv-3522 (WHO)<br><br>Judge William H. Orrick, III<br><br>Defendants CMP, BioMax, and Daleiden's Opposition to Plaintiff NAF's Motion for Attorneys' Fees<br><br>Location: Courtroom 2, 17th Floor |

1

**TABLE OF CONTENTS**

2   INTRODUCTION ...................................................................................................1

3   BACKGROUND ................................................................................................... 2

4   LEGAL STANDARD............................................................................................ 4

5   ARGUMENT ........................................................................................................ 5

6       I.      NAF "incurred" no fees or costs to be "reimbursed." ......................... 5

7       II.     NAF obtained no relief based on the contracts containing the fee-
8               shifting provision, the Exhibitor Agreements. ...................................... 7

9       III.    NAF's fee request is grossly excessive. ................................................ 8

10              A.      NAF engaged in "scorched earth" tactics; Defendants tried
11                      to defend themselves. ................................................................. 8

12              B.      NAF's fee request is disproportionate to its overall recovery.................... 8

13                      i.      NAF abandoned 10 of its 11 claims and its fees should
                                be reduced accordingly................................................... 9

14
                        ii.     NAF seeks a staggering amount for a contract case
15                              resolved on summary judgment. ...................................10

16                      iii.    NAF enlisted too many attorneys. ................................. 11

17              C.      Numerous other types of time entries are not compensable. ...................12

18                      i.      The more than 2,000 redactions including wholesale
19                              redactions of intrafirm communications are
                                inappropriate..................................................................12
20
                        ii.     Block billing and otherwise vague narratives render
21                              those entries impossible to assess...................................16

22                      iii.    Unsuccessful or unrelated tasks. ...................................19

23                      iv.     Clerical tasks billed at attorney or paralegal rates........................ 20

24
                        v.      Too many whole/half numbers ...................................... 22
25
                        vi.     Numerous six-minute (0.1 hour) entries. ...................... 23
26
        IV.     NAF's request for non-taxable costs lacks sufficient documentation. ................. 23
27
    CONCLUSION ................................................................................................... 24
28

1

**TABLE OF AUTHORITIES**

2

*Cases:*

3

*Banas v. Volcano Corp.* ...................................................................................... 1, 10, 11, 15, 16, 19, 23
4
    47 F. Supp. 3d 957 (N.D. Cal. 2014)

5

*Benihana of Tokyo, LLC v. Benihana, Inc.* ..................................................................................22
6
    No. 14 CIV. 224 (PAE), 2020 WL 91412 (S.D.N.Y. Jan. 8, 2020)

7

*Blanchard v. Bergeron* ..................................................................................................................6
    489 U.S. 87 (1989)

8

*Beverly Hills Properties v. Marcolino* ..........................................................................................7
9
    221 Cal. App. 3d Supp. 7 (1990)

10

*Cabrales v. County of Los Angeles* .................................................................................. 4, 19, 20
11
    935 F.2d 1050 (9th Cir. 1991)

12

*Cairns v. Franklin Mint Co.* ..........................................................................................................4
    292 F.3d 1139 (9th Cir. 2002)

13

*Carpenters Pension Tr. Fund for N. California v. Walker* ............................................................ 11
14
    No. 12-CV-01447-WHO, 2015 WL 1050479 (N.D. Cal. Mar. 9, 2015)

15

*CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.* ....................................................................22
16
    No. 18-CV-81689, 2021 WL 3361172 (S.D. Fla. Jan. 12, 2021)

17

*Cohen v. Life Ins. Co. of N. Am.* ................................................................................................ 15
18
    No. 17-CV-9270 (JPO), 2019 WL 1785095 (S.D.N.Y. Apr. 24, 2019)

19

*Davis v. City of San Francisco* ........................................................................................ 4, 19, 20
    976 F.2d 1536 (9th Cir. 1992)

20

*De Amaral v. Goldsmith & Hull* ...................................................................................................9
21
    No. 12-CV-03580-WHO, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014)

22

*Deitz v. Univ. of Denver, Colorado Seminary* ............................................................................5, 6
23
    No. 95-CV-02756-WDM-OES, 2011 WL 2559829 (D. Colo. June 28, 2011)

24

*Dyer v. Wells Fargo Bank, N.A.* .................................................................................................23
    303 F.R.D. 326 (N.D. Cal. 2014)

25

*Edmonds v. Labrea Adams LLC* .................................................................................................. 19
26
    No. 2:20-cv-00387-SVW-GJS, 2020 WL 6115087 (C.D. Cal. May 5, 2020)

27

*Farrar v. Hobby* ...........................................................................................................................8
28
    113 S. Ct. 566 (1992)

1

# TABLE OF AUTHORITIES - CONTINUED

2

3

*Gotro v. R & B Realty Grp.*............................................................................................5
   69 F.3d 1485 (9th Cir. 1995)

4

*Gracie v. Gracie* ........................................................................................................5
   217 F.3d 1060 (9th Cir. 2000)

5

6

*Hensley v. Eckerhart* ..............................................................................................4, 8
   461 U.S. 424 (1983)

7

8

*Hernandez v. Grullense*..........................................................................................23
   No. 12-CV-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014)

9

*In re Marino* ............................................................................................................8
   949 F.3d 483 (9th Cir. 2020)

10

11

*Jankey v. Poop Deck*.................................................................................. 4, 19, 20
   537 F.3d 1122 (9th Cir. 2008)

12

13

*Legal Voice v. Stormans Inc.* ....................................................................................6
   757 F.3d 1015 (9th Cir. 2014)

14

15

*Lincoln St. Realty Co. v. Green*..................................................................................6
   374 Mass. 630 (1978)

16

*McGinnis v. Kentucky Fried Chicken* .................................................................4, 8, 9
   51 F.3d 805 (9th Cir. 1994)

17

18

*Nadarajah v. Holder* ...............................................................................................22
   569 F.3d 906 (9th Cir.2009)

19

20

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress* ................................1, 2, 3, 7, 10, 24
   No. 16-CV-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020)

21

*PLCM Grp. v. Drexler* ..............................................................................................7
   22 Cal. 4th 1084 (2000)

22

23

*Schueneman v. 1st Credit of Am. LLC.* .......................................................................9
   05–cv–4505 MHP, 2007 WL 1969708 (N.D. Cal. July 6, 2007)

24

*Schwarz v. Sec'y of Health & Hum. Servs.* ..................................................................9
   73 F.3d 895 (9th Cir. 1995)

25

26

*Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund* ..................................6
   68 A.3d 665 (Del. 2013)

27

28

1

**TABLE OF AUTHORITIES - CONTINUED**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Shame on You Prods., Inc. v. Banks* ................................................. 14
    No. CV 14–03512–MMM (JCx), 2016 WL 5929245 (C.D. Cal. Aug. 15, 2016)

*Shame On You Prods., Inc. v. Banks* ................................................. 14
    893 F.3d 661 (9th Cir. 2018)

*Trope v. Katz* ................................................................................. 4
    11 Cal. 4th 274 (1995)

*TruGreen Companies, LLC v. Mower Bros.* ................................... 5, 6
    570 F. App'x 775 (10th Cir. 2014)

*White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan* .......... 20, 22
    No. C 10-1855 BZ, 2011 WL 5183854 (N.D. Cal. Oct. 31, 2011)

*Wilbur v. City of Mount Vernon* ..................................................... 12
    No. C11-1100RSL, 2014 WL 11961980 (W.D. Wash. Apr. 15, 2014)

*Xuereb v. Marcus & Millichap, Inc.* ................................................. 7
    3 Cal. App. 4th 1338, 1342 (1992)


***Statutes:***

28 U.S.C. § 1447(c) ......................................................................... 6

42 U.S.C. § 1988 ............................................................................. 6

Cal. Civ. Code § 1654 ................................................................... 4, 6

Fed. R. Civ. P. 45(d)(2)(B)(ii) .......................................................... 6

Fed. R. Evid. 1002 ......................................................................... 23

# INTRODUCTION

Defendants believe NAF is not entitled to any fees or costs because Defendants will ultimately prevail on the underlying claim. In the meantime, the Court should still deny NAF's staggering $6.933 million fee request, for several additional, independent reasons:

- The contractual provision on which NAF relies states that "Exhibitors agree to **reimburse** NAF for all costs **incurred** by NAF, including reasonable attorneys' fees" (emphasis added), and NAF did not "incur" any fees to be "reimbursed." While certain statutes and federal rules justify fee awards for *pro bono* counsel in certain other circumstances, the contract at issue provides no basis for such an award here.

- The permanent injunctive relief actually granted to NAF is not connected to the adjudged breach of the contracts containing the fee-shifting provision at issue, the Exhibitor Agreements. In the related *Planned Parenthood* case, the Court found Defendants had breached the misrepresentation provisions of the Exhibitor Agreement and the recording provisions of the Confidentiality Agreements. Applying issue preclusion in this case, the Court entered summary judgment and granted NAF "narrowed" injunctive relief: an injunction against publication of and retention of recordings alleged to violate the Confidentiality Agreements. The Court expressly denied NAF's request for broader injunctive relief connected to the Exhibitor Agreements: specifically, it denied an injunction against entering by misrepresentation.

- The $6.933 million fee request, for the work of 22 timekeepers (including 19 attorneys), is grossly excessive and is insufficiently documented. NAF originally brought 11 claims, a single claim (breach of contract) was resolved at summary judgment, and NAF ultimately dismissed the remainder of its claims and abandoned all claims for monetary relief. Even more so than the litigant seeking $3.5 million in fees in *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (Orrick, J.), NAF "seeks a staggering amount for a breach of contract case which was resolved at summary judgment." And like the party seeking fees in *Banas*, NAF's

1

"documentation of those fees and costs . . . was remarkably deficient." *Banas*, 47 F. Supp. 3d at 965. It's no wonder NAF resisted producing its time records and produced them only under Court order.

The requested non-taxable costs of $29,358.30 are also unsupported and unreasonable.

NAF is well aware Defendants can't afford to pay an award anywhere near the $6.933 million in fees (plus costs) they request. *See* Order Setting Amount of Supersedeas Bond in *Planned Parenthood*, Dkt. 1093. But NAF seeks to crush Defendants with a staggering attorneys' fees and costs award payable to NAF's *pro bono* counsel. This request is unreasonable and unsupported. The Court should deny it.

## BACKGROUND

In 2014 and 2015, certain Defendants signed NAF Exhibitor Agreements. Dkt. 225-6, 225-7. The Exhibitor Agreements contained a provision requiring exhibitors to "represent" their business truthfully and accurately (the so-called "misrepresentation" provision). *Id.* The Exhibitor Agreements also contained a provision that "Exhibitors agree to **reimburse** NAF for all costs **incurred** by NAF, including reasonable attorneys' fees, in handling or responding to any violations of any provision of this entire Agreement." *Id.* (emphasis added). After Defendants later traveled to and showed up at the conference, NAF required Defendants to sign Confidentiality Agreements. The Confidentiality Agreements contained a provision prohibiting "recording." The Confidentiality Agreements contained no attorneys' fees or costs provision of any kind.

NAF retained its counsel, Morrison & Foerster, which represented NAF *pro bono*. Dkt. 756-2 at 21:11–13. As such, NAF has not incurred any attorneys' fees that need to be reimbursed. *Id.*

NAF filed this lawsuit in 2015. NAF asserted 11 wide-ranging claims, from RICO to common law trespass, including a single claim for breach of contract (Count 6). Dkt. 131. NAF sought monetary damages—including treble damages, statutory penalties, disgorgement of profits, and punitive damages—and injunctive relief. *Id.*

Planned Parenthood filed its related lawsuit later in 2015. Planned Parenthood's claims included a third-party-beneficiary claim for breach of the Exhibitor Agreements and Confidentiality Agreements. In *Planned Parenthood*, the Court ultimately held Defendants breached the

"misrepresentation" provision of the Exhibitor Agreements and the "recording" provision of the Confidentiality Agreements. The Court did not find that Defendants breached any "publication" provision. Defendants have appealed the *Planned Parenthood* final judgment to the Ninth Circuit.

NAF moved for summary judgment on one count, breach of contract, on the sole basis of issue preclusion in view of the *Planned Parenthood* judgment. Specifically, NAF argued that "Defendants are precluded by this Court's judgment in *Planned Parenthood* . . . from relitigating their breach of the NAF Agreements." Dkt. 665 at 2:12–16. NAF also requested that the Court enter a permanent injunction enjoining Defendants from "entering . . . by misrepresent[ation]," publishing recordings or information, and retaining recordings. Dkt. 665-4 at 11–27. NAF dropped all of its other claims.

The Court granted NAF's motion for summary judgment and granted in part NAF's request for a permanent injunction. Dkt. 720. The Court, *inter alia*, permanently enjoined Defendants from publishing recordings but expressly declined to extend the permanent injunction to prohibit entering by misrepresentation. Dkt. 720, 21:3–13.

NAF then filed the present motion for costs including attorneys' fees. Dkt. 727. Though NAF "incurred" no fees or other costs to be "reimbursed," NAF claimed $7,409,103.73 in fees (even after a 25% "haircut" NAF gave itself) for 14,843.1 hours, and $29,358.30 in non-taxable costs. *Id.*; Dkt. 727-1. NAF refused to provide time records in support of its motion, and on June 2, 2021, the Court ordered NAF to produce them. Dkt. 739.

On August 10, 2021, NAF produced 610 pages of records containing 4,924 separately numbered entries and thousands of redactions. Dkt. 756-1. At the same time NAF modified its fee request to seek $6.933 million in fees for 14,227.1 hours, instead of $7.409 million in fees for 14,843.1 hours; NAF acknowledged that it had committed various "errors" that had inflated its original fee request by more than $475,000 (and 616 hours) net. Dkt. 756 at 2:7–8; Dkt. 756-2.

On September 17, CMP asked NAF to unredact several different types of entries that were redacted baselessly. *See* Trissell Decl., ¶ 2, Ex. A (email chain between counsel with attachment). NAF agreed to unredact some entries because it said they had been "inadvertently" redacted but refused to remove the many hundreds of wholesale redactions of descriptions of intrafirm

1  communications, on the blanket generic assertion that they "were redacted on privilege and work

2  product grounds." *Id.* NAF did not specify what "privilege" applied.

3  **LEGAL STANDARD**

4  "[T]he fee applicant bears the burden of establishing entitlement to an award and

5  documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424,

6  437 (1983). Under the "American Rule," litigants are typically not entitled to a fee award. *Id.* at 429.

7  To receive a fee award, the party seeking fees must first demonstrate a legal basis for an award of fees.

8  *Id.* To prove a contract as a legal basis for an award, the party must show that the terms of the contract

9  justify it and must obtain at least some relief based on the contract containing the fee-shifting

10  provision upon which the fee request is made. *Trope v. Katz*, 11 Cal. 4th 274, 279 (1995). Any

11  ambiguity in a contract is construed against the drafter. Cal. Civ. Code § 1654.

12  Where there is a legal basis for a fee award, the party seeking fees bears the burden of showing

13  its requested fee amount is reasonable. *Hensley*, 461 U.S. at 437. In determining the amount, "the

14  district court should focus on the significance of the overall relief obtained by the plaintiff in relation

15  to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. The determination that

16  a party was the prevailing party is merely the first step in the process. "That the plaintiff is a

17  'prevailing party' . . . may say little about whether the expenditure of counsel's time was reasonable

18  in relation to the success achieved." *Id.* at 436. It is an abuse of discretion for a court to fail to "reduce

19  the attorneys fees award so that it is commensurate with the extent of the plaintiff's success."

20  *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994).

21  The district court should exclude hours that are "excessive, redundant, or otherwise

22  unnecessary." *Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008). The district court should

23  also disallow hours for work that did not "contribute, directly and substantially," to the attainment

24  of the plaintiff's litigation goals. *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992).

25  Compensable work is that which is "directly and intimately related to the successful representation

26  of a client" (*id.*) and "contribute[s] to the ultimate victory in the lawsuit." *Cabrales v. County of Los*

27  *Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

28

NAF is also not entitled to fees for unsuccessful claims or claims for which the law provides no basis for an award of fees. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002). It may be "difficult" to apportion hours among related claims, but even where the claims are all related and the prevailing party prevails as to all of them, the district court has a "duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Id.* (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (emphasis in original)).

## ARGUMENT

### I.     NAF "incurred" no fees or costs to be "reimbursed."

NAF is entitled to $0 because the contractual provision on which NAF relies provides that "Exhibitors agree to **reimburse** NAF for all costs **incurred** by NAF, including reasonable attorneys' fees" (emphasis added), and NAF, represented *pro bono*, did not "incur" any fees or costs to be "reimbursed." The Court should deny NAF's motion.

By its plain terms, the contract provides no basis for NAF's motion. Then-Judge, now Justice, Gorsuch denied fees under a substantially identical contractual provision where, as here, the clients were not obligated to pay anything to their attorneys:

> By its plain terms, the contract allows only *reimbursement* of fees and costs *incurred*. Meanwhile, under a deal the employees penned with their new employer, *that* company assumed sole liability for all of the employees' litigation fees and costs. So it is that, as a matter of plain language, the employees have *incurred* no fees or costs in this litigation—the bills in this case do not "run, flow, fall ... devolve [or] accrue" to them but to someone else entirely. VII *The Oxford English Dictionary* 834–35 (2d ed.1989). And there is, quite literally, nothing to *reimburse* them for—nothing to "*return* to their purse."

*TruGreen Companies, LLC v. Mower Bros.*, 570 F. App'x 775, 777 (10th Cir. 2014) (Gorsuch, J.) (emphasis in original).

While *pro bono* attorneys are sometimes entitled to fees under certain statutory provisions or federal rules, they are entitled to no fees under a contractual provision awarding "reimbursement" of fees "incurred" by the client, as Judge Gorsuch recognized. *Id.* at 778. Likewise, in *Deitz v. Univ. of Denver, Colorado Seminary*, No. 95-CV-02756-WDM-OES, 2011 WL 2559829, *4–5 (D. Colo. June 28, 2011), for example, the district court held *pro bono* attorneys were not entitled to fees under a

contractual provision requiring the opposing party to "pay or reimburse" fees and costs "incurred" by the party, a provision substantially similar to the one at issue here. The court expressly distinguished *Gotro v. R & B Realty Grp.*, 69 F.3d 1485 (9th Cir.1995), because *Gotro* involved a statutory, not a contractual, provision, 28 U.S.C. § 1447(c). *Dietz*, 2011 WL 2559829 at *4. *See also Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665 (Del. 2013) (following *Deitz*; "'Reimburse' and 'incur' clearly and unambiguously indicate that ASB must have been liable for a payment at some point").

Treating statutory and contractual fee provisions differently is consistent with policy considerations. Statutes express general governmental policy, while contracts serve private interests. *See TruGreen*, 570 F. App'x at 778 ("[O]ne might make a plausible case that Rule 37's sanctions provisions and the civil rights statutes embody a punitive policy—an intent to punish the wrongdoer—that warrants an especially broad reading of their terms. But it's hard to see why we should impute a parallel policy to a routine employment contract"); *Deitz,* 2011 WL 2559829 at *5 ("[T]he attorneys' fee provision serves only a private interest and not a public purpose as in fee-shifting statutes"); *Lincoln St. Realty Co. v. Green*, 374 Mass. 630, 631–32 (1978) (statutory "public policy considerations are absent when an award of fees is sought pursuant to a contractual provision authorizing the recovery of 'attorney's fees incurred' "); *Scion Breckenridge*, 68 A.3d at 684 n.89 ("We distinguish this case from scenarios where public policy or other considerations might control, for example, in the case of fee awards based on statutory provisions where public policy might color the meaning of 'incurred' to encompass pro bono representation"). Here too there is no policy reason to award NAF fees.

The two cases that NAF cites as authority for *pro bono* attorneys recovering fees (Dkt. 756-2, 3:21–24) are inapplicable, because they involved a statute or federal rule, not a contract, as the basis for a fee award. *Legal Voice v. Stormans Inc.*, 757 F.3d 1015 (9th Cir. 2014) (fees under Fed. R. Civ. P. 45(d)(2)(B)(ii)); *Blanchard v. Bergeron*, 489 U.S. 87 (1989) (fees under 42 U.S.C. § 1988). NAF does not and cannot cite any authority for *pro bono* attorneys recovering fees under a contract provision requiring "reimbursement" of fees "incurred." Moreover, while the contractual provisions here clearly and unambiguously foreclose the claim for attorneys' fees, to the extent there is any ambiguity

1    on that score, it must be construed against the drafter, NAF, and in favor of the non-drafting parties,

2    Defendants. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules,

3    the language of a contract should be interpreted most strongly against the party who caused the

4    uncertainty to exist").[1] NAF is entitled to $0.

5  
6    **II.    NAF obtained no relief based on the contracts containing the fee-shifting provision, the Exhibitor Agreements.**

7        NAF is entitled to $0 for another, independent reason: the permanent injunctive relief is not

8    connected to any adjudged breach of the contracts containing the fee-shifting provision, the Exhibitor

9    Agreements. In the related *Planned Parenthood* case, the Court found Defendants had breached only

10   the misrepresentation provisions of the Exhibitor Agreements and the recording provisions of the

11   Confidentiality Agreements. The Court here, applying "issue preclusion," entered summary

12   judgment against Defendants, and granted NAF "narrowed" injunctive relief: an injunction against

13   publication of and retention of the recordings adjudged prohibited by the Confidentiality

14   Agreements. Dkt. 720 at 24:6–8.[2]

15       The Court expressly denied NAF's request for permanent injunctive relief connected to the

16   Exhibitor Agreements: specifically, it denied a permanent injunction against entering by

17   misrepresentation. Dkt. 720, 21:3–13. Accordingly, because the permanent injunctive relief is not

18   connected to any adjudged breach of the contracts containing the fee-shifting provision at issue, the

19

20   _____

[1] NAF's citation to Cal. Civ. Code § 1717 is inapposite. The primary purpose of § 1717 is to provide
21   reciprocity in contractual attorney fee provisions, which is not at issue here. *Xuereb v. Marcus &
Millichap, Inc.*, 3 Cal. App. 4th 1338, 1342 (1992) (Section 1717's "only effect is to make an otherwise
22   unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the
contract."). Section 1717 provides guidance on applying contractual attorney fee provisions, but NAF
23   does not argue nor does § 1717 change the plain meaning and effect of the terms of the Exhibitor
Agreement. *See, e.g., PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (providing lodestar
24   method for valuing legal services of salaried corporate in-house counsel under a fee provision, in a
contract without "reimbursement" language), *but see Beverly Hills Properties v. Marcolino*, 221 Cal.
25   App. 3d Supp. 7 (1990) (allowing "reciprocal" remedy of fees to "prevent oppressive use of one side-
sided attorney fee provisions," in a contract without "reimbursement" language).
26

27   [2] The permanent injunctive relief (enjoining publication) is not connected to *any* adjudged breach
established by issue preclusion of either the Exhibitor Agreements (misrepresentation) or the
28   Confidentiality Agreements (recording).

1    Exhibitor Agreements, NAF should not be awarded fees under the Exhibitor Agreements. *See, e.g.*,

2    *In re Marino*, 949 F.3d 483, 489 (9th Cir. 2020) ("The BAP did not err in concluding that the deed

3    of trust did not entitle the Marinos to appellate attorney's fees. The Marinos seek to enforce the

4    discharge injunction, not the deed of trust. Accordingly, we will not award fees under the deed of

5    trust."). For this additional reason, NAF is entitled to $0.

6        **III.   NAF's fee request is grossly excessive.**

7        Even if, contrary to the facts and law, NAF could establish a basis for some fee award, the

8    $6.933 million fee request is grossly excessive.

9            A.   <u>NAF engaged in "scorched earth" tactics; Defendants tried to defend themselves.</u>

10       NAF claims that Defendants' supposed "scorched earth" litigation strategy (Dkt. 727 at 7:18,

11   24:4) justified NAF's fees. But if there was any "scorched earth" strategy, it was NAF's own—

12   initiating this case; enlisting (and now seeking fees for) 22 timekeepers (19 attorneys and three

13   paralegals); alleging and pursuing 11 wide-ranging federal and state law counts until it eventually

14   dropped all but one; secretly coordinating with the California Attorney General, the fetal tissue

15   procurement industry, and others to act against Daleiden; seeking to impede Daleiden's use of the

16   videos at issue in a pending criminal proceeding against him; trying (unsuccessfully) to block CMP

17   from producing the videos to Congress pursuant to a lawful Congressional subpoena; and otherwise

18   using every conceivable means to try to prevent the public from learning the truth about the abortion

19   industry and to punish the Defendant whistleblowers. Defendants have fairly attempted to defend

20   themselves against this strategy.

21           B.   <u>NAF's fee request is disproportionate to its overall recovery.</u>[3]

22       No reasonable person would pay lawyers $6.933 million in fees and expenses to win $0 in

23   compensatory damages and a "narrowed" injunction. *McGinnis*, 51 F.3d at 810 ("Lawyers might

24   reasonably spend $148,000 worth of time to win $234,000. But no reasonable person would pay

25   lawyers $148,000 to win $34,000") (citing *Hensley*, 461 U.S. at 434; *Farrar v. Hobby*, 113 S.Ct. 566,

26   575 (1992)). NAF asserts that it gave itself a 25% "haircut" in counsel's "judgment," supposedly to

27   _____

28   [3] Defendants note that some of the reductions described below may overlap.

1   account for inefficiencies and duplication of efforts. Dkt. 756-2. But NAF does not contend that it

2   excluded any time spent on non-fee-shifting claims, dropped claims, or unsuccessful tasks. NAF does

3   not contend that it took into account its limited success. NAF does not argue and cannot credibly

4   argue that the litigation achieved some public benefit transcending its private benefit that enhances

5   the extent of their success. "The district court *must reduce* the attorneys fees award so that it is

6   commensurate with the extent of the plaintiff's success." *McGinnis*, 51 F.3d at 810 (emphasis added).

7                    i.    *NAF abandoned 10 of its 11 claims and its fees should be reduced accordingly.*

8         NAF's overall fees should be substantially reduced because it abandoned 10 of its 11 claims

9   and all claims for monetary relief. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 902 (9th

10  Cir. 1995) ("[A] plaintiff's failure to prevail on a particular claim is no less a failure because it results

11  from a dismissal on the law, rather than on the facts, or when **it is the plaintiff**, rather than the court,

12  **who dismisses the claim**") (emphasis added). As this Court recognized, "The Ninth Circuit has

13  outlined a two-part test for determining whether a fee should be reduced on the basis of abandoned

14  claims." *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580-WHO, 2014 WL 1309954, at *4 (N.D.

15  Cal. Apr. 1, 2014) (Orrick, J.) (quoting *Schueneman v. 1st Credit of Am., LLC*, 05–cv–4505 MHP, 2007

16  WL 1969708, at *6 (N.D. Cal. July 6, 2007)). Specifically:

17
18              First, the court determines whether the plaintiff's successful claims
                are related to plaintiff's unsuccessful claims. If the claims are
19              unrelated, then the court will not include the time spent on the
                unsuccessful claims in the final award. If the two categories of claims
20              are related, then the court determines the significance of the overall
                relief obtained by the plaintiff in relation to the hours reasonably
21              expended on the litigation. Full compensation is proper when the
                plaintiff's counsel has secured excellent results; full compensation is
22              excessive when only partial or limited success was achieved. Such
                decisions are within the district court's discretion.
23

24  *Id.* NAF makes no effort to demonstrate its single successful claim was related to its 10 unsuccessful

25  ones. For good reason. NAF would be hard-pressed to show that its unsuccessful federal RICO claim

26  (Count 1), for example, was related to its single successful state-law claim for breach of contract.

27        Even if NAF's one successful claim were related to the 10 unsuccessful ones, the overall relief

28  NAF obtained—a "limited" injunction and no monetary relief—is insignificant in relation to the

more than 14,000 hours expended on the litigation and the $6.933 million in fees NAF claims. As discussed below, NAF's many vague, over-redacted, and block-billed entries make it difficult to determine precisely the amount in excess of what is reasonable within the Court's discretion, but a reduction of at least 90% is appropriate. *See, e.g., Schwarz*, 73 F.3d at 899–900, 906 (9th Cir. 1995) (affirming 75% cut to the number of hours billed where plaintiff succeeded on only 25% of his claims). This would still leave NAF a significant fee award of $693,337 (subject to other appropriate reductions).

> ii. *NAF seeks a staggering amount for a contract case resolved on summary judgment.*

Even more so than the party in *Banas* that sought $3.557 million in fees, NAF's $6.933 million in requested fees is "a staggering amount for a breach of contract case which was resolved at summary judgment." *Banas*, 47 F. Supp. 3d at 965. NAF moved for and obtained summary judgment on one count, breach of contract, on the sole basis of issue preclusion, in view of the *Planned Parenthood* judgment. In *Banas* the party seeking fees recorded far few hours than NAF and sought substantially less in fees, and yet this Court found the fees request to be grossly excessive:

> There is no question that Volcano's summary judgment briefing was of high quality and successfully resolved this matter. But it is beyond me how Volcano's counsel billed approximately 400 attorney hours ($220,000) for the opening brief and 220 attorney hours ($130,000) for the reply brief. While this was not a routine matter, neither was it exceptionally complex, legally or factually. Only one cause of action, breach of contract, was at issue. Volcano capably, and successfully, addressed it within the presumptive page limits. Of the exhibits attached to the summary judgment brief, all but a handful were created in the course of litigation, e.g., pleadings, discovery correspondence and deposition transcripts. [¶] Volcano's block-billing and many vague entries make it challenging to pin-point specific sources of excessive time.

*Banas*, 47 F. Supp. 3d at 973 (N.D. Cal. 2014). In *Banas*, the Court reduced summary judgment fees from $350,000 to $200,000. For the summary judgment phase here, NAF seeks compensation for a far greater number of hours and amount of fees than in *Banas*: approximately 1,700 hours and

$900,000, compared to 660 hours and $350,000 in *Banas*.[4] Only one cause of action, breach of contract, was at issue, and by NAF's own account the issue was a "straightforward" matter of issue preclusion. Dkt. 665 at 8:9. NAF successfully addressed it within the presumptive page limits. The exhibits were straightforward too. As in *Banas*, while NAF's "block-billing and many vague entries make it challenging to pin-point specific sources of excessive time," the summary judgment fees are excessive. Comparable to what the Court did in *Banas*, the Court should reduce NAF's summary judgment fees by $400,000, at least.

### iii.   NAF enlisted too many attorneys.

It was not reasonable to enlist 22 timekeepers (19 attorneys and three paralegals)[5] to work on this matter; the huge number of attorneys created an unnecessary amount of time billed for conferencing and strategizing, among other things. *See Carpenters Pension Tr. Fund for N. California v. Walker*, No. 12-CV-01447-WHO, 2015 WL 1050479, at *2 (N.D. Cal. Mar. 9, 2015) (Orrick, J.) ("It was not reasonable to employ **six** attorneys, three of whom have over 20 years of experience, to work on this matter. . . . The number of attorneys working on this matter created an unnecessary amount of time billed for conferencing and strategizing. Nor do I understand why it took **four** lawyers to draft the motion for summary judgment."[6]) (emphasis added). If six or four attorneys was unreasonable in *Carpenters Pension*, 19 attorneys is beyond unreasonable.

The gross overstaffing of this case is apparent in entries showing, for example, periodic "team meetings" that NAF's counsel held, often with multiple timekeepers. *See*, *e.g.*, entries 3361, 3363, 3364, 3365, 3366 (five timekeepers each recording at least 0.8 hours each for apparently the same team meeting). Again, because of the substantial number of vague, over-redacted, and block-billed

---

[4] NAF claims "Phase 7" includes summary judgment/permanent injunction, as well as "dismissal of Defendant Newman," and seeks $946,113.38 (1,746.9 hours) for that phase. While the time records are vague and over-redacted, it's apparent that a substantial majority of the time in Phase 7 is attributable to summary judgment. Also, time attributable to the dismissal of Newman is not compensable, as discussed further below.

[5] NAF actually enlisted more than 22 timekeepers to work on this matter but seeks fees for "only" 22 of them. Dkt. 756-2 at 29:19–21.

[6] *See also* above regarding excessive summary judgment time. NAF enlisted, and seeks fees for, seven timekeepers who worked on the summary judgment motion. *See* Dkt. 756-3 at 2 (Phase 7 column).

time entries, it is difficult to quantify with precision, but Defendants estimate that NAF seeks at least $500,000 (and possibly much more) for periodic team meetings where multiple timekeepers attended. Overall, given the single claim NAF prevailed on out of 11, the limited relief NAF ultimately obtained, the massive $6.933 million fee request, and NAF's failure to explain why it's reasonable to seek fees for 22 timekeepers,[7] Defendants estimate that at least 50% of the entire $6.933 million fee request is unnecessary due to the gross overstaffing.

### C.   Numerous other types of time entries are not compensable.

#### i.   The more than 2,000 redactions including wholesale redactions of intrafirm communications are inappropriate.

"Time entries on billing records may be redacted in rare instances." *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 6698465, at *2 (N.D. Cal. Dec. 18, 2013) (Orrick, J.). NAF made more than 2,000 redactions in more than 1,600 separate entries, including wholesale redactions of virtually all intrafirm communications, apparently regardless of content, on unspecified "privilege" and "work product" grounds. (*See* Trissell Decl., Ex. A.) NAF seeks approximately $2,361,517.50 (after its own 25% haircut) for these 1,600+ entries.

These, for example, are just some of the entries:

| | **DATE** | **TIMEKEEPER** | **HRS** | **AMOUNT** | **DESCRIPTION** |
|---|---|---|---|---|---|
| 162 | 8/9/2015 | Derek F. Foran | 1.50 | 1,275.00 | Confer with C. Robinson and N. Napolitan regarding [redacted] |
| 164 | 8/9/2015 | Christopher L. Robinson | 0.25 | 177.50 | Review and respond to email correspondence regarding [redacted] |
| 200 | 8/12/2015 | Derek F. Foran | 2.50 | 2,125.00 | Emails and phone calls with C. Robinson and N. |

---

[7] A paying client would likely bristle at seeing 22 timekeepers, periodic team meetings of numerous attorneys, and the like, on its bills. *See, e.g., Wilbur v. City of Mount Vernon*, No. C11-1100RSL, 2014 WL 11961980, at *3 (W.D. Wash. Apr. 15, 2014) ("If this case were being contemporaneously billed to a paying client, such duplication and oversight would likely have been excised by cutting the hours of junior timekeepers or not billing the hours spent updating the senior partner on the case."). NAF, however, is represented *pro bono*.

| | | | | | Napolitan regarding [redacted] |
|---|---|---|---|---|---|
| 206 | 8/13/2015 | Derek F. Foran | 1.50 | 1,275.00 | Emails and phone calls with team regarding [redacted] |
| 250 | 8/18/2015 | Derek F. Foran | 2.50 | 2,125.00 | Emails and phone calls regarding [redacted] |
| 728 | 10/8/2015 | Christopher L. Robinson | 2.60 | 1,846.00 | Confer with D. Foran, N. Napolitan, and R. Zacks regarding [redacted] |
| 795 | 10/13/2015 | Christopher L. Robinson | 3.50 | 2,485.00 | Confer with D. Foran, N. Napolitan, and R. Zack regarding [redacted] |
| 894 | 10/21/2015 | Marc A. Hearron | 1.00 | 800.00 | Confer with D. Foran and C. Robinson regarding [redacted] |
| 958 | 10/26/2015 | Christopher L. Robinson | 3.90 | 2,769.00 | Meeting with L. Shostak regarding [redacted] |
| 974 | 10/27/2015 | Christopher L. Robinson | 3.40 | 2,414.00 | Meet with L. Shostak regarding [redacted] |
| 1130 | 11/10/2015 | Christopher L. Robinson | 4.10 | 2,911.00 | Review and revise [redacted] to address D. Foran's comments. |
| 1226 | 11/19/2015 | Allison Lauterbach Dale | 1.10 | 445.50 | Confer with D. Foran regarding [redacted] (.1); confer with R. Zak on same (1.0). |
| 1284 | 11/25/2015 | Marc A. Hearron | 1.00 | 800.00 | Confer with D. Foran regarding [redacted] |
| 1294 | 11/29/2015 | Derek F. Foran | 0.90 | 765.00 | Phone conferences and emails with N. Napolitan regarding [redacted] |
| 1460 | 12/14/2015 | Javier Serrano | 1.80 | 1,215.00 | Review [redacted] and provide summary to D. Foran (1.8). |
| 1734 | 2/19/2016 | Javier Serrano | 1.00 | 725.00 | Review and discuss [redacted] (1.0) |
| 1768 | 3/8/2016 | Allison Lauterbach Dale | 2.00 | 930.00 | Review [redacted] and categorize same (1.5); confer with N. Napolitan and A. Nakamura on same and on [redacted] (.5). |

| 1810 | 3/23/2016 | Ashley Nakamura | 1.80 | 1,071.00 | Review [redacted] (1.5); confer with A. Dale regarding same (.3). |
|------|-----------|-----------------|------|----------|-------------------------------------------------------------------|
| 2137 | 6/3/2016 | Derek F. Foran | 1.00 | 875.00 | Email correspondence regarding [redacted] |
| 2490 | 11/7/2016 | Marc A. Hearron | 1.00 | 850.00 | Confer with D. Foran regarding [redacted] |
| 3165 | 9/17/2018 | Diana Mariko Maltzer | 2.30 | 1,920.50 | Strategize regarding [redacted] |
| 3380 | 1/9/2019 | Nicholas Alan Roethlisberger | 2.20 | 1,837.00 | Strategize [redacted] with D. Malzer and C. Robinson. |
| 3376 | 1/9/2019 | Christopher L. Robinson | 1.00 | 850.00 | Attend team meeting to discuss [redacted] |
| 4668 | 12/22/2020 | A. Lorraine Weekes | 0.50 | 320.00 | Participate in call with R. Zack regarding: [redacted]; review [redacted] before call with R. Zack. |

This is a small but representative sample of the thousands of redactions.

These heavy redactions throughout the time records make it impossible to assess the reasonableness of the time expended. *Shame on You Prods., Inc. v. Banks*, No. CV 14–03512–MMM (JCx), 2016 WL 5929245, at *16 (C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018). There is insufficient information to determine the extent to which such entries were actually related to this case, what entries reflect duplicative or unnecessary work, or what entries relate to which "phase" of the case, or to otherwise show the entries are compensable. *See id.*

The *Shame on You* case is instructive. The court considered these billing entries:

• 05/16/14: Steven R. Mick: Communications re [REDACTED] (.3 hours)

• 06/05/14: Steven R. Mick: Further correspondence re [REDACTED] (.3)

• 06/23/14: Steven R. Mick: Telephone conference re [REDACTED] (.3)

• 09/10/14: Steven R. Mick: Communications re [REDACTED] (.4)

• 11/10/14: Steven R. Mick: Communications re [REDACTED] (.4)

• 03/31/15: Steven R. Mick: Telephone conferences re [REDACTED] (.8)

• 04/30/15: Seven [sic] R. Mick: Telephone conference [REDACTED] (1.2)

1        • 05/21/15: Steven R. Mick: Review [REDACTED] (.2)

2        • 06/04/15: Steven R. Mick: Review [REDACTED] (.3)

3   *Shame on You*, 2016 WL 5929245, at *16. The court denied fees for all of these entries. *Id.* "Although

4   cognizant of Defendants' desire to maintain confidentiality and protect privileges," the court found

5   that those entries "have been so heavily redacted that it cannot assess the reasonableness of the time

6   expended." *Id. See also Cohen v. Life Ins. Co. of N. Am.*, No. 17-CV-9270 (JPO), 2019 WL 1785095, at

7   *3 (S.D.N.Y. Apr. 24, 2019) ("While the court acknowledges that limited redaction may be necessary

8   to protect the confidentiality of attorney-client communications, excessive redaction can complicate

9   efforts to comprehensively assess the reasonableness of the fees where it leaves the Court without a

10   basis for gaining even a general sense of how an attorney's time was spent") (internal quotation marks

11   omitted).

12       Likewise here, entries have been so heavily redacted that Defendants and the Court cannot

13   assess the reasonableness of much of the time expended. While it's possible that some of the

14   thousands of redactions were justified on privilege or work-product grounds, NAF's extremely heavy

15   redactions are unjustifiable. It is unreasonable to assume that the general subject matter of virtually

16   every intrafirm communication, for example, is privileged or work-product protected.

17       For example, if, sometime before filing NAF's motion for summary judgment motion, five

18   timekeepers had a "team meeting regarding summary judgment," redacting the words "summary

19   judgment" is not justifiable; those words don't reveal any conceivably privileged or protected

20   information. Because NAF redacted the subject matter of virtually all such intrafirm communications

21   in its time records, Defendants and the Court cannot assess the reasonableness of the time expended;

22   they cannot assess whether, in this example, the conference was regarding summary judgment or

23   something unrelated to the case. Moreover, NAF's fairly consistent <u>non</u>-redaction of the subject

24   matter of legal or factual research (*e.g.*, entry 1127, "Research California contracts law for authority

25   to support the argument that one party's undisclosed opinion that a contract is unenforceable is

26   irrelevant"; entry 4364, "legal research concerning issue preclusion as to intermediate facts") is

27   inconsistent with its apparent view that the general subject matter of all intrafirm lawyer activity is

28

somehow privileged or protected work product. The Court should deny fees for all improperly redacted entries.

        ii.    *Block billing and otherwise vague narratives render those entries impossible to assess.*

"Block-billing" is inappropriate where "it is impossible to determine whether the time requested for any one task was reasonable." *Banas*, 47 F. Supp. 3d at 966–67. NAF's counsel block-billed at least 721 entries,[8] amounting to approximately 3,211 total hours and $1,936,358 in fees. Minus NAF's own 25% "haircut," this is $1,452,268.50, still a huge number. As in *Banas*, NAF here block-billed and vaguely described numerous entries rendering it impossible to determine whether the time requested for any one task was reasonable.

NAF purported to break down and summarize its time into specific "phases"—*e.g.*, discovery and helping Planned Parenthood (Phase 6) and summary judgment (Phase 7)—ostensibly to aid the Court in assessing reasonableness of fees in each "phase." But NAF's block-billing and otherwise vague narratives—on top of the over-redactions discussed above—provide a substantial obstacle to that task. For most if not all of these entries, it is impossible to determine what amount of time is compensable[9] and apportioned to which "phase," if any. For example:

| | DATE | TIMEKEEPER | HRS | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 148 | 8/7/2015 | Alexandra E. Laks | 4.00 | 1,840.00 | Calendar deadlines, attend to discovery issues, finalize Po [sic], attend team meeting, discuss and review fact issues. |
| 344 | 8/27/2015 | Derek F. Foran | 2.50 | 2,125.00 | Prepare for and attend meeting with C. Robinson and N. Napolitan regarding [redacted]; phone conference with N. Roethlisberger and R. Zack regarding [redacted] |

---

[8] These approximately 721 improperly block-billed entries do <u>not</u> include entries where NAF block-billed but included a time-breakdown within the narrative (*e.g.*, entry 1226, "Confer with D. Foran regarding [redacted] (.1); confer with R. Zak on same (1.0)."), though such entries may be objectionable on other grounds (*see*, *e.g.*, subsection i. above regarding improper redactions).

[9] *See also* subsections iii–v below.

| 602 | 9/28/2015 | Javier Serrano | 2.50 | 1,687.50 | Work on memo analyzing strategies to challenge congressional subpoenas; calls and meetings with D. Foran, C. Robinson, C. Magana, and A. Ferrari regarding [redacted] |
|---|---|---|---|---|---|
| 1198 | 11/17/2015 | Ashley Nakamura | 1.70 | 892.50 | Confer with NAF team regarding [redacted]; confer with R. Zack regardin [sic] [redacted] |
| 3512 | 3/5/2019 | Karen Leung | 7.40 | 3,774.00 | Meet with D. Foran to discuss [redacted]; research 5th Amendment adverse inferences in the 9th Circuit; research agency theory of liability at the motion for summary judgment stage. |
| 3520 | 3/6/2019 | Karen Leung | 5.50 | 2,805.00 | Research alter ego and agency theories in motion for summary judgment context; review latest batch of produced documents from CMP and flag relevant ones for T. Newman's deposition. |
| 3754 | 5/13/2019 | Karen Leung | 0.70 | 357.00 | Meet with and discuss [redacted] K. Nesbit; [redacted] to K. Nesbit. |
| 3784 | 5/28/2019 | Karen Leung | 4.90 | 2,499.00 | Draft and revise declaration [redacted]; confer with D. Maltzer [redacted]; meet with D. Foran [redacted]; read Defendants' Motions for Summary Judgment in related PPFA case. |
| 4102 | 5/6/2020 | A. Lorraine Weekes | 0.70 | 448.00 | Team meetings; email [redacted] to D. Foran. |
| 4131 | 5/21/2020 | A. Lorraine Weekes | 0.80 | 512.00 | Confer with K. Leung regarding: [redacted]; review comments on issue preclusion section of Motion for Summary Judgment. |
| 4202 | 6/23/2020 | Spencer McManus | 3.70 | 2,368.00 | Confer with client regarding [redacted]; revise Troy |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Newman settlement and send to opposing counsel. |
| 4211 | 6/29/2020 | Karen Leung | 0.90 | 576.00 | Meeting with NAF team and summer associates regarding [redacted]; confer with Q. Vu regarding [redacted] |
| 4252 | 7/14/2020 | Karen Leung | 1.50 | 960.00 | Call with A. Chitour regarding [redacted]; revise A. Chitour's work product. |
| 4284 | 7/27/2020 | Karen Leung | 7.30 | 4,672.00 | Meet with T. Newman's counsel; confer with L. Weekes regarding [redacted]; call with D. Foran regarding [redacted]; research settlement agreements being filed publicly/under seal. |
| 4436 | 9/23/2020 | Sandra J. Ascencio | 2.50 | 687.50 | Teleconference with team regarding [redacted]; [redacted] |
| 148 | 8/7/2015 | Alexandra E. Laks | 4.00 | 1,840.00 | Calendar deadlines, attend to discovery issues, finalize Po [sic], attend team meeting, discuss and review fact issues. |
| 344 | 8/27/2015 | Derek F. Foran | 2.50 | 2,125.00 | Prepare for and attend meeting with C. Robinson and N. Napolitan regarding [redacted]; phone conference with N. Roethlisberger and R. Zack regarding [redacted] |
| 602 | 9/28/2015 | Javier Serrano | 2.50 | 1,687.50 | Work on memo analyzing strategies to challenge congressional subpoenas; calls and meetings with D. Foran, C. Robinson, C. Magana, and A. Ferrari regarding [redacted] |
| 1198 | 11/17/2015 | Ashley Nakamura | 1.70 | 892.50 | Confer with NAF team regarding [redacted]; confer with R. Zack regardin [sic] [redacted] |
| 3512 | 3/5/2019 | Karen Leung | 7.40 | 3,774.00 | Meet with D. Foran to discuss [redacted]; research |

| | | | | | 5th Amendment adverse inferences in the 9th Circuit; research agency theory of liability at the motion for summary judgment stage. |
|---|---|---|---|---|---|
| 3520 | 3/6/2019 | Karen Leung | 5.50 | 2,805.00 | Research alter ego and agency theories in motion for summary judgment context; review latest batch of produced documents from CMP and flag relevant ones for T. Newman's deposition. |
| 3754 | 5/13/2019 | Karen Leung | 0.70 | 357.00 | Meet with and discuss [redacted] K. Nesbit; [redacted] to K. Nesbit. |
| 3784 | 5/28/2019 | Karen Leung | 4.90 | 2,499.00 | Draft and revise declaration [redacted]; confer with D. Maltzer [redacted]; meet with D. Foran [redacted]; read Defendants' Motions for Summary Judgment in related PPFA case. |

Given such pervasive block-billing and the staggering amount of total fees requested, the Court should reduce the compensable fees for NAF's approximately 721 block-billed entries by at least 50% of the amount NAF seeks for them, a reduction of approximately $726,134.25. *See Edmonds v. Labrea Adams LLC*, No. 2:20-cv-00387-SVW-GJS, 2020 WL 6115087, at *2 (C.D. Cal. May 5, 2020) (reducing block-billed hours by 50%). Additionally, the Court should reduce NAF's overall fee request by at least 5% due to vagueness. *See Banas*, 47 F. Supp.3d at 970.

       *iii.*     *Unsuccessful or unrelated tasks.*

NAF also seeks fees for a variety of tasks that were "excessive, redundant, or otherwise unnecessary," *Jankey*, 537 F.3d at 1132, that did not "contribute, directly and substantially," to the attainment of NAF's litigation goals against Defendants, *Davis*, 976 F.2d at 1545, that were not "directly and intimately related to the successful representation of a client," *id.*, or that did not "contribute[s] to the ultimate victory in the lawsuit" against Defendants. *Cabrales*, 935 F.2d at 1052. For example, in 2015 NAF unsuccessfully sought to quash or limit a lawful Congressional subpoena (Dkt. 155) and then unsuccessfully sought a contempt order based on its assertion that Defendants

provided too much information in response to the Congressional subpoena. Dkt. 311. Based on the (vague, over-redacted, and block-billed) information NAF provided, Defendants estimate that NAF seeks at least $100,000 fees for the former[10] and $250,000 for the latter.[11] Defendants also estimate that NAF seeks at the very least $20,000 in fees for assisting the prosecution in criminal proceedings against Daleiden[12] and at least $100,000 related to NAF's settlement with former co-defendant Newman.[13] None of this is compensable because it is not necessary to NAF's civil case against the present Defendants. *Jankey*, 537 F.3d at 1132; *Davis*, 976 F.2d at 1545; *Cabrales*, 935 F.2d at 1052.

<em>iv.   Clerical tasks billed at attorney or paralegal rates</em>

NAF enlisted attorneys and paralegals to conduct "clerical" tasks and inappropriately seeks fees at attorney or paralegal rates. *See White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, No. C 10-1855 BZ, 2011 WL 5183854, at *5 (N.D. Cal. Oct. 31, 2011) (holding that plaintiff inappropriately sought paralegal's time spent on "clerical" work—including "printing documents, scheduling and confirming appointments, calendaring deadlines, e-filing documents, researching travel information, updating client information, and arranging for service of process"—at a paralegal rather than a clerical rate).

While, again, a substantial number of NAF's time entries are vague, over-redacted, and block-billed, it appears that there are hundreds of attorney or paralegal entries for clerical tasks, including but not limited to printing documents, scheduling and confirming appointments, calendaring

---

[10] *See, e.g.*, entries 570, 573, 583, 591, 592, 593, 596, 597, 602, 611, 613, 620, 621, 622, 633, 645, 646, 650, 652, 654, 656, 658, 660, 663, 664, 665, 666, 668, 669, 670, 672, 679, 680, 681, 682, 684, 687, 693, 697, 699, 705, 716, 720, and 1006.

[11] *See, e.g.*, entries 912, 927, 936, 959, 963, 966, 969, 978, 979, 982, 985, 986, 988, 995, 998, 1001, 1007, 1008, 1011, 1017, 1021, 1023, 1110, 1111, 1124, 1125, 1128, 1142, 1143, 1145, 1148, 1150, 1152, 1153, 1155, 1159, 1165, 1166, 1173, 1175, 1344, 1354, 1364, 1367, 1375, 1383, 1384, 1385, 1386, 1397, 1404, 1409, 1411, 1414, 1416, 1425, 1427, 1429, 1435, 1438, 1441, 1448, 1449, 1452, 1456, 1458, 1461, 1468, 1471, 1474, 1478, 1479, 1485, 1488, 1493, 1497, 1499, and 1501.

[12] *See, e.g.*, entries 9, 1811, 1859, 1860, 2521, 2558, 3288, 3337, 3340, 3353, 3368, 3370, 3373, 3395, 3396, 3398, 3411, 3415, 3454, 3828, and 3835.

[13] *See, e.g.*, entries 1128, 4148, 4151, 4153, 4154, 4155, 4158, 4160, 4166, 4169, 4182, 4184, 4185, 4186, 4188, 4195, 4196, 4202, 4217, 4223, 4230, 4231, 4239, 4240, 4269, 4270, 4271, 4272, 4273, 4274, 4275, 4279, 4280, 4281, 4282, 4283, 4284, 4285, 4287, 4289, 4290, 4291, 4296, 4297, 4299, 4300, 4313, 4315, 4318, 4321, 4336, and 4340.

Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees<br>
3:15-CV-3522 (WHO)

deadlines, filing documents, and arranging for service. *See White*, 2011 WL 5183854, at *5. Among the numerous entries that more obviously describe clerical tasks and clerical tasks only, NAF seeks compensation for these, for example:

| | DATE | TIMEKEEPER | HRS | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 79 | 7/31/2015 | Thomas E. Beyer | 5.00 | 1,675.00 | File documents; assist with service of documents. |
| 618 | 9/29/2015 | Alexandra E. Laks | 0.50 | 230.00 | Calendar updates. |
| 1525 | 12/28/2015 | Thomas E. Beyer | 1.00 | 335.00 | File letter with court. |
| 1765 | 3/8/2016 | Alexandra E. Laks | 0.70 | 367.50 | Calendar deadlines. |
| 2362 | 9/13/2016 | Thomas E. Beyer | 2.80 | 966.00 | Organize files. |
| 2560 | 3/28/2017 | Thomas E. Beyer | 0.10 | 36.00 | Send out calendar invite. |
| 2568 | 3/29/2017 | Thomas E. Beyer | 0.20 | 72.00 | Update team calendar. |
| 2571 | 3/30/2017 | Ashley Nakamura | 0.50 | 325.00 | File N. Napolitan's withdrawal papers. |
| 2665 | 8/14/2017 | Thomas E. Beyer | 0.50 | 180.00 | Update case calendar and send out invitations. |
| 2666 | 8/14/2017 | Thomas E. Beyer | 0.20 | 72.00 | Update case calendar and send out invitations. |
| 2674 | 8/23/2017 | Thomas E. Beyer | 0.20 | 72.00 | Docket and update calendar. |
| 2682 | 9/26/2017 | Thomas E. Beyer | 0.50 | 180.00 | Add calendar entries and distribute to team. |
| 2683 | 9/26/2017 | Alexandra E. Laks | 0.10 | 60.00 | Review and respond to calendar invites. |
| 2729 | 1/16/2018 | Thomas E. Beyer | 0.50 | 190.00 | Print documents for D. Foran. |
| 2740 | 1/24/2018 | Thomas E. Beyer | 0.30 | 114.00 | Send out calendar invites for appellate deadlines. |
| 2862 | 5/2/2018 | Thomas E. Beyer | 0.50 | 190.00 | File stipulation. |
| 2864 | 5/3/2018 | Thomas E. Beyer | 0.20 | 76.00 | Distribute calendar entries. |
| 2867 | 5/4/2018 | Thomas E. Beyer | 0.30 | 114.00 | Create and distribute calendar entries. |
| 2997 | 7/18/2018 | Thomas E. Beyer | 0.30 | 114.00 | Draft calendar entries. |
| 3006 | 7/20/2018 | Thomas E. Beyer | 0.20 | 76.00 | Revise calendar entries. |
| 3261 | 11/14/2018 | Thomas E. Beyer | 0.30 | 114.00 | Create calendar entries and distribute to team. |

| 3563 | 3/15/2019 | Thomas E. Beyer | 0.40 | 160.00 | Revise calendar entries. |
|------|-----------|-----------------|------|--------|--------------------------|
| 3727 | 5/1/2019 | Thomas E. Beyer | 0.20 | 80.00 | Calendar depositions. |
| 3739 | 5/6/2019 | Thomas E. Beyer | 0.10 | 40.00 | Create calendar entries. |

Defendants estimate that NAF seeks at least $100,000 for clerical tasks performed by attorneys or paralegals that worked at rates of $335–$650 (or more) per hour. At most, NAF is entitled to clerical rates for such tasks. *See White*, 2011 WL 5183854, at *5 (reducing clerical time to $40/hour); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.2009) (clerical work should be "subsumed in firm overhead rather than billed at paralegal rates.").

> ### v.   Too many whole/half numbers

NAF's time records include an outsized number of entries in which hours appear to have been rounded to a whole or half hour. "[C]aselaw supports a reduction of fees when time entries exhibit rounding even to the nearest half-hour." *CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, No. 18-CV-81689, 2021 WL 3361172, at *12 (S.D. Fla. Jan. 12, 2021). *See also Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 CIV. 224 (PAE), 2020 WL 91412, at *7 (S.D.N.Y. Jan. 8, 2020) ("Stearns Weaver's time records submitted in support of its fee application include an outsized number in which hours appear to have been rounded to a whole number. . . . This practice, too, suggests a degree of imprecision that ill behooves a fee application of the size pursued here [$457,885.50].").

For example, Linda Shostak's first 21 entries[14] and final 17 entries[15] are all whole or half hours, including as much as "10.00" hours (entry 950), at $975 to $1,000 per hour, totaling $181,560 in fees for those 48 entries. Javier Sarano's first 51 entries[16] are all whole or half hours, including as much as "13.00" hours (entry 66), at $675 per hour, totaling $179,887.50 in fees for those 51 entries. This is not an exhaustive recitation of apparently-rounded entries. For just for these two timekeepers, in this

---

[14] Entries 142, 145, 176, 179, 203, 234, 254, 257, 279, 283, 314, 430, 462, 508, 512, 532, 579, 585, 607, 949, and 950.

[15] Entries 1395, 1426, 1428, 1446, 1453, 1454, 1472, 1473, 1489, 1491, 1645, 2066, 2109, 2139, 2454, 2455, and 2471.

[16] Entries 4, 12, 18, 23, 29, 39, 53, 66, 78, 80, 90, 102, 109, 127, 155, 214, 219, 237, 249, 263, 275, 293, 295, 300, 305, 316, 328, 343, 352, 359, 364, 371, 384, 393, 406, 426, 435, 464, 476, 492, 498, 524, 540, 552, 569, 574, 591, 593, 596, 602, and 621.

1  sample of 99 combined entries, every 0.1 hour rounded up means an excess fee of approximately

2  $7,165.

3           *vi.    Numerous six-minute (0.1 hour) entries.*

4           While NAF improperly seeks fees for large chunks of time—block-billed entries and an

5  outsized number of whole or half hour entries, as discussed above—NAF also improperly seeks fees

6  for 208 six-minute (0.1 hour) entries, for a total of $14,342.50 in 0.1 entries.[17] As this Court held in

7  another case, "[t]he problems with excessive billing in separate six-minute increments are evident

8  here. By billing every phone call, email, and review of any notice from the Court as a separate .1 hour

9  entry, Rein Law inflated its fee by thousands of dollars." *Hernandez v. Grullense*, No. 12-CV-03257-

10  WHO, 2014 WL 1724356, at *9 (N.D. Cal. Apr. 30, 2014) (Orrick, J.). Likewise here, NAF's counsel

11  inflated its fee by thousands of dollars. As the Court did in *Hernandez*, the Court should reduce these

12  fees for 0.1 entries by (at least) 50%. *Id.* at *9.

13       **IV.    NAF's request for non-taxable costs lacks sufficient documentation.**

14           NAF failed to demonstrate that is entitled to an award of $29,358.30 in non-taxable costs for

15  "attorney travel costs," "delivery and messaging services," and "investigation fees." Even if the

16  Court finds that Plaintiffs are entitled to some non-taxable costs, NAF failed to provide any

17  documentation beyond an attorney declaration (Dkt. 756-2 at 30:21–31:18). *See Dyer v. Wells Fargo

18  Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("[t]he Court cannot reimburse class counsel for

19  costs and expenses because counsel has provided no documentation supporting the claimed

20  expenses. Without documentation, the Court cannot determine whether the claimed expenses are

21  the type normally charged to a paying client."); *Banas*, 47 F. Supp. 3d at 979–80 (reducing certain

22  costs including costs for travel and messenger service; "since Volcano has not provided any

23  documentation, I cannot determine whether the specific amounts sought are reasonable."); Fed. R.

24  Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content

25  unless these rules or a federal statute provides otherwise."). While Defendants respectfully disagree

26  with this Court's allowance of non-taxable costs in *Planned Parenthood* (pending appeal), there the

27  _____

28  [17]Reduced by NAF's 25% "haircut," that's still over ten thousand dollars in 0.1 entries ($10,756.87).

1  Court recognized that a declaration describing non-taxable costs, without the underlying invoices, is

2  "not particularly fulsome" evidence. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,

3  No. 16-CV-00236-WHO, 2020 WL 7626410, at *8 (N.D. Cal. Dec. 22, 2020).

4  ## CONCLUSION

5  The Court should deny NAF's motion. There is no basis for an award of fees or costs under

6  the contracts, because NAF did not "incur" any fees or costs to be "reimbursed." Also, the

7  permanent injunctive relief is not connected to any adjudged breach of the contracts containing the

8  fee-shifting provision at issue. Even if NAF were entitled to some award, NAF's $6.933 million

9  request is grossly excessive, and NAF's non-taxable costs are unsupported.

10

11  Respectfully submitted,

12  /s/ Charles S. LiMandri

13  Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)

14  Jeffrey M. Trissell (CA Bar No. 292480)
FREEDOM OF CONSCIENCE DEFENSE FUND

15  P.O. Box 9520
Rancho Santa Fe, CA 92067

16  Tel: (858) 759-9948
Facsimile: (858) 759-9938

17  cslimandri@limandri.com
pjonna@limandri.com

18  jtrissell@limandri.com

19  *Attorneys for Defendants the Center for Medical Progress,*

20  *BioMax Procurement Services, LLC, and David Daleiden*

21  Thomas Brejcha, *pro hac vice*

22  Peter Breen, *pro hac vice*
Matthew F. Heffron, *pro hac vice*

23  THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250

24  Chicago, IL 60606
Tel: (312) 782-1680

25  Facsimile: (312) 782-1887
tbrejcha@thomasmoresociety.org

26  pbreen@thomasmoresociety.org
mheffron@thomasmoresociety.org

27

28  *Attorneys for Defendant David Daleiden*

Harmeet K. Dhillon (CA Bar No. 207873)
Mark P. Meuser (CA Bar No. 231335)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com

*Attorneys for Defendants the Center for Medical Progress,
BioMax Procurement Services, LLC, and David Daleiden*


Patrick D. Duplessis (CA Bar No. 265384)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT 06901
Tel: (203) 703-0800
pduplessis@whipgroup.com

*Attorneys for Defendants the Center for Medical Progress and
David Daleiden*