1  DEREK F. FORAN (CA SBN 224569)
   DForan@mofo.com
2  KAREN LEUNG (CA SBN 323029)
   KLeung@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Plaintiff
   NATIONAL ABORTION FEDERATION (NAF)
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 NATIONAL ABORTION FEDERATION (NAF),        Case No. 3:15-cv-3522-WHO

                   Plaintiff,                 Judge William H. Orrick, III
12
                                              **REPLY IN SUPPORT OF**
13           v.                               **NATIONAL ABORTION**
                                              **FEDERATION'S MOTION FOR**
14 THE CENTER FOR MEDICAL PROGRESS,           **ATTORNEYS' FEES**
   BIOMAX PROCUREMENT SERVICES LLC,
15 DAVID DALEIDEN (aka "ROBERT SARKIS"),      Location: Courtroom 2, 17th Floor
   and TROY NEWMAN
16                 Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................1

I.   NAF IS ENTITLED TO ATTORNEYS' FEES. ...............................................1

A.   Under California Law NAF Is Entitled To Its Fees. ............................2

B.   The Court Granted Summary Judgment Based on Defendants'
     Breach of the NAF Agreements, including the Exhibitor
     Agreement. ............................................................................................4

II.  NAF'S REQUESTED FEE IS REASONABLE.................................................5

A.   NAF's Request is Proportionate in Light of the Length, Scope, and
     Complexity of This Case........................................................................6

     1.   This litigation overwhelmingly concerned the breach of
          contract claim and injunctive relief...........................................7

     2.   NAF is entitled to attorneys' fees for related claims and
          matters, regardless of their outcome. ........................................8

     3.   NAF used a reasonable number of timekeepers.......................11

B.   NAF's Time Entries Showed the Compensable Work Performed.......12

     1.   NAF's redactions were appropriate. ........................................12

     2.   NAF's voluntary reduction already accounted for block
          billing. .....................................................................................13

     3.   Defendants' arguments about "too many whole or half
          numbers" and "0.1 entries" are contradictory and frivolous...................14

III. NAF ADEQUATELY DOCUMENTED ITS NON-TAXABLE COSTS. ....................15

CONCLUSION ..........................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*,
5
    990 F.2d 487 (9th Cir. 1993)..................................................................................9

6

*Banas v. Volcano Corp.*,
7
    47 F. Supp. 3d 957 (N.D. Cal. 2014) .............................................................6, 13, 15

8

*Benihana of Tokyo, LLC v. Benihana, Inc.*,
    No. 14 Civ. 224 (PAE), 2020 WL 91412 (S.D.N.Y. Jan. 8, 2020).........................14

9

*Beverly Hills Properties v. Marcolino*,
10
    221 Cal. App. 3d Supp. 7 (1990) ........................................................................2, 3

11

*Bonner v. Fuji Photo Film*,
    No. C 06-04374 CRB, 2008 WL 410260 (N.D. Cal. Feb. 12, 2008).......................10

12

13

*Cabrales v. County of Los Angeles*,
    935 F.2d 1050 (9th Cir. 1991).................................................................................10

14

*Caggiano v. Comm'r of Soc. Sec. Admin.*,
15
    Case No. CV-19-05522-PHX-MTL, 2021 WL 2779499 (D. Ariz. July 2, 2021) ...................12

16

*Carpenters Pension Tr. Fund for N. California v. Walker*,
    No. 12-cv-01447-WHO, 2015 WL 1050479 (N.D. Cal. Mar. 9, 2015)...................11

17

18

*Centennial Archaeology, Inc. v. AECOM, Inc.*,
    688 F.3d 673 (10th Cir. 2012)..................................................................................4

19

*Chavez v. FCA US LLC*,
20
    No. EDCV 19-01850 TJH (SHKx), 2020 WL 8457485 (C.D. Cal. Dec. 7, 2020) ........................................................................................................7

21

*CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*,
22
    No. 18-CV-81689-Rosenberg/Reinhart, 2021 WL 3361172 (S.D. Fla. Jan. 12, 2021) ........................................................................................................14

23

*Darling Int'l, Inc. v. Baywood Partners, Inc.*,
24
    No. C-05-3758 EMC, 2007 WL 4532233 (N.D. Cal. Dec. 19, 2007) .....................13

25

*Davis v. City & County of San Francisco*,
26
    976 F.2d 1536 (9th Cir. 1992), *reh'g*, 984 F.2d 345 (9th Cir. 1993)......................10

27

*De Amaral v. Goldsmith & Hull*,
    No. 12-CV-03580-WHO, 2014 WL 1309954 (N.D. Cal., Apr. 1, 2014) .................9

28

*Deitz v. Univ. of Denver, Colorado Seminary*,
   No. 95-CV-02756-WDM-OES, 2011 WL 2559829 (D. Colo. June 28, 2011) .....................2, 4

*Democratic Party of Washington State v. Reed*,
   388 F.3d 1281 (9th Cir. 2004)......................................................................................11, 12

*Do v. Super. Ct. of Orange Cnty.*,
   109 Cal. App. 4th 1210 (2003) ..............................................................................................4

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) .........................................................................................15

*Frog Creek Partners, LLC v. Vance Brown, Inc.*,
   206 Cal. App. 4th 515 (2012) ................................................................................................9

*Gilbert v. Master Washer & Stamping Co.*,
   87 Cal. App. 4th 212 (2001), *as modified* (Mar. 13, 2001).....................................................2

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
   No. CV-13-4460-GHK (MRWx), 2016 WL 6156076 (C.D. Cal. Aug. 16,
   2016) .....................................................................................................................................14

*Harlow v. Metro. Life Ins. Co.*,
   379 F. Supp. 3d 1046 (C.D. Cal. 2019) ................................................................................11

*Hernandez v. Grullense*,
   No. 12-cv-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ................................15

*In re HP Laser Printer Litig.*,
   No. SACV 07-0667 (RNBx), 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ...........................8

*Instrumentation Lab'y Co. v. Binder*,
   No. 11cv965 DMS (KSC), 2013 WL 12049072 (S.D. Cal. Sept. 18, 2013),
   *aff'd*, 603 F. App'x 618 (9th Cir. 2015)..................................................................................7

*Int'l Billing Servs., Inc. v. Emigh*,
   84 Cal. App. 4th 1175 (2000) .......................................................................................2, 3, 4

*Jankey v. Poop Deck*,
   537 F.3d 1122 (9th Cir. 2008)...............................................................................................10

*Kalani v. Starbucks Corp.*,
   No. 13-CV-00734-LHK, 2016 WL 379623 (N.D. Cal. Feb. 1, 2016).....................................14

*Klein v. City of Laguna Beach*,
   810 F.3d 693 (9th Cir. 2016)...............................................................................................7, 8

*Lira v. Cate*,
   No. C 00-0905 SI, 2010 WL 727979 (N.D. Cal. Feb. 26, 2010) ............................................11

*Logtale, Ltd. v. IKOR, Inc.*,
No. 11-CV-05452-EDL, 2016 WL 7743405 (N.D. Cal. Oct. 14, 2016), *aff'd*,
738 F. App'x 422 (9th Cir. 2018) .......................................................................................9, 15

*Lolley v. Campbell*,
28 Cal. 4th 367 (2002) ...................................................................................................................3

*Lota by Lota v. Home Depot U.S.A., Inc.*,
No. 11-CV-05777-YGR, 2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ...............................14

*Marsu, B.V. v. Walt Disney Co.*,
185 F.3d 932 (9th Cir. 1999)..........................................................................................................9

*McGinnis v. Kentucky Fried Chicken of California*,
51 F.3d 805 (9th Cir. 1994)............................................................................................................8

*Moran v. Oso Valley Greenbelt Assn.*,
117 Cal. App. 4th 1029 (2004) .....................................................................................................4

*Parkridge Ltd. v. Indyzen, Inc.*,
No. 16-cv-07387-JSW(LB), 2020 WL 9422351 (N.D. Cal. May 8, 2020) ...........................12

*Peak-Las Positas Partners v. Bollag*,
172 Cal. App. 4th 101 (2009) ......................................................................................................7

*Perrin v. Goodrich*,
No. ED CV 08-00595 LLP, 2012 WL 1698296 (C.D. Cal. May 14, 2012),
*aff'd,* No. 12-55944 (9th Cir. 2014)............................................................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
No. 16-cv-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020)................................15

*PLCM Grp. v. Drexler*,
22 Cal. 4th 1084 (2000), *as modified* (June 2, 2000)...................................................................2

*PQ Labs, Inc. v. Qi*,
No. 12-0450 CW, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ...........................................10, 11

*Rosenaur v. Scherer*,
88 Cal. App. 4th 260 (2001) .........................................................................................................4

*Santisas v. Goodin*,
17 Cal. 4th 599 (1998) .............................................................................................................8, 9

*Schwarz v. Sec'y of Health & Hum. Servs.*,
73 F.3d 895 (9th Cir. 1995)...........................................................................................................9

*Shame on You Prods., Inc. v. Banks*,
  2016 WL 5929245 (C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir.
  2018) ........................................................................................................................13

*Sierra Club v. U.S. E.P.A.*,
  625 F. Supp. 2d 863 (2007).......................................................................................14

*Smith v. Citifinancial Retail Servs.*,
  2007 WL 2221072 (N.D. Cal. Aug. 2, 2007)............................................................14

*In re Tobacco Cases I*,
  193 Cal. App. 4th 1591 (2011) ...................................................................................3

*TruGreen Companies, LLC v. Mower Bros.*,
  570 F. App'x 775 (10th Cir. 2014) ........................................................................2, 4

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emp. Of*
  *ASARCO, Inc.*,
  512 F.3d 555 (9th Cir. 2008)) ...................................................................................12

*Vogel v. Tulaphorn*,
  No. CV 13-464 PSG (PLAx), 2014 WL 12629679 (C.D. Cal. Jan. 30, 2014) ........13

**Statutes**

Cal. Civ. Code § 1717 ........................................................................................ *passim*

**Other Authorities**

Richard Pearl, Cal. Attorney Fee Awards (Cont. Ed. Bar. 1999) ......................................2

**INTRODUCTION**

NAF's motion established that it was the prevailing party and that NAF was entitled to reasonable attorneys' fees of $6,933,374.25 under the Exhibitor Agreement and Cal. Civ. Code § 1717.  In support of that amount, NAF filed a thirty-one page declaration, detailing the work performed in this six-year old action, the litigation tasks timekeepers performed, and the reasonableness of each timekeeper's hourly rates.  In addition, NAF has submitted nearly 5,000 time entries that provide further detail about the time reasonably spent on this action.  These materials show the reasonableness of NAF's request for $6,933,374.25.  That amount is nearly 40% less than the fees actually incurred because NAF voluntarily excluded all timekeepers who billed less than 100 hours and, for the remaining timekeepers, took a 25% across-the-board deduction.  The reasonableness of NAF's request is plain on its face.

In response, Defendants do not dispute that NAF is the prevailing party or that Morrison & Forester's hourly rates are reasonable.  Instead, Defendants contend, based on two cases applying out-of-state law, that NAF is entitled to no fees at all because the Exhibitor Agreement purportedly precludes fee awards when a party is represented pro bono.  But decades of California law puts that contention to bed.  Defendants also contend that NAF is not entitled to fees because it did not obtain relief based on the Exhibitor Agreement.  The Court need look no further than its summary judgment order to reject that argument.  Defendants' other arguments amount to meritless grumblings about the number of hours spent on this litigation.

NAF respectfully requests that the Court award it $6,933,374.25 in attorneys' fees.

**ARGUMENT**

**I.    NAF IS ENTITLED TO ATTORNEYS' FEES.**

NAF's motion showed that it was the "prevailing party" and therefore entitled to attorneys' fees under Section 1717 and the Exhibitor Agreements.  (ECF No. 727 at 16-17.)  Those agreements provide that "[e]xhibitors agree to reimburse NAF for all costs incurred by NAF, including reasonable attorneys' fees, in handling or responding to any violations of any provision of this entire Agreement."  (ECF Nos. 666-12, 666-13 ¶ 16.)  Though Defendants do not deny that NAF is the prevailing party, they nevertheless contend that NAF is not entitled to

1   any fees at all because NAF supposedly did not incur fees and because NAF purportedly did not

2   obtain relief based on the Exhibitor Agreement.  Those arguments entirely lack merit.

3        **A.    Under California Law NAF Is Entitled To Its Fees.**

4          Defendants attempt to sidestep NAF's showing by arguing that Section 1717 is inapposite

5   because its only purpose is to provide reciprocity in contractual attorney's fees provisions.  (ECF

6   No. 759 at 7 n.1) ("Opp.").  Then, pointing to cases interpreting out-of-state law, Defendants

7   argue that NAF has "incurred" no fees to "reimburse" because Morrison & Foerster represents

8   NAF pro bono.  (*Id.* at 5-7 (citing *TruGreen Cos., LLC v. Mower Bros.*, 570 F. App'x 775, 777

9   (10th Cir. 2014); *Deitz v. Univ. of Denver, Colo. Seminary*, No. 95-cv-02756-WDM-OES, 2011

10  WL 2559829, at *4-5 (D. Colo. June 28, 2011)).)  A long line of California cases reject both

11  arguments.  Indeed, "the claim 'that a losing party . . . should not have to pay [contractual]

12  attorney fees if the prevailing party did not, in fact, have to pay' them 'has been rejected

13  numerous times.'"  *Int'l Billing Servs., Inc. v. Emigh*, 84 Cal. App. 4th 1175, 1193 (2000) ("*IBS*")

14  (discussing Section 1717; ellipses in original) (quoting Richard Pearl, Attorney Fee Awards

15  *Based on Contract* § 6.16, in Cal. Attorney Fee Awards (Cont. Ed. Bar. 1999) (emphasis added)).

16         First, Section 1717 "govern[s]" all "agree[ments] to allocate attorney fees by contract."

17  *Gilbert v. Master Washer & Stamping Co.*, 87 Cal. App. 4th 212, 216-17 (2001), *as modified*

18  (Mar. 13, 2001) (interpreting Section 1717 to award contractual attorneys' fees).  Section 1717

19  "establish[es] [the] uniform treatment of fee recoveries in actions on contracts containing attorney

20  fee provisions and [ ] eliminate[s] distinctions based on whether recovery [is] authorized by

21  statute or by contract."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1091 (2000), *as modified* (June

22  2, 2000).  Said differently, under Section 1717, contractual attorney's fees are "seen as allowed

23  by statute, rather than by contract" and "equitable considerations must prevail over both the

24  bargaining power of the parties and the technical rules of contractual construction."  *Id.*

25         Second, California courts routinely reject interpretations of attorneys' fees provisions that

26  purport to limit recovery to litigants who have actually incurred attorneys' fees.  *See IBS*, 84 Cal.

27  App. 4th at 1192-95; *Beverly Hills Props. v. Marcolino*, 221 Cal. App. 3d Supp. 7, 11-12 (1990)

28  (awarding contractual attorneys' fees for pro bono representation).  *IBS* rejected the same

argument Defendants make here, about a materially identical attorneys' fee provision: "You promise to reimburse Company for any legal fees, liability, or loss which Company incurs . . . ." 84 Cal. App. 4th at 1180.  There, plaintiffs argued that defendants did not "incur" any fees to be "reimburse[d]" because defendants' new employer paid the defendants' attorneys.  *Id.* at 1192, 1194.  But that interpretation "reads 'incurs' out of the agreement," and attempts to turn an attorneys' fee provision into an indemnity provision, in contravention of Section 1717.  *Id.* at 1194.  So, the court affirmed the award of attorneys' fees, explaining that the plaintiffs "s[ought] a windfall" based on the "serendipity" that defendants had "discovered how to defend the lawsuit without having to pay out of their pockets."  *Id.* at 1193-94.  The same analysis applies here.

California courts reach the same conclusion when interpreting contractual attorneys' fees provisions through the lens of Section 1717.  In *Beverly Hills*, a case relied on by *IBS*, 84 Cal. App. 4th at 1194-95, a tenant sought fees under a bilateral attorneys' fee provision that forbid a fees award when "the attorney for the successful party is not going to charge such successful party."  *Beverly Hills*, 221 Cal. App. 3d Supp. at 10.  After the trial court awarded fees, the losing party appealed, arguing that because the tenant was represented pro bono, the plain language of the contract prohibited the award.  *Id.* at 9-10.  The court again rejected that argument.  *Id.* at 12.  Despite the bilateral attorneys' fees provision, Section 1717 nevertheless applied and, therefore, the analysis did not turn on the contract's language, but instead on Section 1717.  *Id.* at 10; *see also In re Tobacco Cases I*, 193 Cal. App. 4th 1591, 1598-99 (2011) (awarding contractual fees based on Section 1717, rather than contract).  And Section 1717 "does not expressly require the prevailing party to incur legal expenses," but rather provides for attorneys' fees "'*which are incurred* to enforce the contract,'" including fees incurred by the prevailing party's pro bono attorneys.  *Beverly Hills*, 221 Cal. App. 3d Supp. at 11 (emphasis in original) (quoting Section 1717(a)).

A legion of cases interpret the word "incur" similarly and reject the argument that attorneys fees may only be awarded when the prevailing party actually pays fees.  *See Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002) ("[I]t has been generally agreed that a party may 'incur' attorney fees even if the party is not personally obligated to pay such fees.  'A party's entitlement

1   to fees is not affected by the fact that the attorneys for whom fees are being claimed were funded

2   by governmental or charitable sources or agreed to represent the party without charge.'") (citation

3   omitted); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001) (relying on cases interpreting

4   Section 1717 to conclude that attorney's fees that are waived are still "incurred"); *Moran v. Oso*

5   *Valley Greenbelt Ass'n*, 117 Cal. App. 4th 1029, 1036 (2004) ("Modern jurisprudence does not

6   require a litigant seeking an attorney fee award to have actually incurred the fees."); *Do v. Super.*

7   *Ct.*, 109 Cal. App. 4th 1210, 1215-16 (2003) (rejecting argument that sanctions should not be

8   awarded because litigant was represented pro bono and incurred no attorneys' fees).[1]

9       Defendants do not and cannot contend that Morrison & Foerster has not "incurred" legal

10   fees by representing NAF over the past six years.  So, Defendants are "not entitled to avoid their

11   contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that"

12   NAF arranged to be represented pro bono.  *See IBS*, 84 Cal. App. 4th at 1193.

13       **B.      The Court Granted Summary Judgment Based on Defendants' Breach of the
             NAF Agreements, including the Exhibitor Agreement.**

14

15       Defendants are also wrong that NAF is not entitled to attorneys' fees because NAF

16   purportedly did not obtain relief on the Exhibitor Agreement.  (Opp. at 7-8.)  Rather, the Court

17   granted summary judgment and entered a permanent injunction based on Defendants' breach of

18   the Confidentiality Agreements ("CA") and the Exhibitor Agreements ("EA") (collectively, the

19   "NAF Agreements").  The Court could not have been more clear when it rejected Defendants'

20   attempt to sever the two agreements, and granted summary judgment based on issue preclusion

21   because the PPFA case "established" "the identical issue—breach of the NAF EAs and CAs[.]"

22

23       [1] Published Tenth Circuit authority agrees.  In *Centennial Archaeology v. AECOM, Inc.*,
     the court explained that "the adjective *incurred* adds nothing (except, perhaps, emphasis) when
24   modifying the term *attorney fee*, because in common usage a fee is something incurred."  688
     F.3d 673, 681 (10th Cir. 2012) (emphases in original).  And the term "attorney fees" is a "term of
25   art" that "means, not the amount actually paid or owed by the party to its attorney, but the value
     of attorney services provided to the party."  *Id.* at 678-79 (discussing attorneys' fee statutes and
26   rules).  Though *Trugreen* (the unpublished case Defendants cite) dismisses *Centennial
     Archaeology* with a wave—cases interpreting statutes and rules do not "necessarily dictate the
27   proper interpretation of the parties' contract"—*Trugreen* provides no persuasive reason to reject
     *Centennial Archaeology*'s explanation about the "common usage" of the terms.  *See Truegreen*,
28   570 F. App'x at 778.  In any event, *Trugreen* and *Deitz* do not involve California law.

1    (ECF No. 720 at 8.)  The Court also specifically and repeatedly concluded that Defendants

2    violated the EA: the Permanent Injunction is "directly related to and stems from defendants'

3    breach of specific provisions in the NAF Agreements," which the Court defined as including both

4    the EA and the CA.  (*Id.* at 3, 10; *see also id.* at 10-11 (discussing that the "defendants knowingly

5    and intelligently signed the EAs" and that "[t]he evidence at the *PPFA* trial established that

6    Daleiden *knew* what he was signing when he signed the two EAs").)  That is why the Court

7    granted summary judgment on NAF's Sixth Cause of Action (Breach of Contract), which

8    included both NAF Agreements, and entered the Permanent Injunction as a remedy.  (ECF Nos.

9    131 ¶¶ 193-200, pp. at 73-74 (Prayer for Relief); ECF Nos. 720 at 7-8; 723 at 1.)

10          Seeing the writing on the wall (or in the order), Defendants switch to arguing that NAF

11   did not obtain relief on the EA because the Court declined to permanently enjoin Defendants from

12   attempting to enter future NAF meetings.  (Opp. at 7-8.)  That argument defies logic.  That the

13   Court did not bar Defendants from *future* attempts to enter NAF's facilities has no bearing on

14   whether Defendants breached the Exhibitor Agreement *in the past*.  (*See* ECF No. 720

15   (distinguishing between NAF's proof of past breaches of the Exhibitor Agreement and unproven

16   future attempts to access NAF's meetings using misrepresentations).)  That is exactly what the

17   Court concluded:  Defendants "only gained access to" information learned at the 2014 and 2015

18   NAF conferences "due to [Defendants'] breaches of the NAF Agreements."  (ECF No. 720 at 20.)

19          The Court adjudged that the Defendants breached both the EA and the CA.  Accordingly,

20   NAF is the prevailing party and entitled to attorneys' fees.

21   **II.    NAF'S REQUESTED FEE IS REASONABLE.**

22          As NAF is the prevailing party, it is entitled to reasonable attorneys' fees.  Notably,

23   Defendants do not challenge the reasonableness of NAF's attorneys' fees based on Morrison &

24   Foerster's billing rates.  Instead, Defendants argue only that NAF's requested fees are

25   unreasonable because (1) they are purportedly disproportionate to the relief achieved; and (2)

26   some of NAF's nearly five thousand time note entries supposedly lack sufficient detail.  Those

27   arguments lack merit and ignore the six year history of this case, as well as NAF's *$4.6 million*

28   (or nearly 40%) voluntary reduction, which includes both excluding numerous timekeepers who

billed less than 100 hours and a 25% across-the-board haircut.[2]  (ECF No. 756-2 ¶¶ 3, 8 (NAF

incurred $11,549,163.00 in fees, but is seeking only $6,933,374.25).)  NAF's requested attorneys'

fees are proportionate and reasonable.

**A.     NAF's Request is Proportionate in Light of the Length, Scope, and Complexity of This Case.**

Defendants misleadingly argue that NAF seeks a "'staggering amount for a breach of

contract case which was resolved at summary judgment.'"  (Opp. at 10-11 (quoting *Banas v.

Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014)).)[3]  As this Court well knows, this six-

year old case "has been actively litigated, to say the least" (*see* ECF No. 452 at 1), and cannot be

summed up merely as a "contract case resolved on summary judgment."  (Opp. at 10.)  Rather,

Defendants' zealous (and sometimes frivolous) advocacy extended the litigation and required

NAF to respond to numerous filings and issues that do not come up in run-of-the-mill contract

cases.

To name a few, Defendants intentionally violated the Preliminary Injunction, necessitating

contempt proceedings, and then moved to disqualify this Court two years into litigation; filed nine

writs and appeals, all of which were resolved in NAF's favor; moved to dismiss the complaint

over three years and 550 docket entries after NAF initiated suit; refused to produce corporate

documents based on arguments that "contravene[d] a long line of case law" spanning over 100

years, then continued their "shell game" by refusing to produce the same documents based on

other misguided theories and moving for reconsideration, and then sought a writ of mandamus

(the second in fewer than six months), both of which were denied.

Regardless of whether Defendants accurately claim that they have "fairly" attempted to

---

[2] In addition, NAF is not seeking fees for filing this reply brief in support of its motion for attorneys' fees or for any time spent reviewing and redacting nearly 5,000 time entries.

[3] Defendants' reliance on *Banas* is woefully misplaced.  *Banas* involved a breach of contract claim that was resolved, including the attorneys' fees motion, in less than three years. *Banas*, 47 F. Supp. 3d at 961.  Further, without taking any voluntary reduction, the *Banas* defendants sought $3.5 million in attorneys' fees based on "remarkably deficient" documentation. *Id.* at 965.  Despite the court characterizing the amount as "eye-catching" and "huge," it nevertheless awarded nearly $2.6 million in attorneys' fees—a 25% reduction.  *Id.* at 961.  Here, NAF *voluntarily* reduced its fees by nearly 40%.  (ECF No. 756-2 ¶¶ 3, 8).

1   mount a defense (Opp. at 8), Defendants "'cannot litigate tenaciously and then be heard to

2   complain about the time necessarily spent by the plaintiff in response.'"  *Instrumentation Lab'y*

3   *Co. v. Binder*, No. 11cv965 DMS (KSC), 2013 WL 12049072, at *4 (S.D. Cal. Sept. 18, 2013),

4   *aff'd*, 603 F. App'x 618 (9th Cir. 2015) (quoting *Peak-Las Positas Partners v. Bollag*, 172 Cal.

5   App. 4th 101, 114 (2009)); *Chavez v. FCA US LLC*, No. EDCV 19-01850 TJH (SHKx), 2020 WL

6   8457485, at *1 (C.D. Cal. Dec. 7, 2020) ("FCA's aggressive litigation strategy increased the

7   number of hours that Chavez's attorneys had to work on this case.").

8           **1.      This litigation overwhelmingly concerned the breach of contract claim**
9                     **and injunctive relief.**

10          It cannot be reasonably disputed that all of NAF's claims stemmed from Defendants' own

11  nefarious behavior:  Defendants misrepresented their identities to infiltrate NAF conferences,

12  recorded audio and video, and then published highly misleading versions of that video, all of

13  which breached the NAF Agreements.  The vast majority of this litigation (including written and

14  oral discovery), the temporary restraining order, the preliminary injunction, and summary

15  judgment, have revolved around the breach of contract claims and fending off Defendants'

16  defenses and counterarguments.  (*See* ECF No. 727 at 1-15.)

17          Defendants nevertheless argue that NAF is entitled to limited attorneys' fees because it

18  only achieved injunctive relief, and did not achieve any monetary relief.  (Opp. at 9-10.)

19  Defendants' six-year effort to avoid that exact result belies that argument.

20          "[T]he most critical factor in determining the reasonableness of a fee award is the degree

21  of success obtained."  *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (cleaned

22  up).  Like in certain civil rights cases, recovery of monetary damages was not the primary

23  purpose of this litigation.  *See id.*  Indeed, by signing the Exhibitor Agreement, Defendants

24  "agree[d] that monetary damages would *not* be a sufficient remedy for any breach of this

25  agreement . . . and that NAF will be entitled to specific performance and injunctive relief as

26  remedies for any such breach."  (ECF Nos. 666-12, 666-13 (emphasis added).)  And NAF has

27  repeatedly argued, and the record has made clear, that the Permanent Injunction is the primary

28  relief NAF sought because of the irreparable harm NAF and its members face when NAF's

1    confidential information is disclosed.  (ECF No. 665 at 20-21 (showing that irreparable harm to

2    NAF will occur without the entry of a permanent injunction).)  That NAF voluntarily dismissed

3    certain claims early-on and then dismissed the remaining claims immediately after obtaining the

4    Permanent Injunction further evidences that fact.  (*See* ECF No. 721.)  That is all courts require to

5    award fees.  *See Klein*, 810 F.3d at 700 (reversing denial of fees where plaintiff won nominal

6    damages but "gained the [injunctive] relief that he primarily sought when the challenged law was

7    amended"); *In re HP Laser Printer Litig.*, No. SACV 07-0667 AG (RNBx), 2011 WL 3861703,

8    at *2 (C.D. Cal. Aug. 31, 2011) (awarding $4.7 million in attorneys' fees where "primary relief"

9    obtained was injunctive and the damages were nominal).[4]

## 2.    NAF is entitled to attorneys' fees for related claims and matters, regardless of their outcome.

12       Defendants next contend that the Court should reduce NAF's fees (1) for purportedly

13   abandoned claims and (2) for time spent on unsuccessful or unrelated litigation tasks.  (Opp. at 9-

14   10, 19-20.)  Those arguments lacks merit.

### a.    NAF is entitled to fees spent on NAF's non-contract claims.

16       NAF is entitled to reasonable attorneys' fees for dismissed related claims.  Under Section

17   1717, a party may recover contractual attorneys' fees for fees incurred on non-contract claims

18   under two circumstances.  First, the language of a fees provision itself might support an award of

19   attorney fees to the prevailing party for work performed on unsuccessful non-contract claims.

20   *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) (fees incurred "arising out of the execution of

21   th[e] agreement or the sale" included tort claims).  For example, the Ninth Circuit has held that

22   fees incurred for non-contract claims may be recovered under fees provisions covering disputes

23   "arising out of or in connection with" the contract and provisions providing for recovery in "any

24   suit or other proceeding with respect to the subject matter of enforcement of" the contract.  *See*

---

[4] Quoting *McGinnis v. Kentucky Fried Chicken of California*, Defendants argue that "[t]he district court must reduce the attorneys' fees award so that it is commensurate with the extent of the plaintiff's success."  (Opp. at 9 (quoting 51 F.3d 805, 810 (9th Cir. 1994).)  But *McGinnis* expressly limited that rule to situations "where the relief sought and obtained is limited to money, [as] the terms 'extent of success' and 'level of success' are euphemistic ways of referring to money."  *McGinnis*, 51 F.3d at 810.  The rule therefore is not applicable here.

1  *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999); *see also 3250 Wilshire Blvd.*

2  *Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993).

3      Like the provisions at issue in *Santisas*, *Marsu*, and *Wilshire*, NAF's fees provision

4  broadly includes any fees incurred "in handling or responding to any violations of any provision

5  of this entire Agreement[.]"  (*See* ECF Nos. 666-12, 666-13 ¶ 16.)  And Defendants cannot

6  dispute that NAF filed this action, including its non-contract claims, as a response to Defendants'

7  breach of the NAF Agreements.  Nor is NAF's dismissal of its non-contract claims a barrier to

8  recovery because they share "a common core of facts" with the breach of contract claim.  *See*

9  *Marsu*, 185 F.3d at 939 (affirming award of contractual fees for unsuccessful tort claims).

10      Second, even if the EA's fees provision does not cover non-contract claims, a prevailing

11  party may also recover fees "incurred for representation on an issue common to both" the contract

12  claim and non-contract claims.  *Logtale, Ltd. v. IKOR, Inc.*, No. 11-CV-05452-EDL, 2016 WL

13  7743405, at *2 (N.D. Cal. Oct. 14, 2016), *aff'd*, 738 F. App'x 422 (9th Cir. 2018).  "This is true

14  even where the party did not prevail on the related cause of action."  *Id.*  As the lion's share of

15  issues in this case were about the breach of contract claim, Defendants lack any basis for claiming

16  that fees should be cut by 90%.[5]

17      In addition, NAF's voluntary reduction of nearly 40%, includes a 25% reduction for, *inter*

18  *alia*, "any time spent in connection with NAF's non-contract claims."  (ECF No. 727 at 24.)

19          **b.      NAF is entitled to fees incurred to further its litigation goals.**

20      Defendants also provide no meritorious basis for accusing NAF of wrongly seeking fees

21  for tasks that were unsuccessful or that did not contribute to NAF's litigation goals.  (Opp. at 19.)

22      "[A] party who ultimately prevails on a contract action is entitled to all of its fees,

23  including fees incurred during the lawsuit in proceedings where it did not prevail."  *Frog Creek*

24

---

25      [5] Applying Defendants' two part test for abandoned claims ends in the same result.  (*See*
26  Opp. at 9 (citing *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580-WHO, 2014 WL 1309954,
    at *4 (N.D. Cal., Apr. 1, 2014)).)  As discussed, NAF's voluntarily dismissed claims are related to
27  NAF's breach of contract claim because they "arose from the same course of conduct."  *See*
    *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 903 (9th Cir. 1995).  And it is beyond
28  dispute that the Permanent Injunction was the primary relief sought by NAF.

1   *Partners, LLC v. Vance Brown, Inc.*, 206 Cal. App. 4th 515, 546 (2012); *PQ Labs, Inc. v. Qi*, No.

2   12-0450 CW, 2015 WL 224970, at *2 (N.D. Cal. Jan. 16, 2015) (allowing winning parties to

3   recover attorneys' fees for stages it lost); *Bonner v. Fuji Photo Film*, No. C 06-04374 CRB, 2008

4   WL 410260, at *2 (N.D. Cal. Feb. 12, 2008) (same under California law).  The prevailing party is

5   "entitled to all attorney's fees reasonably expended in pursuing th[e] claim" because "time spent

6   on a losing stage of litigation contributes to success" and "constitutes a step toward victory."

7   *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991).

8          Defendants primarily claim that NAF wrongfully seeks fees for work related to NAF's

9   motion to limit Defendants' response to a Congressional subpoena and a related motion to hold

10  Defendants in contempt for disclosing too much information to Congress.[6]  Those efforts were

11  closely connected to NAF's primary litigation goal of ensuring that Defendants did not cause

12  irreparable harm by (again) disclosing NAF's confidential information.[7]  Indeed, this Court's

13  orders on the matter recognized the same.  (*See* ECF Nos. 155, 314, 356.)  Like NAF's

14  monitoring of the criminal proceedings against Daleiden and NAF's settlement with the former

15  co-defendant Newman (*see* Opp. at 19-20), NAF reasonably expended time on issues pertaining

16  to the Congressional subpoena because it was a necessary step to ensuring the confidentiality of

17  the information that Daleiden illicitly obtained.

18         This case is therefore nothing like the two that Defendants cite, where the courts reduced

19  attorneys' fees for work that "unreasonably protracted the litigation," *Jankey v. Poop Deck*, 537

20  F.3d 1122, 1133 (9th Cir. 2008), and "public relations work which did not contribute, directly and

21  substantially, to the attainment of appellees' litigation goals[.]"  *Davis v. City & County of San*

22  *Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on other grounds on*

23  *denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).

24

25         [6] At the time, this Court noted that Defendants had acted "contrary to [this Court's] Order" by producing materials "covered by the TRO," but "not covered by the subpoena."  (ECF No. 354 at 16, n.18.)

26

27         [7] Indeed, shortly after Defendants' disclosure of NAF's confidential information to Congress, Daleiden's "great friend" began publishing that material on the internet, resulting in the exact type of harassment, intimidation, and threats against NAF's members that this litigation was

28  initiated to prevent.  (ECF No. 221-4 at 1-7.)

**3.      NAF used a reasonable number of timekeepers.**

Defendants propose a blanket 50% reduction based on a gross mischaracterization of the size of the team.  (*See* Opp. at 11-12.)  While NAF seeks fees for twenty-two timekeepers, only a few of those timekeepers were actively involved at any given time, and only one timekeeper, Derek Foran, has worked on the case continuously since 2015.  (ECF Nos. 756-2 ¶ 40, 756-3.)

Courts will not reduce an award of attorneys' fees on the basis of overstaffing if the defendants only "offer a general and unsubstantiated allegation of duplication of efforts." *PQ Labs*, 2015 WL 224970, at *2 (refusing to reduce fees for overstaffing based on only declaration comparing defendants' level of staffing to that of plaintiffs).  That is all Defendants offer here.

It is also well established that "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  Defendants do not attempt to explain "how the allegedly duplicative work could have been performed differently." *See Lira v. Cate*, No. C 00-0905 SI, 2010 WL 727979, at *6 (N.D. Cal. Feb. 26, 2010).  Nor do Defendants "identify any specific duplications," beyond suggesting that timekeepers should not have attended team meetings. *See PQ Labs, Inc.*, 2015 WL 224970, at *2.  But litigation teams are allowed to confer with each another and review one another's work, and seeking fees for these activities is not excessive if their tasks reflect an appropriate division of labor when considering the complexity of the case. *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1057 (C.D. Cal. 2019).

NAF also efficiently staffed the case.  Mr. Foran supervised junior attorneys who performed tasks that would normally be assigned to more senior attorneys at the firm.  (ECF No. 756-2 ¶ 7.)  He also appropriately delegated tasks based on seniority and billing rate, with highly qualified, but less costly associates, completing work appropriate for their skill level.  (*Id.*)  So, this case is nothing like *Carpenters Pension Tr. Fund for N. Cal. v. Walker*, No. 12-cv-01447-WHO, 2015 WL 1050479, at *2 (N.D. Cal. Mar. 9, 2015), where three attorneys with over twenty years of experience worked on a "not particularly complex" matter and did not delegate "matters that could have been accomplished by less senior attorneys."

Defendants also continue to ignore that NAF's voluntary 40% reduction included the

1   exclusion of any timekeeper who had billed less than 100 total hours on the matter—a reduction

2   of over $2,300,000.00.  (ECF No. 756-2 ¶¶ 8-9.)

3         **B.**     **NAF's Time Entries Showed the Compensable Work Performed.**

4              **1.**     **NAF's redactions were appropriate.**

5        Defendants first challenge NAF's redactions of privileged information in the time entries.[8]

6   (*See* Opp. at 12-16.)  Those arguments lack merit as NAF appropriately redacted privileged

7   information in accord with Ninth Circuit precedent.

8        Redactions protecting privileged information are permitted so long as a "neutral judge can

9   make a fair evaluation of the time expended, the nature and need for the service, and the

10   reasonable fees to be allowed."  *Parkridge Ltd. v. Indyzen, Inc.*, No. 16-cv-07387-JSW(LB), 2020

11   WL 9422351, at *5 (N.D. Cal. May 8, 2020) (citing *United Steelworkers of Am. v. Ret. Income*

12   *Plan for Hourly-Rated Emp. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)).  When

13   requesting attorneys' fees, parties are "entitled for good reason to considerable secrecy about

14   what went on between client and counsel, and among counsel."  *Democratic Party*, 388 F.3d at

15   1286 (approving redactions covering attorney communications and topics of research); *see*

16   *Caggiano v. Comm'r of Soc. Sec. Admin.*, Case No. CV-19-05522-PHX-MTL, 2021 WL

17   2779499, at *4 (D. Ariz. July 2, 2021) (concluding that the plaintiff properly redacted

18   "descriptions for entries related to intra-office communications" as "[p]laintiff is entitled to

19   protect this information").

20        That is exactly what NAF did here.  NAF only redacted the precise subject matter of

21   privileged communications and those redactions "do not impair the ability of the court to judge

22   whether the work was an appropriate basis for fees."  *See Democratic Party*, 388 F.3d at 1286

23   (holding that redacted billing entries such as "Counsel call to discuss [REDACTED]" were

24   compensable).  Indeed, the majority of NAF's time entries had minimal to no redactions,

---

25

26        [8] Sprinkling the arguments like pixie dust throughout the Opposition, Defendants assert that NAF's time entry narratives are "vague."  (*See, e.g.*, Opp. at 11, 16, 19, and 20.)  Yet even the entries the Opposition excerpts detail the subject matter and purpose of the work performed.

27   (*Id.* at 16-18 (*e.g.*, entry 602: "Work on memo analyzing strategies to challenge congressional subpoenas"; entry 3512: "research 5th Amendment adverse inferences in the 9th Cir.").)

28

1    including 2,000 time entries that contain no redactions at all.  NAF's entries, along with its other

2    documentation (including a detailed thirty-one page declaration) provide Defendants and the

3    Court with plenty of information to assess the reasonableness of the time NAF expended.[9]

4    Though Defendants rely heavily on *Shame on You Prods., Inc. v. Banks* (Opp. at 14-15), it

5    concurs with NAF's approach.  No. CV 14–03512–MMM (JCx), 2016 WL 5929245, at *16 (C.D.

6    Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018) (approving redactions as time entries

7    need "not specify the precise purpose of a conversation or the topics discussed" or researched).

8        In any event, if the Court deems it necessary, NAF is willing to submit its fully unredacted

9    time records for *in camera* review.  *See Vogel v. Tulaphorn*, No. CV 13-464 PSG (PLAx), 2014

10   WL 12629679, at *10 (C.D. Cal. Jan. 30, 2014) (approving of *in camera* review to determine

11   reasonableness of fees, but concluding that partially redacted billing entries were sufficient).[10]

12                    **2.    NAF's voluntary reduction already accounted for block billing.**

13       Defendants contend that NAF's block billing is inappropriate because it is impossible to

14   determine whether time spent on a task was reasonable.  (Opp. at 16 (citing *Banas*, 47 F. Supp. 3d

15   at 966-97).)  But less than 15% of NAF's entries were block billed.  (*See* ECF No. 756-2 ¶ 9;

16   Opp. at 16.)  In contrast, the attorneys in *Banas* block billed *85%* of their expended time, which

17   resulted in the court reducing the attorneys' fees by 20%.  *Banas*, 47 F. Supp. 3d at 968-69.

18       Further, in addition to excluding over $2,300,000 for timekeepers who billed less than 100

19   hours, NAF already voluntarily reduced its hours by 25% across *all* 4,924 of its entries to account

20   for any duplicative efforts or vagueness due to block billing.  Accordingly, Defendants' request

21   for a 50% reduction (Opp. at 19) is not warranted.  Even if the Court finds a reduction is

22   warranted, the Court should apply no more than a 10% reduction to only the block billed time

23   entries—a maximum reduction of $193,635.  *See Darling Int'l, Inc. v. Baywood Partners, Inc.*,

24

25    [9] NAF's redactions are consistent with this Court's instruction that "[t]he produced
      timesheets may be redacted to protect only privileged and other confidential information that I
26    have allowed plaintiff to file under seal or treat as Attorneys Eyes Only."  (ECF No. 739 at 1.)

27    [10] Under the Protective Order, NAF did not waive work-product or attorney client
      privilege by inadvertently failing to redact certain entries.  (ECF No. 92 at 18-19; *see* ECF Nos.
28    759-1 at 6, 759 at 15-16.)

No. C-05-3758 EMC, 2007 WL 4532233, at *9 (N.D. Cal. Dec. 19, 2007) (applying a 10% reduction to only time entries that were block billed).[11]

### 3. Defendants' arguments about "too many whole or half numbers" and "0.1 entries" are contradictory and frivolous.

Defendants simultaneously argue that NAF's time entries contain "too many whole or half numbers," and too many "six-minute (0.1) entries." (Opp. at 22-23.) Apart from being logically inconsistent, Defendants are wrong on both counts.

Courts only apply a reduction to whole or half-hour time entries when they appear with such "extreme frequency" as to suggest timekeepers "likely rounded their times." *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV-13-4460-GHK (MRWx), 2016 WL 6156076, at *11 (C.D. Cal. Aug. 16, 2016); *Lota by Lota v. Home Depot U.S.A.*, Inc., No. 11-CV-05777-YGR, 2013 WL 6870006, at *12 (N.D. Cal. Dec. 31, 2013) (refusing requested reduction of half or whole hour entries despite "high percentage" of such entries); *Perrin v. Goodrich*, No. ED CV 08-00595 LLP (SSx), 2012 WL 1698296, at *2 (C.D. Cal. May 14, 2012), *aff'd*, No. 12-55944 (9th Cir. 2014) (refusing requested reduction because "not all of the entries . . . [were] in whole or half-hour increments).[12] Here, Defendants identify only eighty nine whole or half-hour entries—or just 1.8% of NAF's entries—hardly an "extreme frequency." (*See* Opp. at 22.)

Defendants' concern over "numerous 0.1 entries" is also unfounded. (*See* Opp. at 23.) Entries billed in 0.1 hour increments actually "further reduc[e] the likelihood that inflation has occurred" due to other billing practices. *Kalani v. Starbucks Corp.*, No. 13-CV-00734-LHK, 2016 WL 379623, at *7 (N.D. Cal. Feb. 1, 2016). Defendants' only cited case emphasized that

[11] Defendants are wrong that NAF is not entitled to fees for clerical tasks. *See Smith v. Citifinancial Retail Servs.*, 2007 WL 2221072, at *2 (N.D. Cal. Aug. 2, 2007) ("It is inevitable that attorneys will spend some of their time on quasi-clerical tasks."); *Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 868-69 (2007) (awarding $115 per hour for "non-legal," clerical tasks).

[12] The cases Defendants cite agree. *See CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, No. 18-CV-81689-Rosenberg/Reinhart, 2021 WL 3361172, at *7, 11-12 (S.D. Fla. Jan. 12, 2021) (applying 20% reduction where senior partner accounted for 20% of total hours, 74% of his entries were whole or half-hours, and he had "no entries ending in .4 or .9"); *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2020 WL 91412, at *7 (S.D.N.Y. Jan. 8, 2020) (applying reduction based on the "outsized number" of entries "appear[ing] to have been rounded to a whole number," the "scale of opaque billing entries," and the "many repeated time entries").

the lawyers had billed "multiple .1 hour entries on the same day" and "[m]any of th[o]se tasks reasonably took a fraction of six minutes and should have been consolidated into one six-minute task." *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *8 (N.D. Cal. Apr. 30, 2014). In contrast, less than 5% of NAF's 4,924 entries are for "0.1" hours, and those entries are spread across the entire six years of litigation. (*See* Opp. at 23.)

## III.   NAF ADEQUATELY DOCUMENTED ITS NON-TAXABLE COSTS.

As the prevailing party under a contract providing for "reasonable attorney's fees," NAF is entitled to recover non-taxable costs that would customarily be charged to the client. Section 1717; *Logtale, Ltd. v. IKOR, Inc.*, 738 F. App'x 422, 426 (9th Cir. 2018) (awarding non-taxable costs in a breach of contract claim under Section 1717). Contrary to Defendants' assertion, this Court awarded PPFA "the non-statutory costs they [sought]," explaining that "[w]hile not particularly fulsome, the declarations provide a sufficient description of the costs." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO, 2020 WL 7626410, at *8 (N.D. Cal. Dec. 22, 2020). Here, NAF has provided a detailed declaration describing the non-taxable costs incurred in this litigation. (ECF No. 756-2, ¶¶ 104-09.)

Further, as the cases that Defendants cite show, insufficient documentation is not a basis to deny all NAF's non-taxable costs. (Opp. at 23.) In *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014), when counsel "provided no documentation supporting the claimed expenses," the court assessed the reasonableness of the costs by ordering the plaintiffs to "file an itemization listing the expenses by category and the total amount advanced for each category." *Id.* at 334. And in *Banas*, rather than denying all non-taxable costs based on counsel's failure to provide "any documentation," the court applied a 10% reduction. *Banas,* 47 F. Supp. 3d at 981. Here, NAF has provided a declaration describing the categories of non-taxable costs that it is seeking. (ECF No. 756-2, ¶¶ 104-09.)

## CONCLUSION

NAF respectfully requests the court award NAF $6,933,374.25 in attorneys' fees and $29,358.30 in non-taxable costs.

1

2   Dated: November 3, 2021          DEREK F. FORAN
                                     KAREN LEUNG
3                                    MORRISON & FOERSTER LLP

4                                    By:   /s/ Derek F. Foran
5                                          DEREK F. FORAN

6                                    Attorneys for Plaintiff
                                     NATIONAL ABORTION FEDERATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28