UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION, | Case No.  15-cv-03522-WHO |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS TO ENFORCE SURETY LIABILITY, MOTION FOR RELIEF FROM JUDGMENT, AND FOR ATTORNEY FEES** |
| CENTER FOR MEDICAL PROGRESS, et al., | Re: Dkt. Nos. 800, 805, 807, 808 |
| Defendants. | |

Currently pending are plaintiff National Abortion Federation's ("NAF") motion to enforce the surety liability defendants posted to secure the award of civil contempt sanctions and interest on that award (Dkt. No. 800),[1] defendants' motion for relief from the Judgment (Dkt. No. 805), and NAF's motions for attorney fees for time spent successfully defending the Judgment and sanctions award at the Ninth Circuit and successfully defeating defendants' petition for a writ of certiorari to the Supreme Court.  Dkt. Nos. 807, 808.[2]  These matters are appropriate for resolution on the papers.  The March 27, 2024 hearings are VACATED.  *See* Civ. L.R. 7-1(b).

For the reasons described below, NAF's motion to enforce is GRANTED and defendants' motion for relief from the Judgment is DENIED.  NAF's motions for attorney fees against defendants and contemnors for the time spent responding to defendants' and contemnor's appeals and petition for certiorari are GRANTED in the amounts specified below.

## BACKGROUND

The parties are intimately familiar with the long, unusually complex litigation background

---

[1] Defendants are the Center For Medical Progress ("CMP"), Biomax Procurement Services LLC (Biomax"), and David Daleiden.  Defendant Troy Newman was dismissed from this case by stipulation of NAF and Newman, and over the objections of CMP, Biomax and Daleiden.  Dkt. No. 653.

[2] Contemnors are Steven Cooley and Brentford Ferreira, attorneys who represented Daleiden in criminal proceedings in California Superior Court.

of this case.  That background is briefly summarized here.

In July 2015, reaffirmed in August 2015, I entered a Temporary Restraining Order ("TRO") that prevented defendants from:

> (1) publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings;
>
> (2) publishing or otherwise disclosing to any third party the dates or locations of any future NAF meetings;
>
> (3) publishing or otherwise disclosing to any third party the names or addresses of any NAF members learned at any NAF annual meetings; and
>
> (4) attempting to gain access to any future NAF meetings.

Dkt. Nos. 15, 27.  The TRO remained in place, as clarified, until discovery was conducted.

In February 2016, considering the evidentiary record and having determined over a dozen of interim motions, I entered a Preliminary Injunction ("PI"). Dkt. No. 354.  The PI restrained defendants and those acting in concert with them from:

> (1) publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned, at any NAF annual meetings;
>
> (2) publishing or otherwise disclosing to any third party the dates or locations of any future NAF meetings; and
>
> (3) publishing or otherwise disclosing to any third party the names or addresses of any NAF members learned at any NAF annual meetings.

Dkt. No. 354 at 42.  Defendants appealed the PI, and the Ninth Circuit affirmed.  Dkt. Nos. 401.

Soon thereafter, NAF moved for a finding of contempt and imposition of sanctions against contemnors, who violated the PI (along with defendants CMP and Dalieden) by posting portions of the recordings to the public while representing defendant Daleiden in state court criminal proceedings.  After considering the evidentiary showing and giving notice, I found the attorneys and defendants in civil contempt and entered an award of sanctions for which they are jointly and severally liable.  Dkt. Nos. 482, 495 (collectively "Sanctions Order").  The contemnors and defendants appealed the Sanction Order, posting a $200,000 bond to stay enforcement. Dkt. No. 515.

1    In November 2018, I denied defendants' motions to dismiss and strike, as well as

2 defendants' motion to dissolve, modify, or clarify the PI based on the state law criminal

3 proceedings proceeding against Daleiden.  Dkt. No. 572.  Defendants appealed again and the

4 Ninth Circuit affirmed.  Dkt. Nos. 573, 614.

5    In June 2019, the Ninth Circuit dismissed the appeals from the Sanctions Order for lack of

6 jurisdiction, noting that the Sanctions Order could be appealed after entry of final judgment.  Dkt.

7 Nos. 597, 599.  Contemnors and defendants sought rehearing and rehearing en banc, which were

8 denied, and also petitioned the Supreme Court for review by writ of certiorari, which was also

9 denied.

10    After the Ninth Circuit denied the request for hearing en banc, NAF moved to enforce the

11 $200,000 surety bond securing the contempt award.  I denied that motion contingent on

12 contemnors and defendants providing additional security to cover the accrued interest.  Dkt. No.

13 611.  A $10,000 rider was added to the original bond.  Dkt. No. 611.

14    In April 2021, I granted NAF's motion for summary judgment based on issue preclusion

15 and entered judgment in NAF's favor on its breach of contract claim, based on the breach of

16 identified Exhibitor Agreements ("EAs") and Confidentiality Agreements ("CAs"), and issued the

17 following Permanent Injunction:

18       All Defendants and their officers, agents, servants, employees,
19       owners, and representatives, and all other persons, firms, or
         corporations acting in concert or participation with them, are hereby
20       permanently restrained and enjoined from:

21          1) Publishing or otherwise disclosing to any third party any
            video, audio, photographic, or other recordings taken, or any
22          confidential information learned at the 2014 and 2015 NAF
            Annual Meetings;

23          2) Retaining possession of any materials covered by this
24          permanent injunction. Any and all such materials covered by
            this permanent injunction must be turned over to counsel of
25          record in this matter or counsel of record in People v.
            Daleiden, No. 2502505 (S.F. Super. Ct.), the identity of whom
26          shall be disclosed to this Court. Access to any and all such
            materials by individuals covered by this permanent injunction
27          shall occur only onsite at the offices of said counsel and
            subject to the supervision of said counsel, absent further order
28          of this Court or the court in People v. Daleiden, No. 2502505
            (S.F. Super. Ct.).

3

> Nothing in this permanent injunction shall prevent the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from making orders about how materials covered by this injunction can be used in those proceedings.

Dkt. Nos. 720, 723. Defendants appealed. Dkt. Nos. 737, 738. In December 2021, I awarded NAF its attorney fees and reasonable costs and issued an Amended Judgment. Dkt. Nos. 761, 765, 769. Defendants appealed (Dkt. Nos. 766, 770), and posted a $375,000 bond to stay enforcement of the final Judgment, including Dkt. Nos. 720, 723, 761, 765, 769, pending final appellate review of those orders.

In August 2022, the Ninth Circuit affirmed the final judgment granting summary judgment to NAF and entering a permanent injunction against defendants. Dkt. No. 776. In the same memorandum disposition, the Ninth Circuit affirmed my order finding contemnors, Daleiden and CMP in civil contempt. *Id.* Defendants and contemnors filed separate petitions for rehearing and rehearing en banc, and those were denied by the Ninth Circuit. Dkt. Nos. 781, 782. Defendants and contemnors filed petitions seeking writs of certiorari to the United States Supreme Court. Dkt. Nos. 792, 793. The requests for attorney fees and costs related to NAF's successful defense of the Judgment and Sanctions Order at the Ninth Circuit were referred by the Ninth Circuit for my resolution. Dkt. Nos. 794, 795. The Supreme Court denied the petitions seeking writs of certiorari in October 2023. Dkt. No. 796.

## DISCUSSION

### I.   MOTION TO ENFORCE SURETY LIABILITY ON SANCTIONS ORDER AND MOTION FOR RELIEF FROM JUDGMENT

In January 2024, following the denial of certiorari by the Supreme Court, NAF filed a motion to "enforce surety liability" seeking to collect the $195,359.04 in civil contempt sanctions plus $14,640.96 in post-judgment interest from the $210,000 bond posted by defendants. NAF submits evidence that the defendants and contemnors will not consent to voluntarily pay the contempt judgment and interest. *See* Declaration of Caitlin S. Blythe, Dkt. No. 800-1, ¶¶ 2-3. NAF also shows that using the interest rate on the date the contempt sanctions were ordered, the total amount it is owed including interest exceeds the bond amount, and totals $211,208.22. Dkt. No. 800 at 4.

The contemnors filed no opposition or response to the motion to enforce. Defendants opposed but do not dispute the amount NAF seeks or NAF's ability under Federal Rule of Civil Procedure 65.1 to seek an order from me directing the surety to release the bond amount to NAF. Instead, defendants argue that I should not enforce the surety liability for the same reasons they raise in their Rule 60(b)(5) motion for relief from the Judgment. Dkt. No. 811.

Defendants' Rule 60(b)(5) motion for relief from the Judgment argues that the Permanent Injunction issued against them in 2021 cannot stand because it is a highly disfavored prior restraint whose legal basis was fatally undermined by an intervening Ninth Circuit decision, *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023). Defendants acknowledge that on March 19, 2024, the Ninth Circuit granted *en banc* review of that decision and vacated it. Dkt. No. 820 at 1. Defendants contend that I should defer consideration of their Rule 60(b) motion until after the Ninth Circuit issues its *en banc* decision. *Id.* As explained below, there is no reason to wait for the *en banc Project Veritas* decision. Defendants' Rule 60(b) motion is DENIED.

## A.    Legal Standard

Under Rule 60(b)(5) courts "may 'relieve a party or its legal representative from a final judgment, order, or proceeding ... [if] applying it prospectively is no longer equitable.' Fed. R. Civ. P. 60(b)(5). A district court's authority to modify an injunction is more limited than its authority to formulate an injunction in the first instance because of the additional interest in the finality of judgments. 'A balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (quoting *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961)).

As the Ninth Circuit explained in *Rousseau*:

> A party requesting modification must show "a significant change either in factual conditions or in the law warranting modification of the decree." *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). Further, the modification must be "suitably tailored to resolve the problems created by the changed factual or legal conditions." *Id.* If the moving party cites significantly changed circumstances, it must also show that the changed conditions make compliance with the consent decree more

5

onerous, unworkable, or detrimental to the public interest. *Id.* 985 F.3d at 1097–98.

### B.    *Project Veritas*

I addressed the *Project Veritas* decision when defendants raised it in another Rule 60 motion in the related *Planned Parenthood Federation of America v. CMP* case, Case No. 16-236, Dkt. No. 1211 (December 2023 Order Denying Relief). In that Order, I explained that the *Project Veritas* decision did not break new ground, it simply applied existing Ninth Circuit precedent, primarily *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018). *Id.* at 5-6. As there was no change in the law (much less a change in the law that impacted the *Planned Parenthood* verdict and judgment), no diligence by defendants, and significant interests in finality for plaintiffs, defendants were not entitled to relief under Rule 60(b)(6). *Id.* at 9-13. I also addressed defendants' request for relief under Rule 60(b)(5), finding that defendants were not entitled to relief because *Project Veritas* did not create a significant change in settled law and given plaintiffs' interests in the finality of the judgment. *Id.* at 14.

The Permanent Injunction was affirmed in full by the Ninth Circuit and was the subject of defendants' rejected petition for writ of certiorari to the Supreme Court. Nevertheless, defendants assert that it is a "content-based" restriction on their speech that cannot stand after *Project Veritas*.

Defendants are not entitled to relief under Rule 60(b)(5) for three independent reasons.

*First*, the *Project Veritas* decision has been vacated. It is no longer binding or persuasive authority.

Second, *Project Veritas* did not affect a significant change in the law for the reasons explained in the December 2023 Order Denying Relief in the *Planned Parenthood* case. Assuming the *en banc* decision reaches the same or a similar result as the panel decision, without a significant change in the law or facts (not argued by defendants), defendants' request for relief fails. *See Rousseau*, 985 F.3d at 1097-98.

Third, even if *Project Veritas* could be considered to have created a significant change in the law *and* the *en banc* court reaches the same or a similar conclusion nullifying the Oregon recording statute, the issues under consideration in *Project Veritas* have *no bearing* on the

United States District Court
Northern District of California

1   injunction in this case.  The liability supporting the Permanent Injunction was defendants'

2   knowing breach of contracts and their knowing waiver of any First Amendment rights they might

3   otherwise have had to publish the illegally secured NAF recordings.[3]  *Project Veritas* did not

4   consider a breach of contractual promises or knowing waiver of First Amendment rights.  It

5   considered an "outlier" state law with multiple content-based exemptions that enforced "a broad

6   prohibition on unannounced recordings of conversations," even "in a place open to the public

7   where the subjects lack a reasonable expectation of privacy."  *Project Veritas*, 72 F.4th at 1050

8   n.1.  The *Project Veritas* decision is not on point with respect to defendants' liability here or to the

9   propriety of the Permanent Injunction.

10      Accordingly, there is no reason to hold defendants' motion in abeyance until the *en banc*

11  *Project Veritas* decision is issued.  Defendants' motion for relief from the Permanent Injunction is

12  DENIED.  And since there is no other defense raised to NAF's motion to enforce the surety

13  liability, NAF's motion is GRANTED.

14      IT IS ORDERED that SureTec Insurancy Company ("SureTec") shall satisfy the Order

15  Setting Civil Contempt Sanctions entered by the Court on August 31, 2017 (Dkt. No. 495), plus

16  post-judgment interest at the statutory rate, within ten (10) days of the date of this Order, by

17  sending a check for $210,000.00 payable to "Morrison Foerster LLP" by overnight mail to: Caitlin

18  S. Blythe, Morrison Foerster LLP, 425 Market St., San Francisco, CA 94105.

19  **II.      MOTION FOR ATTORNEY FEES FROM DEFENDANTS**

20      Plaintiff seeks an award of $308,205 for time spent by nine billers on the various stages of

21  defendants' appeal to the Ninth Circuit; including responding to defendants' 56-page opening

22  brief challenging three distinct District Court orders, NAF's motion to seal materials at the Ninth

23  Circuit, and responding to defendants' petition for rehearing and rehearing en banc.  Declaration

24

25  [3] Defendants' statement that Daleiden could not have knowingly and voluntarily waived his First
26  Amendment rights "to defend himself in his current criminal lawsuit" is wholly irrelevant to the
    Permanent Injunction.  As noted, the Permanent Injunction does not "prevent the court in *People
27  v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from making orders about how materials covered by
    this injunction can be used in those proceedings."  Dkt. No. 723.  That is at most a content-neutral
28  distinction meant to preserve Daleiden's Sixth Amendment rights, to be determined if and as
    necessary by the state court.

7

United States District Court
Northern District of California

1    of Caitlin Sinclaire Blythe (Dkt. No. 807-1) ¶¶ 26-27.  Plaintiff also seeks $170,932.50 in attorney

2    fees incurred in connection with responding to defendants' petition for a writ of certiorari to the

3    Supreme Court, raising numerous, complex First Amendment arguments and asserting conflicts

4    with a variety of Supreme Court and non-Ninth Circuit cases.  *Id*. ¶ 28.

5         NAF identifies the hours requested for each biller, each biller's rate and level of

6    experience, and evidence of prior awards showing the reasonableness of the hourly rates

7    requested; $325-345/hr for paralegals; $890-1050/hr for identified associates, and $1200-1450 for

8    identified partners.  *Id*. ¶¶ 9, 10.  NAF asserts that the time sought is substantially less than

9    actually incurred because the application: (1) does not include time entries for NAF's application

10   for fees submitted to the Ninth Circuit or for this motion or the reply in support; (2) does not

11   include time spent on defendants' first appeal of the Sanctions Order (that was dismissed for a lack

12   of jurisdiction); and (3) excludes at least one associate's time.  *Id*. ¶¶ 29-33.  NAF attaches its

13   partially redacted contemporaneous time records in support of its request.  *Id*., Exs. 1 & 2.

14        Defendants oppose, arguing that the one declaration submitted by NAF is by a declarant

15   who was not involved with this case during the times when the fees were incurred and she cannot

16   justify the time sought by the nine billers.  Defendants contend that the declarant cannot have

17   sufficient "personal knowledge" of the work of the nine others or how those others maintained

18   their billing records.  Dkt. No. 814 at 1.  Defendants argue that I cannot rely on the "inadmissible

19   hearsay" of the declarant to justify the reasonableness of the hours spent by each biller.  *Id*.

20        The critical portion of the declarant's testimony is her personal knowledge (i) that the time

21   sheets she reviewed and submitted are the firm's contemporaneous time records and (ii) of how

22   the firm's attorneys record their time, not that she has personal knowledge of the work of each

23   biller. *Id*., ¶¶ 4-7, Exs. 1 & 2.  That is sufficient to support an application or motion for attorney

24   fees that attaches time records and is a method regularly accepted by courts for that purpose.  Her

25   declaration and submission was preceded by the review of those time records by the partner who

26   supervised the appellate work, to ensure that the time submitted reflected work on the appellate

27   matters.  *Id*. ¶ 4.

28        The next arguments raised by defendants were addressed and rejected in the December

8

2021 Fees Order, granting NAF a reduced amount on its prior motion for attorney fees.   The analysis and caselaw cited in the December 2021 Fee Order are fully incorporated herein.  Dkt. No. 765.  NAF's attorneys *are* entitled to seek and receive an award of attorney fees, despite defendants being found liable only for breach of contract and despite NAF's attorneys providing NAF services on a pro bono basis.  *See* Dkt. No. 765 at 6-8.  Defendants were found to have breached material provisions of the EAs, and the EAs "provided for both recovery of reasonable attorney fees to enforce the contract and for specific performance or injunctive relief."  *Id*. at 8.

Defendants did not challenge the hourly rates sought for the NAF attorneys on the prior motion, but do so here.  Dkt. No. 814 at 4-5.  They rely on a 2017 survey (that was published 4 years before the hours at issue were incurred) and three inapposite cases that addressed hourly rates for wage and hour and education law attorneys.[4]  The 2017 survey and those cases do not undermine the reasonableness of rates sought here, which are the rates that Morrison & Forester charges its clients.  Dkt. No. 807-1 ¶ 19.  I approved similar rates on NAF's first motion for attorney fees and I again find those rates reasonable and as typically charged in the Northern District.  Dkt. No. 765 at 9.

Defendants do not challenge the hours worked or the reasonableness of those hours (other than as inadmissible hearsay addressed above).  I find that those hours are reasonable, considering both the number of complex arguments raised on appeal and the number of motions and filings defendants made at the appellate level that required responses from NAF's counsel.

For the foregoing reasons, NAF's motion for attorney fees is GRANTED.  NAF is awarded and defendants are liable for $479,137.50 in attorney fees for the merits appellate phase of this case.

---

[4] *Ward v. United Airlines, Inc*., No. C 15-02309 WHA, 2024 WL 269149, at *7 (N.D. Cal. Jan. 24, 2024 (approving partner rate of $935/hour in a wage and hour class action case that had been pending for a decade and citing Northern District opinions from 2015 and 2017);  *Aguilar v. Zep Inc*., No. 13-CV-00563-WHO, 2014 WL 4063144, at *5 (N.D. Cal. Aug. 15, 2014) (wage and hour settlement from 2014); *Vargas v. Berkeley Unified Sch. Dist*., No. 16-CV-06634-WHO, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017) (awarding fees for successful anti-SLAPP motion in education context).

United States District Court
Northern District of California

### III.    MOTION FOR ATTORNEY FEES FROM CONTEMNORS

NAF also seeks to recover its attorney fees incurred in defending the Sanctions Order on appeal to the Ninth Circuit, amounting to $239,174.  NAF identifies the hours requested for each biller, each biller's rate and level of experience, and evidence of prior awards showing the reasonableness of the hourly rates requested; $325/hr for paralegals; $890-1050/hr for identified associates, and $1200-1450/hr for identified partners.  Declaration of Caitlan Sinclaire Blythe (Dkt. No. 808-1) ¶ 8.  NAF attaches redacted contemporaneous time records to support its request. Dkt. No. 808-1, Ex. 1.

NAF argues that the time sought is substantially less than actually incurred because the application: (1) does not seek the time spent seeking fees before the Ninth Circuit or this motion or the reply; (2) excludes at least one associate's time; and (3) does not seek time incurred to respond to contemnors' first attempt to secure review from the Ninth Circuit (that was denied for a lack of jurisdiction).  *Id*. ¶¶ 26-28.

Contemnors oppose, contending that NAF has failed to show that the hours spent (242.65 hours across 9 billers) were reasonable.  The first challenge is the possibility that NAF is seeking fees against them for time that it was already awarded.  Dkt. No. 813 at 1.  To the extent contemnors are arguing that NAF is seeking fees for the District Court contempt proceedings, those hours are necessarily excluded; only hours incurred in December 2021 forward are included in NAF's current request.  NAF is also not seeking the time it spent from 2017 through 2019 defending the Sanctions Order on its first appeal, which NAF sought from defendants.  *See* December 2021 Fees Order (Dkt. No. 765) at 2; *see also* Declaration of Derek Foran (727-1) ¶ 99 (NAF sought from defendants only time related to "the appeal of the sanctions order, for which the Ninth Circuit held NAF should seek after entry of final judgment").

Contemnors' second ground to oppose is that the fees sought are simply excessive, arguing that the time records do not provide adequate information for the contemnors to determine whether the hours spent were reasonable and necessary.  Contemnors, however, identify no particular examples of insufficiently detailed time entries or any time entries that show an unreasonable amount of attorneys billed hours to a *particular* task.  Instead, contemnors argue that NAF's

10

attorneys merely recycled NAF's previous appellate briefs – on defendants' prior appeal that was dismissed for lack of jurisdiction – and used "new attorneys" that were unfamiliar with the issues previously briefed.  Dkt. No. 813 at 2-3.  They also object to the billing by three partners, four associates, and two paralegals as showing the excessiveness of the 243 hours charged.  Because of the alleged inefficiencies and unreasonableness, contemnors argue that the request should be denied in full as "outrageously unreasonable" or at least reduced by 50%.  *Id*. at 2-3.

I find that the hours sought, as substantiated by the contemporaneous billing records, are mostly reasonable given the complex issues raised.  However, there was likely some duplication given NAF's initial (and successful on jurisdictional grounds) challenge to the first appeal of the Sanctions Order, and the second (also successful, but on the merits) challenge.  Therefore, I find a 10% reduction of the time billed for the merits appeal by the contemnors should be applied.

For the foregoing reasons, NAF's motion for attorney fees from the contemnors for the appellate work is GRANTED.  NAF is awarded and contemnors are liable for $215,256.60 in attorney fees for the merits appellate phase of this case.

## CONCLUSION

NAF's motion to enforce surety liability is GRANTED and defendants' motion for relief from the Judgment is DENIED.  NAF's motion for attorney fees against defendants is GRANTED in full and its motion for attorney fees against the contemnors is GRANTED, but reduced by 10%.

**IT IS SO ORDERED.**

Dated: March 25, 2024

William H. Orrick
United States District Judge

United States District Court
Northern District of California

11