1   CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
    CBlythe@mofo.com
2   CHRISTINA DIEROLF (CA SBN 335258)
    CDierolf@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Plaintiff
    NATIONAL ABORTION FEDERATION (NAF)

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  NATIONAL ABORTION FEDERATION           Case No. 3:15-cv-3522-WHO
    (NAF),
13                                          Judge: Hon. William H. Orrick
                    Plaintiff,
14                                          **NATIONAL ABORTION
         v.                                 FEDERATION'S MOTION FOR
15                                          AN ORDER TO SHOW CAUSE
    THE CENTER FOR MEDICAL PROGRESS,        WHY DEFENDANTS THE
16  BIOMAX PROCUREMENT SERVICES LLC,        CENTER FOR MEDICAL
    DAVID DALEIDEN (aka "ROBERT             PROGRESS AND DAVID
17  SARKIS"), and TROY NEWMAN,              DALEIDEN SHOULD NOT BE
                                            HELD IN CIVIL CONTEMPT**
18                  Defendants.
                                            Hearing Date: April 15, 2024
19                                          Time: 2:30 p.m.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .............................................................................. 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 5

    I.     CIVIL CONTEMPT IS WARRANTED BECAUSE DEFENDANTS
            REPEATEDLY PUBLISHED ENJOINED FOOTAGE AND
            INFORMATION IN VIOLATION OF THE PERMANENT
            INJUNCTION. ....................................................................................... 6

    II.    THE FACT THAT THE EDITED CLIPS WERE PLAYED AT A
            PUBLIC HEARING DOES NOT REMOVE THAT CONTENT
            FROM THE SCOPE OF THE PERMANENT INJUNCTION. ...................... 7

    III.   THE NATURE AND SCOPE OF DEFENDANTS' VIOLATION
            WARRANTS SANCTIONS FOR CIVIL CONTEMPT. ................................ 8

CONCLUSION ................................................................................................................... 10

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

Cases

4

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
5
    814 F.3d 91 (2d Cir. 2016)................................................................................................... 8

*FTC v. Affordable Media, LLC*,
6
    179 F.3d 1228 (9th Cir. 1999).......................................................................................... 5, 6

7

*In re Crystal Palace Gambling Hall, Inc.*,
    817 F.2d 1361 (9th Cir. 1987).......................................................................................... 5, 8
8

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
9
    774 F.3d 935 (9th Cir. 2014)........................................................................................... 5, 8

10

*Jones v. All Am. Auto Prot., Inc.*,
    No. 3:14-Cv-00199-LRH-WGC, 2016 U.S. Dist. LEXIS 69409
11
    (C.D. Cal. May 24, 2016)................................................................................................... 8

12

*Perry v. O'Donnell*,
    759 F.2d 702 (9th Cir. 1985)............................................................................................. 5
13

*Taggart v. Lorenzen*,
14
    139 S. Ct. 1795 (2019)...................................................................................................... 5

15

*United States v. United Mine Workers Of Am.*,
    330 U.S. 258 (1947).......................................................................................................... 8
16

*Whittaker Corp. v. Execuair Corp.*,
17
    953 F.2d 510 (9th Cir. 1992)............................................................................................. 8

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANTS THE CENTER FOR MEDICAL PROGRESS AND DAVID DALEIDEN AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 15, 2024 at 2:30 p.m. in Courtroom 2 of the Honorable William H. Orrick III at the United States District Court for the Northern District of California, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff National Abortion Federation ("NAF") respectfully brings this Motion for an Order to Show Cause Why Defendants The Center for Medical Progress ("CMP") and David Daleiden ("Mr. Daleiden") Should Not Be Held in Civil Contempt for failing to comply with this Court's Permanent Injunction of May 4, 2021 (ECF No. 723).

**INTRODUCTION**

Over the past two weeks, Defendants CMP and Mr. Daleiden (collectively, "Defendants") have repeatedly and openly violated the Permanent Injunction entered by this Court.  Following a hearing by a member of Congress last month where edited clips were shown that Mr. Daleiden claimed were obtained from the 2014 and/or 2015 NAF Annual Meetings, Defendants then took it upon themselves to instigate their own personal public relations blitz.  Specifically, Defendants published the edited footage on the CMP website in a press release on March 21, 2024, and then over the next two weeks repeatedly re-published that footage over seventy times, typically with short descriptions previewing the footage, to their Twitter/X accounts, the CMP YouTube channel, the CMP Facebook page, the CMP Instagram account, and the CMP TikTok account, all while *acknowledging* that such content was subject to a federal injunction.  Even more egregious, Defendants published the names of five NAF members who purportedly were featured in the edited footage in their press release (names that Mr. Daleiden did not disclose at the hearing), further jeopardizing the safety and wellbeing of those individuals and others.

As NAF made clear in its April 3, 2024 letter alerting the Court to Defendants' violations, NAF is not challenging Congress's investigatory authority or Defendants' ability to respond to lawful inquiries from Congress.  However, under the plain language of the Permanent Injunction, what Defendants may not do is take it upon themselves to publish enjoined footage and

confidential information across the Internet simply because clips were shown at a congressional hearing.  That is exactly what Defendants did here.

The history of violence, both real and threatened, against NAF's members associated with the release of this footage over the past nearly ten years is undisputed and well-documented by the fulsome record in this case.  That risk of violence is exactly what necessitated the injunction in the first place.  Defendants' incessant recent violations of the Permanent Injunction and refusal to comply with this Court's orders is inexcusable and risks inciting the same harms that the Permanent Injunction was intended to protect against.

NAF respectfully urges the Court to hold Defendants in civil contempt.

## BACKGROUND

On May 4, 2021, this Court issued a Permanent Injunction, which "permanently restrain[s] and enjoin[s]" "[a]ll Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations acting in concert or participation with them" from "1) Publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned at the 2014 and 2015 NAF Annual Meetings; [and] 2) Retaining possession of any materials covered by this permanent injunction.  Any and all such materials covered by this permanent injunction must be turned over to counsel of record in this matter or counsel of record in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.), the identity of whom shall be disclosed to this Court.  Access to any and all such materials by individuals covered by this permanent injunction shall occur only onsite at the offices of said counsel and subject to the supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.)."  (ECF No. 723.)

On March 19, 2024, a member of Congress held a hearing featuring Mr. Daleiden and others.  (ECF No. 828 at 1.)  Edited clips from footage illegally obtained by Defendants and their associates during the 2014 and/or 2015 NAF Annual Meetings were played at the hearing.  (*Id.*)  At the hearing, the clips were edited to obscure, in most cases, the faces of those depicted in the footage.  (*See* ECF No. 828 at 1; ECF No. 836.)  During the hearing, Mr. Daleiden provided additional information that he claimed to have learned at the 2014 and 2015 NAF Annual

1    Meetings and identified the speakers depicted in the videos.  (ECF No. 828 at 1.)  Mr. Daleiden

2    did not, however, identify the speakers in those clips by name, but rather by their affiliated

3    organization and/or title and geographic location.  (*Id.*)

4           On March 21, 2024, two days after the hearing, Defendants began to publish the edited

5    clips and other information illegally obtained from NAF's 2014 and/or 2015 Annual Meetings on

6    the Internet.  (*Id.* at 1-2; Blythe Decl. ¶¶ 1-3.)  This included a March 21, 2024 press release that

7    embedded five edited video clips that purport to be from the 2014 and/or 2015 NAF Annual

8    Meetings and identified, by *name* and affiliation, at least five abortion providers and/or NAF

9    members.  (ECF No. 828 at 2; Blythe Decl. ¶ 1; Blythe Decl. Ex. A.)  NAF understands that these

10   names were not disclosed at the March 19, 2024 hearing.  (ECF No. 828 at 2.)[1]

11          Over the ensuing days, Defendants continued to repeatedly publish edited clips of the

12   enjoined footage to Mr. Daleiden's personal Twitter/X profile, CMP's Twitter/X profile, CMP's

13   YouTube channel, CMP's Instagram page, CMP's TikTok account, CMP's website, and

14   potentially elsewhere.  (*Id.*; Blythe Decl. ¶¶ 1-3; Blythe Decl. Ex. B.)  Starting on March 28,

15   2024, Defendants began publishing a longer compilation of the edited clips to the various

16   platforms, expressly describing the clips as content that this Court "censored" in its injunction.

17   (ECF No. 828 at 2; Blythe Decl. Ex. B at 44, 48, 51.)  Defendants often included short

18   descriptions of the edited clips, sometimes with direct quotations of what the speaker purportedly

19   said in the clip.  (*See, e.g.*, Blythe Decl. Ex. B at 12, 21, 22, 26, 28, 30-31, 33-34, 36-38, 42-43,

20   45, 47-49, 52, 54-56.)[2]

21          On April 3, 2024, counsel for NAF sent an email to Defendants' counsel demanding that

22   the names of NAF members be removed from the press release posted to the CMP website and

23   

---

24   [1] At least one third-party publication republished the press release posted to the CMP website
     almost verbatim.  *See* ████████████████████████████████████████████

25   ████████████████████████████████████████████  r. Daleiden apparently also
     disclosed the names of providers in connection with conversations with third parties, in addition

26   to the press release.  *See, e.g.*, ████████████████████████████████████████

27   [2] Given the voluminous number of posts and re-posts, NAF is still working to understand the full
     scope of Defendants' recent violations of the Permanent Injunction.  The examples provided in

28   NAF's April 3, 2024 Letter and Exhibit B to the ██████ Declaration are a non-exhaustive list.

the enjoined clips be taken down immediately, and requesting confirmation that Defendants are in compliance with paragraph 2 of the Permanent Injunction.  (Blythe Decl. ¶ 5; Blythe Decl. Ex. C.)  NAF also filed a letter notifying the Court of Defendants' gross violations of the Permanent Injunction.  (ECF No. 828.)  Following the hearing held later that day, the Court issued an order directing Defendants "to undertake all efforts and remove or block non-parties' access to recordings or other information covered by the Permanent Injunction from all websites, YouTube channels, X (formerly known as Twitter) and other social media sites or channels that they have control over or posting access to by 8:00 p.m. April 3, 2024."  (ECF No. 831 at 1.)  The order further specified that "[t]his includes removing recordings and identifying information from websites, disabling any links to the recordings, and requesting that third parties take appropriate action to prevent public access to the recordings."  (*Id.*)  Defendants did not comply.  (*See* ECF No. 833.)

On April 4, 2024, Defendants filed a "motion for clarification," asserting that Defendants' failure to comply with the April 3, 2024 order was based on the fact that "[a]fter a careful review of Defendants' YouTube channels and other social media platform, counsel for Defendants do not believe that any of the videos displayed there are covered by this Court's Permanent Injunction." (ECF No. 832 at 1.)  Later that day, this Court issued second order, stating: "Even if the recordings or materials that defendants are now publishing or otherwise sharing were produced to Congress in 2015, and even if some quantity of the recordings or materials were published by Congress or have otherwise been publicly disclosed, **those are Covered Materials under the Permanent Injunction and defendants must remove them from websites and social media channels over which they have control or posting access for**."  (ECF No. 836 at 1 (emphasis in original).)  Counsel for Defendants has since represented that Defendants are "in full compliance with the Minute Order, as clarified by the Court."  (ECF No. 837 at 3.)

Based on NAF's review, Defendants have taken down the press release from CMP's website.  The edited clips have not been removed from CMP's website; rather, the clips remain posted but are denoted as "private."  (Blythe Decl. Ex. D.)  It also appears, based on the public posts that NAF's counsel reviewed, that Defendants have disabled the links to the edited clips

from their social media posts, but have not deleted or removed short descriptions of what the edited clips purportedly show.  (*See, e.g.*, Blythe Decl. Ex. E.)

The monetary impact to NAF as a result of Defendants' violations of the Permanent Injunction is ongoing and consists primarily of (1) efforts to ensure member security, particularly as to the individuals identified in Defendants' press release and (2) outside attorney fees expended by NAF's pro bono counsel, Morrison Foerster LLP, to respond to Defendants' violations and seek appropriate relief.  As of the date of this filing, NAF has spent over $3,170.00 in staff time responding to the violation.  (Fowler Decl. ¶ 4.)  As of the end of the day on April 3, 2024, attorney fees incurred on behalf of NAF as a result of the violations amount to over $70,000.  (Blythe Decl. ¶ 12.)  NAF expects to incur additional, similar costs prior to the contempt hearing on April 15, 2024.

## ARGUMENT

A court may hold a party in civil contempt if the complaining party shows by clear and convincing evidence that the contemnor "violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).  Civil contempt consists of a "party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (cleaned up).

The complaining party is not required to show that the contemnor's violation of the court order was "willful." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (*citing Perry v. O'Donnell*, 759 F.2d 702, 704-706 (9th Cir. 1985)).  Neither advice of counsel nor "exceptional circumstances" constitute a defense to civil contempt. *Sea Shepherd*, 774 F.3d at 955; *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d at 1365.  Further, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the [party's] conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).  To avoid contempt, Defendants must establish "categorically and in detail" that compliance with the

1    Court's order was or is impossible.  *Affordable Media, LLC*, 179 F.3d at 1241.

2    **I.    CIVIL CONTEMPT IS WARRANTED BECAUSE DEFENDANTS REPEATEDLY**
     **PUBLISHED ENJOINED FOOTAGE AND INFORMATION IN VIOLATION OF**
3    **THE PERMANENT INJUNCTION.**

4           As set forth above, Defendants purposefully and knowingly violated the Permanent

5    Injunction's prohibition on "[p]ublishing or otherwise disclosing to any third party any video,

6    audio, photographic, or other recordings taken, or any confidential information learned at the

7    2014 and 2015 NAF Annual Meetings." (ECF No. 723 at 1.)  They did so by repeatedly

8    publishing edited clips of enjoined footage on Defendants' own Twitter/X, YouTube, Facebook,

9    Instagram, and TikTok accounts, and on CMP's website, over a two-week span.  (ECF No. 828.)

10   Based on NAF's review, Defendants posted enjoined information over *seventy times* since March

11   21, 2024.[3]  By Defendants' representation, these edited clips were derived from footage obtained

12   at the 2014 and/or 2015 NAF Annual Meetings.  (*Id.*; ECF No. 831.)  In addition to posting the

13   edited clips themselves, Defendants routinely summarized or quoted from the edited clips in

14   public postings to their social media accounts, which also is "information" obtained from NAF's

15   meetings and thus is enjoined.  Similarly, Defendants published the names of the NAF members

16   purportedly depicted in the edited clips, which is confidential information Defendants learned at

17   the 2014 and/or 2015 NAF annual meetings.

18          There is no honest dispute that all of this content and information is covered by the plain

19   language of the Permanent Injunction and that Defendants were the ones to publish it.  (ECF No.

20   831.)  In fact, Defendants went so far as to cite this Court's "federal injunction" as the reason that

21   they have not previously published the edited clips[4] and "add[ed] their own editorial context" to

22   certain clips, describing them as "censored" by this Court.  (ECF No. 832 at 4.)

23          Defendants blatantly "violated a specific and definite order of the court," by which they

24   were clearly and indisputably bound.  *See Affordable Media, LLC*, 179 F.3d at 1239.  This

25

26   [3] As mentioned above, this may not even capture the full scope of Defendants' violation.

27   [4] Except, of course, for *other* occasions when Defendants published the same or similar content in
     violation of a Court order, such as when Defendants released edited footage in May 2017,
28   resulting in civil contempt sanctions.  (ECF No. 482.)

1    conduct is inexcusable.  Defendants should be held in contempt.

2    **II.      THE FACT THAT THE EDITED CLIPS WERE PLAYED AT A PUBLIC
           HEARING DOES NOT REMOVE THAT CONTENT FROM THE SCOPE OF
3           THE PERMANENT INJUNCTION.**

4            Based on the April 3, 2024 hearing and Defendants' subsequent motion seeking

5    clarification, Defendants assert that "[a]ll of the videos recently posted and discussed in general

6    or specifically at the hearing before this Court yesterday, are or derive directly from public

7    testimony in Congress on March 19, 2024, and as such, none of them are covered by the Court's

8    injunction, in the view of Defendants and their counsel."  (ECF No. 832 at 3.)  That view, simply

9    put, is wrong.

10           First, as an initial matter, Defendants released confidential information in the last two

11   weeks—*e.g.*, the names of NAF members purportedly depicted in the edited clips—that was not

12   disclosed at the March 19, 2024 hearing.  So Defendants' rationale for why their conduct does not

13   violate the Permanent Injunction does not even extend to all of the content they published over

14   the past two weeks.

15           Second, as to the edited clips and any other information Defendants discussed at the

16   hearing, the plain language of the Permanent Injunction squarely covers that information, too.

17   The Permanent Injunction prohibits Defendants from "[p]ublishing or otherwise disclosing to any

18   third party any video, audio, photographic, or other recordings taken, or any confidential

19   information learned at the 2014 and 2015 NAF Annual Meetings."  (ECF No. 723.)  As the Court

20   recognized in its April 4, 2024 order, "[e]ven if the recordings or materials that defendants are

21   now publishing or otherwise sharing were produced to Congress in 2015, and even if some

22   quantity of the recordings or materials were published by Congress or have otherwise been

23   publicly disclosed, those are Covered Materials under the Permanent Injunction."  (ECF No. 836

24   at 1.)

25           That a member of Congress held a public hearing does not change the language or scope

26   of the Permanent Injunction. Nor does it give Defendants license to violate a court order to

27   advance their own cause.  If Defendants actually had a good faith argument that the Court should

28   carve out specific content from the scope of the Permanent Injunction as a result of the hearing,

they would have sought such relief from the Court.  Doing so would have given NAF an

opportunity to respond, particularly as to the real safety risks to its members associated with

Defendants' recent posting blitz.  Make no mistake, based on the documented history of violence

and threatened violence that has resulted from Defendants' past publications, NAF would have

opposed any such modification.  At best, what Defendants did instead was to take it upon

themselves, once again, to decide whether their actions violate the Court's orders, no matter the

costs.  (*See* ECF No. 836 at 2.)  At worst, as Defendants' own statements strongly suggest, they

knew *full well* that their posts violated the Permanent Injunction.  And yet they acted anyway.

Either way, Defendants' conduct is unacceptable and supports the imposition of sanctions for

civil contempt.

### III.   THE NATURE AND SCOPE OF DEFENDANTS' VIOLATION WARRANTS SANCTIONS FOR CIVIL CONTEMPT.

The Court has broad power to sanction Defendants for their flagrant, willful violation of

the Permanent Injunction.  Judicial sanctions in civil contempt proceedings may be employed

either "to coerce the defendant into compliance with the court's order" or "to compensate the

complainant for losses sustained."  *United States v. United Mine Workers of Am.*, 330 U.S. 258,

303-04 (1947).  The broad range of sanctions available to the Court includes "fine[s],

imprisonment, receivership, and a broader category of creative, nontraditional sanctions."  *Jones

v. All Am. Auto Prot., Inc.*, No. 3:14-cv-00199-LRH-WGC, 2016 U.S. Dist. LEXIS 69409, *2

(C.D. Cal. May 24, 2016).

Compensatory sanctions routinely include attorney's fees and costs incurred by the

complaining party in litigating the contemnors' contempt, as well as resources expended or

wasted as a result of the contumacious conduct.  *See Sea Shepherd*, 774 F.3d at 959-60 (allowing

recovery of attorney's fees and costs expended in contempt proceedings as well as resources

wasted because of contumacious conduct); *Crystal Palace*, 817 F.2d at 1363 (allowing recovery

of funds expended because of contumacious conduct).

The Court may also impose sanctions designed to ensure present as well as future

compliance.  *See CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 103 (2d Cir. 2016) ("The

1    district court's 'civil contempt powers are particularly adapted to curb recidivist offenders' where

2    future noncompliance is a well-founded concern.").  When a court imposes such a sanction, it

3    must consider "the character and magnitude of the harm threatened by continued contumacy, and

4    the probable effectiveness of any suggested sanction in bringing about the result desired."  *United*

5    *Mine Workers of Am.*, 330 U.S. at 304; *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516

6    (9th Cir. 1992).  In that regard, the Court can and should consider Defendants' past violations of

7    the Court's orders, including in particular their conduct in 2017 when Defendants and their

8    criminal counsel released footage in violation of this Court's orders.  (ECF No. 482.)

9         The character and magnitude of the violations evidenced here justify, at a minimum,

10   sanctions as follows:

11        *First*, NAF appreciates that the Court has ordered Defendants to remove all enjoined

12   information pending its ruling at the contempt hearing, no matter when such material was posted.

13   (ECF Nos. 831, 836.)  NAF has continued concerns that Defendants have not done so, including

14   because the edited clips appear to still be posted to YouTube, albeit as "private" links, and

15   because Defendants have not removed social media posts that describe or quote from the edited

16   clips.  NAF accordingly asks the Court to order Defendants to confirm under oath that they have

17   taken down any material or information covered by the Order or any post that links to and/or

18   discusses the material covered by the Order, in whatever form, including whether it is marked as

19   "private," "unlisted," or otherwise.

20        *Second*, NAF also appreciates that the Court already has ordered Defendants to provide

21   information, under oath, that will help determine whether Defendants are in compliance with

22   Paragraph 2 of the Permanent Injunction, which prohibits them from "[r]etaining possession of

23   any materials covered by this permanent injunction."  (ECF No. 723 at 3.)  Based on Defendants'

24   own recent statements and conduct, NAF has serious concerns that Defendants are not in

25   compliance.  Depending on the information Defendants provide in response, NAF accordingly

26   reserves the right to request a specific remedy to ensure compliance with Paragraph 2, as

27   appropriate.

28        *Third*, Defendants, jointly and severally, should be required to compensate NAF for the

1  harm flowing from this violation, including for resources expended or wasted as a result.  NAF's

2  direct losses to date total at least $3,170.00, which reflects diverted staff time as a result of

3  Defendants' repeated posts.  (Fowler Decl. ¶ 4.)  Because that work is ongoing, NAF asks the

4  Court for the opportunity to submit additional evidence concerning its ongoing losses as NAF

5  continues to deal with Defendants' violation between now and the contempt hearing.

6      *Fourth*, Defendants, jointly and severally, should be required to pay reasonable attorneys'

7  fees incurred by Morrison Foerster LLP on behalf of NAF in responding to the violation,

8  attempting to ameliorate its impact, and for this contempt proceeding, which to date total over

9  $70,000.00 (an amount that does not include time spent on contempt briefing or the hearing).

10  (Blythe Decl. ¶ 12.)  Any fee award will be used to fund additional pro bono work, including on

11  behalf of NAF.  (*Id.* ¶ 15.)  Should the Court enter contempt sanctions to compensate NAF for its

12  harms, NAF respectfully requests the opportunity to submit additional evidence concerning its

13  ongoing costs and attorney fees up through the contempt hearing.

14      *Last*, the Court should issue any other relief or impose any further sanction that it deems

15  necessary to ensure compliance with its orders going forward.

16  **CONCLUSION**

17      Defendants' repeated publication of enjoined footage and information on at least six

18  different platforms and public disclosure of the names of five NAF members constitutes a clear

19  and willful failure to abide by this Court's Permanent Injunction.  Defendants conduct is

20  inexcusable and, for the reasons stated above, NAF respectfully requests that this Court hold

21  Defendants in contempt.

22  Dated:  April 5, 2024        MORRISON & FOERSTER LLP

24                  By:   */s/ Caitlin Sinclaire Blythe*

25                      Caitlin Sinclaire Blythe

26                  Attorneys for Plaintiff
                NATIONAL ABORTION FEDERATION

28