UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ABORTION FEDERATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>　　　　　　Defendants. | Case No. 15-cv-03522-WHO<br><br>**ORDER ON REQUEST FOR FINDING OF CONTEMPT AND SANCTIONS** |

## BACKGROUND

Since the inception of this case, defendants have been enjoined from publishing or disclosing materials, including recordings, they surreptitiously secured during the National Abortion Federation ("NAF") meetings in 2014 and 2015. *See* Dkt. No. 15 (Temporary Restraining Order), 27 (Order maintaining TRO), 354 (Preliminary Injunction). In October 2015, defendants notified the court and plaintiff NAF that defendant David Daleiden had received a Congressional subpoena asking him to produce to Congress any information secured from the NAF 2014 and 2015 meetings related to the "acquisition, preparation, and sale" of fetal tissue. Dkt. No. 152-1. That information was covered by the TRO. After hearing from defendants and NAF regarding the Congressional subpoena, I concluded that I did not have a legal or factual basis to prevent Daleiden from voluntarily responding to the facially valid Congressional subpoena. Dkt. No. 155. I made clear, however, that defendants were only authorized to produce the footage, documents or communications that had been specifically requested by the subpoena, and nothing more. *Id*. at 3.[1]

---

[1] In November 2016, defense counsel informed the court that a second Congressional subpoena

In February 2016, I entered a Preliminary Injunction that was materially consistent with the TRO. Dkt. No. 354.[2] The case then proceeded through an unusually fractious discovery period. Following vigorous motion practice, a contempt proceeding for disclosure of materials covered by the Preliminary Injunction, and a trial in the related case, I granted summary judgment to NAF and entered a Permanent Injunction.[3] The Permanent Injunction – entered in April 2021 and affirmed in full by the Ninth Circuit – provides:

> All Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations acting in concert or participation with them, are hereby permanently restrained and enjoined from:
>
> 1) Publishing or otherwise disclosing to any third party any video, audio, photographic, or other recordings taken, or any confidential information learned at the 2014 and 2015 NAF Annual Meetings;
>
> 2) Retaining possession of any materials covered by this permanent injunction. Any and all such materials covered by this permanent injunction must be turned over to counsel of record in this matter or counsel of record in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.), the identity of whom shall be disclosed to this Court. Access to any and all such materials by individuals covered by this permanent

---

had been issued to Daleiden. Dkt. No. 386. I was concerned with the potential overbreadth of that subpoena, and directed the parties to brief the issue. Dkt. Nos. 387-391. The subpoena was subsequently withdrawn. Dkt. Nos. 395-396. Other subpoenas were issued to defendants for materials covered by the Preliminary and now Permanent Injunctions by the Arizona and Louisiana state Attorneys General. Pursuant to minute orders and stipulations, NAF met and conferred with the state Attorneys General to resolve the permissible scope of production in response to those subpoenas. *See, e.g.*, Dkt. No. 532.

[2] Throughout this case, defendants have sought "clarification" of the scope of their enjoined behavior under the TRO, the Preliminary Injunction, and the Permanent Injunction. I addressed all of those requests in an expeditious manner. *See, e.g.*, Dkt. Nos. 64, 107, 572, 836.

[3] I entered the Permanent Injunction after I granted NAF's motion for summary judgment based on issue preclusion following the trial, verdict, and judgment in the related case, *Planned Parenthood Federation of America, et al. v. Center for Medical Progress, et al.*, Case No. 16-cv-00236-WHO ("*PPFA*"). I entered judgment in NAF's favor on its breach of contract claim based on the breach of identified provisions of NAF's Exhibitor Agreements ("EAs") and Confidentiality Agreements ("CAs")( Dkt. Nos. 720, 723): specifically, the EAs' requirements that exhibitors affirm that they (1) have a legitimate business interest in reaching reproductive health care professionals and (2) will "truthfully [and] accurately" represent their business at the meetings (EA ¶¶ 1, 15, 19), and the CAs' provision (3) prohibiting taping/recording at the NAF meetings. CA ¶ 1. *See* Dkt. No. 720 at 7-8 n.8. The PPFA verdict and judgment that formed the basis for issue preclusion in this case did not reach defendants' purported violation of the CAs' prohibition requiring NAF meeting attendees to "keep all information learned at the meetings in confidence and not disclose that information to third parties without NAF's consent." *See id.* at 7-8, n.8 (citing CA ¶ 17).

2

> injunction shall occur only onsite at the offices of said counsel and subject to the supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.).
>
> Nothing in this permanent injunction shall prevent the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) from making orders about how materials covered by this injunction can be used in those proceedings.

Dkt. Nos. 720, 723 (materials covered by the Permanent Injunction hereafter referred to as "Covered Material").

On April 3, 2024, NAF informed me in a letter filed partially under seal and served on defense counsel that it believed that defendants Daleiden and CMP ("defendants") were in violation of the Permanent Injunction. Dkt. No. 827-3. NAF explained that Daleiden testified before Congress during a hearing held on March 19, 2024. During that hearing, "edited clips from footage illegally obtained by Mr. Daleiden during the 2014 and/or 2015 NAF Annual Meetings" were played and Daleiden "provided additional information that he claimed to have learned at those Annual Meetings and identified the speakers depicted in the videos," identifying the speakers not by name but by their affiliated organizations, job titles and/or geographic location. *Id*. After the hearing, NAF alleges that defendants began to publish the edited clips and "other information illegally obtained from NAF's 2014 and/or 2015 Annual Meetings," through their website and social media channels, and issued a press release embedding five of the edited clips and identifying individuals shown in the clips by name and affiliation *Id*.

I then convened a telephonic conference that same day and issued the following Order:

> Based on the evidence before the Court, defendants David Daleiden, Center for Medical Progress and BioMax Procurement Services, LLC ("defendants") are ORDERED to undertake all efforts and remove or block non-parties' access to recordings or other information covered by the Permanent Injunction from all websites, YouTube channels, X (formerly known as Twitter) and other social media sites or channels that they have control over or posting access to by 8:00 p.m. April 3, 2024. This includes removing recordings and identifying information from websites, disabling any links to the recordings, and requesting that third parties take appropriate action to prevent public access to the recordings. Failure to do so may subject defendants to sanction or other order of the Court.
>
> Defense counsel shall file a declaration by confirming that defendants have complied with this Order by 10:00 a.m. April 4, 2024.

3

> An ORDER TO SHOW CAUSE hearing is set on April 15, 2024 at 2:30 p.m. to consider whether to impose contempt sanctions or other remedies on CMP, Daleiden, or BioMax for violations of the Permanent Injunction Order.

Dkt. No. 831 ("Order to Show Cause"). To support the request for sanctions and the Order to Show Cause, I required plaintiff to file a brief "attaching all evidence plaintiff believes shows the nature and extent of purported violations of the Permanent Injunction," set a time for defendants to file their response, and present any argument "why their conduct posting or releasing materials was not in violation of the Court's Permanent Injunction." *Id*. I also responded to defendants' request for clarification of the scope of the Order to Show Cause, explaining:

> The April 3, 2024 Order covers all recordings and information that defendants secured from the 2014 and 2015 NAF Conferences, or secured as a result of their presence at those conferences, hereafter "Covered Materials." Even if the recordings or materials that defendants are now publishing or otherwise sharing were produced to Congress in 2015, and even if some quantity of the recordings or materials were published by Congress or have otherwise been publicly disclosed, those are Covered Materials under the Permanent Injunction and defendants must remove them from websites and social media channels over which they have control or posting access for. Covered Materials extend beyond recordings or other information "most recently" posted by defendants to their media channels. See Dkt. No. 832. It does not matter when defendants posted recordings or other information; all Covered Materials must come down by 4:00 p.m. April 4, 2024.
>
> Defendants will have an opportunity to argue that some quantum of the Covered Materials should no longer be considered covered by the Permanent Injunction because those materials have been publicly disclosed by Congress. That is why I set the Order to Show Cause hearing on an expedited basis; so that defendants quickly get the process that they are due. Complying with this Order and the April 3rd order will not be construed as an admission.
>
> However, defendants are not entitled to make those determinations on their own without first seeking clarification from the Court. This is at least the second time defendants have decided to publicly post materials covered by an injunction issued by me based on their personal beliefs that their actions were not in violation of my orders. Whether that conduct subjects them or those acting in concert with them to civil sanctions or other remedies will be determined at the Order to Show Cause Hearing on April 15, 2024 at 2:30 p.m.

Dkt. No. 836.

According to the evidence submitted by NAF and defendants in response to the Order to Show Cause, the recordings that defendants posted to their website and social media channels

4

1   were clips from those publicly displayed during the Congressional hearing and/or publicly

2   released by Congresswoman Marjorie Taylor Greene on her YouTube channel.  *See* Dkt. Nos.

3   838, 839, 844, 849, 850.[4]

4      Daleiden declares that he learned the identities of the people on the video clips – whom he

5   identified by affiliated organizations, job titles and/or geographic location during the

6   Congressional hearing, but by name in the CMP press release – separate from any information he

7   secured during the 2014 and 2015 NAF meetings, based on publicly available information and

8   research he conducted before and after the NAF meetings.  Declaration of David Daleiden (Dkt.

9   No. 844-1) ¶¶ 9-13.  The declarations from defense counsel and Daleiden explained who had or

10  has continuing access to the Permanent Injunction materials and that Daleiden continued to have

11  access to a subset of those materials to allow him to prepare his criminal defense to charges

12  pending in California state court.  *See* Dkt. Nos. 843, 844-1, 845.

13     During the Order to Show Cause hearing, I raised my concern regarding the lack of

14  authority provided by either side addressing whether there could be contempt of the Permanent

15  Injunction if Daleiden had simply republished the video clips disclosed by Congresswoman

16  Greene and commented on them, using information he had *not* secured from the 2014 and 2015

17  NAF Meetings.  NAF and defendants submitted case authority in support of their positions.  Dkt.

18  Nos. 863, 864.

### DISCUSSION

### I. VIOLATION OF PARAGRAPH 1 OF THE PERMANENT INJUNCTION

21     Having reviewed that caselaw, and for the reasons explained below, I DENY NAF's

22  request for an order finding defendants Daleiden and CMP in contempt for violating the

23  Permanent Injunction.  This ruling is narrow and specific.  The evidence provided by NAF and

24  defendants demonstrate that the *only* recordings defendants reposted to their social media channels

---

[4] There was some dispute whether the video clips defendants republished were taken from those shown or released by Congresswoman Greene, but that dispute appears to be resolved.  NAF has not established that any recordings shown, linked or otherwise available to the public through defendants' websites or social media channels include recordings that were *not* shown or released by Congresswoman Greene.  *See* Dkt. No. 850.

and on the CMP website were *from* the recordings publicly disclosed by Congresswoman Greene in the hearing or through Greene's YouTube channel. NAF does not dispute that Congresswoman Greene has possession of those recordings only because they were produced pursuant to the facially valid Congressional subpoena that I considered in 2015. The evidence also shows that defendants' identification of the individuals shown – by affiliation in the Congressional hearing and by name in CMP's press release – was based on information Daleiden secured from sources other than his attendance at the 2014 and 2015 NAF conferences. Declaration of David Daleiden, Dkt. No. 844-1, ¶¶ 9-13.

The Permanent Injunction precludes defendants from voluntarily "[p]ublishing or otherwise disclosing" recordings and information they secured at the 2014 and 2015 NAF Meetings. The recordings defendants republished following the Congressional hearing were, without dispute, only secured because defendants in the first instance broke their contractual promises. That led to and still fully justifies the Permanent Injunction, as affirmed by the Ninth Circuit, which continues to protect hours upon hours of surreptitious recordings and information secured from those meetings.

But there is no evidence before me that defendants' republication of the recordings shown in the hearing or otherwise officially released by Congresswoman Greene was caused by *further* illegal or improper conduct of defendants or anyone else. This is not a situation, for example, where defendants allegedly leaked Covered Materials to third-parties or otherwise provided Covered Materials to third parties that were released to the public and *then* defendants' republished them.[5] Receipt of the subset of Covered Materials by Congress pursuant to a facially valid subpoena and Congress's official decision to play the recordings and release them through the official YouTube channel of a Congresswoman breaks the chain between defendants' wrongful conduct in violation of the EAs and CAs that led to the Permanent Injunction and the justification

---

[5] That was the case when defendants Daleiden and CMP were held in contempt, along with Daleiden's criminal counsel, for posting Covered Materials on defense counsel's website. *See* Dkt. Nos. 482, 495. The contempt orders related to that conduct were challenged and affirmed by the Ninth Circuit.

6

for prohibiting defendants from publishing or otherwise disclosing Covered Materials.[6]

In these very limited and specific circumstances, even though the recordings were in Congressional control *only* because defendants had violated their contracts with NAF, I find that defendants are not prevented by the Permanent Injunction from republishing and commenting on the recordings or information publicly released by Congress.

NAF argues that because I found that defendants waived any First Amendment rights they otherwise have to publish and disclose the recordings and information they secured at the NAF meetings and I permanently enjoined them from "publishing" or otherwise disclosing those materials – determinations affirmed in full by the Ninth Circuit – defendants should be held in contempt for their recent conduct. Neither my prior decisions nor the Ninth Circuit's opinion, however, discuss republishing and disclosure a subset of specific recordings after they had been validly produced by defendants in response to a Congressional subpoena and then released by Congress. My prior decisions and the Ninth Circuit affirmance do not address these factual circumstances and their legal implications.

NAF points to *Wilson v. C.I.A.*, 586 F.3d 171 (2d Cir. 2009). That case concerned the plaintiff's alleged right under the First Amendment to disclose information regarding her service with the CIA despite having signed the CIA-approved waiver of her right to publish classified information about her service with the CIA. The court recognized that the Supreme Court had repeatedly upheld CIA waivers "voluntarily assumed" by government employees to protect disclosure of classified information in order to protect intelligence sources and methods from unauthorized disclosure. *Id*. at 184. The Second Circuit acknowledged that the classified information ("The February 10 Letter") was disclosed by a Congressman with plaintiff's permission in connection with possible legislation, and was otherwise well-known in the public

---

[6] The analysis would be different if the evidence suggested that defendants republished information that was not officially released by Congress, *i.e*., if the recordings were leaked from within Congress or another source. That the recordings under consideration here were played in a Congressional hearing, released through a member of Congress's official YouTube channel, and initially secured by Congress under a facially valid Congressional subpoena are all crucial factors in my determination that defendants should not be held in contempt for violating the Permanent Injunction by republishing and commenting on those very recordings.

7

1  domain. But because plaintiff had signed a contract "forever" waiving her right to "disclose in
2  any form or in any manner" classified information, that contract remained "binding and
3  enforceable" even if disclosure of the still-classified information would cause little or no harm
4  given it was already in the public domain. *See id. generally* at 192-196; *see also id*. at 196
5  ("Because we reject plaintiffs' argument that no good reason supports the CIA's maintenance of
6  [the classified information], and because we have already determined that this information has not
7  been officially disclosed by the CIA, we necessarily conclude that plaintiffs' First Amendment
8  challenge to defendants' redactions to *Fair Game* fails as a matter of law. Ms. Wilson—like every
9  other current and former Agency employee who has signed a Secrecy Agreement—'simply has no
10 first amendment right to publish' the information here at issue, regardless of how 'public' her past
11 activities appear to have become").

12  In rejecting plaintiff's challenge to continued classification, the court held "that a former
13 agent cannot use her own unauthorized disclosure of classified information as a springboard for
14 challenging the CIA's ability to maintain that information as classified." *Id*. at 294. The court
15 wrote that "others, not subject to such a secrecy obligation, are free to investigate [plaintiff's] past
16 and to compile and discuss all available information regarding her career—including the February
17 10 Letter—is not, as plaintiffs insist, an absurd or anomalous result. The law has long
18 distinguished between 'strangers,' who 'may republish previously published material,' and former
19 intelligence agents, who 'are bound by formal agreements not to disclose [classified] information.'
20 *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir.1975). As noted, when Ms. Wilson
21 elected to serve with the CIA, she accepted a life-long restriction on her ability to disclose
22 classified and classifiable information." *Id*. at 196.

23  There are many significant differences between the facts of this case and *Wilson.* First, the
24 waiver voluntarily assumed by Ms. Wilson requiring prepublication review and prohibiting
25 disclosure of classified information has been repeatedly tested and approved by the Supreme Court
26 as justified to protect national security interests. Here, the EAs and CAs that underpin the
27 Permanent Injunction also contain a waiver of rights to publish, but the specific provisions that led
28 to defendants' liability were not the publication provision but the provisions intended to protect

8

the confidentiality of NAF members' discussions at the NAF meetings.  *See* n.3 *supra*.[7]

A more significant distinction between *Wilson* and this case is that the release of the classified information by Ms. Wilson to Congress was purely voluntary.  *Id*. at 178, 181.  Here, while defendants clearly made the recordings under false pretenses and without the consent of NAF in violation of the EAs and CAs, defendants turned over the recordings to Congress in response to a facially valid subpoena.  They also gave notice to NAF and me before complying with the subpoena.  The facially valid subpoena and the pre-compliance notice of the same to NAF and me is a significant distinction and, in essence, breaks the causal chain between defendants' waiver of their First Amendment rights that was key to their liability and the Permanent Injunction *and* their ability to republish the subpoenaed records that Congress has seen fit to publicly disclose.

NAF also relies on *Perricone v. Perricone*, 292 Conn. 187 (2009).  There, the court restrained a wife – who had entered a confidentiality agreement with her former spouse covering information related to the dissolution of their marriage or secured during the dissolution proceedings – from appearing on television to discuss their marriage and a pending custody matter.  The Connecticut Supreme Court affirmed, finding that the wife knowingly and voluntarily waived her First Amendment rights.  *Perricone*, 292 Conn. at 211.  The Court rejected the wife's argument that the agreement violated the state constitution or the public policy favoring open courts, recognizing that the agreement she signed restricted her ability to publicly comment on litigation that is already a matter of public record.  *Id*. at 216 n.28 & n.32 (the "defendant's personal views on those proceedings, however, are not public").

The contractual waivers to which defendants agreed in the EAs and CAs were not as broad and were intended to protect the confidentiality of the NAF meeting participants.  *Perricone* is not

---

[7] Lest there be doubt, despite defendants' liability not being adjudicated on the provision in the CAs requiring NAF meeting attendees to "keep all information learned at the meetings in confidence and not disclose that information to third parties without NAF's consent," *see* Dkt. No. 720 at 7-8, n.8 (citing CA ¶ 17), the Permanent Injunction's restriction on publication of any of the Covered Materials from the NAF Meetings to third parties was and remains justified as a remedy for defendants' violations of the other breached provisions of the EAs and CAs.  *See* n.3 *supra*.

9

1  relevant to whether the Permanent Injunction prohibits defendants from republishing materials
2  (even though secured in violation of the agreements they signed that voluntarily waived their First
3  Amendment rights) once those materials have been secured by a government entity and disclosed
4  to the public by that government entity.

5       NAF's final case concerns violations of a court protective order by a party to litigation. In
6  *Kehm v. Procter & Gamble Mfg. Co.*, 580 F. Supp. 913 (N.D. Iowa 1983), aff'd, 724 F.2d 630 (8th
7  Cir. 1984), the court held counsel in contempt for the sale and distribution of documents covered
8  by a protective order without first seeking leave of court. The court rejected the defense that many
9  of the documents at issue were either not in fact confidential (but improperly marked as
10 confidential) or became public when admitted at trial and, therefore, that counsel should not be
11 held in contempt for their release. The court found that counsel's attempt to self-determine these
12 issues in the first instance was improper; instead, counsel should have first invoked the procedures
13 for review or modification of the protective order from the court. *Id*. at 916.

14      The *Kehm* case does not support precluding defendants from republishing and commenting
15 on the recordings released by Congress. But it does bolster the argument that if defendants intend
16 to engage in conduct that might be prohibited by the Permanent Injunction, the appropriate course
17 is to meet and confer with NAF and bring disputes or requests for clarification on the scope of the
18 injunction to me. Defendants have invoked this process repeatedly in the past, so they know how
19 it works. In this instance, they self-determined that republishing did not violate the Permanent
20 Injunction, causing NAF and the court to expend significant resources to respond immediately. I
21 will not hold defendants in contempt this time. But they are cautioned to avoid further potential
22 violation of the Permanent Injunction by meeting and conferring and seeking expedited
23 clarification in the future.

24      If defendants cannot be held in contempt and prohibited from republishing the recordings
25 disclosed by Congress covered by the 2015 subpoena, NAF argues that defendants should
26 nonetheless be held in contempt and sanctioned for disclosing the names of the speakers shown in
27 the clips played at the hearing in CMP's press release and on the CMP website. NAF notes that
28 the speakers were not identified at the hearing by name, but only by affiliation or title, and it is the

connection of those speakers (whose faces or name tags were blurred in the Congressional clips) to their names on CMP's website and press release that violated the Permanent Injunction.

Defendants submit evidence that Daleiden knew of the identities of these speakers prior to attending either the 2014 or 2015 NAF meetings and that the identity and affiliations of some of the speakers have been publicly disclosed, such that the identity information is not "confidential information learned at the 2014 and 2015 NAF Annual Meetings." Dkt. No. 723 at 2; *see also* Dkt. No. 844 13-15; Daleiden Decl., ¶¶ 9-13. I understand NAF's argument that *connecting* this arguably known identifying information to the speakers in the recordings played during the hearings was arguably confidential. But while the contents of the recordings were most definitely learned during the NAF meetings, the republication of the Congressional clips is not in violation of the Permanent Injunction and Daleiden's subsequent commentary on those clips using information he did not secure from the NAF meetings does not violate the Permanent Injunction.

## II.  VIOLATION OF PARAGRAPH 2 OF THE PERMANENT INJUNCTION

NAF separately challenges whether defendant Daleiden is in compliance with the Permanent Injunction's requirement that prohibited defendants from "[r]etaining possession of any materials covered by this permanent injunction," required all Covered Materials to be "turned over to counsel of record in this matter or counsel of record in *People v. Daleiden*," and required that defendants' access to Covered Materials "shall occur only onsite at the offices of said counsel and subject to the supervision of said counsel, absent further order of this Court or the court in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.)." Dkt. No. 723 at 2. NAF asserts that Daleiden's declaration appears to admit that Daleiden has access to the full Covered recordings through "the cloud" as well as through a computer provided by his criminal defense attorneys. Dkt. No. 849.

Daleiden's Declaration indicates that his access to the recordings was "limited access to the Covered Materials" as allowed by Judge Hite, who is overseeing his criminal case, Daleiden Decl. ¶ 3 & Ex. A, and then to the recordings played and released by Congresswoman Greene through the Congresswoman's YouTube channel. *Id*. ¶¶ 6-7. NAF remains troubled by the scope of Daleiden's access: although Judge Hite allowed criminal defense counsel to provide Daleiden access to Covered Materials through a counsel-provided laptop and cloud drive, Daleiden's

11

defense counsel appears to be ignorant of that access. *See* Declaration of Steve Cooley, Dkt. No. 845, ¶ 2 ("no Preliminary Injunction materials were given to my client David Daleiden."). NAF is also concerned because Daleiden does not declare "what he has been doing with his access . . . [or] attest that his use is confined to the limits permitted by the Superior Court or disclaim accessing the edited clips before the hearing." Dkt. No. 849 at 10.

Daleiden was not required to provide the information NAF seeks. Instead, I required:

> [E[very lawyer who is or has been counsel of record in this case should file a declaration explaining whether they have or had possession of recordings covered by the Permanent Injunction, and if so, when those recordings came into their possession, if they no longer have possession of those recordings, when their possession ended. Defendant Daleiden shall also file a declaration explaining whether he has or had possession or access to any recordings or other information covered by the Permanent Injunction as of May 31, 2021, and if so when and how he came into possession of or access to those recordings and other information covered by the Permanent Injunction and whether he still has possession of or access to those recordings and other information covered by the Permanent Injunction.

Dkt. No. 831. Daleiden provided the information I asked for. Daleiden's former and perhaps current criminal defense counsel Steve Cooley's declaration is not exactly on point, as it references only the Preliminary Injunction materials and declares that he has not had access to them since 2017. Dkt. No. 845. Based on Judge Hite's Order and Daleiden's declaration, I find no evidence that any defendant is in violation of paragraph 2 of the Permanent Injunction.

That said, paragraph 2 of the Permanent Injunction requires that the identity of "counsel of record in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.)" shall be "disclosed to this Court." Dkt. No. 723 at 2. Daleiden's counsel in this case – the Dhillon Law Group – shall file within five days of the date of this Order a notice on the docket pursuant to paragraph 2 of the Permanent Injunction identifying current criminal defense counsel in *People v. Daleiden*, No. 2502505 (S.F. Super. Ct.) who have access to the Covered Materials.

## CONCLUSION

In light of the evidence to date, I do not find defendants in contempt for violating the Permanent Injunction and will not prohibit them from republishing the specific recordings, or clips from those recordings, that were secured by Congress under the facially valid 2015 subpoena *and*

publicly shown or released by Congress in March 2024.

**A few points bear emphasis**:

- The *only* materials defendants may republish are those that were produced to Congress pursuant to the 2015 subpoena (*i.e.*, materials regarding the "acquisition, preparation, and sale" of fetal tissue) *and then* publicly shown or released by Congress. Materials provided to Congress pursuant to the 2015 subpoena but not publicly shown or released by Congresswoman Greene remain covered by the Permanent Injunction. Defendants may not publish or otherwise disclose those Covered Materials.

- To the extent the recordings publicly shown or otherwise released by Congress were edited to conceal faces, name tags, or other identifying information of those shown in the recordings, defendants may not release unedited recordings (*e.g.*, unblurring the faces or name tags).

- All information and recordings that defendants secured from the 2014 and 2015 NAF Meetings that were not turned over to Congress as a result of the 2015 Congressional subpoena are Covered Materials that remain fully protected by the Permanent Injunction.

- Covered Materials that may have been produced to government agencies pursuant to other subpoenas (*i.e.*, the Attorneys General of Arizona or Louisiana) remain subject to the Permanent Injunction and may not be published or otherwise disclosed by defendants.

- Defendants remain under an obligation to notify NAF *and* the court if any materials covered by the Permanent Injunction are subpoenaed by any government entity or agency. Defendants may not, without prior notice to NAF and the court, voluntarily comply with any such subpoena or request.

- Defendants should not, in the future, take it upon themselves to unilaterally determine whether disclosure of Covered Materials by third-parties or otherwise frees them from the strictures of the Permanent Injunction. Their conduct in this instance – the republishing of the Congressionally-released recordings on their website and social media channels with the addition of independently secured identifying information – could have been addressed by me on an expedited basis. Defendants know how to seek clarification

13

of the boundaries of their enjoined conduct in advance; they simply chose not to follow those procedures in this instance. Their approach put the parties and the court through a rushed and reactive process. Defendants should seek clarification of their obligations under the Permanent Injunction, as they have in the past, before assuming that the Permanent Injunction does not apply to their disclosure of Covered Materials from the 2014 and 2015 NAF Meetings.[8]

**IT IS SO ORDERED.**

Dated: May 15, 2024



William H. Orrick
United States District Judge

---

[8] The docket is replete with instances where defendants sought clarification of their rights with respect to the Covered Materials and the Court has expeditiously provided that clarification. *See, e.g.*, Dkt. Nos. 64, 185, 571, 596.

14